# EXHIBIT 13

**C L I F F O R D**

**C H A N C E**

CLIFFORD CHANCE PTE LTD

**EXECUTION VERSION**

**DATED** _____ 6 November _____ **2018**

## JPA NO. 111 CO., LTD.
AS BORROWER

## CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK
AS MANDATED LEAD ARRANGER

## CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK
AS JUNIOR AGENT

## CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK
AS SECURITY AGENT

AND

## THE FINANCIAL INSTITUTIONS NAMED HEREIN
AS JUNIOR LENDERS

_____

## JUNIOR FACILITY AGREEMENT
IN RESPECT OF
ONE (1) AIRBUS A350-900 AIRCRAFT
WITH MANUFACTURER'S SERIAL NUMBER 67

_____

# CONTENTS

Clause                                                                                          Page

1.   Definitions and Interpretation ...................................................................................1
2.   The Facility ...............................................................................................................2
3.   Purpose ......................................................................................................................3
4.   Conditions of Utilisation ...........................................................................................3
5.   Utilisation ..................................................................................................................6
6.   Limitation on Recourse .............................................................................................8
7.   Repayment ...............................................................................................................10
8.   Prepayment and Cancellation ..................................................................................13
9.   Interest .....................................................................................................................18
10.  Interest Periods ........................................................................................................19
11.  [intentionally left blank]..........................................................................................19
12.  Fees..........................................................................................................................19
13.  Tax Gross-up and Indemnities ................................................................................20
14.  Increased Costs ........................................................................................................27
15.  Other Indemnities ....................................................................................................28
16.  Costs and Expenses .................................................................................................31
17.  Representations ........................................................................................................32
18.  Information Undertakings ........................................................................................37
19.  General Undertakings...............................................................................................39
20.  Junior Loan Events of Default.................................................................................46
21.  Changes to the Junior Lenders ................................................................................50
22.  Changes to the Borrower .........................................................................................52
23.  The Junior Finance Parties ......................................................................................53
24.  Payment Mechanics .................................................................................................53
25.  Application of Payments ..........................................................................................55
26.  Set-off......................................................................................................................55
27.  Notices .....................................................................................................................55
28.  Calculations and Certificates ..................................................................................55
29.  Partial Invalidity ......................................................................................................56
30.  Remedies and Waivers .............................................................................................56
31.  Amendments and Waivers .......................................................................................56
32.  Counterparts.............................................................................................................57
33.  Governing Law.........................................................................................................57
34.  Enforcement .............................................................................................................57

Schedule 1 The Original Junior Lenders ...................................................................... 59

Schedule 2 Conditions Precedent............................................................................... 60

Part I Initial Conditions Precedent............................................................................. 60

Part II Utilisation Specific Conditions Precedent ..................................................... 61

Part III Conditions Subsequent .................................................................................. 65

Schedule 3 Form of Utilisation Request ..................................................................... 67

Schedule 4 Repayment Schedule ................................................................................ 68

Schedule 5 Changes to the Junior Lenders ................................................................ 69

Part I General Terms................................................................................................... 69

Part II Form of Transfer Certificate ......................................................................... 72

Schedule 6 Timetables ................................................................................................. 74

**THIS JUNIOR FACILITY AGREEMENT** is dated __6 November__ 2018 (this "**Agreement**") and made

**BETWEEN**:

(1)     **JPA NO. 111 CO., LTD.,** a limited liability company (*kabushiki kaisha*) duly formed and incorporated under the laws of Japan, with its registered office at 3-2-1, Kasumigaseki, Chiyoda-ku, Tokyo 100-0013, Japan (the "**Borrower**");

(2)     **CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**, in its capacity as mandated lead arranger of the Junior Loan (the "**Mandated Lead Arranger**");

(3)     **CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**, in its capacity as facility agent for the Junior Lenders (the "**Junior Agent**");

(4)     **CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**, in its capacity as security agent and trustee for and on behalf of, *inter alios*, itself and the Junior Lenders for the purposes only of holding certain security under the Transaction Documents (the "**Security Agent**"); and

(5)     **THE FINANCIAL INSTITUTIONS** listed in Schedule 1 (*The Original Junior Lenders*) as Junior Lenders (the "**Original Junior Lenders**").

**IT IS AGREED** as follows:

1.      **DEFINITIONS AND INTERPRETATION**

1.1     **Definitions**

In this Agreement, capitalised words and expressions shall have the respective meanings given to them in Part A (*Definitions*) of Appendix A - Master Definitions Schedule.

"**Appendix A - Master Definitions Schedule**" means the master definitions schedule appended to the Proceeds Agreement.

"**Proceeds Agreement**" means the proceeds agreement entered into, or to be entered into, as the context may require, between, on or about the date hereof, *inter alios*, the Borrower, the Senior Lenders, the Junior Lenders, the Hedging Counterparty, the Security Agent, the Senior Agent and the Junior Agent, in respect of the Aircraft.

"**Repayment Schedule**" means the repayment schedule set out in Schedule 4 (*Repayment Schedule*) or any revised Repayment Schedule prepared in accordance with sub-clause 5.7.2.

1.2     **Interpretation**

The rules of interpretation set out in Part B (*Interpretation*) of Appendix A - Master Definitions Schedule shall apply to this Agreement.

1.3     **Schedules**

The Schedules to this Agreement and Appendix A - Master Definitions Schedule form part of this Agreement.

1.4     **Third party rights**

(a)     Unless expressly provided to the contrary in any Transaction Document, a person who is not a Party has no right under the Third Parties Act to enforce or to enjoy the benefit of any term of this Agreement.

(b)     Other than as set out in the Proceeds Agreement, the consent of any person who is not a Party is not required to rescind or vary this Agreement at any time.

2.     **THE FACILITY**

2.1     **The Facility**

(a)     Subject to the terms of this Agreement including paragraph (b) below, the Junior Lenders make available to the Borrower in an amount of up to the aggregate of the Junior Commitments a dollar term Junior Loan in an amount equal on the Utilisation Date to US$15,000,000.00, to be repaid in quarterly instalments in accordance with Clause 7.1 (*Repayment*) as such amount may be adjusted, reduced or cancelled in accordance with this Agreement.

(b)     If at any time prior to the Utilisation Date the Junior Agent determines that as a result of prevailing interest rates, the forecast Aggregate Rent is or is likely to be insufficient to repay the Forecast Maximum Debt Service, it shall promptly give notice to the Borrower (a "**Limit Notice**"). In preparing a Limit Notice, the Junior Agent shall:

(i)     assume that the Senior Loan will be in an amount equal to the aggregate Senior Commitments;

(ii)     determine the maximum Junior Loan which could be serviced by the forecast Aggregate Rent (the "**Junior Loan Cap**"); and

(iii)     ensure that the Limit Notice includes such Junior Loan Cap,

and the Borrower may not request a Junior Loan in an amount greater than the Junior Loan Cap.

2.2     **Junior Finance Parties' rights and obligations**

2.2.1     The obligations of each Junior Finance Party under the Transaction Documents are several.  Failure by a Junior Finance Party to perform its obligations under the Transaction Documents does not affect the obligations of any other Party or any other person under the Transaction Documents. No Junior Finance Party is responsible for the obligations of any other Junior Finance Party under the Transaction Documents.

2.2.2     The rights of each Junior Finance Party under or in connection with the Transaction Documents are separate and independent rights and any debt arising under the Transaction Documents to a Junior Finance Party from the Borrower shall be a separate and independent debt in respect of which a Junior Finance Party shall be entitled to enforce its rights in accordance with sub-clause 2.2.3. The rights of each Junior Finance Party include any debt owing to that Junior Finance Party under the Transaction Documents and, for the avoidance of doubt, any part of the Junior Loan or any other amount owed by an Obligor which relates to a Junior Finance Party's participation in the Facility or its role under a Transaction Document (including any such amount payable to the Junior Agent on its behalf) is a debt owing to that Junior Finance Party by that Obligor.

2.2.3     A Junior Finance Party may, except as specifically provided in the Transaction Documents, separately protect and enforce its rights under or in connection with the Transaction Documents.

3.     **PURPOSE**

3.1     **Purpose**

The Borrower shall apply all amounts borrowed by it under the Junior Loan towards payment of the Fees and financing its acquisition of the Aircraft pursuant to the Aircraft Purchase Agreement.

3.2     **Monitoring**

No Junior Finance Party is bound to monitor or verify the application of any amount borrowed pursuant to this Agreement.

4.     **CONDITIONS OF UTILISATION**

4.1     **Initial conditions precedent**

The Borrower may not deliver a Utilisation Request until the Junior Agent has received all of the documents and other evidence listed in Part I (*Initial Conditions Precedent*) of Schedule 2 (*Conditions Precedent*) in form and substance reasonably satisfactory to the Junior Agent.

4.2     **Further conditions precedent**

The Junior Lenders will only be obliged to comply with Clause 5.5 (*Junior Lenders' participation*) in respect of the proposed Utilisation if:

4.2.1     on the proposed Utilisation Date and on the date of the Utilisation Request, no Relevant Event or Junior Loan Default specified in Clause 20.4.1 is continuing or would result from the proposed Utilisation;

4.2.2     on the proposed Utilisation Date and on the date of the Utilisation Request, all the representations and warranties of each Obligor and the Lessee contained in any of the Transaction Documents expressed to be made or repeated on such date are true in all material respects;

4.2.3   on the proposed Utilisation Date, the Junior Agent has received the fees referred to in any Fee Letter as being payable to it on or before the Utilisation Date;

4.2.4   on the proposed Utilisation Date and on the date of the Utilisation Request, no action, suit, investigation or proceeding is pending or threatened in any court or before any arbitrator or governmental authority that could reasonably be expected to materially and adversely affect the ability of any Obligor to perform its respective obligations under the Transaction Documents;

4.2.5   on the proposed Utilisation Date and on the date of the Utilisation Request, no event or circumstance shall have occurred since the date of this Agreement which the Majority Junior Lenders (acting reasonably and in good faith) determine constitutes a material adverse change in:

(a)      the financial or operational condition of the Lessee;

(b)      the value of the Aircraft or the other Collateral which secures (or will following execution of the Security Documents on Utilisation secure) the Facility; or

(c)      the financial markets generally,

(a **"MAC"**) **provided that** if a MAC occurs the Junior Agent shall notify the Borrower promptly, giving particulars of the MAC, and shall promptly consult with the Borrower for a period of up to fourteen (14) days in good faith with a view to agreeing if there is a mutually acceptable basis on which the Junior Loan may be advanced hereunder on or as near as possible to the anticipated Utilisation Date;

4.2.6   on the proposed Utilisation Date and on the date of the Utilisation Request, no event or circumstance has occurred after the date hereof and is continuing which constitutes a material disruption or material adverse event in relation to the financial, banking or capital markets that would prevent or materially constrain Junior Lenders holding at least fifty per cent. (50%) of the Total Commitments from raising funds for the Junior Loan on terms which preserve the same economic terms for those Junior Lenders as they had anticipated receiving as at the date of this Agreement.  In the event that any such circumstances exist, the Junior Agent shall promptly notify the Borrower and the Junior Agent, and the Borrower and the affected Junior Lenders shall consult in good faith with a view to agreeing a mutually acceptable basis for funding the affected Junior Loan on, or as soon as possible after, the Utilisation Date (but the Junior Loan shall not be made available hereunder until such mutually acceptable basis is agreed or the relevant Junior Lenders give notice that the relevant material disruption or material adverse event has ceased);

4.2.7   on the proposed Utilisation Date and on the date of the Utilisation Request, no Event of Loss (and no event or circumstance which, with the passing of time, the giving of notice or the making of any determination could be an Event of Loss) has occurred in respect of the Aircraft;

4.2.8   on the proposed Utilisation Date, the Junior Agent has received all of the documents and other evidence listed in Part II of Schedule 2 (*Utilisation Specific Conditions Precedent*) in relation to the Aircraft in form and substance reasonably satisfactory to the Junior Agent;

4.2.9   on the proposed Utilisation Date, the Junior Agent shall be satisfied that immediately following the Utilisation the Borrower will have sole legal and beneficial title to and ownership of the Aircraft subject only to the Head Lease Agreement, the Lease Agreement, the Permitted Security Interests and the Security Interests created by the Security Documents;

4.2.10   [intentionally left blank];

4.2.11   on the proposed Utilisation Date, all non-documentary conditions precedent listed in clause 3 (*Conditions to closing*) of the Aircraft Purchase Agreement shall have been satisfied or waived in accordance with the terms of the Aircraft Purchase Agreement;

4.2.12   on the proposed Utilisation Date and on the date of the Utilisation Request, no event specified in Clause 8.5.1 has occurred;

4.2.13   the Fixed Rate has been established hereunder in respect of the Junior Loan, with the request for such rate fixing to be delivered by no later than the Specified Time; and

4.2.14   on the date of the Utilisation Request, the Junior Agent has completed its due diligence of the Lease Agreement and found, acting reasonably, the Lease Agreement to be satisfactory.

## 4.3   Conditions Subsequent

The Borrower shall satisfy the conditions subsequent referred to in Part III (*Conditions Subsequent*) of Schedule 2 within the time limits specified therein.  Failure by the Borrower to comply with this Clause 4.3 and to provide any condition subsequent within the applicable time limit therefor shall constitute a Junior Loan Event of Default.

## 4.4   Waiver

The conditions precedent set forth in Clauses 4.1 (*Initial conditions precedent*) and 4.2 (*Further conditions precedent*) are for the benefit of the Junior Finance Parties and may be waived or deferred by the Junior Agent in whole or in part and with or without conditions.

## 4.5   Delayed Delivery

4.5.1   If for any reason the Junior Loan is not advanced on the date specified as the utilisation date in the Utilisation Request ("**Scheduled Utilisation Date**"), and if the Borrower has notified the Junior Agent by 4:00 p.m. (Paris time) on the Scheduled Utilisation Date that the Junior Loan cannot be advanced because the conditions precedent set forth in Clause 4.1 (*Initial conditions precedent*) and/or Clause 4.2 (*Further conditions precedent*) cannot be satisfied and the Borrower has confirmed in writing that it reasonably expects to be able to satisfy the

conditions precedent by the date falling five (5) Business Days from the Scheduled Utilisation Date (or such longer period as the Junior Agent may agree on the instructions of the Junior Lenders), then, notwithstanding any instructions to the contrary in the Utilisation Request, the Junior Loan shall be disbursed to a suspense account maintained with the Junior Agent for the account of the Junior Lenders (the "**Delayed Delivery Account**").

4.5.2   If the conditions precedent set forth in Clause 4.1 (*Initial conditions precedent*) and/or Clause 4.2 (*Further conditions precedent*) are subsequently satisfied by or before the date falling five (5) Business Days from the applicable Scheduled Utilisation Date (or such later date as may be agreed between the Junior Agent and the Borrower), on such date the funds held in the Delayed Delivery Account shall be disbursed in accordance with the Utilisation Request and the Interest Period shall be deemed to commence on the Scheduled Utilisation Date.  If such conditions precedent cannot be satisfied by the date falling five (5) Business Days from the Scheduled Utilisation Date (or such later date as may be agreed between the Junior Agent and the Borrower), the Junior Agent shall apply all funds in such account to prepay the Junior Loan together with accrued interest thereon calculated in accordance with Clause 9 (*Interest*) and all other amounts then due and payable hereunder (including without limitation under Clause 15.6 (*Fixed Rate Break Costs/Fixed Rate Break Gains*) (if any)) and under the other Transaction Documents. To the extent such proceeds are not sufficient to pay such amounts in full, the Borrower shall, within three (3) Business Days following demand, pay the Junior Agent for the account of the Junior Lenders the amount of such deficiency.

5.   **UTILISATION**

5.1   **Delivery of Utilisation Request**

The Borrower may utilise the Facility by delivery to the Junior Agent of a duly completed Utilisation Request copied to the Junior Lenders not later than the Specified Time (or such later time as the Junior Agent may agree).

5.2   **Maximum Amount of Junior Loan**

5.2.1   Only one Utilisation Request may be delivered by the Borrower.

5.2.2   The Borrower may not request that the Junior Loan be divided.

5.3   **Completion of Utilisation Request**

The Utilisation Request is irrevocable and will not be regarded as having been duly completed unless:

5.3.1   the proposed Utilisation Date is a Business Day which is or precedes the Commitment Termination Date; and

5.3.2   the currency and amount of the Junior Loan comply with Clause 5.4 (*Currency and amount*).

5.4    **Currency and amount**

5.4.1    The currency specified in the Utilisation Request must be dollars.

5.4.2    The amount of the Junior Loan may not exceed the Junior Loan Cap.

5.5    **Junior Lenders' participation**

5.5.1    If the conditions set out in this Agreement have been met or waived, each Junior Lender shall make its participation in the Junior Loan available on the Utilisation Date through its Facility Office.

5.5.2    The amount of each Lender's participation in the Junior Loan will be equal to the proportion borne by its Commitment to the Available Facility immediately prior to the making of the Junior Loan.

5.5.3    The Junior Agent shall notify each Junior Lender of the amount of the Junior Loan and the amount of such Lender's participation in the Junior Loan, in each case by the Specified Time.

5.6    **Commitment Termination Date**

On the earlier of (i) the Commitment Termination Date and (ii) the Business Day immediately following the Utilisation Date, to the extent not drawn down, the respective Commitments of the Junior Lenders shall be reduced to zero.

5.7    **Repayment Schedule**

5.7.1    The Repayment Schedule has been prepared on the basis of the following assumptions:

(a)    the amount of the Junior Loan is US$10,950,000.00;

(b)    the Utilisation Date is 18 October 2018;

(c)    the Fixed Rate in respect of the Junior Loan is 5.596 per cent; and

(d)    the Junior Loan will not be prepaid in whole or in part.

5.7.2    If any of the above assumptions prove to be incorrect (other than solely because of the Utilisation Date not occurring on the Scheduled Utilisation Date where Clause 4.5 (*Delayed Delivery*) applies), the Junior Agent shall prepare a revised Repayment Schedule calculated on the same basis as the initial Repayment Schedule but by reference to the actual amount of the Junior Loan advanced, the actual Utilisation Date, the actual Fixed Rate in respect of the Junior Loan and the principal amount of the Junior Loan outstanding after any such prepayment (in each case, as applicable).

5.7.3    In relation to any revised Repayment Schedule prepared by the Junior Agent pursuant to Clause 5.7.2, the Junior Agent shall promptly send a copy of such revised Repayment Schedule to the Borrower and each of the other Junior Finance Parties and the Senior Agent.  Upon receipt of the same (and in the

absence of error) the existing Repayment Schedule shall be treated as being null and void and the substitute Repayment Schedule shall immediately take effect as the relevant Repayment Schedule, and all payments hereunder shall be made in accordance therewith.

