TOGUT, SEGAL & SEGAL LLP

ATTORNEYS AT LAW

ONE PENN PLAZA

NEW YORK, NEW YORK 10119

———

(212) 594-5000

FACSIMILE
(212) 967-4258

January 13, 2022

**VIA EMAIL**
Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

   Re: <u>In re JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.</u>, Case No. 21-12075 (DSJ)

To the Honorable David S. Jones:

  Further to our request for a discovery conference, which has been scheduled for Friday, January 14, at 1:00 pm, we write on behalf of the above-referenced debtors (the "<u>Debtors</u>") to describe the discovery dispute with FitzWalter Capital Partners (Financial Trading) ("<u>FitzWalter</u>), one of the Debtors' Senior Secured Lenders.

  On January 3, 2022, **after** filing its Motion to Dismiss (Dkt. No. 22) and prior to the Debtors' deadline to object, FitzWalter served a number of discovery requests on the Debtors, including 21 document requests, a notice of 30(b)(6) deposition, as well as a notice of Rule 30 deposition of Teiji Ishikawa, the Debtors' Representative Director who is located in Japan and subject to a 6-week deposition notice requirement of the U.S. Embassy.[1]  FitzWalter served these requests "in connection with" its Motion to Dismiss and the Debtors' Stalking Horse Motion (Dkt. No. 21) (together, the "<u>Motions</u>"), both of which are scheduled to be heard on January 20, 2022.

  Virtually all of the discovery requests are overbroad and designed to substantiate the kitchen-sink arguments that FitzWalter has already made in its Motion to Dismiss, and none of them are relevant to the Stalking Horse Motion.  For these reasons, and those set forth below, the Debtors objected to all but one of the discovery requests, a request for the Debtors' bank statements.

  Counsel for the Debtors and FitzWalter met and conferred on January 10, 2022. During this meet and confer, we sought to resolve these issues in good faith, and asked FitzWalter's counsel to explain the relevance of their requests.  However, they simply stated that the requests track their Motion to Dismiss, and the parties reached an impasse.  The Debtors also offered (as they had during previous calls) to stipulate to key facts relating to the Motion to Dismiss, but FitzWalter did not take up the Debtors' offer.

  Rather than raising its position with the Court, as required by Local Bankruptcy Rule 7007-1, FitzWalter instead proceeded with its deposition of Mr. Ishikawa on January 11, 2022, even though we informed FitzWalter's counsel that Mr. Ishikawa would not attend and (as we had informed them during an earlier call prior to the date

---

[1] *See* https://jp.usembassy.gov/services/depositions-in-japan/

they served the notice) that he was not submitting a declaration in support of the Stalking Horse Motion or the opposition to the Motion to Dismiss, and that we would be submitting declarations by Heinrich Loechteken, one of which we filed later that same day with regard to the Stalking Horse Motion (Dkt. No 44).

The Debtors have worked diligently to secure an agreement on a stalking horse that, if approved (whether to the stalking horse or a higher bidder), will satisfy all claims in full, with an expected closing prior to March 1, 2022. But FitzWalter, which has stated that paying it in full is "irrelevant," appears to have no interest in working anything out in a cooperative fashion.

Putting aside its motivation for adamantly opposing a full-pay solution, there are numerous substantive and procedural issues that plague FitzWalter's discovery tactics. We believe FitzWalter is not proceeding in good faith, but rather is engaged in an unnecessary fishing expedition that is designed solely to harass and to drain the estate of resources. This is particularly inappropriate here because the Debtors are responsible for paying FitzWalter's reasonable fees in connection with their final payoff, and any additional cost and delay will reduce the excess proceeds expected to be distributed to equity. Other parties in interest are bearing the cost of FitzWalter's actions.

As a threshold matter, it is patently improper to make arguments in a motion and **then** attempt to validate those arguments through discovery. FitzWalter's discovery requests could have been served on the Debtors weeks ago, before the Motion to Dismiss was filed. Moreover, FitzWalter served its discovery requests pursuant Bankruptcy Rules 2004, 7034, 9014, and FRCP 34, but had no authority to do so. FitzWalter has neither sought nor obtained a Bankruptcy Rule 2004 order. Bankruptcy Rule 7034 only applies in adversary proceedings, which this is not.

