VEDDER PRICE P.C.
Michael J. Edelman
Jeremiah J. Vandermark
1633 Broadway, 31st Floor
New York, New York 10019
Telephone:    (212) 407-7700

*Counsel for JP Lease Products & Services Co. Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>JPA NO. 111 CO., LTD. and<br>JPA NO. 49 CO., LTD.*,*<br><br>            Debtors. [1] | Chapter 11<br><br>Case No.:  21-12075 (DSJ)<br><br>(Jointly Administered) |

# RESPONSE OF JP LEASE PRODUCT & SERVICES CO. (A) OBJECTING TO MOTION OF FITZWALTER CAPITAL PARTNERS (FINANCIAL TRADING) LIMITED TO DISMISS OR ABSTAIN FROM HEARING THESE CHAPTER 11 CASES [ECF No. 22] AND (B) SUPPORTING THE DEBTORS' MOTION TO APPROVE BIDDING PROCEDURES [ECF No. 21]

JP Lease Products & Services Co. Ltd. (the "***JP Lease***"), on behalf of various investors (collectively, the "***Investors***"), as the owner of each of JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.*,* the above-referenced debtors and debtors in possession (collectively, the "***Debtors***"), by its undersigned counsel, hereby submits this response (this "***Response***"):

(a)    supporting the *Debtors' Application for Entry of Orders: (I)(A) Approving Bidding Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Establishing Stalking Horse Bidders and Bid Protections; (C) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (D) Authorizing Enforcement Actions; (E) Scheduling an Auction and a Sale Hearing; and (F) Approving the Form and Manner of Notice Thereof and (II)(A) Approving the Sale of the Purchased Assets Free and Clear of All Liens, Claims, Interests and Encumbrances; and (B) Granting Related Relief*, dated December 31, 2021 [ECF No. 21] (the "***Bidding Procedures Motion***"),

---

[1]    The Debtors in these Chapter 11 cases are: JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is: Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100-0013.

(b)   pursuant to which the Debtors are seeking approval of bidding procedures to be used in connection with the binding stalking horse bid that enables the Debtors to repay **all** secured and unsecured creditors in full and obtain a return for JP Lease, on behalf of numerous investors holding beneficial interests in the Debtors; and

(b)   objecting to the *Motion of FitzWalter Capital Partners (Financial Trading) Limited to Dismiss or Abstain From Hearing These Chapter 11 Cases*, dated January 2, 2021 [Docket No. 22] (the "***Dismissal Motion***"). filed by FitzWalter Capital Partners (Financial Trading) Limited ("***FitzWalter Capital***"), pursuant to which Dismissal Motion FitzWalter Capital is seeking the dismissal of these Chapter 11 cases (even though the Debtors previously obtained a binding commitment by the stalking horse purchasers for a sales price sufficient to fully repay all secured debt owed to FitzWalter Capital.

In support of its Response, JP Lease respectfully states as follows:

## BACKGROUND

1.   On December 17, 2021, the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases").

2.   On December 31, 2021, the Debtors filed the Bidding Procedures Motion. As set forth in the motion, Capitol Reef LLC and Isle Royale LLC (collectively, the "***Stalking Horse Bidders***") entered into a binding term sheet (the "***Stalking Horse Term Sheet***") pursuant to which the Stalking Horse Bidders have committed to pay a purchase price sufficient to repay, among others, all secured obligations owed by the Debtors and provide for a return to JP Lease and the Investors.

3.   On January 2, 2022, FitzWalter Capital filed the Dismissal Motion. Pursuant to the Dismissal Motion, FitzWalter Capital is seeking an order from this Court dismissing the Debtors' Chapter 11 Cases pursuant to sections 109 and 1112 of the Bankruptcy Code or, alternatively, abstention pursuant to section 305 of the Bankruptcy Code.

2

**RESPONSE**

A.     **INCORPORATE ARGUMENTS OF DEBTORS IN DEBTORS' OBJECTION.**

4.     JP Lease hereby incorporates in full the facts and arguments set forth in the Debtors' Objection to the Motion of FitzWalter Capital Partners (Financial Trading) Limited to Dismiss or Abstain From Hearing These Chapter 11 Cases that is being filed concurrently herewith (the "***Debtors' Response***"). As set forth in the Debtors' Response:

- ***Chapter 11 Cases Maximize Value for All Creditors and Stakeholders:*** The Debtors' commenced these Chapter 11 Cases as the optimal means to maximize recovery for all creditors and stakeholders. Indeed, the Debtors' Chapter 11 Cases stopped FitzWalter Capital from effecting an enforcement action that would have caused all other senior secured lenders to receive only a small fraction of the amounts owed to them and would have resulted in total losses for all junior secured creditors, other creditors and stakeholders. Instead the Debtors obtained a binding commitment from a multibillion fund to purchase the Debtors' aircraft and leasing assets at a price sufficient to repay all creditors in full, with sufficient recoveries for distributions to JP Lease.

