**quinn emanuel** trial lawyers | austin

201 West 5th Street, 11th Floor, Austin, Texas 78701-2983 | TEL (737) 667-6100 FAX (737) 667-6110

WRITER'S DIRECT DIAL NO.
**(737) 667-6100**

WRITER'S EMAIL ADDRESS
**ashergriffin@quinnemanuel.com**

January 17, 2022

**VIA E-MAIL**
**JONES.CHAMBERS@NYSB.USCOURTS.GOV**

The Honorable David S. Jones
United States Bankruptcy Judge
Southern District of New York
One Bowling Green, Courtroom 501
New York, NY 10004-1408

Re:   *In re JPA*, Case No. 21-12075 (DSJ), Discovery Conference January 14, 2022 at 1:00 p.m.

Dear Chambers:

I write on behalf of FitzWalter Capital Partners (Financial Trading) Limited ("**FWCP**"), the largest secured creditor of the Debtors in the above-captioned case, and Security Agent for all secured creditors of the Debtors. This letter is in regards to the conference with Chambers that occurred on Friday, January 14, 2022 and our efforts over the weekend to obtain the discovery Your Honor directed the Debtors to provide. We apologize for writing to Your Honor on a holiday, and we wish the parties could have resolved these matters on their own, but efforts to negotiate with the Debtors have proven fruitless.

There are two issues about which FWCP requests Your Honor's guidance. The first is a continuation of the ongoing document discovery dispute. The second is a procedural matter where both parties request guidance regarding expert testimony.

*The Discovery Dispute*

Following the January 14 chambers conference where Your Honor directed the parties to further and confer on requested documents, on the morning of January 15, FWCP identified three limited categories of documents Debtors' needed to provide in advance of the hearing on FWCP's Motion to Dismiss and the Debtors' Bid Procedures Motion scheduled for January 20. These requests were narrowly tailored to address Your Honor's concerns. They are:

1. The Debtors' and their affiliates' prepetition communications after December 1, 2021

quinn emanuel urquhart & sullivan, llp
ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

    regarding the sale of the Lease Assets, including the prepetition bid procedures that the Debtors have challenged. This covers a 15-day period (December 2 to December 15);

2. The Debtors' and their affiliates' prepetition communications after December 1, 2021 with the Stalking Horse Bidders (or the Stalking Horse Bidders' parent company that apparently is funding the purchase price) and their advisors, or any other potential bidders for the aircraft and/or the Lease Assets; and

3. The Debtors' and their affiliates' communications with any parties, including the Stalking Horse Bidders and their parent, regarding the payment of the Breakup-Fee in the Bid Procedures Motion in the event that there is no overbid.

Each of these categories of information were addressed during the Friday, January 14, 2022 lengthy discovery conference. During the conference Your Honor directed the parties to confer about production of such materials, as the Debtors did not prevail on their blanket assertion of irrelevancy.

The next day, January 16, the Debtors wrote back, stating their position: "We've carefully considered your below requests and stand by our position that they seek discovery that is pertinent to neither the Stalking Horse Motion nor the Motion to Dismiss. Accordingly, *we will not be producing any documents* other than those related to the retainer, which we just produced" (emphasis added).[1] The parties then held a meet and confer video conference, and the Debtors confirmed their position.

The Debtors did not claim the three narrowed requests remained overly broad, or burdensome, or requested privileged communications. The Debtors also did not represent there were no such responsive documents. Instead, they simply reasserted the position that was raised, and rejected, at the discovery hearing, *i.e.*, that all three sets of documents are irrelevant to any and all issues raised in connection with both motions. It is, of course, well settled that "relevance" is any tendency to make a material fact more or less probable than it would be without the evidence. *See* Fed. R. Ev. 401. Further under the Federal Rules it is proper to seek discovery concerning documents and information that are reasonably calculated to lead to the discovery of admissible evidence.

Your Honor should (again) reject the Debtors' blanket refusal. Even had Debtors' absolutist position not already been rejected, it is meritless. Prepetition communications regarding the Lease Assets directly bear on both motions. If the Debtors had communications regarding whether the pending Lease Asset sale process was problematic, or whether the Debtors had any ownership interest in the Lease Assets, is relevant both to whether the Debtors' entire reason for commencing these cases was taken in good faith, and to whether the Bid Procedures Motion should be approved when the Stalking Horse Bidders unambiguously are seeking to buy the

---

[1] As Your Honor may recall, the Debtors were required to produce retention agreements without regard to any further meet and confer communications. Thus, the Debtors refused to produce any documents that Your Honor directed the parties to discuss this past weekend.

