# TOGUT, SEGAL & SEGAL LLP

ONE PENN PLAZA
NEW YORK, NEW YORK 10119
———
WWW.TOGUTLAWFIRM.COM
———
(212) 594-5000

KYLE J. ORTIZ
(212) 201-6582
KORTIZ@TEAMTOGUT.COM

January 17, 2022

**VIA EMAIL and ECF**
Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
One Bowling Green, New York, New York 10004-1408

> Re:    *In re JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.,*
> <u>Case No. 21-12075 (DSJ)</u>

To the Honorable David S. Jones:

Further to the Court's guidance and request at the January 14, 2022 discovery conference (the "<u>Discovery Conference</u>"), we write on behalf of JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd. (the "<u>Debtors</u>") to update the Court regarding the Debtors' discovery dispute with FitzWalter Capital Partners (Financial Trading) ("<u>FitzWalter</u>").

In compliance with the Court's instruction, the Debtors have produced to FitzWalter documents related to the Togut firm's retention, including the parties' engagement agreement.

In connection with the Court's other directive, that the parties meet and confer with respect to two issues, FitzWalter's request for (i) communications with the Stalking Horse bidders, as well as (ii) communications regarding the Debtors' views about FitzWalter's planned sale of the lease assets at issue (the "<u>Lease Assets</u>"), FitzWalter emailed the Debtors the following revised document requests on January 15, 2022:

- **<u>Request 1</u>**:  The Debtors' and their affiliates' prepetition communications after December 1, 2021 regarding the sale of the Lease Assets, including the bid procedures that the Debtors have challenged.

- **<u>Request 2</u>**:  The Debtors' and their affiliates' prepetition communications after December 1, 2021 with the Stalking Horse Bidders (or the undisclosed parent company) and their advisors or any other potential bidders for the aircraft and/or the Lease Assets.

- **<u>Request 3</u>**:  The Debtors' and their affiliates' communications with any parties, including the Stalking Horse Bidders and their parent, regarding the payment of the Breakup-Fee in the Bid Procedures Motion in the event that there is no overbid.

TOGUT, SEGAL & SEGAL LLP

Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
January 17, 2022
Page 2

After carefully considering these revised requests, the Debtors' position remains the same – that FitzWalter is insisting on discovery that is irrelevant to both the pending Motion to Dismiss and Stalking Horse Motion (together, the "Motions") and appears to be, at least in part, being promulgated for other motivations – *i.e.*, to pursue FitzWalter's campaign to harass and threaten the Debtors and their management and affiliates, as set forth in detail below. The parties are thus at another impasse after their second meet and confer on January 16, 2022.

With respect to Request 1, the Debtors have already agreed to stipulate that FitzWalter's plan to foreclose on the Lease Assets was the reason for their filing these cases. Therefore, prepetition communications on this issue simply have no bearing on the Motion to Dismiss. The Debtors had a good faith belief that the planned foreclosure would not maximize value and that the Debtors would be able to achieve a value-maximizing transaction for all parties in chapter 11.[1] The Debtors have followed through on those good faith intentions by filing the Stalking Horse Motion.

As to Request 2, the Debtors' prepetition communications with the Stalking Horse bidders, or any other potential bidders, are both irrelevant to the Motions (for the same reasons that Request 1 is irrelevant), and unnecessary. The bid procedures speak for themselves, and the Debtors are willing to stipulate that the credit bidding provision included within the Stalking Horse Motion was intended as a response to, and to safeguard against, Fitzwater's continued threats to bring litigation. The credit bidding provisions do not exclude credit bidding. Rather, they ensure that the Debtors have sufficient information to determine if a credit bid is valid and to consider whether there is cause under section 363(k) of the Bankruptcy Code to exclude a credit bid. To the extent FitzWalter is attempting to improve its credit bidding position by continuing to run up unnecessary fees, that is exactly the type of conduct the Debtors would seek to exclude from a credit bid under section 363(k) of the Bankruptcy Code.

Regarding Request 3, the Debtors' communications and negotiations regarding the Breakup-Fee are also completely irrelevant to the Motions. FitzWalter as the senior secured creditor, will be paid-in-full if the sale is approved. And, should the Court determine that the Debtors do not have an interest in the Lease Assets, the Stalking Horse will have an unsecured administrative expense claim subordinate to that of FitzWalter. The only parties impacted in that scenario will be unsecured creditors and the equity holders, who fully support the Stalking Horse Motion. More fundamentally, FitzWalter has already objected to the Breakup-Fee, and the Debtors will respond to those arguments in their reply. Both Request 2 and Request 3 are highly unusual in the

---

[1]   The only bidder the Debtors are aware was planning to bid in connection with the planned foreclosure was a newly created affiliate of FitzWalter. (*See* Ex. A at ¶ 6(B).) This fact, alone, demonstrates motivation to profit as a buyer as opposed to simply seek repayment as a lender.