## 6.    LIMITATION ON RECOURSE

### 6.1    Limited Recourse Obligations

Subject to the provisions of Clause 6.2 (*Personal Liability*), the Borrower shall not be personally liable for the performance of any obligation or for the payment of any amount under any Transaction Document (including liability for damages) except to the extent the Borrower actually receives (and is entitled to retain, free of any obligation to account to the Lessee, the Intermediate Lessor or any third party) moneys (other than monies it is entitled to retain or be paid for its own account in accordance with clause 8 (*Application of Proceeds*) of the Proceeds Agreement):

6.1.1    under the Lease Agreement or the Head Lease Agreement;

6.1.2    as a consequence of the exercise or enforcement of any right, power or remedy conferred on the Security Agent under any of the Security Documents;

6.1.3    as a consequence of the exercise or enforcement of any right, power or remedy conferred on the Borrower under any Transaction Document, including as a consequence of any default by any party to any Transaction Document, or as a consequence of the termination of any Transaction Document; or

6.1.4    from any Governmental Entity or any person acting or purporting to act by authority of the same as a result of confiscation, forfeiture, nationalisation, seizure, restraint, detention, appropriation, requisition for title or use or other compulsory acquisition whatsoever of the Aircraft,

**provided always that**, subject to Clause 6.2 (*Personal Liability*) and without prejudice to the terms of the Transaction Documents, the Borrower shall have no liability for any Losses incurred by the Junior Finance Parties as a result of any default on the part of any other party to the Transaction Documents.

### 6.2    Personal Liability

Notwithstanding the provisions of Clause 6.1 (*Limited Recourse Obligations*), the Borrower shall be fully and personally liable to the fullest extent of its assets to the Junior Finance Parties for any loss sustained or incurred by the Junior Finance Parties or any of them as a consequence of:

6.2.1    any gross negligence or fraudulent or wilful misconduct of the Borrower with respect to the exercise or purported exercise by the Borrower of any of the Borrower's powers, rights, remedies, duties, obligations and liabilities under any Transaction Document;

6.2.2    a representation or warranty made by the Borrower pursuant to Clauses 17.1 (*Status*), 17.15 (*No Security Interests*), 17.17 (*No Employees*), 17.18 (*Subsidiaries*), 17.19 (*Shares*), 17.20 (*No other agreements or business*) and

17.22 (*Applicable Sanctions*) being untrue or incorrect in any material respect when made;

6.2.3    any breach of the undertakings, obligations or liabilities of the Borrower set out in Clauses 4.5 (*Delayed Delivery*), 18.1 (*Financial statements*), 19.4 (*Negative pledge*), 19.5 (*Applicable Sanctions*) (but only to the extent that the relevant breach arises from the acts, breaches or consents of the Borrower), 19.6 (*Taxation*), 19.8 (*No other business*), 19.9 (*Merger*), 19.10 (*Dividends and Shares*), 19.11 (*No employees*), 19.12 (*No Affiliates*), 19.13 (*Further assurance*), 19.14 (*Amendments*), 19.18 (*Actions Under Transaction Documents*), 19.19 (*Termination of Leasing*) and 19.21 (*State of Registration*);

6.2.4    any breach of the undertakings, obligations or liabilities of the Borrower assumed by it pursuant to sub-clause 6.2.3;

6.2.5    any failure by the Borrower to pay the fees payable in accordance with any Fee Letter, any expenses payable pursuant to sub-clause 16.1.1 or any amounts payable by the Borrower pursuant to Clause 15.3 (*Other indemnities*);

6.2.6    any failure by the Borrower to pay any amounts payable by it on account of costs associated with the release of Collateral pursuant to clause 7 (*Release of Security*) of the Proceeds Agreement;

6.2.7    any failure by the Borrower or the Intermediate Lessor to comply with clause 8 (*Quiet Enjoyment*) of the Lease Agreement; or

6.2.8    any failure of the Borrower or the Intermediate Lessor to satisfy the condition subsequent set forth in paragraph 5 of Part III (*Conditions Subsequent*) of Schedule 2 within the time limit specified therein,

**provided that** in each case the Borrower shall not be fully and personally liable hereunder to the extent that the relevant breach or failure is incurred solely as a result of actions of the Junior Finance Parties or as a result of the Borrower having been rendered unable to comply with the relevant obligations as a result of the Junior Finance Parties having enforced their rights under the Security Documents (except where such enforcement or such actions are taken following the occurrence of a Junior Loan Event of Default for which the Borrower is fully and personally liable, in which case this proviso shall not apply).

6.3    **No Waiver of Rights**

The provisions of Clause 6.1 (*Limited Recourse Obligations*) shall only limit the personal liability of the Borrower for the discharge of its monetary and other obligations under the Transaction Documents and shall not:

6.3.1    limit or restrict in any way the accrual of interest (although the limitations as to the personal liability of the Borrower shall apply to such interest);

6.3.2    derogate from or otherwise limit the right of enforcement, recovery, realisation or application by the Junior Finance Parties in respect of the Collateral under or pursuant to any of the Transaction Documents; or

6.3.3    affect, limit or restrict in any way the Junior Finance Parties (i) exercising or enforcing their claims or rights under the Transaction Documents on or with respect to the Aircraft or the Collateral or (ii) exercising their claims against the Borrower under the Transaction Documents in proceedings for the winding-up, dissolution, liquidation, corporate reorganisation, bankruptcy or any other similar proceedings with respect to the Borrower.

## 6.4    Certain Actions

Notwithstanding anything provided in this Agreement or any of the other Transaction Documents to which the Borrower is a party, the Borrower shall have no obligation to take any action requested, directed or required by any Junior Finance Party (a) which would cause the Borrower to be in breach of applicable law or of any Transaction Document or (b) where such action involves expenditure and/or the incurring of liability to a third party, unless (in the case of (b)) the Borrower is indemnified to its reasonable satisfaction in respect of any such expenditure and/or liability **provided that** the Borrower shall take such action and need not be indemnified pursuant to this Clause 6.4 for (i) any normal overhead costs and expenses incurred by the Borrower for any reason; and/or (ii) any action required as a result of the occurrence of any of the events or circumstances described in sub-clauses 6.2.1 to 6.2.8 inclusive (other than in respect of a breach of Clause 19.10 (*Dividends and Shares*), Clause 19.13 (*Further assurance*) or which did not result from any other event or circumstance described in sub-clauses 6.2.1 to 6.2.8 inclusive).

## 7.    REPAYMENT

## 7.1    Repayment of Junior Loan

Subject to the other provisions of this Agreement, the Borrower shall repay the Junior Loan in consecutive instalments on each Repayment Date in accordance with the Repayment Schedule.

## 7.2    Holding Period

7.2.1    The Borrower may, by written notice to the Junior Agent (the "**Holding Period Notice**"), institute a period (the "**Holding Period**") commencing on the date the Holding Period Notice becomes effective (the "**Holding Period Commencement Date**") and ending on the earlier to occur of (i) a date falling up to three (3) months thereafter and (ii) the Scheduled Expiry Date if (x) an Acceleration Event described in sub-clause 8.5.1(c) occurs and is then continuing or (y) a Lease Event of Default or a Head Lease Event of Default occurs and is then continuing and in each of (x) or (y) such event was not caused solely by an Obligor or due to a default by an Obligor.

7.2.2    A Holding Period Notice shall only be effective if:

(a)    no Loan Event of Default or Loan Default (other than a Lease Event of Default or Head Lease Event of Default) shall have occurred and be continuing on the Holding Period Commencement Date;

(b)    the Borrower gives a Holding Period Notice to the Junior Agent (which Holding Period Notice shall, subject to sub-clause 7.2.3, be irrevocable) of the instigation of the Holding Period no later than five (5) Business Days after date on which the relevant Lease Event of Default or a Head Lease Event of Default occurs or the date of any termination of the leasing of the Aircraft under the Head Lease Agreement or the Lease Agreement referred to in sub-clause 8.5.2(b) (and in any event before the Scheduled Expiry Date) specifying the date on which the Holding Period shall expire (being a date falling one (1), two (2) or three (3) Months from the Holding Period Commencement Date or such shorter period as the Borrower and the Junior Agent may agree, and proposing arrangements for the storage (which storage must at the least comply with the requirements of the Airframe Manufacturer, the Engine Manufacturer and the Aviation Authority), maintenance, insurance, registration and protection of security for the relevant Aircraft during the proposed Holding Period;

(c)    the Borrower has provided the Junior Agent with the undertakings specified in sub-clause 7.2.3 and, to the extent that any such arrangements referred to in sub-clause 7.2.3 may be made on or prior to the Holding Period Commencement Date, made such arrangements;

(d)    the covenants and obligations of, and the indemnities granted by, the Borrower to or in favour of any Indemnitee pursuant to this Agreement and any other Transaction Document shall continue in full force and effect (including, without limitation, the Borrower's obligation to pay all scheduled amounts of principal and interest when due; and

(e)    [intentionally left blank];

(f)    the Junior Agent, acting reasonably, shall have confirmed that it is satisfied with the then current credit standing of the Obligors (having regard if applicable to any cash reserves held by the Borrower in order to fund the performance of its obligations under the Transaction Documents, including the arrangements agreed with the Junior Agent under sub-clause 7.2.2) or any person guaranteeing or otherwise standing behind the obligations of the Borrower during the Holding Period.

7.2.3    If the Borrower elects to implement a Holding Period pursuant to sub-clause 7.2.1, the Junior Agent (acting reasonably and in good faith and following consultation with the Borrower, such consultation to commence immediately upon receipt by the Junior Agent of a Holding Period Notice and to continue for up to five (5) Business Days), having regard to the aviation storage regime required by sub-clause 7.2.2(b), maintenance, insurance, registration and security requirements for aircraft that are off-lease, shall promptly following completion of such consultation notify the Borrower whether it accepts the arrangements proposed by the Borrower in respect of the storage, maintenance, insurance and registration of, and security over, the Aircraft during the Holding Period. If such arrangements have been approved by the Junior Agent, the Borrower shall undertake in writing to the Junior Agent before close of business

on the day before the Holding Period Commencement Date to make the arrangements approved by the Junior Agent (at which point the written notice served pursuant to sub-clause 7.2.1 shall become irrevocable). If such arrangements have not been approved by the Junior Agent (acting reasonably and in good faith), the Junior Agent shall promptly notify the Borrower, giving reasons why it does not approve such arrangements, in which case the written notice served pursuant to sub-clause 7.2.1 shall be deemed withdrawn and shall be of no further effect. During the Holding Period, the Borrower agrees that it will provide to the Junior Agent such information regarding the storage, maintenance, insurance, remarketing and registration of the Aircraft, and the preservation of the Security Interests created pursuant to the Security Documents, as the Junior Agent shall reasonably request in writing and will any event provide the Junior Agent with a written report as to such matters no less frequently than monthly.

7.2.4    On the last day of the Holding Period the Borrower shall repay to the Junior Agent (for the account of the Junior Lenders) the outstanding balance of the Junior Loan in full together with:

(a)    accrued interest on the amount repaid;

(b)     any Fixed Rate Break Costs; and

(c)    all other amounts then due and payable to the Junior Finance Parties under this Agreement and all other Transaction Documents.

7.2.5    A Holding Period will terminate upon the occurrence of any of the following events, whereupon the Junior Loan shall be immediately due and payable together with all other amounts referred to in sub-clause 7.2.4 due and owing hereunder at such time, and the Junior Agent and/or the Security Agent may enforce its or their rights and those of the Junior Finance Parties under all or any of the Security Documents:

(a)    if a Loan Event of Default occurs and is continuing (other than a Lease Event of Default or Head Lease Event of Default);

(b)    if the Borrower fails to pursue and implement steps reasonably necessary to repossess the Aircraft and (if so requested or agreed by the Junior Agent) deregister it from its current registry and re-register in with an aviation authority acceptable to the Junior Agent (acting reasonably, it being agreed for these purposes that the Junior Agent will accept registration on the register of aircraft maintained in Ireland, the United States of America and the United Kingdom) and (if desirable) to remove it from its current location and such failure continues for three (3) Business Days after the Borrower's receipt of written notice of such failure by the Junior Agent to the Borrower;

(c)    if, in the opinion of the Security Agent, the Collateral (including, for the avoidance of doubt, the value of the Aircraft) is materially affected; or

(d)    if the Borrower fails to comply in any material respect with any of the written undertakings given by it to the Junior Agent pursuant to sub-clause 7.2.3.

## 7.3   **No re-borrowing**

The Borrower may not re-borrow any part of the Junior Loan which is repaid.

## 8.   **PREPAYMENT AND CANCELLATION**

## 8.1   **Illegality**

If it is or becomes unlawful, or it is reasonably expected that it will prior to the Utilisation Date or the end of the current Interest Period (as the case may be) become unlawful, for a Junior Lender to perform any of its obligations as contemplated by this Agreement or to fund or maintain all or part of its Commitment or all or part of its participation in the Junior Loan:

8.1.1   that Junior Lender shall promptly notify the Junior Agent upon becoming aware of that circumstance;

8.1.2   upon the Junior Agent notifying the Borrower of the same, the Commitment of that Junior Lender will be immediately cancelled (but shall be reinstated if mitigation under clause 13 (*Mitigation*) of the Proceeds Agreement is successful); and

8.1.3   subject to the obligations of the parties under clause 13 (*Mitigation*) of the Proceeds Agreement, that Lender's participation in the Junior Loan shall become immediately due and payable by the Borrower on the last day of the Interest Period during which the Junior Agent notified the Borrower in accordance with sub-clause 8.1.2 or, if earlier, the date specified by the Junior Lender in the notice referred to in sub-clause 8.1.1.

## 8.2   **Voluntary prepayment of Junior Loan**

8.2.1   The Borrower may, if it gives the Junior Agent not less than three (3) Business Days' (or such shorter period as the Majority Junior Lenders may agree) prior written notice, prepay the whole or any part of the Junior Loan on any Repayment Date (but if in part, by a minimum amount of US$3,000,000 or an integral multiple thereof).

8.2.2   If a prepayment of the Junior Loan in accordance with sub-clause 8.2.1 is made the Borrower shall pay on the date of such prepayment a prepayment fee equal to:

(a)    two per cent. (2%) of the amount prepaid, if the prepayment is made before the first anniversary of the Utilisation Date;

(b)    one point five per cent. (1.5%) of the amount prepaid, if the prepayment is made on or after the first anniversary of the Utilisation Date but before the second anniversary of the Utilisation Date; and

(c)     one per cent. (1%) of the amount prepaid, if the prepayment is made on or after the second anniversary of the Utilisation Date but before the third anniversary of the Utilisation Date.

8.2.3    No prepayment fee is payable if the Junior Loan is prepaid in accordance with sub-clause 8.2.1 on or after the third anniversary of the Utilisation Date.

8.2.4    Any prepayment under this Clause 8.2 shall satisfy the obligations under Clause 7.1 (*Repayment of Junior Loan*) in reverse chronological order.

## 8.3    Voluntary cancellation

The Borrower may, if it gives the Junior Agent not less than three (3) Business Days' (or such shorter period as the Majority Junior Lenders may agree) prior notice, cancel the whole of the Available Facility.  Any cancellation under this Clause 8.3 shall reduce the Commitments of the Junior Lenders rateably.  For the avoidance of doubt, no prepayment fee shall be payable in respect of any such cancellation.

## 8.4    Right of repayment in relation to a single Lender

8.4.1    If:

(a)    any sum payable to any Junior Lender is required to be increased under Clause 13.1 (*Tax gross-up*); or

(b)    any Junior Lender claims indemnification from the Borrower under (i) Clause 13.2 (*Tax indemnity*) or (ii) Clause 14 (*Increased costs*); or

(c)    a Market Disruption Event occurs in respect of a Junior Lender and the Borrower and the Junior Agent are unable to agree a substitute basis for determining the rate of interest in accordance with Clause 11.3 (*Alternative basis of interest or funding*),

subject to clause 13 (*Mitigation*) of the Proceeds Agreement, the Borrower may, whilst the circumstance giving rise to the requirement or indemnification continue, give the Junior Agent at least five (5) Business Days' notice (or such shorter period as such Junior Lender may agree) (which notice shall be irrevocable once given) of its intention to procure the repayment of that Lender's participation in the Junior Loan, and any such notice shall specify the date on which such repayment is to be effected.

8.4.2    On the date specified in the Borrower's notice under sub-clause 8.4.1, the Borrower shall, without penalty or payment of any prepayment or other fee (including the fee payable pursuant to sub-clause 8.2.2), repay that Lender's participation in the Junior Loan.

## 8.5    Mandatory Prepayment

8.5.1    An Acceleration Event shall occur if:

(a)    a Lease Event of Default or a Head Lease Event of Default occurs and is continuing;

(b)      for any reason the Agreed Value becomes or is expressed to become due and payable under the Lease Agreement or the Head Lease Agreement and either (i) the relevant insurance proceeds have been paid by the insurers or (ii) thirty (30) days have elapsed since such date;

(c)      the leasing of the Aircraft is terminated for any reason (other than that specified in sub-clause 8.5.1(b) above) prior to the Scheduled Expiry Date;

(d)      (subject to the obligations of the parties under clause 13 (*Mitigation*) of the Proceeds Agreement) it is or becomes (or will become) unlawful for an Obligor to perform or observe any of its material obligations under any of the provisions of the Transaction Documents to which it is a party, or any material obligation of an Obligor thereunder ceases to be legally valid and binding, and in any such case such circumstances are in the reasonable opinion of the Majority Junior Lenders materially prejudicial to the rights, interest or position of the Junior Finance Parties;

(e)      (subject to the obligations of the parties under clause 13 (*Mitigation*) of the Proceeds Agreement) any of the Security Documents shall (or are reasonably expected to) cease to constitute an enforceable first priority Security Interest over the moneys and assets expressed to be assigned, mortgaged, charged, pledged or over which security is otherwise created or intended to be created thereby, in each case free and clear of any other Security Interest (other than Permitted Security Interests) and the circumstances giving rise to such cessation or reasonable expectation thereof are not remedied to the satisfaction of each of the Junior Agent and the Security Agent within ten (10) days after the time at which the Party first becoming aware of the existence of such circumstances shall have notified the Junior Agent and the Borrower thereof;

(f)      either (i) the Insurances are not obtained or maintained, (ii) the Aircraft is operated in an area excluded from coverage under the Insurances, or (iii) the Insurances cease to be in full force and effect for any reason whatsoever unless, in the case of (i) and (iii), the Aircraft is grounded and the Borrower, the Lessee or the Intermediate Lessor has obtained and/or maintains, or causes to be obtained and/or maintained, ground risks insurance cover in all respects satisfactory to the Junior Agent during such period as the Aircraft remains grounded;

(g)      the Lease Manager ceases to be the 'lease manager' for the purposes of the Lease Management Agreement other than (i) with the prior written consent of the Majority Junior Lenders (not to be unreasonably withheld or delayed) and (ii) where it is replaced with a replacement lease manager acceptable to the Majority Junior Lenders;

(h)      the Borrower effects a Final Disposition of the Aircraft other than as a result of Enforcement Action (for the avoidance of doubt, nothing in this sub-paragraph (h) or sub-clause 8.5.2(e) shall limit any the rights of the Junior Finance Parties under the Transaction Documents); or

(i)        any of the Borrower or the Intermediate Lessor breaches (or threatens to breach) or otherwise fails to comply with sub-clauses 17.22 (*Applicable Sanctions*) or 19.5 (*Applicable Sanctions*) or sub-clauses 11.1.21 (*Applicable Sanctions*) or 11.3.5 (*Applicable Sanctions*) of the Proceeds Agreement.