FitzWalter purports to rely on FRCP 34, which again only applies in adversary proceedings pursuant to Rule 7034, but failed to adhere to FRCP 34(b)(2)(A), which requires that "[t]he party to whom the request is directed must respond in writing within 30 days of being served." FitzWalter's discovery requests were served on January 3, 2022, and demanded that the Debtors produce all requested documents "no later than January 7, 2022," a mere four-day period.

FitzWalter's document requests, and its Rule 30(b)(6) topics that track the document requests, are virtually all irrelevant to the Stalking Horse Motion, which merely involves the approval of the bidding and sale procedures, as well as the relevant bid protections. It is not seeking substantive relief. If FitzWalter has issues with the bidding and sale procedures, it can raise them with the Debtors or file an objection. Typically in chapter 11, parties attempt to consensually resolve disputes before resorting to discovery and motion practice.

Regarding the Motion to Dismiss, we informed FitzWalter that we are willing to stipulate to the relevant facts, *e.g.*: (1) that the Debtors do not have substantial operations, (2) that the Debtors do not have employees, and (3) the location of the Debtors' U.S. assets. Instead of taking the Debtors up on this invitation, they served the Debtors with overbroad and irrelevant discovery requests (and corresponding 30(b)(6) topics), examples of which are below:

- All documents and communications regarding: the formation and corporate governance of the Debtors (Request 2); the location of the Debtors' assets in the

U.S. (Request 14); the Debtors' operations and employees (Request 13); and the payments/transfers of the Debtors within 1 year of the petition date (Request 19).
- All documents and communications regarding: the commencement of these Chapter 11 cases (Requests 3 and 4); and the first day declaration and the statements made therein (Request 17).
- All documents and communications regarding: the value and maintenance of the aircraft at issue (Requests 5, 10, and 16); the valuation and status of the lease assets at issue (Requests 6 and 7); and the "Excluded Assets" defined in the Stalking Horse Motion (Request 12).
- All documents and communications regarding: the lease termination notices at issue (Request 8); the continued use of the aircraft after the receipt of the termination notices (Request 15); and the Debtors' understanding of their rights and obligations under the transaction documents at issue (Request 18).
- All documents and communications: regarding FitzWalter's own sale process (Request 9); and with all potential bidders (Request 11).

The overbreadth of these requests is self-evident. Requesting production of "all documents and communications" about all of the above issues **within four days** is patently unreasonable. Additionally, things like the Debtors' recent transfers and payments, their corporate governance, and the value of the aircraft and leases at issue, all have no bearing on either of the Motions in light of the stalking horse offer that establishes a floor of nearly $210 million, which is $5 million more than all of the unsecured and secured claims against the Debtors. As to the Debtors' reasoning for filing these cases, they are willing to stipulate to their intent for doing so. The Debtors' understanding of their contractual rights and obligations is all privileged and the documents speak for themselves. The Debtors' communications with potential bidders are irrelevant and premature because the Debtors are seeking approval of an open and transparent auction and sale process.

As for FitzWalter's attempt to depose Mr. Ishikawa, it would be a complete waste of time and money because the Debtors are not relying on his testimony for the Stalking Horse Motion or in support of their opposition to the Motion to Dismiss. And, in fact, counsel for FitzWalter conceded prior to issuing their notice that Mr. Ishikawa could not be deposed in Japan on the timeframe they proposed. Yet they noticed him anyway, in a transparent ploy to harass the Debtors despite the Debtors' willingness to stipulate to facts and provide other witnesses if relevant topics are identified.

In short, FitzWalter is just trying to hinder and distract us during a time in which we seek to approve a deal that pays all parties in full. There is simply no good faith basis for any of this discovery.

Respectfully submitted,

TOGUT, SEGAL & SEGAL LLP
By:

/s/ Kyle J. Ortiz
Kyle J. Ortiz

cc: (by ECF):    All parties registered for ECF in these cases.