- ***Stop FitzWalter Capital from Using Predatory Enforcement Practices Designed Solely to Benefit Itself at Expense of All Other Creditors and Stakeholders.*** As detailed more fully below, FitzWalter Capital is pursuing an enforcement scheme designed to materially undervalue the Debtors' assets and, in so doing, is seeking to recover asset values solely for its own benefit. As evidenced by the Debtors' entry into the binding Stalking Horse Term Sheet within a week after the Petition Date, the value of the Debtors' assets substantially exceeds the amount of the Debtors' secured (senior and junior) obligations and the continuation of these Chapter 11 Cases will enable a full recovery by all creditors, with JP Lease and the Investors also obtaining a partial recovery.

- ***Chapter 11 Cases Filed by Debtors Is Paradigm of Proper Bankruptcy Case that Benefits Numerous Creditors and Stakeholders.*** As set forth in the Debtors' Response, these Chapter 11 Cases represent the typical Chapter 11 bankruptcy cases designed to benefit all parties in interest, instead of just the first creditor pursuing its enforcement actions.

- ***Debtors Retain Ownership of All of Collateral; FitzWalter Capital is Only Secured Lender.*** The primary argument raised by FitzWalter Capital appears to be that FitzWalter Capital is the absolute owner of the collateral assigned to FitzWalter Capital as "security". As set forth in the Debtors' Response, FitzWalter Capital's arguments have no factual or legal merit.

3

In sum, based upon all of the facts and law set forth in the Debtors' Response, the Dismissal Motion has no merit. Accordingly, JP Lease respectfully requests that this Court deny the Dismissal Motion in its entirety.

**B.    DEBTORS' SALE PROCESS ENSURES REPAYMENT IN FULL OF ALL CREDITORS AND ENABLES SOME RECOVERY FOR THE JP LEASE FOR THE BENEFIT OF THE INVESTORS.**

5.     Again, the Debtors' have commenced a sales process that is designed to maximize the value of the Debtors' assets for the benefit of all creditors and stakeholders. As the party-in-interest that holds the fulcrum rights at issue here – (a) who will only receive recoveries if the Chapter 11 Cases are maintained and the Debtors' efforts are protected and (b) who will receive no recovery if FitzWalter Capital is allowed to pursue its predatory enforcement actions – JP Lease strongly opposes FitzWalter Capital's Dismissal Motion and supports approval of the Debtors' Bidding Procedures Motion.

**C.    FITZWALTER CAPITAL ADMITS THAT IT IS USING PREDATORY ENFORCEMENT PRACTICES.**

6.     As admitted by FitzWalter Capital, it commenced a lightning fast enforcement scheme in which FitzWalter Capital sought to utilize predatory lending and enforcement practices to effect enforcement sales to an affiliated entity at values materially below the market value of the collateral. Indeed, the Debtors' procurement of the binding Stalking Horse Term Sheet within a week after the Petition Date of these Chapter 11 Cases at values well in excess of the amounts needed to repay all creditors in full and to obtain a recovery to JP Lease and the Investors is *prima facie* evidence of the value of the Debtors' assets. Specifically, FitzWalter Capital's scheme, as it has repeatedly admitted in among other places, the letters attached to the Debtors' Response and at the first day hearings, seeks to effect an enforcement scheme with the following characteristics:

- ***Terminating Security Agent and Choosing Itself as Replacement Security Agent:*** Shortly after purchasing a majority stake of the senior secured loans, FitzWalter Capital terminated and replaced the existing Security Agent and

4

- designated itself to hold such capacity. In this manner, FitzWalter Capital is able to pursue its enforcement scheme without any oversight from parties who would comply with existing laws and contractual restrictions.

- ***Seeking to Terminate Leasehold Rights***: At the same time, FitzWalter Capital moves quickly to terminate the aircraft leases. As set forth in the Loechteken Declaration (attached as Exhibit A to the Debtors' Response), such action in the current-Covid environment materially depresses the value of the subject aircraft -- as aircraft that are not subject to a lease have depressed values. This especially true in respect of the next generation widebodies (such as the A350s), as there is a glut of such aircraft which is likely to last for the next several years.