2

Lease Assets. If the Debtors were expressing views on these topics, it bears on both their good faith reasons for commencing the chapter 11 cases and their business judgment with respect to the Bid Procedures. Indeed, the Debtors' stated purpose of commencing these cases was to pursue a sale pursuant to Bankruptcy Code section 363(b), including the Lease Assets, and they have asserted that the process that had been undertaken by FWCP prepetition for the Lease Assets was somehow insufficient. Communications on whether the Debtors actually believed there were any concerns with the prepetition auction of the Lease Assets, or even raised the issue, is relevant (or reasonably calculated to lead to relevant evidence) of whether the reasons for commencing the cases were legitimate or were manufactured.

The second category is similar, but involves communications with the Stalking Horse and other bidders. If such bidders were expressing interest in bidding for the aircraft or the Lease Assets outside of bankruptcy, or were requiring bankruptcy court approval of the sale of the Lease Assets, that is relevant for both motions. For example, if a bidder stated that the Debtors did not own the Lease Assets but would be willing to support the Debtors' efforts to convince a bankruptcy court to try to authorize a sale of the Lease Assets, that would be relevant to both motions.

The third category is even more narrowly tailored, as it relates to a single issue—the triggers for the Break-Up Fee if there is no overbid. FWCP is entitled to know whether there were any communications over this issue, as it not only goes to the Debtors' business judgment requesting approval of this highly unusual provision, but whether it was a "benefit" conferred on the Stalking Horse Bidders that, if not approved, questions whether the Debtors should even be in bankruptcy. As the Debtors have made clear, it is the Stalking Horse bidders who have dictated timing, and it would not be surprising that no other bidder asked for this benefit.

As set forth above, the Debtors' position remains legally deficient and Your Honor should again direct the Debtors to produce. Indeed, the Debtors intend to have a witness testify to conversations with bidders but will not produce any documents concerning such communications, which is astonishing. But time is now short, and the Debtors likely will complain that FWCP is merely seeking delay, when that is categorically false. FWCP desires to see these cases dismissed as fast as possible.

FWCP requests that the hearings be continued, subject to Your Honor's schedule, six days, to January 26. No doubt the Debtors will claim delay, but this would be false—had the Debtors simply produced the documents so that they could be evaluated before the hearing (and depositions) there would be no need for any delay.

Importantly, and as further background, the Debtors will not be calling any witnesses to oppose the Motion to Dismiss.[2] And the only documentary evidence that they intend to submit are the

---

[2] The Debtors initially filed a declaration of Heinrich Loechteken in opposition to the Motion to Dismiss (Dkt. No. 53-1), but they confirmed at both the January 14 chambers conference and the "meet and confer" that occurred on January 16 that they will not have Mr. Loechteken testify in connection with the Motion to Dismiss.

3

three exhibits attached to their opposition filed on January 13.³ For the Bid Procedures Motion, the Debtors intend to have Mr. Loechteken testify about a subset of matters set forth in his declaration filed on January 10 (Dkt. No. 44), and they have now decided to call an English law expert in connection with their reply. While this suggests the Debtors will not dispute virtually any of the facts in dispute other than the Lease Assets' ownership issue, FWCP is rightly concerned the Debtors will *argue* factual contentions even though there is no evidentiary support for them. The Debtors also have agreed to have Mr. Loechteken be deposed this Wednesday, but will not produce any documents, including evidencing the communications he refers to in his declaration or the documents he relies on for his "opinions."

FWCP is entitled not to be sandbagged. Thus, the Debtors should be ordered to produce the three sets of documents, and the hearing should be continued six days. This will ensure a level playing field and compliance with the Federal Rules of Civil Procedure and fundamental fairness.

*Guidance on Expert Testimony*

During the meet and confer, an additional matter arose where both parties seek guidance. Both parties intend to have an English law expert testify. FWCP submitted the expert report of Akil Shah on January 13 in connection with its opposition to the Bid Procedures and in support of the Motion to Dismiss. The Debtors apparently will be submitting an expert report on January 18 in support of their reply regarding the Bid Procedures Motion (but not in connection with the Motion to Dismiss). The parties are trying to schedule depositions in this extraordinarily compressed time frame the Debtors have created.

The Debtors indicated that they intend to use the expert report as direct testimony. It is well settled in this district that expert reports are not evidence, *see Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (acknowledging that unsworn expert statements are inadmissible hearsay)**,** and FWCP is ready to have Mr. Shah provide direct testimony. Both parties presumably want efficiency for the upcoming hearing, and thus ask the Court for guidance on how best to present their cases.⁴

We appreciate Your Honor's time and again apologize for bringing these matters to Your Honor's attention on a holiday.

---

³ FWCP reserves the right to object to the admissibility of any testimony or exhibits.

⁴ While not an issue for this Court to rule on at this time, the Debtors requested for the first time on Sunday, January 16, to depose Mr. Shah, solely because FWCP desire to depose the Debtors' expert, who the Debtors first identified on January 16. This creates tremendous time pressure that the Debtors easily could have avoided, as the Debtors will not be providing their expert report until January 18, and Mr. Shah, who resides in the United Kingdom, will need time to review any opposing report. FWCP reserves all rights in this regard.

4

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Asher Griffin

AG:ED