TOGUT, SEGAL & SEGAL LLP

Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
January 17, 2022
Page 3

context of bidding procedures.  Typically, a party that has an issue with bidding procedures will propose revised language to a debtor and attempt to reach a commercial resolution, but discovery is not necessary to determine if procedures are appropriate (and was not needed for FitzWalter to make the arguments it made in its objection).

Further, it appears that these discovery requests, at bottom, are attempting to fish for documents in connection with FitzWalter's campaign to threaten and harass the Debtors, as well as their management and affiliates, with baseless claims for, *e.g.*, defamation and conspiracy, in violation of the automatic stay.  These stay violations are evidenced in the attached letters sent by FitzWalter Capital's counsel.  (*See* Letter, dated January 11, 2021 (the "Stay Violations Letter") from FitzWalter (through counsel) to (i) Heinrich Loechteken, (ii) JP Lease Products & Services Co. Ltd. and (iii) JLPS Ireland Limited (attached hereto as Ex. A); and the two Claim Letters (as defined in and annexed to the Stay Violations Letter, the "Letters Threatening English Suits" (attached hereto as Exs. B-C).)

Specifically, the Stay Violations Letter threatens, in pertinent part:

> [As set forth in the Letters Threatening English Suits,] [FitzWalter] has been assessing whether to issue an unlawful means conspiracy claim against JPL, as a result of its coordinated and unlawful campaign against [FitzWalter] and [FitzWalter's] commercial interests.

> Having considered the matter further, and by reference to the Claim Letters, we are now instructed to issue such a [lawsuit in the English Courts for unlawful means conspiracy] claim against JPL, JLPS, and JPA No. 49 Co., Ltd and JPA No. 111 Co., Ltd (together, the "Borrowers") as a result of the conduct highlighted in [the Letters Threatening English Suits.]

> We require each of JPL, JLPS, the Borrowers [JPA No. 49 Co., Ltd and JPA No. 111 Co., Ltd.] and Mr. Loechteken to confirm by 5pm (GMT) on 17 January 2022 that they accept liability for the damages caused to [FitzWalter] and FWA2 as a result of the claims detailed above (in an amount to be quantified and, if necessary, assessed in due course).

(Ex. A (Stay Violations Letter), at ¶¶ 3-4, 9-10.)

Such actions threatening the Debtors with liabilities and enforcement suits, and seeking to wrest control over the Debtors' property in foreign courts or through

TOGUT, SEGAL & SEGAL LLP

Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
January 17, 2022
Page 4

threatened actions, are express violations of the automatic stay. *See* 11 U.S.C § 362(a). And they make no sense. The Debtors have commenced a process that will pay FitzWalter and all secured and unsecured creditors in full. Secured lenders are usually happy to cooperate and hasten the effectuation of a sales and bankruptcy processes that will lead to their full repayment. It is therefore ironic that FitzWalter contends that the Debtors have acted in bad faith. It is FitzWalter, not the Debtors, who is acting outside the bounds of reasonableness and good faith. This Court should not tolerate FitzWalter's attempts to derail the Debtors' efforts to satisfy all creditors in full, and the Court should not permit any discovery designed to achieve that aim. And, the Debtors will be filing a stay violation motion if the above-described actions are not ceased immediately.

During our January 16 meet and confer, FitzWalter also asked, for the first time, that we produce all documents on which Heinrich Loechteken relied as part of his declaration supporting the Stalking Horse Motion. As we informed FitzWalter during that meet and confer, we are proffering as evidence at the January 20, 2022 hearing only Sections I (qualifications), II (sales/marketing efforts), and IV (proposed bidding procedures timeline) of that declaration, and Mr. Loechteken did not rely on any documents outside of those already accessible by FitzWalter to make the statements therein.

For the foregoing reasons, and those stated at the Discovery Conference, the Debtors' respectfully request that the Court deny all of FitzWalter's outstanding discovery requests in connection with the Motions.

Separately, both the Debtors and FitzWalter request the Court's guidance as to whether their respective English law expert reports should constitute direct testimony declarations, or whether the Court prefers live direct testimony from those witnesses at the January 20 hearing. The Debtors believe that the former would be more efficient, but defer to the Court's preference.

Respectfully Submitted,

TOGUT, SEGAL & SEGAL LLP
By:


   /s/ *Kyle J. Ortiz*

   Kyle J. Ortiz
   A Member of the Firm

cc: (by ECF): All parties registered for ECF