8.5.2    At any time following the occurrence of an Acceleration Event:

(a)      in the case of the Acceleration Event described in sub-clause 8.5.1(b), on the date on which such event occurs (unless otherwise agreed by the Junior Agent), the Junior Loan shall become immediately due and payable by the Borrower or, as the context may require, the Commitment of each Junior Lender shall be immediately cancelled;

(b)      in the case of the Acceleration Event described in sub-clause 8.5.1(c), on the date on which the leasing of the Aircraft terminates, the Junior Loan shall become immediately due and payable by the Borrower or, as the context may require, the Commitment of each Junior Lender shall be immediately cancelled;

(c)      in the case of the Acceleration Event described in sub-clause 8.5.1(a), 8.5.1(d), 8.5.1(e) or 8.5.1(g), the Junior Agent (acting on the instructions of the Majority Junior Lenders) may by written notice to the Borrower declare that all or part of the Junior Loan shall become immediately due and payable by the Borrower on such day as the Junior Agent shall specify by notice in writing to the Borrower **provided that** (i) in the case of an Acceleration Event described in sub-clause 8.5.1(d) relating to any proposed Change in Law such day specified in such notice shall (unless otherwise agreed) be the latest date prior to the implementation of such Change in Law and (ii) otherwise such date shall fall no earlier than three (3) Business Days after the date of such notice;

(d)      in the case of the Acceleration Event described in sub-clause 8.5.1(f) or 8.5.1(i), the Junior Agent (acting on the instructions of the Majority Junior Lenders) may by written notice to the Borrower declare that all or part of the Junior Loan shall become immediately due and payable by the Borrower on such day as the Junior Agent shall specify by notice in writing to the Borrower; and

(e)      in the case of the Acceleration Event described in sub-clause 8.5.1(h), on the date on which the Final Disposition is effected, the Junior Loan shall become immediately due and payable by the Borrower or, as the context may require, the Commitment of each Junior Lender shall be immediately cancelled.

8.5.3    No prepayment fee pursuant to sub-clause 8.2.2 shall be payable in connection with any prepayment of the Junior Loan pursuant to, and in accordance with, this Clause 8.5.

8.6    **General Conditions of Prepayment and Cancellation**

8.6.1    Any notice of cancellation or prepayment given by any Party under this Clause 8 (*Prepayment and Cancellation*) shall be irrevocable and, unless a contrary indication appears in this Agreement, shall specify the date or dates upon which the relevant cancellation or prepayment is to be made and the amount of that cancellation or prepayment.

8.6.2    Any prepayment (whether in whole or in part) under this Agreement shall be made together with:

(a)    accrued interest on the amount prepaid;

(b)    any Fixed Rate Break Costs; and

(c)    all other amounts then due and payable to the Junior Finance Parties under this Agreement and all other Transaction Documents.

8.6.3    No amount of the Commitments cancelled under this Agreement may be subsequently reinstated.

8.6.4    The Borrower shall not repay or prepay all or any part of the Junior Loan or cancel all or any part of the Commitments except at the times and in the manner expressly provided for in this Agreement.

8.7    **No re-borrowing**

The Borrower may not re-borrow any part of the Junior Loan which is prepaid.

8.8    **Cure Payments**

8.8.1    If a Lease Event of Default occurs as a result of the Lessee failing to make payment of Rental under the Lease Agreement and no other Loan Event of Default is then continuing, the Borrower may (subject to the remaining provisions of this Clause 8.8), within three (3) Business Days of the date such Rental instalment was due, pay to the Security Agent from the Borrower's own funds, for application in accordance with clause 8 (*Application of Proceeds*) of the Proceeds Agreement, a sum equal to the amount of all of the principal of and interest on the Junior Loan as shall then be due and payable hereunder (but without regard to any acceleration thereof) and all other sums then due and payable to the Junior Finance Parties hereunder or under the other Transaction Documents.

8.8.2    Solely for the purpose of determining whether there exists a Loan Event of Default, but without relieving the Lessee of its obligations under the Lease Agreement, any cure payment or other cure in compliance with this Clause 8.8 shall be deemed to remedy the relevant Loan Event of Default hereunder and any declaration that the Junior Loan is due and payable shall be withdrawn.

8.8.3    This Clause 8.8 shall not permit any cure of a default in payment of Rental if the Borrower shall have previously effected cures pursuant to this Clause 8.8 with respect to:

(a)     the two Repayment Dates immediately preceding the date of such default; or

(b)     five Repayment Dates in aggregate during the term of this Agreement.

## 9.      INTEREST

### 9.1      Calculation of interest

9.1.1    The rate of interest on the Junior Loan for each Interest Period shall be the Fixed Rate.

### 9.2      Payment of interest

On the last day of each Interest Period the Borrower shall pay accrued interest on the Junior Loan.

### 9.3      Default interest

9.3.1    If the Borrower fails to pay any amount payable by it under any Transaction Document on its due date, interest shall accrue on the overdue amount from the due date up to the date of actual payment (both before and after judgment) at a rate which, subject to sub-clause 9.3.2, is two per cent. (2%) per annum higher than the Fixed Rate assuming that the overdue amount had, during the period of non-payment, constituted part of the Junior Loan for successive Interest Periods each of a duration selected by the Junior Agent.  Any interest accruing under this Clause 9.3 shall be immediately payable by the Borrower on demand by the Junior Agent.

9.3.2    If any overdue amount consists of all or part of the Junior Loan which became due on a day which was not the last day of an Interest Period:

(a)     the first Interest Period for that overdue amount shall have a duration equal to the unexpired portion of the current Interest Period; and

(b)     the rate of interest applying to the overdue amount during that first Interest Period shall be two per cent. (2%) per annum higher than the then Fixed Rate.

9.3.3    Default interest (if unpaid) arising on an Unpaid Sum will be compounded with the amount of the Unpaid Sum at the end of each Interest Period applicable to that Unpaid Sum but will remain immediately due and payable.

### 9.4      Establishment of Fixed Rate

9.4.1    At 3 pm (Tokyo time) / 7 am (Paris time) on the date falling two (2) Business Days (or such shorter period as may be agreed between the Borrower and the Junior Lenders) before the Utilisation Date, the Junior Lenders and the Borrower (or its properly appointed agent) shall participate in a telephone call to agree and establish the Fixed Rate (such call, the "**Rate Fixing Call**"), which rate shall include a margin equal to two point five zero per cent. (2.50%) per

annum. The Junior Agent may participate in such Rate Fixing Call but their presence or consent shall not be required in the establishment of the Fixed Rate.

9.4.2   On the Rate Fixing Call, the Junior Lenders shall quote a proposed Fixed Rate which shall be immediately verbally accepted or rejected by the Borrower (or its properly appointed agent). If such proposed Fixed Rate is accepted by the Borrower (or its properly appointed agent), such acceptance shall constitute the irrevocable agreement of the Borrower and the Junior Lenders as to the Fixed Rate.

9.4.3   Any Fixed Rate accepted in accordance with the foregoing provisions of this Clause 9.3 shall, in the case where the Junior Agent did not participate in the rate Fixing Call, be notified in writing by the Borrower to the Junior Agent.

9.5   **Notification of rates of interest**

The Senior Agent shall promptly notify the Senior Lenders and the Borrower of the determination of a rate of interest under this Agreement.

10.   **INTEREST PERIODS**

10.1   **Length of Interest Periods**

10.1.1   Unless otherwise agreed by the Junior Agent and the Borrower, the first Interest Period for the Junior Loan shall commence on the Utilisation Date (or, if earlier, the Scheduled Utilisation Date pursuant to Clause 4.5 (*Delayed Delivery*)) and shall end on the first Repayment Date and thereafter each Interest Period shall have a duration of three (3) Months.

10.1.2   An Interest Period that would otherwise extend beyond a Repayment Date shall be of such duration that it shall end on that Repayment Date. The final Interest Period in relation to the Junior Loan shall end on the Final Repayment Date.

10.1.3   Each Interest Period shall start on the Utilisation Date or (if already occurred) on the last day of a preceding Interest Period.

10.1.4   In respect of each Interest Period, interest shall be calculated from (and including) the first day of such Interest Period to (but excluding) the last day thereof.

11.   **[INTENTIONALLY LEFT BLANK]**

12.   **FEES**

The Borrower will pay, to the person(s) specified therein, the fee in the amounts and at the times specified in the Fee Letter.

13.    **TAX GROSS-UP AND INDEMNITIES**

13.1   **Tax gross-up**

13.1.1   The Borrower shall make all payments to be made by it under the Transaction Documents without any Tax Deduction, unless a Tax Deduction is required by law.

13.1.2   The Borrower shall promptly upon becoming aware that it must make a Tax Deduction (or that there is any change in the rate or the basis of a Tax Deduction) notify the Junior Agent accordingly.

13.1.3   If a Tax Deduction is required by law to be made by the Borrower, the amount of the payment due from it shall be increased to an amount which (after making any Tax Deduction) leaves an amount equal to the payment which would have been due if no Tax Deduction had been required.

13.1.4   If the Borrower is required by law to make a Tax Deduction, it shall make that Tax Deduction and any payment required in connection with that Tax Deduction within the time allowed and in the minimum amount required by law.

13.1.5   Within thirty (30) days of making either a Tax Deduction or any payment required in connection with that Tax Deduction, the Borrower shall deliver to the Junior Agent for the Junior Finance Party entitled to the payment evidence reasonably satisfactory to that Junior Finance Party that the Tax Deduction has been made or (as applicable) any appropriate payment has been paid to the relevant taxing authority.

13.1.6   The Junior Finance Parties and the Borrower shall co-operate in completing any procedural formalities necessary for the Borrower to obtain authorisation to make that payment without a Tax Deduction.

13.1.7   Each Junior Lender confirms to the Borrower that, as of the date of this Agreement, it is a Qualifying Lender.

13.1.8   The Borrower is not required to make an increased payment to a Junior Lender under this Clause 13.1 for a Tax Deduction imposed under the laws of Japan from a payment under a Transaction Document, if the Junior Lender (i) was not, at the date that it entered into this Agreement, a Qualifying Junior Lender or (ii) has ceased to be a Qualifying Junior Lender other than by reason of a Change in Law (unless such Change in Law is of an administrative nature which the Junior Lender is reasonably able to comply with without incurring additional costs or materially prejudicing its interests) (unless in either case the same is otherwise agreed to by the Borrower).

13.2   **Tax indemnity**

13.2.1   The Borrower shall within five (5) Business Days of demand by the Junior Agent pay to each Junior Finance Party an amount equal to the Loss which that Junior Finance Party determines has been suffered for or on account of Tax by that Junior Finance Party:

(a) in respect of any Transaction Document (other than a Transfer Certificate or a Proceeds Agreement Accession Undertaking); or

(b) relating to, or arising directly or indirectly from the purchase or acquisition of title by operation of law, sale or transfer of title by operation of law, import, export, registration, ownership, leasing, operation, possession, use, storage, condition, delivery, design, manufacture, modification, conversion, repair, refurbishment, inspection, insurance, maintenance of the Aircraft, any Engine or any Part.

13.2.2 Sub-clause 13.2.1 shall not apply:

(a) with respect to any Tax assessed on a Junior Finance Party:

(i) under the law of the jurisdiction in which that Junior Finance Party is incorporated (its "**Home Jurisdiction**"); or

(ii) under the law of the jurisdiction in which that Junior Finance Party's Facility Office is located in respect of amounts received or receivable in that jurisdiction (its "**Facility Office Jurisdiction**"); or

(iii) under the law of the jurisdiction in which that Junior Finance Party is tax resident (its "**Tax Residence**"),

**if** that Tax is imposed on or calculated by reference to the net income received or receivable (but not any sum deemed to be received or receivable) by that Junior Finance Party save to the extent the same arises as a consequence of the location, use or operation of the Aircraft in the Home Jurisdiction, the Facility Office Jurisdiction or its Tax Residence; or

(b) to the extent a Loss suffered by a Junior Finance Party:

(i) is compensated for by an increased payment under Clause 13.1 (*Tax gross-up*);

(ii) is imposed or suffered as a result of the gross negligence, fraud or wilful misconduct of such Junior Finance Party or a breach by such Junior Finance Party of any of its express obligations under any of the Transaction Documents to which it is a party (not being a breach caused by any breach of any other person);

(iii) is imposed or suffered as a result of any misrepresentation made by such Junior Finance Party in relation to any Transaction Documents to which it is a party (not being a misrepresentation caused by a misrepresentation or breach of any other person);

(iv) has actually been indemnified pursuant to any other provision of any Transaction Document;

(v)      is imposed on a sale, transfer, assignment (other than as contemplated by the Security Documents), novation or other disposition by that Junior Finance Party of all or any of its interest in any Transaction Document, in each case **provided that** such sale, transfer, assignment, novation or other disposition is (i) not a mitigating step or action being carried out pursuant to clause 13 (*Mitigation*) of the Proceeds Agreement, and/or (ii) is not effected as a direct consequence of the occurrence of an Event of Default which is continuing and pursuant to the exercise of remedies under the Transaction Documents; or

(vi)      is part of the normal administrative or overhead expense of such Junior Finance Party;

(vii)      is imposed as a result of any failure by such Junior Finance Party to file or provide the Borrower with any Tax claims, forms, affidavits, declarations or other like documents which the Borrower has reasonably requested such Junior Finance Party in writing to file or provide (any such request containing sufficient detail to enable such Junior Finance Party to comply with the terms thereof) unless such Junior Finance Party determines, acting in good faith, that it is unable to file or provide or that it would be illegal or contrary to any applicable law for such Junior Finance Party so to do or may result in the breach of any agreement or confidentiality undertaking or the disclosure of any information about such Junior Finance Party's tax affairs which it considers (in its bona fide opinion) to be of a confidential nature or would require such Junior Finance Party to rearrange the manner in which it deals with its Tax affairs;

(viii)      consists of late payment penalties or surcharges imposed under the Home Jurisdiction of a Junior Finance Party in circumstances where such Junior Finance Party is aware of the relevant Tax but fails to notify the Borrower of the existence of the relevant Tax; or

(ix)      consists of late payment penalties or surcharges imposed in circumstances where the relevant Junior Finance Party has received a demand from the relevant authority but has failed to pass on the relevant demand to the Borrower.

13.2.3      A Junior Finance Party making, or intending to make, a claim under sub-clause 13.2.1 shall as soon as reasonably practicable notify the Junior Agent of the event which will give, or has given, rise to the claim, following which the Junior Agent shall promptly notify the Borrower.

13.2.4      A Junior Finance Party shall, on receiving a payment from the Borrower under this Clause 13.2, notify the Junior Agent who shall notify the Borrower that such payment has been so received.

13.3    **Stamp Taxes**

The Borrower shall reimburse on demand each Junior Finance Party for all stamp duty, registration and other similar Taxes payable in respect of any Transaction Document (other than a Transfer Certificate or Proceeds Agreement Accession Undertaking).

13.4    **Value Added Tax**

13.4.1    All amounts set out or expressed in a Transaction Document to be payable by any Party to a Junior Finance Party which (in whole or in part) constitute the consideration for a supply or supplies for VAT purposes shall be deemed to be exclusive of any VAT which is chargeable on such supply or supplies, and accordingly, subject to sub-clause 13.4.2 below, if VAT is or becomes chargeable on any supply made by any Junior Finance Party to any Party under a Transaction Document, that Party shall pay to the Junior Finance Party (in addition to and at the same time as paying any other consideration for such supply) an amount equal to the amount of such VAT (and such Junior Finance Party shall promptly provide an appropriate VAT invoice to such Party).

13.4.2    If VAT is or becomes chargeable on any supply made by any Junior Finance Party (the "**Supplier**") to any other Junior Finance Party (the "**Recipient**") under a Transaction Document (other than a Transfer Certificate or Proceeds Agreement Accession Undertaking), and any Party other than the Recipient (the "**Subject Party**") is required by the terms of any Transaction Document to pay an amount equal to the consideration for such supply to the Supplier (rather than being required to reimburse the Recipient in respect of that consideration), such Party shall also pay to the Supplier (in addition to and at the same time as paying such amount) an amount equal to the amount of such VAT.  The Recipient will promptly pay to the Subject Party an amount equal to any credit or repayment obtained by the Recipient from the relevant tax authority which the Recipient reasonably determines is in respect of such VAT.

13.4.3    Where a Transaction Document requires any Party to reimburse or indemnify a Junior Finance Party for any cost or expense, that Party shall reimburse or indemnify (as the case may be) such Junior Finance Party for the full amount of such cost or expense, including such part thereof as represents VAT, save to the extent that such Junior Finance Party reasonably determines that it is entitled to credit or repayment in respect of such VAT from the relevant tax authority.

13.4.4    Each of the Junior Finance Parties confirms that, as of the date of this Agreement, no VAT is chargeable on supplies made by them to the Borrower under the Transaction Documents in their Home Jurisdiction, Facility Office Jurisdiction or Tax Residence.

13.5    **Tax Credit**

If the Borrower makes a Tax Payment and the relevant Junior Finance Party determines that:

13.5.1    a credit against, relief or remission for, or repayment of any Tax (a **"Tax Credit"**) is attributable either to the circumstances giving rise to that Borrower's obligation to make that Tax Payment or to that Tax Payment; and

13.5.2    that Junior Finance Party has obtained, utilised or retained that Tax Credit in full,

then the Junior Finance Party shall pay an amount to the Borrower which that Junior Finance Party determines (in its absolute discretion) will leave it (after that payment) in no better and no worse position in respect of its worldwide tax liabilities than it would have been in had that Borrower not been required to make the Tax Payment, provided that:

(a)    the Junior Finance Party shall have an absolute discretion as to the time at which and the order and manner in which it realises or utilises any Tax Credit and shall not be obliged to arrange its business or its Tax affairs in any particular way in order to be eligible for any Tax Credit;

(b)    no Junior Finance Party shall be obliged to disclose any information regarding its business, Tax affairs or Tax computations; and

(c)    the Borrower shall indemnify such Junior Finance Party for all costs and expenses reasonably incurred by that Junior Finance Party as a result of any step taken or to be taken by it under or as a result of this Clause 13.5 (*Tax Credit*) unless directly caused by such Junior Finance Party's gross negligence or wilful misconduct.

## 13.6    Tax Credit (Clawback)

If any Junior Finance Party makes any payment pursuant to Clause 13.5 (*Tax Credit*) and such Junior Finance Party subsequently determines, in its sole opinion, that the credit, relief, remission or repayment in respect of which such payment was made was not available or has been withdrawn or that it was unable to use such credit, relief, remission or repayment in full, the Borrower shall reimburse such Junior Finance Party such amount as such Junior Finance Party determines, in its absolute discretion, is necessary to place it in the same after-tax position as it would have been in if such credit, relief, remission or repayment had been obtained and fully used and retained by such Junior Finance Party.