- ***Conducting Bifurcated Enforcement Action of (i) Leasehold Contract Rights & Claims and (ii) Aircraft:*** FitzWalter then seeks to effect a bifurcated enforcement process, in which it seeks to separately effect enforcement sales of (a) in one enforcement sale, the leasehold rights and the claims under such lease and (b) in another enforcement sale, the aircraft itself. As any industry participant knows, selling claims and leasehold rights separate and apart from the aircraft depresses the value of the leasehold and claim rights. That is because the future disposition of the aircraft can have a material impact upon the amount of lease termination claims. Accordingly, the value of the leasehold rights and claims will be, at a minimum, materially depressed when leasehold rights and claims are sold separate and apart from the associated aircraft.

- ***Providing No Notice of Enforcement Sale of Leasehold Contract Rights & Claims to Debtors (as Owners of Assets) or Other Parties in Interest:*** Then FitzWalter Capital seeks to sell the leasehold rights and claims in a secretive auction before moving to the sale of the aircraft. It conducts this sale without giving proper notice to the owners of such assets or to other parties who have an interest in such collateral.

- ***Nominating an Affiliated Party to Bid and Become the Owner of Such Assets Being Sold at Depressed Values:*** Then, as admitted by FitzWalter Capital, it has an entity apparently under common control, FitzWalter Aviation (Holdings) 2 Limited, bid on such assets so that it can become the owner of the collateral.

*See* Debtors' Response, at Exhibits B, C & D. In this manner, FitzWalter Capital took numerous steps to depress the value of the aircraft collateral, hold a secretive enforcement process that further depresses collateral value and to obtain ownership through another FitzWalter Capital entity – and, in so doing, secrete for itself a value at commercially unreasonable depressed

5

values. Such enforcement scheme is designed to harm all other parties with an interest in the collateral and the Debtors, including other senior secured creditors, all junior secured and unsecured creditors and the owners and investors of the collateral. This case is not an isolated incident of this scheme being effectuated by FitzWalter Capital, but is part of a broader pattern that it has effectuated against numerous aircraft financing and leasing transactions. Although not the subject of this action, such actions both violate numerous laws and contractual provisions. The fact that is important here is that the Debtors, through their own due diligence, uncovered this scheme and commenced the current Chapter 11 Cases to preserve the value for all parties in interest. This Court should not tolerate FitzWalter Capital's secured lending schemes in which it seeks to secrete to itself valuable assets owned by the Debtors and which lending practices are designed to harm all others.

7.    Furthermore, FitzWalter Capital has undertaken an apparent scorched earth litigation policy that is causing all parties to be materially harmed. Rather than celebrating that it will receive a full recovery of its principal, interest and reasonable out of pocket expenses – which is the full amount that any secured creditor is entitled to receive, FitzWalter Capital is seeking to use heavy handed litigation tactics to treat all other creditors and stakeholders unfairly and to pursue its *ultra vires* efforts to steal assets from their rightful owners. Again, this Court should not tolerate the machinations of a secured creditor who is unconstrained by the protections provided by the bankruptcy stay or by any legal and contractual restrictions.

## SUMMARY

8.    As the fulcrum party-in-interest in these cases – who will be receive some recovery from the continuation of the sales process and who will receive no recoveries if FitzWalter Capital is allowed to pursue is scheme, JP Lease urges this Court to (a) reject FitzWalter Capital's

Dismissal Motion in its entirety and (b) approve the Debtors' Bidding Procedures Motion. In doing so, the Debtors will be able to continue to protect the interests of all parties in interest and the value of the Debtors' assets can be maximized.

## CONCLUSION

For the foregoing reasons, JP Lease requests that this Court: (i) grant the relief requested in the Debtors' Bidding Procedures Motion; (ii) deny in its entirety the relief requested by FitzWalter Capital in its Dismissal Motion; and (iii) grant such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: New York, New York<br>January 13, 2022 | VEDDER PRICE P.C.<br><br>/s/ Michael J. Edelman<br>Michael J. Edelman (ME-6476)<br>Jeremiah Vandermark<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Telephone:  (212) 407-7700<br>E-Mail:  MJEdelman@VedderPrice.com<br>E-Mail:  JVandermark@VedderPrice.com<br><br>*Counsel for JP Lease Products & Services Co. Ltd.* |