## 13.7    Tax-related determinations

Unless a contrary indication appears, in this Clause 13 (*Tax gross-up and Indemnities*) a reference to "determines" or "determined" means a determination made in the sole and absolute discretion of the person making the determination.

## 13.8    FATCA Information

13.8.1    Subject to sub-clause 13.8.3 below, each Party shall, within ten Business Days of a reasonable request by another Party:

(a)    confirm to that other Party whether it is:

> > (i)    a FATCA Exempt Party; or
>
> > (ii)    not a FATCA Exempt Party;
>
> (b)    supply to that other Party such forms, documentation and other information relating to its status under FATCA as that other Party reasonably requests for the purposes of that other Party's compliance with FATCA;
>
> (c)    supply to that other Party such forms, documentation and other information relating to its status as that other Party reasonably requests for the purposes of that other Party's compliance with any other law, regulation, or exchange of information regime.

13.8.2    If a Party confirms to another Party pursuant to sub-clause 13.8.1(a) above that it is a FATCA Exempt Party and it subsequently becomes aware that it is not or has ceased to be a FATCA Exempt Party, that Party shall notify that other Party reasonably promptly.

13.8.3    Sub-clause 13.8.1(a) above shall not oblige any Junior Finance Party to do anything, and sub-clause 13.8.1(c) above shall not oblige any other Party to do anything, which would or might in its reasonable opinion constitute a breach of:

> (a)    any law or regulation;
>
> (b)    any fiduciary duty; or
>
> (c)    any duty of confidentiality.

13.8.4    If a Party fails to confirm whether or not it is a FATCA Exempt Party or to supply forms, documentation or other information requested in accordance with sub-clause 13.8.1(a) or 13.8.1(c) or 13.8.2 above (including, for the avoidance of doubt, where sub-clause 13.8.3 above applies), then such Party shall be treated for the purposes of the Transaction Documents (and payments under them) as if it is not a FATCA Exempt Party until such time as the Party in question provides the requested confirmation, forms, documentation or other information.

## 13.9    FATCA Deduction and Gross up by Borrower

13.9.1    If the Borrower is required to make a FATCA Deduction, the Borrower shall make that FATCA Deduction and any payment required in connection with that FATCA Deduction within the time allowed and in the minimum amount required by FATCA.

13.9.2    If a FATCA Deduction is required to be made by the Borrower, the amount of the payment due from the Borrower shall be increased to an amount which (after making any FATCA Deduction) leaves an amount equal to the payment which would have been due if no FATCA Deduction had been required.

13.9.3    The Borrower shall promptly upon becoming aware that the Borrower must make a FATCA Deduction (or that there is any change in the rate or the basis

of a FATCA Deduction) notify the Junior Agent accordingly. Similarly, a Junior Finance Party shall notify the Junior Agent on becoming so aware in respect of a payment payable to that Junior Finance Party. If the Junior Agent receives such notification from a Junior Finance Party it shall notify the Borrower.

13.9.4   Within thirty days of making either a FATCA Deduction or any payment required in connection with that FATCA Deduction, the Borrower making that FATCA Deduction or payment shall deliver to the Junior Agent for the Junior Finance Party entitled to the payment evidence reasonably satisfactory to that Junior Finance Party that the FATCA Deduction has been made or (as applicable) any appropriate payment paid to the relevant governmental or taxation authority.

## 13.10   **FATCA Deduction by a Junior Finance Party**

13.10.1  Each Junior Finance Party may make any FATCA Deduction it is required to make by FATCA, and any payment required in connection with that FATCA Deduction, and no Junior Finance Party shall be required to increase any payment in respect of which it makes such a FATCA Deduction or otherwise compensate the recipient of the payment for that FATCA Deduction.

13.10.2  If the Junior Agent is required to make a FATCA Deduction in respect of a payment to another Junior Finance Party which relates to a payment by the Borrower, the amount of the payment due from the Borrower shall be increased to an amount which (after the Junior Agent has made such FATCA Deduction), leaves the Junior Agent with an amount equal to the payment which would have been made by the Junior Agent if no FATCA Deduction had been required.

13.10.3  The Junior Agent shall promptly upon becoming aware that it must make a FATCA Deduction in respect of a payment to a Junior Finance Party which relates to a payment by the Borrower (or that there is any change in the rate or the basis of such a FATCA Deduction) notify the Borrower and the relevant Junior Finance Party.

13.10.4  The Borrower shall (within three Business Days of demand by the Junior Agent) pay to a Junior Finance Party an amount equal to the loss, liability or cost which that Junior Finance Party determines will be or has been (directly or indirectly) suffered by that Junior Finance Party as a result of another Junior Finance Party making a FATCA Deduction in respect of a payment due to it under a Transaction Document. This paragraph shall not apply to the extent a loss, liability or cost is compensated for by an increased payment under sub-clause 13.10.3 above.

13.10.5  A Junior Finance Party making, or intending to make, a claim under sub-clause 13.10.4 above shall promptly notify the Junior Agent of the FATCA Deduction which will give, or has given, rise to the claim, following which the Junior Agent shall notify the Borrower.

## 14.    INCREASED COSTS

### 14.1    Increased Costs

Subject to Clause 14.2 (*Exceptions*), the Borrower shall on demand by the Junior Agent, pay for the account of a Junior Finance Party the amount of any Increased Costs incurred by that Junior Finance Party or any of its Affiliates as a result of any Change in Law.

### 14.2    Exceptions

This Clause 14 does not apply to the extent any Increased Cost is:

14.2.1    attributable to a Tax Deduction required by law to be made by the Borrower;

14.2.2    compensated for by Clause 13.2 (*Tax indemnity*) (or would have been compensated for under Clause 13.2 (*Tax indemnity*) but was not so compensated solely because any of the exclusions in sub-clause 13.2.2 applied);

14.2.3    attributable to the gross negligence, fraud or wilful misconduct of such Junior Finance Party or a breach by such Junior Finance Party of any of its obligations under any of the Transaction Documents to which it is a party (other than a breach caused by the breach of any other person);

14.2.4    attributable to the implementation or application of or compliance with the "International Convergence of Capital Measurement and Capital Standards, a Revised Framework" published by the Basel Committee on Banking Supervision in June 2004 in the form existing on the date of this Agreement (but excluding any amendment arising out of Basel III) ("**Basel II**") or any other law or regulation which implements Basel II (whether such implementation, application or compliance is by a government, regulator, Junior Finance Party or any of its Affiliates); or

14.2.5    which has actually been indemnified pursuant to any other provision of any Transaction Document.

### 14.3    Increased Cost claims

14.3.1    A Junior Finance Party intending to make a claim pursuant to this Clause 14 shall notify the Junior Agent of the event giving rise to the claim, following which the Junior Agent shall promptly notify the Borrower.

14.3.2    Each Junior Finance Party shall, as soon as practicable after a demand by the Junior Agent, provide a certificate evidencing the amount of its Increased Costs. The Junior Agent shall promptly following receipt of such certificate, provide a copy of any such certificate to the Borrower. In giving any such certificate, each relevant Junior Finance Party shall confirm that in claiming a cost hereunder, it is not discriminating against the Borrower as compared to its other customers involved in financings of a similar nature to the financing contemplated by this Agreement against whom it is indemnified in respect of such increased costs.

15.    **OTHER INDEMNITIES**

15.1    **Currency indemnity**

    15.1.1    If any sum due from the Borrower under the Transaction Documents to which it is a party (a "**Sum**"), or any order, judgment or award given or made in relation to a Sum, has to be converted from the currency (the "**First Currency**") in which that Sum is payable into another currency (the "**Second Currency**") for the purpose of:

        (a)    making or filing a claim or proof against such Obligor;

        (b)    obtaining or enforcing an order, judgment or award in relation to any litigation or arbitration proceedings,

    the Borrower shall as an independent obligation on demand indemnify each Junior Finance Party to whom that Sum is due against any Loss arising out of or as a result of the conversion including any discrepancy between (A) the rate of exchange used to convert that Sum from the First Currency into the Second Currency and (B) the rate or rates of exchange available to that person at the time of its receipt of that Sum in each case such rate of exchange to be the prevailing rate of exchange for such amount then available to the Junior Finance Party.

    15.1.2    The Borrower waives any right it may have in any jurisdiction to pay any amount under the Transaction Documents in a currency or currency unit other than that in which it is expressed to be payable.

15.2    **Operational indemnity**

The Borrower shall from time to time on demand indemnify each Indemnitee for all Losses suffered or incurred by that Indemnitee:

    15.2.1    relating to, or arising directly or indirectly from the purchase or acquisition of title by operation of law, sale or disposition of title by operation of law, import, export, registration, ownership, leasing, operation, possession, use, storage, condition, delivery, design, manufacture, modification, conversion, repair, refurbishment, inspection, insurance, maintenance of the Aircraft, any Engine or any Part;

    15.2.2    due to any design, article or material in the Aircraft, any Engine or any Part or the operation or use thereof constituting an infringement of any patent or other intellectual property right or any other similar right whatsoever;

    15.2.3    in preventing or attempting to prevent the arrest, confiscation, seizure, taking in execution, impounding, forfeiture or detention of the Aircraft or in securing the release of the Aircraft; or

    15.2.4    in connection with any Event of Loss of the Aircraft, Airframe or any Engine,

**provided that** the Borrower shall not be liable to pay to a Indemnitee any such Losses to the extent that:

(a)   such Losses are the result of the fraud, gross negligence or wilful misconduct of such Indemnitee;

(b)   such Losses constitute ordinary and usual operating or overhead expenses of such Indemnitee;

(c)   such Losses are the result of the breach by that Indemnitee of any of its express obligations under, or as a result of any misrepresentation of such Indemnitee contained in, any of the Transaction Documents (other than a breach or misrepresentation caused by a breach or misrepresentation of any other person);

(d)   the Indemnitee receives and is entitled to retain free from liability to account to any person therefor and in respect thereof a payment under any Insurances or from any other source which is made in settlement or reimbursement of the relevant Loss;

(e)   such Losses have actually been indemnified pursuant to any other provision of any Transaction Document; and

(f)   such Losses relates to a FATCA Deduction required to be made by a Party.

## 15.3   Other indemnities

15.3.1   The Borrower shall on demand indemnify each Junior Finance Party against any Loss incurred by that Junior Finance Party as a result of:

(a)   funding, or making arrangements to fund, its participation in the Junior Loan as requested by the Borrower in a Utilisation Request where the Utilisation is not made by reason of any of the conditions precedent referred to in Clause 4 (*Conditions of Utilisation*) not being satisfied;

(b)   entering into a swap (whether internal or external), or being deemed to have entered into a swap, in each case in accordance with this Agreement but the Junior Loan not being advanced on the date requested by the Borrower in the Utilisation Request for any reason whatsoever (except where Utilisation does not occur due to breach by a Junior Lender of sub-clause 5.5.1); or

(c)   making arrangements regarding breaking of funding in anticipation of the Junior Loan prepayment and the Junior Loan not being prepaid in accordance with a notice of prepayment given by the Borrower.

15.3.2   In the event that a Utilisation is not made for any reason on the Scheduled Utilisation Date, the Junior Agent shall retain the amount of the Junior Loan and shall, if the Utilisation occurs within five (5) Business Days (or such other period as the Junior Agent and the Borrower may agree) of the Scheduled Utilisation Date, release to the Borrower the relevant amounts. In the event of any delay to the making of a Utilisation, for the avoidance of doubt, interest shall accrue on the Junior Loan hereunder with effect from the Scheduled Utilisation Date.

15.4    **Indemnity to the Junior Agent**

The Borrower shall on demand indemnify the Junior Agent against any Loss incurred by the Junior Agent (acting reasonably) as a result of:

(a)      investigating any event which it reasonably believes is a Relevant Event;

(b)      acting or relying on any notice, request or instruction which it reasonably believes to be genuine, correct and appropriately authorised; or

(c)      exercising any of the rights, powers, discretions or remedies vested in it under any Transaction Document or by law.

15.5    **Indemnity to the Security Agent**

(a)      The Borrower shall on demand indemnify the Security Agent and every Receiver and Delegate against any properly documented Loss (including any Remarketing and Recovery Expenses) incurred by any of them as a result of or consequent on:

(i)      its appointment as Security Agent and/or the protection or enforcement of the Security Documents;

(ii)     the exercise, or decision not to exercise, of any of the rights, powers, discretions and remedies vested in the Security Agent and each Receiver and Delegate by the Transaction Documents or by law; and

(iii)    any default by any Obligor or the Lessee in the performance of any of the obligations expressed to be assumed by it in the Transaction Documents **provided that** (x) the relevant Losses relate to the Aircraft or the Transaction Documents; (y) prior to the occurrence of a Junior Loan Event of Default, the Security Agent has consulted the Borrower in advance of incurring such Losses (such consultation to include, where practicable, the appointment of legal counsel where required).

(b)      The Security Agent may, in priority to any payment to the other Junior Finance Parties, indemnify itself out of the Collateral in respect of, and pay and retain, all sums necessary to give effect to the indemnity in this Clause 15.5 and shall have a lien on the Collateral and the proceeds of the enforcement of the Collateral for all monies payable to it.

(c)      Unless otherwise specifically stated in any discharge of this Agreement, the provisions of this Clause 15.5 shall continue in full force and effect notwithstanding such discharge. This Clause 15.5 will continue in full force and effect as regards the Security Agent even if it is no longer a Security Agent in respect of the matters specified in sub-clause 15.5(a) during the period whilst it was the Security Agent (as well as regards any replacement Security Agent appointed pursuant to the terms of the Transaction Documents).

15.6    **Fixed Rate Break Costs/Fixed Rate Break Gains**

15.6.1    If the Junior Loan is not drawn down or disbursed for any reason on the date specified in the Utilisation Request, each Junior Lender shall, as soon as reasonably practicable, provide the Junior Agent with a certificate evidencing the amount of such Junior Lender's Break Costs.

15.6.2    If (i) the Junior Loan (or any part thereof) is prepaid on a day which is during an Interest Period but is not the last day of an Interest Period or (ii) an Unpaid Sum is repaid or prepaid on a day which is not the last day of an Interest Period therefor, each Junior Lender shall, as soon as reasonably practicable after receipt of such payment or prepayment, provide the Junior Agent with the amount of such Lender's Fixed Rate Break Gains or Fixed Rate Break Costs (as the case may be) in connection to such repayment or prepayment.

15.6.3    If such repayment or prepayment results in Fixed Rate Break Costs to any Lender, the Borrower shall on demand of the Junior Agent pay to the Junior Agent for the account of that Junior Finance Party the amount of such Fixed Rate Break Costs.

15.6.4    If such prepayment results in Fixed Rate Break Gains for any Lender, the relevant Junior Lender shall, within three (3) Business Days of realising the Fixed Rate Break Gain and provided no Relevant Event has occurred and is continuing (or if the Secured Obligations have been paid in full), pay to the Junior Agent the amount of such Fixed Rate Break Gains on a net after Tax basis and the Junior Agent shall apply such amounts in accordance with clause 8 (*Application of Proceeds*) of the Proceeds Agreement.

16.    **COSTS AND EXPENSES**

16.1    **Transaction expenses and preservation costs**

16.1.1    The Borrower shall promptly on demand pay the Junior Agent and the Security Agent the amount of all reasonable costs and documented expenses (including, but not limited to, legal fees) properly incurred by any of them (and, in the case of the Security Agent, by any Receiver or Delegate) in connection with the negotiation, preparation, printing, execution and perfection of:

(a)    this Agreement and the other Transaction Documents; and

(b)    any other Transaction Documents executed after the date of this Agreement,

subject, in each case, to any agreement to cap such costs and expenses made by the party claiming indemnification.

16.1.2    The Borrower shall promptly on demand pay to each Junior Finance Party the amount of all reasonable costs and documented expenses (including, but not limited to, legal fees) incurred by that Junior Finance Party in connection with the preservation of any rights under any Security Document requested as a result of an Event of Default, Acceleration Event or Change in Law.

16.2    **Amendment costs**

If an Obligor or the Lease Manager (either on its own behalf or following a request from the Lessee) requests an amendment, waiver or consent to or in connection with any Transaction Document, the Borrower shall on demand, reimburse each of the Junior Agent and the Security Agent for the amount of all reasonable and documented out of pocket fees, costs, charges and expenses (including, but not limited to, legal fees) properly incurred by the Junior Agent and the Security Agent (and, in the case of the Security Agent, by any Receiver or Delegate) in responding to, evaluating, negotiating or complying with that request or requirement.

16.3    **Enforcement costs**

The Borrower shall, on demand, pay to each Junior Finance Party the amount of all costs and expenses (including, but not limited to, legal fees) incurred by that Junior Finance Party in connection with the enforcement of, any Security Document in circumstances where an Event of Default or Acceleration Event is continuing.

16.4    **Registration Costs**

The Borrower shall pay or procure the payment of all costs, fees, charges and fines arising from the registration of the Aircraft in accordance with the Transaction Documents, of any Security Documents or any other Transaction Documents and shall indemnify each Junior Finance Party against all Losses arising from non-payment of the same.

17.    **REPRESENTATIONS**

The Borrower makes, subject to any express legal qualification referred to in a Legal Opinion, the representations and warranties set out in this Clause 17 to each Junior Finance Party on the date of this Agreement and on the date of each Utilisation.

17.1    **Status**

17.1.1    It is a limited liability company, duly incorporated under the laws of Japan.

17.1.2    It has the power to own its assets and carry on its business as it is being conducted.

17.2    **Binding obligations**

The obligations expressed to be assumed by it in each Transaction Document to which it is a party are legal, valid, binding and enforceable obligations except as enforceability may be limited by bankruptcy, insolvency, reorganisation, examinership or other similar laws affecting the rights of creditors generally and by general principles of equity.

17.3    **Non-conflict with other obligations**

17.3.1    The entry into and performance by it of, and the transactions contemplated by, the Transaction Documents to which it is party do not and will not conflict with:

(a)     any law or regulation applicable to it;

(b)     its constitutional documents; or

(c)     any agreement or instrument binding upon it or any of its assets.

17.3.2   No Tokumei Kumiai Agreement nor any other document, instrument or agreement to which the Borrower is now or hereafter a party contains or will contain any provision prohibiting, restricting or otherwise limiting the right of the Borrower to execute, deliver and perform this Agreement and the other Transaction Documents executed or to be executed by it or the right of the Borrower to sell, transfer, lease or create Security Interests over its assets in the manner contemplated by the Transaction Documents and the claims of any Investor in respect of any Tokumei Kumiai Agreement are fully subordinate to the claims the Junior Lenders shall have against the Borrower under this Agreement or any other Transaction Document.

## 17.4   Power and authority

It has the power to enter into, perform and deliver, and has taken all necessary action to authorise its entry into, performance and delivery of, the Transaction Documents to which it is a party and the transactions contemplated by those Transaction Documents.

## 17.5   Validity and admissibility in evidence

All Authorisations required:

17.5.1   to enable it lawfully to enter into, exercise its rights and comply with its obligations in the Transaction Documents to which it is a party; and

17.5.2   to make the Transaction Documents to which it is a party admissible in evidence in Japan and England; and

17.5.3   to enable it to create the Security Interests to be created by it pursuant to any Security Document to which it is a party and to ensure that such Security Interests have the priority and ranking they are expected to have,

have or will be been obtained or effected and are in full force and effect.

## 17.6   Governing law and enforcement

17.6.1   The choices of the governing laws of the Transaction Documents to which it is party will be recognised and enforced in Japan.

17.6.2   Any judgment obtained in England in relation to any such Transaction Document will be recognised and enforced in Japan.

## 17.7   Insolvency

No:

17.7.1    corporate action, legal proceeding or other procedure or step described in Clause 20.6 (*Insolvency proceedings*); or

17.7.2    creditors' process described in Clause 20.7 (*Creditors' process*),

has to the knowledge, information and belief of the Borrower been taken or threatened in relation to the Borrower and to the knowledge of the Borrower none of the circumstances in Clause 20.5 (*Insolvency*) applies to the Borrower.

## 17.8    No filing or stamp Taxes

Except as specified in the Legal Opinions, under the laws of Japan it is not necessary that the Transaction Documents to which it is party be filed, recorded or enrolled with any court or other authority in that jurisdiction or that any stamp, registration or similar tax be paid on or in relation to the Transaction Documents to which it is party or the transactions contemplated by the Transaction Documents to which it is party.

## 17.9    No Event of Default

So far as it is aware no Event of Default or Junior Loan Relevant Event has occurred or is continuing or might reasonably be expected to result from the making of the Junior Loan.

## 17.10    No Misleading Information

17.10.1    The Borrower has provided to the Junior Agent true, complete and correct copies of the Lease Agreement, the Lessee Assignment, the Head Lease Agreement, the Intermediate Lessor Assignment and all amendments and supplements relating to any of such documents which have been provided to it by the Lessee, and neither the Borrower nor any Affiliate has entered into any amendment or supplement to any of such documents.

17.10.2    Any written information provided by the Borrower concerning the Borrower, the Intermediate Lessor and the Borrower Parent is true and accurate in all material respects as of the date it was provided and no information has been given or withheld which results in the information provided being untrue or misleading in any material respects.

## 17.11    Pari passu ranking

Its payment obligations under the Transaction Documents to which it is a party rank at least *pari passu* with the claims of all its other unsecured and unsubordinated creditors, except for obligations mandatorily preferred by law applying to companies generally.

## 17.12    No proceedings pending or threatened

No litigation, arbitration or administrative proceedings of or before any court, arbitral body or agency have (to the best of its knowledge and belief) been started or threatened against it.

## 17.13  Taxation

17.13.1  It has duly and punctually paid and discharged all Taxes imposed upon it or its assets within the time period allowed without incurring penalties (except to the extent that (i) payment is being contested in good faith, (ii) it has maintained adequate reserves for those Taxes and (iii) payment can be lawfully withheld).

17.13.2  It is not materially overdue in the filing of any Tax returns.

17.13.3  No claims are being or are reasonably likely to be asserted against it with respect to Taxes.

## 17.14  Security

17.14.1  Save as specifically mentioned in the Legal Opinions, the terms of the Security Documents, the rights of the Intermediate Lessor under the Head Lease Agreement and the rights of the Lessee under the Lease Agreement, the Security Interests to be created by the Borrower pursuant to the Security Documents will (when created) constitute first priority Security Interests in favour of the Security Agent or (as the case may be) the Junior Finance Parties against all persons (including, without limitation, a liquidator, receiver, administrator, examiner, administrative receiver, trustee or similar officer of, or any creditor of, the Borrower or any other person claiming through, under or in place of the Borrower) over the property mortgaged, charged or otherwise encumbered thereunder.

17.14.2  Subject to the rights of the Intermediate Lessor under the Head Lease Agreement, the rights of the Lessee under the Lease Agreement, the Borrower has not prior to the date hereof assigned, charged or otherwise encumbered the Collateral or any moneys payable thereunder, and will not do so other than pursuant to the Security Documents.

17.14.3  On the Utilisation Date, the Borrower is, and will be, the sole legal and beneficial owner of the Collateral, subject to the Security Documents and the rights of (and any encumbrances indemnified for by) the Intermediate Lessor under the Head Lease Agreement, the rights of (and any encumbrances indemnified for by) the Lessee under the Lease Agreement.

17.14.4  Subject to the rights of the Intermediate Lessor under the Head Lease Agreement, the rights of the Lessee under the Lease Agreement or the terms of any other document or agreement comprised in the Collateral, there are no restrictions on the Borrower's ability to assign all or any of its right, title and interest in the Collateral pursuant to the Security Documents.

## 17.15  No Security Interests

Save for the Security Interests created pursuant to the Transaction Documents, subject to the rights of (and any encumbrance indemnified for by) the Intermediate Lessor under the Head Lease Agreement, and subject to the rights of (and any encumbrance indemnified for by) the Lessee under the Lease Agreement, it has not created any

Security Interest over any of its present or future revenues, undertakings or assets and it is not aware of the existence of any such Security Interest.

## 17.16  Tax Residency

The Borrower is resident in Japan for tax purposes.

## 17.17  No Employees

The Borrower has no employees.

## 17.18  Subsidiaries

The Borrower has no subsidiaries other than the Intermediate Lessor.

## 17.19  Shares

All beneficial and legal title to the outstanding shares in the capital of the Borrower is held by the Borrower Parent.

## 17.20  No other agreements or business

From the date of its incorporation, it has not entered into any contract or agreement with any person and has not otherwise created or incurred any liability to any person other than pursuant to and as permitted by (or incidental to) the Transaction Documents.

## 17.21  Good title to assets

It has good, valid and marketable title to, or valid leases or licences of, and all appropriate Authorisations to use, the assets necessary to carry on its business as presently conducted.

## 17.22  Applicable Sanctions

The Borrower is neither aware, nor ought reasonably to be aware, and no director, officer, agent, employee or affiliate of the Borrower is aware or ought reasonably to be aware, that it is currently a target of any economic sanctions administered by the U.S. Department of State, the U.S. Department of Commerce, the U.S. Department of Treasury or any other U.S. government entity, the United Nations, the United Kingdom, the European Union or any of its member states (a "**Sanctions Target**").

## 17.23  No UK establishments

It has not registered one or more "establishments" (as that term is defined in Part 1 of The Overseas Companies Regulations 2009) with the Registrar of Companies of England and Wales or, if it has so registered, it has provided to the Junior Agent sufficient details to enable an accurate search against it to be undertaken by the Junior Agent (or legal counsel on its behalf) at the companies registry of England and Wales.

17.24   **Anti-Social Forces, Relationship and Conduct**

17.24.1   None of the directors, officers, managers or other employees or consultants who control or have the ability to control any of the Obligors (i) belong to, or have a direct or indirect relationship with, any Anti-Social Forces, (ii) have received any commission from or have delegated any responsibilities to any Anti-Social Forces, or (iii) have provided, offered to fund, support or otherwise provide benefits to any Anti-Social Forces.

17.24.2   No member of any Anti-Social Forces and no person under the control of any Anti-Social Forces (i) has any relationship with, (ii) owns any shares in, or (iii) is in a position to affect the business of, an Obligor and neither any Obligor nor any of their directors and officers has any Anti-Social Relationship.

17.24.3   No Obligor is classified as an Anti-Social Force.

17.25   **No Damage to Aircraft**

As far as the Borrower is aware, no Event of Loss or any event that would constitute an Event of Loss has occurred and is continuing.

18.   **INFORMATION UNDERTAKINGS**

The undertakings in this Clause 18 remain in force from the date of this Agreement until the end of the Security Period.

18.1   **Financial statements**

The Borrower shall supply to the Junior Agent in sufficient copies for all the Junior Lenders as soon as they are available, and in any event within one hundred and eighty (180) days after the end of each financial year of the Borrower, copies of its unaudited financial statements (in English) for such financial year.

18.2   **Requirements as to financial statements**

18.2.1   Each set of annual financial statements delivered by the Borrower pursuant to Clause 18.1 (*Financial statements*) shall be certified by a director or other authorised officer of the Borrower as fairly representing its financial condition as at the date at which those financial statements were drawn up.

18.2.2   The Borrower shall procure that each set of financial statements delivered pursuant to Clause 18.1 (*Financial statements*) is prepared in accordance with Japanese Generally Accepted Accounting Principles.

18.3   **Information:  miscellaneous**

The Borrower shall supply to the Junior Agent (in sufficient copies for all the Junior Lenders):

18.3.1   copies of all documents or notices dispatched by the Borrower, the Intermediate Lessor, the Lessee or any Junior Finance Party under any Transaction Document

or in relation to the Aircraft as soon as reasonably practicable after they are dispatched;

18.3.2    promptly upon becoming aware of them, the details of any litigation, arbitration or administrative proceedings which are current, threatened or pending against the Borrower or the Intermediate Lessor or in respect of the Collateral;

18.3.3    as soon as reasonably practicable, such further information as is available to the Borrower and not subject to confidentiality or non-disclosure restrictions regarding the financial condition, business and operations of any Obligor, the Lease Manager, or the Lessee or the Lessee Guarantor as any Junior Finance Party (through the Junior Agent) may reasonably request;

18.3.4    promptly, such other information available to the Borrower and not subject to confidentiality or non-disclosure restrictions as the Junior Agent may reasonably require in the context of this Agreement and the other Transaction Documents (including in relation to the use, possession and maintenance status of the Aircraft and/or the Insurances); and

18.3.5    as soon as practicable following receipt of the same, each financial statement, status report or other document in English which the Intermediate Lessor receives under clause 8.2 (*Information*) of the Lease Agreement.

## 18.4    "Know your customer" checks

18.4.1    If:

(a)    the introduction of or any change in (or in the interpretation, administration or application of) any law or regulation made after the date of this Agreement;

(b)    any change in the status of the Borrower or any other Obligor or any or the composition of the owners of the Shares or any other Obligor after the date of this Agreement; or

(c)    a proposed assignment or transfer by a Junior Lender of any of its rights and obligations under this Agreement to a party that is not a Junior Lender prior to such assignment or transfer; or

(d)    any other matter determined by the Junior Agent or the Security Agent, acting reasonably,

obliges the Junior Agent or any Junior Lender (or, in the case of paragraph (c) above, any prospective new Lender) to comply with "know your customer" or similar identification procedures in circumstances where the necessary information is not already available to it, the Borrower or any other Obligor (as applicable) shall as soon as reasonably practicable following the request of the Junior Agent or any Junior Lender supply, or procure the supply of, such documentation and other evidence as is reasonably requested by the Junior Agent (for itself or on behalf of any Lender) or any Junior Lender (for itself or, in the case of the event described in paragraph (c) above, on behalf of any prospective new Lender) in order for the Junior Agent, such Junior Lender or,

in the case of the event described in paragraph (c) above, any prospective new Junior Lender to carry out and be satisfied it has complied with all necessary "know your customer" or other similar checks under all applicable laws and regulations pursuant to the transactions contemplated in the Transaction Documents, unless, with respect to documentation and other evidence required in connection with paragraph (c), the Borrower is bound by a confidentially provision or applicable law prohibiting such disclosure.

18.4.2   Each Junior Lender shall promptly upon the request of the Junior Agent supply, or procure the supply of, such documentation and other evidence as is reasonably requested by the Junior Agent (for itself) in order for the Junior Agent to carry out and be satisfied it has complied with all necessary "know your customer" or other similar checks under all applicable laws and regulations pursuant to the transactions contemplated in the Transaction Documents.

## 19.   GENERAL UNDERTAKINGS

The undertakings in this Clause 19 remain in force at all times during the Security Period.

### 19.1   Authorisations

The Borrower shall promptly:

19.1.1   obtain, comply with and do all that is necessary to maintain in full force and effect; and

19.1.2   supply certified copies to the Junior Agent on reasonable request of the Junior Agent of,

any Authorisation required under any law or regulation of England or Japan to enable it to perform its obligations under the Transaction Documents and to ensure the legality, validity, enforceability or admissibility in evidence in England or Japan of any Transaction Document.

### 19.2   Compliance with laws

The Borrower shall comply in all respects with all laws to which it is or will be subject, if failure so to comply would materially impair its ability to perform its obligations under the Transaction Documents.

### 19.3   Pari passu ranking

The Borrower must ensure that its payment obligations under the Transaction Documents at all times rank at least *pari passu* with all its other present and future unsecured payment obligations, except for obligations mandatorily preferred by law applying to companies generally.

### 19.4   Negative pledge

19.4.1   The Borrower shall not create or expressly consent to the creation of any Security Interest over the Aircraft or any of the Collateral other than the Security

Interests created pursuant to or as permitted by the Security Documents and Permitted Security Interests unless it has obtained the prior written consent of the Security Agent.

19.4.2   The Borrower shall not without the prior written consent of the Junior Agent:

(a)   sell, transfer, assign its rights in respect of or otherwise dispose of the Aircraft or any of the Collateral other than pursuant to the Security Documents; or

(b)   enter into any arrangement under which money in or the benefit of a bank or other account which constitutes Collateral may be applied, set-off or made subject to a combination of accounts or enter into any other preferential arrangement having a similar effect.

## 19.5   Applicable Sanctions

The Borrower shall not:

19.5.1   use the proceeds of the Junior Loan (or consent or knowingly condone the indirect use by another person of the proceeds of the Junior Loan) or lease or permit the Aircraft to be operated for any purpose which would violate economic sanctions or trade regulations of the European Union, the United States of America, the United Nations, the United Kingdom or any Anti-Bribery Law; or

19.5.2   lend, invest, contribute or otherwise knowingly make available the proceeds of the Junior Loan or knowingly enter into any arrangement to make the use and possession of the Aircraft available to, or for the benefit of, and then-current Sanctions Target (as defined in Clause 17.22 (*Applicable Sanctions*)).

## 19.6   Taxation

The Borrower shall duly and punctually pay and discharge all Taxes imposed upon it, the Aircraft or its assets for which it is directly responsible within the time period allowed without incurring penalties (save to the extent that (a) payment is being contested in good faith, adequate reserves are being maintained for those Taxes and payment can be lawfully withheld or (b) the same is indemnified by the Lessee, and it has not been put in funds in respect thereof).

## 19.7   Ownership

The Borrower shall continue to be 100% owned directly or indirectly by the Borrower Parent, unless the Junior Agent's prior written consent has been obtained with respect to a change of ownership of the Borrower.

## 19.8   No other business

The Borrower shall not transact or carry on any business other than as required or permitted by (or incidental to), or incur any liability other than pursuant to or as permitted by (or incidental to) the Transaction Documents or otherwise voluntarily

assume any liability, whether actual or contingent, in respect of any obligation of any person.

19.9    **Merger**

The Borrower shall not enter into any amalgamation, demerger, merger or corporate reconstruction.

19.10    **Dividends and Shares**

The Borrower shall not:  (a) pay, make or declare any dividend, charge, fee or other distribution (or interest on any unpaid dividend, charge, fee or other distribution) (whether in cash or in kind) on or in respect of the Shares (or any class of the Shares) in respect of any financial year; (b) repay or distribute any dividend or premium reserve; (c) pay any management advisory or other fee to or to the order of the Borrower Parent; (d) redeem, repurchase, defease, retire or repay any of the Shares or resolve to do so; or (e) issue any Shares.  For the avoidance of doubt, the Borrower shall be permitted to (i) make all payments to Investors pursuant to and in accordance with the terms of the relevant Tokumei Kumiai Agreements, and (ii) pay management, advisory or other fee to or to the order of the Borrower Parent, in each case from the amounts paid to the Borrower in accordance with clause 8.3 (*Order of application*) of the Proceeds Agreement.

19.11    **No employees**

The Borrower shall not have any employees.

19.12    **No Affiliates**

The Borrower shall not have any Subsidiary.

19.13    **Further assurance**

19.13.1    The Borrower shall, as soon as reasonably practicable following request, execute, acknowledge, deliver, file and register all such additional agreements, instruments, certificates, documents and assurances and perform such other acts or things as the Junior Agent shall reasonably request to (a) following an Event of Default, Acceleration Event or Change in Law effectuate the purposes of this Agreement and each of the other Transaction Documents or the transactions hereby or thereby contemplated or to protect the rights of the Junior Finance Parties hereunder or thereunder, (b) following an Event of Default, Acceleration Event or Change in Law perfect the Security Interests created or intended to be created under or evidenced by the Security Documents (which may include the execution of a mortgage, charge, assignment or other Security Interests over all or any of the assets which following the occurrence of an Enforcement Event are, or are intended to be, the subject of the Security Documents) or by law; and (c) to facilitate the realisation of the assets which are, or are intended to be, the subject of the Security Documents.

19.13.2    If in the State of Registration (or, if different, the respective jurisdiction of incorporation and/or principal place of business of the Borrower, the Lessee or the Intermediate Lessor) there shall be, or be brought into force, any legislative

or other provisions giving effect to the Cape Town Convention or otherwise relating to the recognition of rights in aircraft, the Borrower shall, if requested by any Junior Finance Party, at the Borrower's expense perform, or procure the performance of, all such acts as may be necessary to perfect recognition of the Security Agent's title and interest in the Aircraft in accordance with such legislative or other provisions.

## 19.14   Amendments

The Borrower shall not, without the prior written consent of the Junior Agent:

19.14.1   cancel or terminate any Transaction Document or consent to or accept any cancellation or termination thereof (save as permitted in Clause 19.19 (*Termination of Leasing*));

19.14.2   amend, vary, modify, supplement, restate, novate, waive or replace or agree to any amendment, variation, modification, supplement, restatement, novation, waiver or replacement of any Transaction Document or the obligations of any person thereunder;

19.14.3   grant any consent, waiver or approval under any Insurances;

19.14.4   make any material amendments to its constitutional documents; or

19.14.5   knowingly do anything, and shall not knowingly take any action, which has or is reasonably likely to have the effect of prejudicing the first priority Security Interests created in favour of the Security Agent against all persons (including, without limitation, a liquidator, receiver, administrator, examiner, administrative receiver, trustee or similar officer of, or any creditor of, the Borrower or any other person claiming through, under or in place of the Borrower) over any of the Collateral.

## 19.15   Tax Residency

The Borrower shall remain resident in Japan for tax purposes.

## 19.16   Account

The Borrower shall not open or maintain any bank account without the prior written consent of the Junior Agent.

## 19.17   Notification of Events etc

The Borrower shall, as soon as it becomes aware of the same, given written notice to the Junior Agent of the occurrence of any Event of Default, Junior Loan Relevant Event or any Event of Loss with respect to the Aircraft (or any event or circumstance which with the giving of notice or lapse of time or the making of any relevant determination or any combination of the foregoing, would constitute an Event of Loss with respect to the Aircraft).

19.18    **Actions Under Transaction Documents**

19.18.1  The Borrower shall not, and procure that the Intermediate Lessor shall not, without the prior written consent of the Junior Agent (not to be unreasonably withheld, delayed or conditioned) exercise any right, power, authority or discretion vested in it pursuant to the Head Lease Agreement or the Lease Agreement, as applicable, if as a consequence thereof the rights and interests of the Junior Finance Parties pursuant to the Transaction Documents could reasonably be expected to be materially prejudiced.

19.18.2  If the Borrower is approached by any other Party to participate in discussions regarding the Transaction Documents (including any proposed waiver or restructuring in respect thereof) if a Relevant Event has occurred and is continuing and if the proposals made are in relation to a waiver or restructuring and are sufficiently definitive so as to make an amendment to the terms of the Transaction Documents reasonably likely, it shall promptly inform the Junior Agent of such request and to the extent possible allow the Junior Agent (and its advisers) to attend and participate in any discussion with the other Party and/or its advisers in respect thereof.

19.19    **Termination of Leasing**

19.19.1  Subject to the express rights of the Borrower pursuant to Clause 7.2 (*Holding Period*) and Clause 8.8 (*Cure Payments*), if applicable, the Borrower shall, if so requested by the Junior Agent in writing upon the instructions of the Majority Junior Lenders following the occurrence of a Lease Event of Default or a Head Lease Event of Default which is continuing, (i) promptly give notice or procure that notice is given to the Intermediate Lessor of termination of the leasing of the Aircraft under the Head Lease Agreement and (ii) procure that the Intermediate Lessor shall promptly give notice or procure that notice is given to the Lessee of termination of the leasing of the Aircraft under the Lease Agreement unless the Borrower has been advised by appropriate legal counsel that to do so is likely to be contrary to applicable law binding on it.

19.19.2  Save as provided in sub-clause 19.19.3 below, the Borrower shall (i) not terminate the leasing of the Aircraft under the Head Lease Agreement and (ii) procure that the Intermediate Lessor shall not terminate the leasing of the Aircraft under the Lease Agreement without the prior written consent of the Junior Agent (not to be unreasonably withheld).

19.19.3  If while a Lease Event of Default is continuing the Borrower wishes to (i) terminate the leasing of the Aircraft under the Head Lease Agreement and (ii) procure that the Intermediate Lessor terminates the leasing of the Aircraft under the Lease Agreement (the "**Termination**"), the Borrower shall give a written notice to the Junior Agent to that effect. The Junior Agent shall, as soon as is reasonably practicable, inform the Borrower whether or not it consents to the Termination.

19.19.4  At any time prior to the Secured Obligations Discharge Date, the Borrower shall not enter into any other lease in relation to the Aircraft without the prior written consent of the Junior Agent.  In evaluating any such proposal from the Borrower

the approval of the Junior Agent shall in all events be subject to the Junior Finance Parties obtaining all necessary credit and internal approvals required in connection with any such lease, and such approvals shall be subject to such additional conditions as may be stipulated at the relevant time.

## 19.20   Relevant Events

The Borrower shall, and shall procure that the Intermediate Lessor shall, at any time after the occurrence of a Relevant Event which is continuing, from time to time take such action, make such requests or demands and give such notices and certificates (including, without limitation, any lawful demand for payment under the Lease Agreement or any other Transaction Document) as the Junior Agent or the Security Agent may reasonably request and the Borrower shall not, and shall procure that the Intermediate Lessor does not, take any steps (other than to terminate the leasing of the Aircraft under the Lease Agreement in accordance with Clause 19.19 (*Termination of Leasing*) or as otherwise expressly permitted under the Transaction Documents) to enforce or exercise, and shall take such reasonable steps as the Junior Agent or the Security Agent may direct to enforce or exercise, any rights, remedies, powers and privileges under the Lease Agreement in respect of the Collateral.

## 19.21   State of Registration

19.21.1   The Borrower shall not change or agree to a change in the registration of the Aircraft from the State of Registration without the prior written consent of the Junior Agent (such consent not to be unreasonably conditioned, withheld or delayed).

19.21.2   Without prejudice to sub-clause 19.21.1 above, if by reason of a sub-lease or otherwise, there occurs a change in the State of Registration, the Borrower shall, upon the written request of the Junior Agent or the Security Agent, at its own cost and expense, carry out such acts or things and execute such documentation as the Junior Agent and/or the Security Agent may reasonably require in connection with the preservation and/or enforcement of any of the rights of the Junior Finance Parties under the Transaction Documents (including but not limited to the execution and registration of an aircraft mortgage in the new state of registration of the Aircraft), having regard to the position as at the Utilisation Date.

## 19.22   Insurances

The Borrower shall (at no cost to the Junior Finance Parties) effect and maintain the Insurances or, as applicable, procure that the Insurances are maintained in respect of the Aircraft in accordance with the requirements of the Lease Agreement or, if applicable, in accordance with any arrangements agreed between the Borrower and the Junior Agent pursuant to sub-clause 7.2.3 with the Junior Finance Parties named as additional insureds to the extent of their interests and the Security Agent named as sole loss payee.

### 19.23    Anti-Social Forces, Relationship and Conduct

19.23.1    The Borrower shall ensure that no Obligor shall (x) have any relationship with any Anti-Social Forces or any person under the control of any Anti-Social Forces, (y) have any Anti-Social Relationship or (z) engage in any Anti-Social Conduct, whether directly or indirectly through a third party.

19.23.2    The Borrower shall promptly provide to the Junior Agent such documents or information pertaining to it and within its possession (including, without limitation, registered or principal office, residential address, formal name, birth date) as the Junior Agent shall reasonably request for the purposes of screening to identify Anti-Social Conduct, Anti-Social Forces and Anti-Social Relationship by the Junior Agent.

19.23.3    The Borrower shall not engage, directly or indirectly, in (i) any demand or claim under the threat of violence; (ii) any unreasonable demand or claim under the threat of actions that are not legally permissible; (iii) any blackmail or assault, physically or verbally; (iv) any obstructive activities, including, but not limited to, disseminating information or fraudulent activities for the purpose of falsely harming a Lender's creditworthiness or impeding a Lender's business; or (v) other actions similar or analogous to any of the foregoing.

19.23.4    Upon receiving information which provides to a reasonable certainty that a violation of this Clause 19.23 has occurred, the Borrower shall immediately advise the Junior Agent of the occurrence and take all actions reasonably necessary to mitigate, correct and report such occurrence, under law or otherwise (such steps may include termination or severance of the individual(s) involved).

### 19.24    Inspections

19.24.1    The Borrower shall procure that the Intermediate Lessor shall exercise its right of inspection of the Aircraft pursuant to any relevant provisions of the Lease Agreement, from time to time following a reasonable request by the Security Agent to do so, to enable the Junior Agent (or its representatives) to, at any time, on reasonable written notice and in such a way as to minimise disturbance to the Lessee's operations and otherwise subject to the applicable provisions of the Lease Agreement, inspect the Aircraft and the Manuals and Technical Records to ascertain the condition of the Aircraft and satisfy itself that the Aircraft is being properly repaired and maintained in accordance with the Lease Agreement. The Borrower shall procure that the Intermediate Lessor shall exercise its right to inspect the Aircraft pursuant to any relevant provisions of the Lease Agreement to procure that the Lessee grants the Junior Agent (or its representatives) access to the Aircraft and the Technical Records to conduct such inspections. Unless a Lease Event of Default is then continuing, the Junior Agent (or its representatives) shall conduct no more than one inspection in any calendar year. Subject the provisions of the Lease Agreement, the Junior Agent (or its representatives) may inspect the Aircraft at any time a Lease Event of Default is continuing.

19.24.2  The Borrower must procure the rectification of any deficiencies (ordinary wear and tear excepted) found during any inspection.

19.24.3  the Junior Agent has no duty or liability to make any inspection nor any liability arising from any such inspection of the Aircraft or its Technical Records.

19.24.4  Any Aircraft inspection undertaken by the Junior Agent (or its authorised representative) will be at the reasonable cost of the Borrower. The Borrower shall also meet the cost of one desk top appraisal of the Aircraft per year.

## 19.25  Replacement of Engine (Total Loss)

If an Engine has suffered an Engine Total Loss (including, for the avoidance of doubt, at a time when the relevant Engine is not installed on the Airframe), the Borrower shall (i) give the Junior Agent written notice promptly upon becoming aware thereof and (ii) promptly procure the replacement of such Engine with a replacement Engine which complies with the other conditions set out in clauses 8.13 and 11.1(6) of the Lease Agreement.  The Borrower shall take such actions and furnish such certificates and documents as the Security Agent may reasonably require in order to ensure that the replacement Engine is duly and properly conveyed to the Borrower and is duly subject to the New York Mortgage and the Vietnamese Mortgage.

## 19.26  Intermediate Lessor's Undertakings

The Borrower shall procure that the Intermediate Lessor shall duly and punctually perform the Intermediate Lessor's obligations, covenants, undertakings and agreements under the Transaction Documents to which the Intermediate Lessor is a party pursuant to the terms and conditions thereof and contained therein (including, without limitation, the undertakings as required under clause 11 (*Intermediate Lessor*) of the Proceeds Agreement).

## 20.  JUNIOR LOAN EVENTS OF DEFAULT

Each of the events and circumstances set out in Clauses 20.1 (*Non-payment*) to 20.12 (*Change of control of Borrower Parent*) is a Junior Loan Event of Default.

## 20.1  Non-payment

20.1.1  The Borrower fails to prepay the Junior Loan together with all other amounts then due when required pursuant to sub-clause 8.5.2.

20.1.2  The Borrower does not pay on the due date any amount (other than an amount referred to in sub-clause 20.1.1) payable by it or the Intermediate Lessor does not pay on the due date any amount payable by it pursuant to any Transaction Document at the place at, and in the currency in, which it is expressed to be payable unless payment is made within (a) three (3) Business Days of its due date in the case of any scheduled payment or (b) five (5) Business Days of its due date in the case of any other amount.

20.2    **No Other Business, Insurances**

20.2.1    The Borrower does not comply with the provisions of Clause 19.8 (*No other business*) or the Intermediate Lessor does not comply with the provisions of clause 11.3.8 (*No other business*) of the Proceeds Agreement and, in each case, such non-compliance is not remedied within fifteen (15) days of the earlier of (i) the Borrower becoming aware of the failure and (ii) the Junior Agent giving notice to the Borrower.

20.2.2    The Borrower does not comply with the provisions of Clause 19.22 (*Insurances*) or the Intermediate Lessor does not comply with the provisions of sub-clause 11.3.22 (*Insurances*) of the Proceeds Agreement and, in each case, such non-compliance is not remedied within five (5) Business Days of the earlier of (i) the Borrower becoming aware of the failure and (ii) the Junior Agent giving notice to the Borrower.

20.3    **Other obligations**

20.3.1    An Obligor does not comply in any material respect with any other provision of the Transaction Documents to which it is a party (other than those referred to in Clauses 20.1 (*Non-payment*) or 20.2 (*No Other Business, Insurances*)).

20.3.2    No Junior Loan Event of Default under this Clause 20.3 will occur if the failure to comply is capable of remedy and is remedied within thirty (30) days of the earlier of (i) the Borrower becoming aware of the failure and (ii) the Junior Agent giving notice to the Borrower.

20.4    **Misrepresentation**

20.4.1    Any representation or statement made or deemed to be made by an Obligor in the Transaction Documents or any other document delivered by or on behalf of an Obligor under or in connection with any Transaction Document is or proves to have been incorrect or misleading in any material respect when made or deemed to be made.

20.4.2    No Junior Loan Event of Default under this Clause 20.4 will occur if the relevant circumstances are capable of remedy and are remedied within thirty (30) days of the earlier of (i) the Borrower becoming aware of the circumstance and (ii) the Junior Agent giving notice to the Borrower.

20.5    **Insolvency**

20.5.1    An Obligor is unable or admits inability to pay its debts as they fall due or suspends making payments on all or any class of its debts.

20.5.2    A moratorium is declared in respect of all or any class of the indebtedness of any Obligor.

20.6    **Insolvency proceedings**

Any corporate action, legal proceedings or other procedure or step is taken in relation to:

20.6.1   the suspension of payments, a moratorium of any indebtedness, winding-up, dissolution, administration, examinership or reorganisation (by way of voluntary arrangement, scheme of arrangement or otherwise) of the Borrower or the Intermediate Lessor;

20.6.2   a composition, compromise, assignment or arrangement with any creditor of the Borrower or the Intermediate Lessor;

20.6.3   the appointment of a liquidator, receiver, administrative receiver, administrator, examiner, compulsory or interim manager or other similar officer in respect of the Borrower or the Intermediate Lessor or any of its respective assets,

or any analogous procedure or step is taken in any jurisdiction (including without limitation *hasan* or *minji saisei* in Japan), unless any such action, proceeding or procedure is frivolous or vexatious in which case such shall not be an Event of Default under this Clause 20.6 provided such is dismissed, discharged, stayed or restrained within thirty (30) days of the institution thereof.

## 20.7   Creditors' process

Any expropriation, attachment, sequestration, distress or execution (or any analogous process in any jurisdiction) affects any asset or assets of the Borrower or the Intermediate Lessor.

## 20.8   Cessation of business

Any Obligor ceases to carry on business.

## 20.9   Repudiation

Any Obligor rescinds or purports to rescind or repudiates or purports to repudiate any Transaction Document.

## 20.10   Insolvency of Obligor or Lease Manager Default

20.10.1   Any of the events set out in Clauses 20.5 (*Insolvency*), 20.6 (*Insolvency proceedings*) or 20.7 (*Creditors' process*) occur in respect of the Borrower Parent.

20.10.2   Any of the following occurs:

(a)   any of the events set out in Clauses 20.3 (*Other obligations*), 20.4 (*Misrepresentation*), 20.5 (*Insolvency*), 20.6 (*Insolvency proceedings*), 20.7 (*Creditors' process*), 20.8 (*Cessation of business*) or 20.9 (*Repudiation*) occur in respect of the Lease Manager;

(b)   the Lease Manager breaches any standard of care or other obligations contained in the Lease Management Agreement where such breach has a material adverse effect on (i) any Obligor's ability to perform its obligations under the Transaction Documents or (ii) the rights and interests of the Finance Parties; or

(c)      the Lease Manager ceases to be involved in the aircraft leasing business,

and the Borrower fails to procure, as applicable, the appointment of a replacement Lease Manager satisfactory to the Junior Agent (acting reasonably) and the execution and delivery to the Security Agent of new lease manager agreements and a new lease manager undertaking substantially in the same form as the Lease Management Agreement, or otherwise in form and substance reasonably satisfactory to the Security Agent within forty five (45) days of the occurrence of such event.

## 20.11    Change of control

The Borrower Parent ceases to own:

(a)      all of the Shares of the Borrower; or

(b)      all of the Intermediate Lessor Shares (subject to the Intermediate Lessor Share Pledge).

## 20.12    Change of control of Borrower Parent

20.12.1    Japan Investment Adviser Co., Ltd. ceases to control the Borrower Parent.

20.12.2    For the purpose of sub-clause 20.12.1 above "**control**" means:

(a)      the power (whether by way of ownership of shares, proxy, contract, agency or otherwise) to:

    (i)      cast, or control the casting of, not less than sixty six point sixty six per cent. (66.66%) of the maximum number of votes that might be cast at a general meeting of the Borrower Parent; or

    (ii)      appoint or remove all, or the majority, of the directors or other equivalent officers of the Borrower Parent; or

    (iii)      give directions with respect to the operating and financial policies of the Borrower Parent which the directors or other equivalent officers of the Borrower Parent are obliged to comply with; or

(b)      the holding of not less than sixty six point sixty six per cent. (66.66%) of the issued share capital of the Borrower Parent (excluding any part of that issued share capital that carries no right to participate beyond a specified amount in a distribution of either profits or capital).

## 20.13    Litigation

Any litigation, arbitration, administrative, governmental, regulatory or other investigations, proceedings or disputes are commenced or threatened in relation to the Transaction Documents or the transactions contemplated in the Transaction Documents or against any Obligor or its assets where such proceedings reasonably have a material

adverse effect on the ability of any Obligor to perform its obligations under any Transaction Document.

20.14    **Senior Loan Event of Default**

A Senior Loan Event of Default occurs and is continuing.

20.15    **Acceleration**

On and at any time after the occurrence of a Junior Loan Event of Default pursuant to this Clause 20 which is continuing the Junior Agent may, and shall if so directed by the Junior Lenders, by notice to the Borrower:

20.15.1    cancel the Junior Lenders' Commitments whereupon they shall immediately be cancelled; and/or

20.15.2    declare that all or part of the Junior Loan, together with accrued interest, and all other amounts accrued or outstanding under the Transaction Documents be immediately due and payable, whereupon they shall become immediately due and payable; and/or

20.15.3    declare that all or part of the Junior Loan be payable on demand, whereupon the same shall immediately become payable on demand by the Junior Agent on the instructions of the Junior Lenders; and/or

20.15.4    exercise or direct the Security Agent to exercise any or all of its rights, remedies, powers or discretions under the Security Documents and/or the other Transaction Documents,

**provided that**, where a Junior Loan Event of Default has occurred solely as a result of a Lease Event of Default or a Head Lease Event of Default, then the Junior Agent's and the Junior Lender's rights under this Clause 20 shall be subject to Clauses 7.2 (*Holding Period*) and 8.8 (*Cure Payments*), as applicable.

21.    **CHANGES TO THE JUNIOR LENDERS**

21.1    **Assignments and transfers by the Junior Lenders**

Subject to this Clause 21, a Junior Lender (the "**Existing Lender**") may, after the Utilisation Date, without the consent of the Borrower:

21.1.1    assign any of its rights hereunder; or

21.1.2    transfer by novation any of its rights and obligations hereunder; or

21.1.3    sub-participate (on the basis that the sub-participant has no direct rights or interests under the Relevant Documents) all or a portion of its interest hereunder,

to a Qualifying Junior Lender (the "**New Lender**"), provided always that such assignment, transfer or, as applicable, sub-participation at any time when a Junior Loan Event of Default is not continuing relates, at a minimum, to the Existing Lender's Commitment or the right to receive repayments of at least two million five hundred

thousand dollars ($2,500,000.00) of the Junior Loan or, if less, the whole of that Lender's Commitment or participation in the Junior Loan.

## 21.2    Conditions of assignment or transfer

21.2.1    An assignment will only be effective on receipt by the Junior Agent of written confirmation from the New Junior Lender (in form and substance satisfactory to the Junior Agent and the Borrower) that the New Junior Lender will assume the same obligations to the other Finance Parties as it would have been under if it was an Original Junior Lender.

21.2.2    The provisions of Part I (*General Terms*) of Schedule 5 (*Changes to the Junior Lenders*) shall apply with respect to any transfer.

21.2.3    A transfer will only be effective if the procedure set out in paragraph 5 (*Procedure for Transfer*) of Part I (*General Terms*) of Schedule 5 (*Changes to the Junior Lenders*) is complied with.

21.2.4    If:

(a)    a Junior Lender assigns or transfers or sub-participates any of its rights or obligations under the Transaction Documents or changes its Facility Office; and

(b)    as a result of circumstances existing at the date the assignment, transfer, sub-participation or change occurs, the Borrower would be obliged to make a payment to the New Junior Lender or Junior Lender granting the sub-participation or acting through its new Facility Office under Clause 13 (*Tax Gross-up and Indemnities*) or Clause 14 (*Increased Costs*) or an increased payment or performance of any other increased obligation under any other provision of the Transaction Documents,

then, unless such assignment or transfer is made in connection with any mitigation pursuant to clause 13 (*Mitigation*) of the Proceeds Agreement, pursuant to the exercise of remedies following the occurrence of a Junior Loan Event of Default which is continuing or following an Event of Loss, the New Junior Lender or Junior Lender granting the sub-participation or acting through its new Facility Office is only entitled to receive payment under those Clauses, or increased payment or performance of any other increased obligation under any other provision of the Transaction Documents to the same extent as the Existing Junior Lender or Junior Lender acting through its previous Facility Office would have been if the assignment, transfer, sub-participation or change had not occurred.

21.2.5    A Transfer Certificate will become effective on the date falling five (5) Business Days after the date on which notice of the identity of the New Junior Lender has been given to the Borrower.

## 21.3    Cost of Transfer

All costs in effect any such assignment or transfer under Clause 21.1 (*Assignments and transfers by the Junior Lenders*) are to be borne by the Existing Lender and/or the New

Lender (as they may agree amongst themselves), **provided that** such costs shall be borne by the Borrower if such assignment or transfer was (a) requested by an Obligor, (b) entered into in connection with any mitigation procedures as described in clause 13 (*Mitigation*) of the Proceeds Agreement, or (c) entered into following the occurrence of a Junior Loan Event of Default.

## 22.    CHANGES TO THE BORROWER

### 22.1    Pre-conditions to a transfer

22.1.1    Subject to the prior written consent of the Junior Lenders  (not to be unreasonably withheld), the Borrower may only once during the term of this Agreement provided that it has given reasonable advance written notice to the Junior Agent transfer on a Repayment Date all of its rights and obligations under all the Transaction Documents relating to a wholly and directly owned subsidiary of the Borrower Parent (a "**Permitted Transferee**") provided that the Junior Lenders  are satisfied that:

(a)    the Permitted Transferee is able to perform the Borrower's obligations pursuant to the Transaction Documents on the same terms as the Borrower;

(b)    the rights of the Security Agent pursuant to, and the validity and enforceability of, the Security created by the Permitted Transferee on the same terms as the Security Documents, shall be materially the same as the rights of the Security Agent, and validity and enforceability of, the Security created pursuant to the Security Documents;

(c)    that such transfer occurs simultaneously with a transfer by the Borrower to the Permitted Transferee of all its rights and obligations pursuant to the Transaction Documents, as well as all of its right, title and interest in and to the Aircraft; and

(d)    they have complied with all their applicable know your customer and anti money laundering requirements in respect of the Permitted Transferee.

### 22.2    Completion of Transfer

Subject to the satisfaction of the conditions set out in Clause 22.1 (*Pre-conditions to a transfer*), the Agent shall consult and negotiate in good faith with the Borrower as the negotiation and execution of all documents required in order to complete the transfer of rights and obligations of the Borrower contemplated in Clause 22.1 (*Pre-conditions to a transfer*) including, without limitation, the granting of new Security on the same terms as the Security Documents (or with such amendments as the Borrower and the Junior Agent may agree).

### 22.3    Cost of Transfer

All costs of the Junior Finance Parties and reasonable management time expenses of the Junior Finance Parties in effecting any such transfer under Clause 22.1 (*Pre-*

*conditions to a transfer*) are to be borne by the Borrower Parent (who shall provide a written confirmation to pay such costs as a condition to any such transfer taking effect).

### 22.4 General prohibition on Transfer

Except as otherwise provided in this Clause 22 (*Changes to the Borrower*), the Borrower may not assign any of its rights or transfer any of its rights or obligations under the Transaction Documents (except to the Security Agent pursuant to the Security Documents) without the prior written consent of the Junior Agent.

## 23. THE JUNIOR FINANCE PARTIES

### 23.1 The Junior Finance Parties

The provisions of schedule 2 (*The Finance Parties*) to the Proceeds Agreement shall apply to this Agreement.

### 23.2 Junior Finance Party Undertakings

23.2.1   Provided no Junior Loan Event of Default has occurred and is continuing, each Junior Finance Party shall provide the Borrower, as soon as reasonably practicable, with a copy of any notice sent by it to the Lessee in relation to the Aircraft or the Collateral and shall inform the Borrower, within as soon as reasonably practicable, of the taking of any enforcement or other action by it in relation to the Aircraft or the Collateral.

23.2.2   The Security Agent shall, when requested by the Borrower, execute and deliver to the Lessee a quiet enjoyment undertaking in the form required by the Lease Agreement and the Security Agent hereby undertakes for the benefit of the Borrower that unless a Lease Event of Default has occurred and is continuing and the Security Agent is directed pursuant to the Transaction Documents to do so, it will not interfere with the Lessee's right to uninterrupted possession, use and operation of the Aircraft during the term of the Lease Agreement.

## 24. PAYMENT MECHANICS

### 24.1 Payments to the Junior Agent and Security Agent

24.1.1   On each date on which the Borrower or a Junior Lender is required to make a payment to a Junior Finance Party, the Borrower or such Junior Lender shall make the same available to the Junior Agent in accordance with sub-clause 24.1.2 or, where expressly provided otherwise, the Security Agent (unless a contrary indication appears in any Transaction Document) for value on the due date at the time and in such funds specified by the Junior Agent as being customary at the time for settlement of transactions in the relevant currency in the place of payment.

24.1.2   Payment to the Junior Agent shall be made to the account of the Junior Agent.

24.1.3   For the avoidance of doubt and notwithstanding anything to the contrary in any Transaction Document, any payments from the Borrower or Junior Lenders

made for the account of the Security Agent only shall be made directly to such account as the Security Agent may from time to time specify in writing.

24.1.4    This Clause 24 is subject to clause 8.14 (*Payment Directions*) of the Proceeds Agreement.

## 24.2    Distributions by the Junior Agent and the Security Agent

Each payment received by the Junior Agent or the Security Agent (as applicable) under the Transaction Documents for another Party shall, subject to Clause 24.3 (*Clawback*) and paragraph 1.15 (*Deduction from amounts payable by the Junior Agent*) of schedule 2 (*The Finance Parties*) to the Proceeds Agreement be made available by the Junior Agent or the Security Agent (as applicable) as soon as practicable after receipt to the Party entitled to receive payment in accordance with clause 8 (*Application of Proceeds*) of the Proceeds Agreement (in the case of a Lender, for the account of its Facility Office) to such account as that Party may notify to the Junior Agent or the Security Agent (as applicable) by not less than five (5) Business Days' notice with a bank in the principal financial centre of the country of that currency.

## 24.3    Clawback

24.3.1    Where a sum is to be paid to the Junior Agent under the Transaction Documents for another Party, the Junior Agent is not obliged to pay that sum to that other Party (or to enter into or perform any related exchange contract) until it has been able to establish to its satisfaction that it has actually received that sum.

24.3.2    If the Junior Agent pays an amount to another Party and it proves to be the case that the Junior Agent had not actually received that amount, then the Party to whom that amount (or the proceeds of any related exchange contract) was paid by the Junior Agent shall on demand refund the same to the Junior Agent together with interest on that amount from the date of payment to the date of receipt by the Junior Agent, calculated by the Junior Agent to reflect its cost of funds.

## 24.4    No set-off by the Borrower

All payments to be made by the Borrower to a Junior Finance Party under the Transaction Documents shall be calculated and be made without (and free and clear of any deduction for) set-off or counterclaim.

## 24.5    Business Days

24.5.1    Any payment under the Transaction Documents which is due to be made on a day that is not a Business Day shall be made on the next Business Day in the same calendar month (if there is one) or the preceding Business Day (if there is not) provided that in the case of any payment to be made on the Final Repayment Date, such amount will always be due on the preceding Business Day.

24.5.2    During any extension of the due date for payment of any principal or Unpaid Sum under this Agreement interest is payable on the principal or Unpaid Sum at the rate payable on the original due date.

24.6    **Currency of account**

    24.6.1   Subject to sub-clauses 24.6.2 and 24.6.3, the dollar is the currency of account and payment for any sum from the Borrower under any Transaction Document.

    24.6.2   Each payment in respect of costs, expenses, Losses or Taxes shall be made in the currency in which the costs, expenses, Losses or Taxes are incurred.

    24.6.3   Any amount expressed to be payable in a currency other than dollars shall be paid in that other currency.

25.    **APPLICATION OF PAYMENTS**

If the Junior Agent receives a payment under the Transaction Documents the Junior Agent shall apply that payment or those proceeds towards the obligations of the Borrower under the Transaction Documents in the order of application specified in clause 8 (*Application of Proceeds*) of the Proceeds Agreement.

26.    **SET-OFF**

Following the occurrence of a Junior Loan Event of Default which is continuing, a Junior Finance Party may set off any matured obligation due from the Borrower under the Transaction Documents (to the extent beneficially owned by that Junior Finance Party) on a full recourse basis against any matured obligation owed by that Junior Finance Party to the Borrower, regardless of the place of payment, booking branch or currency of either obligation.  If the obligations are in different currencies, the Junior Finance Party may convert either obligation at a market rate of exchange in its usual course of business for the purpose of the set-off.

27.    **NOTICES**

The provisions of clause 16 (*Notices*) of the Proceeds Agreement shall apply to this Agreement.

28.    **CALCULATIONS AND CERTIFICATES**

28.1    **Accounts**

In any litigation or arbitration proceedings arising out of or in connection with a Transaction Document, the entries made in the accounts maintained by a Junior Finance Party in the absence of manifest error are *prima facie* evidence of the matters to which they relate.

28.2    **Certificates and Determinations**

Any certification or determination by a Junior Finance Party of a rate or amount under any Transaction Document shall be signed by a duly authorised officer of the Junior Finance Party and shall substantiate in sufficient detail the amount concerned and subject thereto and shall, in the absence of manifest error, be *prima facie* evidence of the matters to which it relates.

28.3    **Day count convention**

Any interest, commission or fee accruing in favour of any Junior Finance Party under any Transaction Document will accrue from day to day and is calculated on the basis of the actual number of days elapsed and a year of three hundred and sixty (360) days.

29.    **PARTIAL INVALIDITY**

If, at any time, any provision of the Transaction Documents is or becomes illegal, invalid or unenforceable in any respect under any law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality, validity or enforceability of such provision under the law of any other jurisdiction will in any way be affected or impaired.

30.    **REMEDIES AND WAIVERS**

No failure to exercise, nor any delay in exercising, on the part of any Junior Finance Party, any right or remedy under the Transaction Documents shall operate as a waiver, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise or the exercise of any other right or remedy.  The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

31.    **AMENDMENTS AND WAIVERS**

31.1    **Required Consents**

31.1.1    Subject to Clause 31.2 (*Exceptions*) and the Proceeds Agreement any term of the Transaction Documents may be amended or waived by the Junior Agent or the Security Agent on behalf of the Junior Lenders only with the consent of the Majority Junior Lenders and any such amendment or waiver will be binding on all Parties (provided always, for the avoidance of doubt, that no amendment to any Transaction Document to which any Obligor is a party may be made without the consent of that Obligor).

31.1.2    The Junior Agent may effect, on behalf of any Junior Finance Party, any amendment or waiver permitted by this Clause 31.

31.2    **Exceptions**

31.2.1    An amendment or waiver that has the effect of changing or which relates to:

(a)    the definition of "Majority Junior Lenders" in Appendix A - Master Definitions Schedule;

(b)    an extension to the date of payment of any amount under the Transaction Documents;

(c)    a reduction in the Fixed Rate in respect of the Junior Loan or a reduction in the amount of any payment of principal, interest, fees or commission payable;

(d)    an increase in or an extension of any Commitment under this Agreement;

(e)    a change to any Obligor or the Lease Manager or the Lessee;

(f)    any provision which expressly requires the consent of all the Junior Lenders;

(g)    Clause 2.2 (*Junior Finance Parties' rights and obligations*), Clause 21 (*Changes to the Junior Lenders*), this Clause 31.2 or clause 8 (*Application of Proceeds*) of the Proceeds Deed;

(h)    release of Security Interests created by the Security Documents unless permitted under the Transaction Documents or undertaken by the Security Agent following the occurrence of a Relevant Event which is continuing; or

(i)    any material change to any Security Document,

shall not be made without the prior consent of all the Junior Lenders or, in the case of paragraphs (b), (e), (g), (h) and (i) of this Clause 31.2.1, without the consent of all of the Junior Finance Parties.

31.2.2    An amendment or waiver which relates to the rights or obligations of the Junior Agent or the Security Agent may not be effected without the consent of the Junior Agent or the Security Agent.

## 32.    COUNTERPARTS

Each Transaction Document may be executed in any number of counterparts, and this has the same effect as if the signatures on the counterparts were on a single copy of the Transaction Document.

## 33.    GOVERNING LAW

This Agreement and any non-contractual obligations arising from, or connected with it, are governed by English law.

## 34.    ENFORCEMENT

### 34.1    Jurisdiction of English Courts

34.1.1    The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement (including a dispute relating to the existence, validity or termination of this Agreement or the consequences of its nullity or any non-contractual obligations arising out of or in connection with this Agreement) (a "**Dispute**").

34.1.2    Each Party agrees that the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no Party will argue to the contrary.

34.1.3    Notwithstanding sub-clause 34.1.1 above, any Junior Finance Party may take proceedings relating to a Dispute in any other courts with jurisdiction. To the extent allowed by law, the Junior Finance Parties take concurrent proceedings in any number of jurisdictions.

## 34.2    Service of process

Without prejudice to any other mode of service allowed under any relevant law, the Borrower:

34.2.1    irrevocably appoints Kingsman Services Limited, whose offices are currently located at 12 Retreat Road, Richmond, Surrey, England TW9 1AF (or its replacement principal place of business from time to time) as its agent for service of process in relation to any proceedings before the English courts in connection with any Transaction Document; and

34.2.2    agrees that failure by a process agent to notify the Borrower of the process will not invalidate the proceedings concerned.

**This Agreement has been entered into on the date stated at the beginning of this Agreement.**

## SCHEDULE 1
## THE ORIGINAL JUNIOR LENDERS

| Junior Lenders | Total Commitment |
| --- | --- |
| **IBJ LEASING CO., LTD.**<br><br>**(Money Lender Licence: Kanto Local Finance Bureau (12) 00397)** | $15,000,000.00 |
| **Total Commitments** | $15,000,000.00 |

## SCHEDULE 2
## CONDITIONS PRECEDENT

### PART I
### INITIAL CONDITIONS PRECEDENT

1.      An executed counterpart(s) (signed by the relevant Party(ies) other than the Finance Parties) of:

    (a)      each Fee Letter;

    (b)      the Proceeds Agreement;

    (c)      this Agreement;

    (d)      the Senior Facility Agreement;

    (e)      the Funding Indemnity Letter;

    (f)      the Parent Letter;

    (g)      the Hedging Agreement; and

    (h)      the Intermediate Lessor Parent Letter.

## PART II
## UTILISATION SPECIFIC CONDITIONS PRECEDENT

1.    A copy of the constitutional documents of each of the Borrower, the Lease Manager, the Intermediate Lessor and the Borrower Parent.

2.    A copy of the resolution(s) of the board of directors of each of the Borrower, Borrower Parent, the Intermediate Lessor and the Lease Manager:

   (i)    approving the terms of, and the transactions contemplated by, the Transaction Documents to which it is a party and resolving that it executes the Transaction Documents (and such other documents as are required to give effect to the transactions contemplated by the Transaction Documents) to which it is a party;

   (ii)    authorising by way of a power of attorney a specified person or persons to execute the Transaction Documents to which it is a party on its behalf; and

   (iii)    authorising by way of a power of attorney a specified person or persons, on its behalf, to sign and/or despatch all documents and notices to be signed and/or despatched by it under or in connection with the Transaction Documents to which it is a party.

3.    Copies of the powers of attorney referred to in paragraphs 2 (ii) and 2 (iii) above.

4.    A certificate of an authorised signatory of each of the Borrower, the Lease Manager, the Intermediate Lessor and the Borrower Parent certifying that each copy document relating to it specified in paragraphs 1 and 2 above is correct, complete and in full force and effect as at a date no earlier than the date of this Agreement.

5.    An executed counterpart(s) (signed by the relevant Party(ies) other than the Finance Parties) of:

   (a)    the Utilisation Request;

   (b)    the Security Power of Attorney;

   (c)    the Intermediate Lessor Security Power of Attorney;

   (d)    the Lessee Deregistration Power of Attorney;

   (e)    the Borrower Security Assignment;

   (f)    the Intermediate Lessor Assignment;

   (g)    the Intermediate Lessor Share Pledge;

   (h)    the New York Mortgage;

   (i)    the Account Pledge;

   (j)    the Intermediate Lessor Account Pledge;

   (k)    the Vietnamese Mortgage;

(l)      the IDERA duly executed by the Lessee;

(m)     the Service Agreement;

(n)      the Lease Management Agreement;

(o)      the Aircraft Purchase Agreement;

(p)      the Head Lease Agreement;

(q)      the Replacement Controlling Party Notice;

(r)      the Engine Warranties Agreement; and

(s)      the notices and acknowledgement of assignment to be served pursuant to (i) the
         Borrower Security Assignment in respect of the Lease Agreement and the
         Aircraft Purchase Agreement; and (ii) each other Security Document (including
         the notices under the Intermediate Lessor Share Pledge), as applicable, in each
         case executed by the signatories thereto.

6.    Copies of:

     (a)      the Bill of Sale duly executed by the Seller; and

     (b)      an electronic copy from the insurers of the Lessee of (a) a letter of undertaking
              in relation to the Insurances, (b) a certificate in respect of each of the Insurances
              and (c) evidence that each Finance Party is named as an additional insured in
              respect of the Insurances.

7.    A legal opinion of:

     (a)      Clifford Chance Pte Limited, English legal advisers to the Junior Agent;

     (b)      Clifford Chance, Japanese legal advisers to the Junior Agent;

     (c)      Clifford Chance Europe LLP, French legal advisers to the Junior Agent;

     (d)      Clifford Chance US LLP, New York legal advisers to the Junior Agent;

     (e)      Vietnam International Law Firm (VILAF), Vietnamese legal advisers to the
              Junior Agent;

     (f)      Flynn O'Driscoll in respect of the enforceability of the Intermediate Lessor
              Share Pledge under Irish law;

     (g)      Flynn O'Driscoll in respect of the due execution of the relevant Transaction
              Documents by the Intermediate Lessor; and

     (h)      A legal opinion of Matheson, in relation to the Seller.

**Aircraft Purchase Agreement**

8.     A copy of each of the documents required to be delivered pursuant to clause 4 (*Conditions Precedent*) of the Aircraft Purchase Agreement, other than those specifically mentioned in this Schedule 2.

**Payments**

9.     Evidence that the Senior Lenders have made available, or will on or before the Utilisation Date make available, the Senior Loan.

10.    Evidence that the Borrower has paid the Purchase Price, less the aggregate of the Junior Loan amount and the Senior Loan amount, to the Seller.

11.    Evidence that an amount equal to Rental to be paid in respect of the period from the Utilisation Date to the next Rental Payment Date (pro-rated) has been deposited into the Borrower Account.

**Security and registrations**

12.    Evidence that the Engines are installed on the Aircraft on the Closing Date.

13.    Evidence no International Interest, prospective International Interest, National Interest or Non-Consensual Rights or Interests are registered against the Airframe or any Engines at the International Registry other than as contemplated by the Transaction Documents.

14.    Evidence, in the form of a copy, of the original approval of the Lease Agreement by the Aviation Authority.

**Other**

15.    Evidence that each process agent of the Obligors and the Seller required under Transaction Documents has accepted its appointment.

16.    Copies of all necessary consents, licences, permits and authorisations (and evidence that the relevant party has fulfilled all conditions) of all government and other authorities with respect to the execution, delivery and performance by the Borrower, the Borrower Parent, the Intermediate Lessor and the Lessee of the Transaction Documents or necessary or advisable for the admissibility in evidence of any of the Transaction Documents.

17.    To the extent available on or prior to the Utilisation Date, evidence of registration and/or filing of any relevant Transaction Document necessary or desirable in Japan, the State of Registration or any other relevant jurisdiction or any registration and/or filing in connection therewith.

18.    To the extent received from the Seller or the Intermediate Lessor, the latest audited annual financial statements provided by the Lessee under the Lease Agreement, unless the same is available on the Internet.

19.    To the extent received from the Seller or the Intermediate Lessor, a copy of the Lessee's maintenance program.

20.    Each Junior Finance Party shall be satisfied with the results of its "know your customer" and other client identification checks carried out with respect to the Obligors, the Lessee and, if applicable, any other party to the Proceeds Agreement.

21.    Evidence that each condition precedent to the Lease Agreement and the Head Lease Agreement has been satisfied, deferred or waived (or will have been satisfied, deferred or waived on or before the Utilisation Date).

22.    Such other documents and/or evidence as the Junior Agent may reasonably require and notify to the Borrower prior to issuance of the Utilisation Request, in each case in form and substance satisfactory to the Junior Agent.

23.    The Fixed Rate has been agreed.

## PART III
## CONDITIONS SUBSEQUENT

1.      On the Closing Date the Intermediate Lessor shall accede to the Proceeds Agreement.

2.      On the Closing Date the Contract of Sale (as defined in the Cape Town Convention) created by the Bill of Sale shall be registered at the International Registry in respect of the Airframe and the Engines.

3.      Within 10 Business Days of the Closing Date, evidence of the registration of the international interests and assignments of international interests with the International Registry pursuant to clause 12.1 (*Registrations to be made with the International Registry*) of the Proceeds Agreement.

4.      As soon as reasonably practicable following the Closing Date, but in any event no later than ninety (90) days following the Closing Date, evidence that fireproof plates have been installed on the Airframe as required pursuant to clause 13.6 (g) of the Lease Agreement.

5.      Within 7 Business Days of the Closing Date, evidence that UCC-1 filings in respect of the New York Mortgage have been completed.

6.      Within 3 Business Days of the Closing Date, evidence that the registration of the Vietnamese Mortgage with the Aviation Authority has been completed.

7.      Within 15 Business Days of the Closing Date, evidence of registration of the replacement IDERA (as evidenced by the Aviation Authority's acknowledgment on the replacement IDERA submitted by the Lessee).

8.      Within 15 Business Days of the Closing Date, a Certificate of Registration of Vietnamese Nationality issued by the Aviation Authority evidencing the Borrower's ownership of the Aircraft.

9.      Within 15 Business Days of the Closing Date, a Certificate of Registration of Aircraft Ownership issued by the Aviation Authority evidencing the Borrower's ownership of the Aircraft.

10.     Evidence that particulars of the charge created under the Intermediate Lessor Assignment have been registered in Ireland with the Companies Registration Office within 21 days after the execution thereof.

11.     Evidence that the Irish Revenue Commissioners have, pursuant to Section 1001 of the Taxes Consolidation Act 1997 of Ireland, been notified of the execution of the security interests created by each of the Intermediate Lessor Share Pledge and the Intermediate Lessor Assignment, in each case within 21 days after the execution thereof.

12.     Within 3 Business Days of the date that evidence of the registration of the international interests and assignments of international interests with the International Registry pursuant to clause 12.1 (*Registrations to be made with the International Registry*) of the Proceeds Agreement is provided, a legal opinion of Flynn O'Driscoll in respect of registration of the international interests and assignments of international interests with the International Registry.

13.     Within 3 Business Days of the date of registration of the replacement IDERA with the Aviation Authority, a legal opinion of Vietnam International Law Firm (VILAF), Vietnamese legal advisers to the Junior Agent.

14.     Within 7 Business Days of the Closing Date, Authorising Entry Point (AEP) codes for both the registration of the international interests and the assignments of international interests with the International Registry pursuant to 12.1 (*Registrations to be made with the International Registry*) of the Proceeds Agreement.

15.     Within 28 days of the Closing Date, evidence that the Letter of Credit has been issued in accordance with the Lease Agreement and in form and substance satisfactory to the Security Agent.

## SCHEDULE 3
## FORM OF UTILISATION REQUEST

To:     **CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK** as Junior Agent

Cc:     **IBJ LEASING CO., LTD.** as Junior Lender

Dated:  [•]

Dear Sirs

**Junior Facility Agreement dated [•] 2018 (the "Junior Facility Agreement")**

1.      The Borrower hereby gives notice in accordance with Clause 4 (*Conditions of Utilisation*) of the Facility Agreement that the Borrower wishes to make the drawdown of the Junior Loan on [•] (the "**Utilisation Date**") in the amount of [•] dollars ($[•]), subject to the conditions precedent set forth in the Junior Facility Agreement.

2.      Capitalised terms used herein have the same meanings as defined in the Junior Facility Agreement (or by reference therein to another document).

3.      This Utilisation Request is irrevocable.

4.      The Borrower hereby instructs the Junior Agent to apply the proceeds of the Junior Loan, in payment to the Seller at such account notified by the Seller to the Junior Agent.

5.      This Utilisation Request and any non-contractual obligations arising from or connected with it shall be governed by and construed in accordance with the laws of England.

Yours faithfully


**JPA NO. 111 CO., LTD.**

By:

Title:

## SCHEDULE 4
## REPAYMENT SCHEDULE

| # | Repayment Dates | Outstanding Junior Loan | Junior Loan Repayments Instalment |
|---|---|---|---|
| 0 | 18/10/2018 | 10,950,000.00 | - |
| 1 | 03/01/2019 | 10,537,100.34 | 412,899.66 |
| 2 | 03/04/2019 | 10,048,636.96 | 488,463.38 |
| 3 | 03/07/2019 | 9,554,858.75 | 493,778.21 |
| 4 | 03/10/2019 | 9,055,534.85 | 499,323.90 |
| 5 | 03/01/2020 | 8,548,960.56 | 506,574.29 |
| 6 | 03/04/2020 | 8,033,641.55 | 515,319.01 |
| 7 | 03/07/2020 | 7,510,920.23 | 522,721.32 |
| 8 | 03/10/2020 | 6,981,915.01 | 529,005.22 |
| 9 | 03/01/2021 | 6,445,228.53 | 536,686.48 |
| 10 | 03/04/2021 | 5,898,635.79 | 546,592.74 |
| 11 | 03/07/2021 | 5,345,247.64 | 553,388.15 |
| 12 | 03/10/2021 | 4,784,793.40 | 560,454.24 |
| 13 | 03/01/2022 | 4,216,201.35 | 568,592.05 |
| 14 | 03/04/2022 | 3,637,943.55 | 578,257.80 |
| 15 | 03/07/2022 | 3,052,083.85 | 585,859.70 |
| 16 | 03/10/2022 | 2,458,329.85 | 593,754.00 |
| 17 | 03/01/2023 | 1,855,954.65 | 602,375.20 |
| 18 | 03/04/2023 | 1,244,168.36 | 611,786.29 |
| 19 | 03/07/2023 | 623,926.22 | 620,242.14 |
| 20 | 03/10/2023 | 0.00 | 623,926.22 |

## SCHEDULE 5
## CHANGES TO THE JUNIOR LENDERS

### PART I
### GENERAL TERMS

1.    **Assignment or transfer fee**

The New Junior Lender shall, on the date upon which an assignment or transfer takes effect, pay to the Junior Agent (for its own account) a fee of five thousand dollars ($5,000).

2.    **Limitation of responsibility of Existing Junior Lenders**

2.1    Unless expressly agreed to the contrary, an Existing Junior Lender makes no representation or warranty and assumes no responsibility to a New Junior Lender for:

   2.1.1    the legality, validity, effectiveness, adequacy or enforceability of the Transaction Documents or any other documents;

   2.1.2    the financial condition of any Obligor, the Lease Manager, the Lessee or the Lessee Guarantor;

   2.1.3    the performance and observance by any Obligor, the Lessee or the Lessee Guarantor of its obligations under the Transaction Documents or any other documents; or

   2.1.4    the accuracy of any statements (whether written or oral) made in or in connection with any Transaction Document or any other document,

and any representations or warranties implied by law are excluded.

2.2    Each New Junior Lender confirms to the Existing Lender, the other Finance Parties and the Borrower that it:

   2.2.1    has made (and shall continue to make) its own independent investigation and assessment of the financial condition and affairs of each Obligor, the Lessee and the Lessee Guarantor and its related entities in connection with its participation in this Agreement and has not relied exclusively on any information provided to it by the Existing Junior Lender in connection with any Transaction Document;

   2.2.2    will continue to make its own independent appraisal of the creditworthiness of each Obligor, the Lease Manager, the Lessee and the Lessee Guarantor and its related entities whilst any amount is or may be outstanding under the Transaction Documents or any Commitment is in force; and

   2.2.3    it is a Qualifying Lender.

2.3     Nothing in any Transaction Document obliges an Existing Junior Lender to:

2.3.1   accept a re-transfer from a New Junior Lender of any of the rights and obligations assigned or transferred under Clause 21 (*Changes to the Junior Lenders*); or

2.3.2   support any Losses directly or indirectly incurred by the New Junior Lender by reason of the non-performance by any Obligor or the Lease Manager of its obligations under the Transaction Documents or otherwise.

## 3.   Copy of Transfer Certificate to Borrower

The Junior Agent shall, as soon as reasonably practicable after it has executed a Transfer Certificate, send to the Borrower a copy of that Transfer Certificate.

## 4.   Disclosure of information

Any Junior Lender may disclose to any of its Affiliates and any other person:

4.1.1   to (or through) whom that Junior Lender assigns or transfers (or may potentially assign or transfer) all or any of its rights and obligations under this Agreement;

4.1.2   with (or through) whom that Junior Lender enters into (or may potentially enter into) any sub-participation in relation to, or any other transaction under which payments are to be made by reference to, this Agreement or any Obligor or the Lease Manager; or

4.1.3   to whom, and to the extent that, information is required to be disclosed by any applicable law or regulation,

any information about any Obligor, the Lease Manager, the Lessee or the Lessee Guarantor and the Transaction Documents as that Junior Lender shall consider appropriate if, in relation to 4.1.1 and 4.1.2 above, the person to whom the information is to be given has entered into a confidentiality undertaking.

## 5.   Procedure for Transfer

5.1     Subject to the conditions set out in Clause 21.2 (*Conditions of assignment or transfer*), a transfer is effected when the Junior Agent executes an otherwise duly completed Transfer Certificate delivered to it by the Existing Junior Lender and the New Lender. The Junior Agent shall, subject to paragraph 5.2 below, as soon as reasonably practicable after receipt by it of a duly completed Transfer Certificate appearing on its face to comply with the terms of this Agreement and delivered in accordance with the terms of this Agreement, execute that Transfer Certificate.

5.2     The Junior Agent shall only be obliged to execute a Transfer Certificate delivered to it by the Existing Junior Lender and the New Junior Lender upon its completion of all "know your customer" or other checks relating to any person that it or the Security Agent is required to carry out in relation to the transfer to such New Lender.

5.3     On the Transfer Date:

    5.3.1     to the extent that in the Transfer Certificate the Existing Junior Lender seeks to transfer by novation its rights and obligations under the Transaction Documents the Borrower and the Existing Junior Lender shall be released from further obligations towards one another under the Transaction Documents and their respective rights against one another under the Transaction Documents shall be cancelled (being the "**Discharged Rights and Obligations**");

    5.3.2     the Borrower and the New Junior Lender shall assume obligations towards one another and/or acquire rights against one another which differ from the Discharged Rights and Obligations only insofar as the New Junior Lender has assumed and/or acquired the same in place of the Existing Lender;

    5.3.3     the Junior Agent, the New Junior Lender and other Junior Lenders shall acquire the same rights and assume the same obligations between themselves as they would have acquired and assumed had the New Junior Lender been an Original Junior Lender with the rights and/or obligations acquired or assumed by it as a result of the transfer and to that extent the Junior Agent and the Existing Junior Lender shall each be released from further obligations to each other under the Transaction Documents;

    5.3.4     the New Junior Lender shall become a Party as a "Lender"; and

    5.3.5     the benefit of each Security Document shall be maintained in favour of the New Lender.

5.4     Each New Lender, by executing the relevant Transfer Certificate, confirms, for the avoidance of doubt, that:

    5.4.1     the Junior Agent has authority to execute on its behalf any amendment or waiver that has been approved by or on behalf of the requisite Junior Lender or Junior Lenders in accordance with this Agreement on or prior to the date on which the transfer or assignment becomes effective in accordance with this Agreement and that it is bound by that decision to the same extent as the Existing Junior Lender would have been had it remained a Lender; and

6.     **Proceeds Agreement**

Contemporaneously with the execution and delivery of any Transfer Certificate, the New Junior Lender shall execute and deliver to the Security Agent and Borrower a Proceeds Agreement Accession Undertaking in accordance with the terms of the Proceeds Agreement.

## PART II
## FORM OF TRANSFER CERTIFICATE

To:     [**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**], as Junior Agent

From:    [*The Existing Lender*] (the "**Existing Lender**") and [*The New Lender*] (the "**New Lender**")

Dated: [ • ]

**Junior Facility Agreement dated [•] 2018 (the "Junior Facility Agreement")**

1.    We refer to the Junior Facility Agreement.  This is a Transfer Certificate.  Terms defined in the Junior Facility Agreement have the same meaning in this Transfer Certificate unless given a different meaning in this Transfer Certificate.

2.    We refer to paragraph 5 (*Procedure for Transfer*) of Part I (*General Terms*) of Schedule 5 (*Changes to the Junior Lenders*) of the Junior Facility Agreement:

        (i)    The Existing Junior Lender and the New Junior Lender agree to the Existing Junior Lender transferring to the New Junior Lender by novation all or part of the Existing Lender's Commitment, rights and obligations referred to in the schedule hereto (the "**Schedule**") in accordance with paragraph 5 (*Procedure for Transfer*) of Part I (*General Terms*) of Schedule 5 (*Changes to the Junior Lenders*) of the Junior Facility Agreement.

        (ii)    The proposed Transfer Date is [•].

        (iii)    The Facility Office and address, fax number and attention details for notices of the New Junior Lender for the purposes of Clause 27 (*Notices*) of the Facility Agreement are set out in the Schedule.

3.    The New Junior Lender expressly acknowledges the limitations on the Existing Lender's obligations set out in paragraph 2 (*Limitation of responsibility of Existing Junior Lenders*) of Part I (*General Terms*) of Schedule 5 (*Changes to the Junior Lenders*) of the Junior Facility Agreement. The benefit of each Security Document shall be maintained in favour of the New Lender, without prejudice to paragraph 2.1 of Clause 2 (*Limitation of responsibility of Existing Junior Lenders*) of Part I (*General Terms*) of Schedule 5 (*Changes to the Junior Lenders*) of the Junior Facility Agreement.

4.    The New Junior Lender confirms it is a Qualifying Lender.

5.    This Transfer Certificate may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Transfer Certificate.

6.    This Transfer Certificate and any non-contractual obligations arising from, or connected with it shall be governed by English law.

## THE SCHEDULE

### Commitment/rights and obligations to be transferred

[*insert relevant details of Existing Lender's Commitment and/or participation in the Junior Loan*]

[*Facility Office address, fax number and attention details for notices and account details for payments,*]

[**EXISTING LENDER**]                [**NEW LENDER**]

By:    …………..………………        By:    …………………………………

Title:  …………..………………        Title:  …………………………………


This Transfer Certificate is accepted by the Junior Agent and the Transfer Date is confirmed as [•].

[**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**]

By:    …………………………………

Title:  …………………………………

**SCHEDULE 6**
**TIMETABLES**

| Clause | Action | Time (unless otherwise specified) |
|--------|--------|-----------------------------------|
| | Fixed Rate fixing call | U-2, 3:00 pm (Tokyo time) / 7:00 am (Paris time) |
| 5.1 | Delivery of duly completed Utilisation Request and the Funding Indemnity Letter | U-4, 11:00 am (Tokyo time) |
| 5.5.3 | Agent notifies the Junior Lenders of amount of Junior Loan and participation | U-4, 12:00 noon (Paris time) |

"U" =          Proposed Utilisation Date

"U-X" =          X Business Days prior to the proposed Utilisation Date

EXECUTION PAGE

JUNIOR FACILITY AGREEMENT

MSN 67

**The Borrower**

**JPA NO. 111 CO., LTD.**

By:

Title:

Kamil Gerard Ahmed
Attorney-In-Fact
K&L Gates LLP (Singapore)

The Junior Agent

**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**

By:                                    By:

Title:                                 Title:

**The Security Agent**

**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**

By:                                    By:

Title:                                 Title:

**The Junior Lenders**

**IBJ LEASING CO., LTD**

By:                                    By:

Title:                                 Title:

**EXECUTION PAGE**

JUNIOR FACILITY AGREEMENT

MSN 67

**The Borrower**

**JPA NO. 111 CO., LTD.**

By:

Title:

**The Junior Agent**

**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**

By:                                    By:

Title:                                 Title:

Bertrand ROVETTO
DIRECTOR

Amaury DE RIVAZ

VICE PRESIDENT

**The Security Agent**

**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**

By:                                    By:

Title:                                 Title:

Bertrand ROVETTO
DIRECTOR

Amaury DE RIVAZ

VICE PRESIDENT

**The Junior Lenders**

**IBJ LEASING CO., LTD**

By:                                    By:

Title:                                 Title:

## EXECUTION PAGE
### JUNIOR FACILITY AGREEMENT
#### MSN 67

**The Borrower**

**JPA NO. 111 CO., LTD.**

By:

Title:


**The Junior Agent**

**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**

By:                              By:

Title:                           Title:


**The Security Agent**

**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**

By:                              By:

Title:                           Title:


**The Junior Lenders**

**IBJ LEASING CO., LTD.**

By:   Yoshiyasu Mizutomi         By:   Yoshihiko Fujita

Title:   Executive Officer       Title:   Joint General Manager

**The Mandated Lead Arranger**

**CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK**

By:

Title:

Bertrand ROVETTO

DIRECTOR

By:

Title:

Amaury DE RIVAZ

VICE PRESIDENT