**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| JPA NO. 111 CO., LTD., and | : | Case No. 21–12075 (DSJ) |
| JPA NO. 49 CO., LTD., | : |  |
|  | : | (Jointly Administered) |
| Debtors.[1] | : |  |
|  | : |  |

## REPLY IN SUPPORT OF MOTION OF FITZWALTER CAPITAL PARTNERS (FINANCIAL TRADING) LIMITED TO DISMISS OR ABSTAIN FROM HEARING THESE CHAPTER 11 CASES

---

[1]    The Debtors in these Chapter 11 cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is:  Kasumigaseki Common Gate West Tower, 3–2–1 Kasumigaseki, Chiyoda–Ku, Tokyo 100–0013.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    A.    The Debtors Have Failed To Carry Their Burden Of Demonstrating That Each Had Property In The United States Prior To Filing The Petitions. ............... 3

        1.    The Debtors' Schedules Represent, Under Oath, That Debtors Have No Property In The United States. .................................................. 3

        2.    The Togut Retainers Do Not Establish Jurisdiction. ............................... 4

        3.    The Interests In The Mortgages Are Not Located In New York. .............. 6

    B.    The Debtors Filed These Chapter 11 Cases In Bad Faith ..................................... 8

    C.    The Debtors Do Nothing To Rebut FWCP's Section 305 Arguments. ............... 14

    D.    The Debtors' 'Ends Justify The Means' Arguments Fail Legally And Factually ........................................................................................................... 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*ABKCO Indus., Inc. v. Apple Films, Inc.*,
     39 N.Y.2d 670 (1976)................................................................................................. 6, 7

*Bankers Trust Co. v. Equitable Life Assur. Soc.*,
     19 N.Y.2d 552 (N.Y. 1967) ........................................................................................ 8

*Cheah v Equiticorp*
     [1992] 1 AC 472 (Privy Council) ................................................................................ 13

*Cukurova Finance International Limited v Alfa Telecom Turkey Limited*
     [2013] UKPC 20 ¶ 81 (Privy Council Appeal)............................................................ 13

*Entegra Power Grp. LLC v. Dewey & Leboeuf LLP (In re Dewey & Leboeuf LLP)*,
     493 B.R. 421 (Bankr. S.D.N.Y. 2013) ........................................................................ 4

*BEPCO, L.P. v. 15375 Mem'l Corp. (In re 15375 Mem'l Corp.)*,
     400 B.R. 420 (D. Del. 2009) ...............................................................................1, 11, 12

*Carbon Inv. Partners, LLC v. Bressler (In re Bressler)*,
     Nos. 18-13098 (MG), 19-01317 (MG),
     2020 Bankr. LEXIS 1232 (Bankr. S.D.N.Y. Apr. 29, 2020) ......................................4

*In re Aerovias Nacionales de Colombia S.A.*,
     303 B.R. 1 (Bankr. S.D.N.Y. 2003)............................................................................. 5

*In re Amaravathi Ltd. P'ship*,
     416 B.R. 618 (Bankr. S.D. Tex. 2009)........................................................................ 13

*In re Arcade Publ'g, Inc.*, 455 B.R. 373 (Bankr. S.D.N.Y. 2011) ............................................. 4

*In re B.C.I. Finances Pty Ltd. (In Liquidation), et al.*,
     583 B.R. 288 (Bankr. S.D.N.Y. 2018)......................................................................... 5

*In re Berau Capital Res. PTE Ltd.*,
     540 B.R. 80 (Bankr. S.D.N.Y. 2015).....................................................................6, 7, 8

*In re Brown*,
     734 F.2d 119 (2d Cir. 1984)........................................................................................ 13

*In re Cohoes Indus. Terminal, Inc.*,
     931 F.2d 222 (2d Cir. 1991)........................................................................................ 14

*In re Constable Plaza Assocs In., L.P.*,
     125 B.R. 98 (Bankr. S.D.N.Y. 1991)........................................................................... 13

*In re Crown Village Farm, LLC*,
  415 B.R. 86 (Bankr. D. Del. 2009)...................................................................10, 11, 12

*In re C-TC 9th Ave. Partnership*,
  113 F.3d 1304 (2d Cir. 1997)............................................................................. 9, 10

*In re Culligan Ltd.*,
  Case No. 20-12192 (JLG), 2021 WL 2787926 (Bankr. S.D.N.Y. July 2, 2021)............... 5

*In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*,
  607 B.R. 160 (Bankr. S.D.N.Y. 2019) .......................................................................... 5

*In re Global Ocean Carriers Ltd.*,
  251 B.R. 31 (Bankr. D.Del. 2000).............................................................................. 5

*In re Indep. Eng'g Co., Inc.*,
  232 B.R. 529, 532 (B.A.P. 1st Cir.), *aff'd*, 197 F.3d 13 (1st Cir. 1999)...................... 5, 6

*In re Michael S. Starbuck, Inc.*,
  14 B.R. 134 (Bankr. S.D.N.Y. 1981)......................................................................... 14

*In re Mocco*,
  176 B.R. 335 (Bankr. D.N.J. 1995) .......................................................................... 13

*In re Octaviar Administration Pty Ltd.*,
  511 B.R. 361 (Bankr. S.D.N.Y. 2014) ........................................................................ 5

*In re Princeton Overlook Joint Venture*,
  143 B.R. 625 (Bankr. D.N.J. 1992)........................................................................... 13

*In re Secured Equip. Tr. of E. Air Lines, Inc.*,
  153 B.R. 409 (Bankr. S.D.N.Y. 1993)......................................................................... 3

*In re Selectron Mgmt. Corp.*,
  2010 WL 3811863 (Bankr. E.D.N.Y. Sept. 27, 2010) ................................................ 14

*In re Soho 25 Retail, LLC*,
  2011 WL 1333084 (Bankr. S.D.N.Y., Mar. 31, 2011)................................................ 12

*In re Syndicom Corp.*,
  268 B.R. 26 (Bankr. S.D.N.Y. 2001)......................................................................... 8, 9

*Kreglinger v New Patagonia Meat and Cold Storage Ltd*
  [1914] AC 25 (House of Lords) ................................................................................ 13

*Reverend C.T. Walker Hous. Dev. Fund Corp. v. City of New York*,
  586 B.R. 534 (E.D.N.Y. 2018).................................................................................. 13

*Severenoe Sec. Corp. v. London & Lancashire Ins. Co.*,
  255 N.Y. 120 (1931)............................................................................................. 6, 8

*Taberna Preferred Funding IV, Ltd. v. Opportunities II Ltd. (In re Taberna Preferred
  Funding IV, Ltd.)*,
  594 B.R. 576 (Bankr. S.D.N.Y. 2018) ...................................................................... 9, 10

*Travelers Indemnity Company v. Grant Associates*,
    1991 WL 21228 (S.D.N.Y. Feb. 5, 1991) ..................................................................... 13

## **STATUTES**

11 U.S.C. § 363(b)(1) ......................................................................................................... 13

11 U.S.C. § 541(a) .............................................................................................................. 13

## **RULES**

Fed. R. Ev. 801 ..................................................................................................................... 5

FitzWalter Capital Partners (Financial Trading) Limited ("**FWCP**"), respectfully submits this Reply in support of its motion to dismiss (Dkt. No. 22) (the "**Motion**")[2] and in response to the Debtors' Objection to the Motion (Dkt. No. 53) (the "**Objection**").

## INTRODUCTION

These cases were commenced for a single purpose—to frustrate FWCP from exercising contractual remedies to cause the sale of the Lease Assets, property that no Debtor owns. The Debtors have no operations, no employees, and no cash flow. They are Japanese entities, with a single fiduciary, located in Japan, who has refused to sit for a deposition and will not be testifying in support of the Objection. To attempt to satisfy Bankruptcy Code section 109, JPL directly paid the retainers for proposed counsel for the Debtors (the "**Togut Retainers**") in clear and direct breach of the Proceeds Agreement. However, neither JPL's payments, nor the Mortgages evidence property located in the United States sufficient to satisfy section 109.

The Debtors want to distract from the deficiencies in their cases by asking this Court to focus on the Debtors' (false) claim that the Stalking Horse Bid will "result in the satisfaction of all claims in full (with interest) and return to equity," Obj. ¶ 1, while ignoring the applicable law, material facts, and misstatements and misconduct of Debtors (and their related entities) in pursuing these cases. This Court should reject the invitation and dismiss these matters. Courts have rejected the very argument that taking advantage of provisions of the Bankruptcy Code satisfies the "good faith" requirements. *See BEPCO, L.P. v. 15375 Mem'l Corp. (In re 15375 Mem'l Corp.)*, 400 B.R. 420, 428 (D. Del. 2009).

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Declaration of Andrew Gray in Support of the Motion (Dkt. No. 23) (the "**Gray Declaration**"), as applicable.

Even if the Debtors were right that the Stalking Horse Bid would pay all creditors in full (it will not), the ends do not justify the means. JPL and the Debtors seek to establish a tremendously problematic precedent, both as a matter of bankruptcy law and as a matter of aircraft financing. If accepted, every debtor (particularly every foreign debtor) facing the circumstances the Debtors faced could make the identical argument and could take the identical steps, effectively sidestepping their contractual obligations and depriving their creditors of the benefit of their bargain. But jurisdiction of bankruptcy courts matter, Bankruptcy Code section 305 matters, and the Second Circuit made clear that bankruptcy cases *must* be dismissed once the *C-TC* factors are satisfied. The Debtors have not carried their burden, thus these cases should be dismissed.

*First*, the Debtors do not satisfy their burden that either is eligible to be a debtor under Bankruptcy Code section 109. Indeed, the Debtors' own schedules, filed under penalty of perjury by their one fiduciary—whom they are insulating from examination—expressly state that neither Debtor has any property located in the United States. *See* Dkt. No. 19; Case No. 21-12076, Dkt. No. 6 (the "**Schedules**"). The sole (inadmissible hearsay) document the Debtors offer on this point—a record of a wire from JPL to counsel for the Debtors—does nothing to change this fact. While it suggests that JPL directly paid the retainers in clear breach of the Proceeds Agreement, it does not establish that the Debtors had a property interest in the retainers on the Petition Date. Moreover, the cases that Debtors cite to attempt to manufacture jurisdiction are inapposite.

*Second*, virtually every *C–TC* factor demands dismissal. The Debtors do not dispute that they are each a single purpose vehicle that owns a single asset; that each has one material unsecured creditor, which is their insider-parent company, JPL; that they have no cash flow or

2

employees; or that the Debtors filed these cases to prevent a secured creditor from enforcing its rights with respect to the Lease Assets (which are non-estate property). In fact, Debtors will not offer any evidence or testimony at all on any of these factors.

*Third*, there is nothing gained by the continuation of these cases and there is no independent benefit for the Debtors to be in bankruptcy in the United States. The sale of all the Debtors' assets can be conducted in its entirety outside of bankruptcy by the Security Agent, who is also the only party that can sell the Lease Assets. And there is no indication that the results of such a sale would be dissimilar or materially produce less value—no objecting creditor has suggested otherwise. Thus, even if this Court found that section 109 was satisfied, and even if the Debtors had commenced the cases in good faith, this Court should still abstain.

## ARGUMENT

### A.   The Debtors Have Failed To Carry Their Burden Of Demonstrating That Each Had Property In The United States Prior To Filing The Petitions.

The Debtors do not dispute that they have the burden to establish qualification under section 109 of the Bankruptcy Code. *In re Secured Equip. Tr. of E. Air Lines, Inc.*, 153 B.R. 409, 413 (Bankr. S.D.N.Y. 1993), *aff'd*, 38 F.3d 86 (2d Cir. 1994). The Debtors' attempt to satisfy section 109 based on (1) the Togut Retainers; and (2) the Mortgages, Obj. ¶¶ 11–18, fail because the scant evidence they rely upon is insufficient to establish property of the Debtors within the United States as of the Petition Date.

### 1.   The Debtors' Schedules Represent, Under Oath, That Debtors Have No Property In The United States.

The Debtors' efforts to satisfy section 109 fail out of the gate based on their own representations under oath in the Schedules. Bankruptcy Code section 521 mandates that a debtor disclose all property of the debtor as of the bankruptcy filing date. The Schedules are signed under penalty of perjury, and there can be severe consequences if a debtor does not

comply. *See Carbon Inv. Partners, LLC v. Bressler (In re Bressler)*, Nos. 18-13098 (MG), 19-01317 (MG), 2020 Bankr. LEXIS 1232, at *16 (Bankr. S.D.N.Y. Apr. 29, 2020).

Here, the Debtors each filed their Schedules on December 31, taking the full 14 days after the Petition Date. *See* Schedules 22. Each was signed under penalty of perjury by Mr. Ishikawa, the sole fiduciary for each Debtor.[3] *See id.* In each Schedule, each Debtor listed its assets, including where such property was located. *See id.* at 3–11. What each Debtor did ***not*** do was disclose any interest in the Togut Retainers or the Mortgages. *Id.* Thus, Debtors' own representations are fatal to their section 109 argument. *See In re Arcade Publ'g, Inc.*, 455 B.R. 373, 382 n.11 (Bankr. S.D.N.Y. 2011) ("Bankruptcy schedules, executed under penalty of perjury, when offered against a debtor are eligible for treatment as judicial admissions. The Second Circuit has recognized that 'absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission.'") (internal citations and quotation omitted).

### 2.    The Togut Retainers Do Not Establish Jurisdiction.

The Debtors cannot show that the Togut Retainers were property of either Debtor when the petitions were filed. *First,* the only "evidence" Debtors offer is a single, unauthenticated document purporting to show that JPL transferred funds to proposed counsel, with a notation containing a typographical error: "This retainer is [*sic*] Asset of Debtor, JPA No. 111 Co., Ltd." Obj., Ex. B. The Debtors have not cited any authority in support of their novel proposition that a SWIFT Report is a reliable basis upon which a court may reasonably determine that a security

---

[3]    It is stunning that the Debtors have refused to take steps to have Mr. Ishikawa travel to a location where he can be deposed. They knew from the moment that these cases were filed he would submit a declaration, was the only fiduciary of the Debtors, and lives in Japan, where it is effectively impossible to take a deposition on short notice. Given he runs an aircraft leasing company and caused the Debtors to seek refuge in a New York bankruptcy court, he should have gone to the United States or a US territory.

retainer was created.[4]  This document is not only inadmissible hearsay, *see* Fed. R. Ev. 801, it does not even establish that at the moment of the filings the Debtors had any property interest in the retainers, much less a property interest located in the United States.

*Second*, as the Debtors bear the burden of demonstrating the existence property in the United States, their failure to submit competent evidence on this point is fatal to this jurisdictional issue.  They decided not to seek to admit the Togut Retainers and thus cannot show that it created a security retainer.

*Third*, the Debtors cite a litany of cases for the general proposition that a "retainer paid by third party to debtors' attorney is property of debtors' estate." Obj. ¶ 13. These cases are inapposite.  In each of these cases there was no dispute about whether a security retainer was created.[5]  Two cases regarding payments by third parties bear further discussion.  The Debtors cite *Global Ocean* for the proposition that cash paid on behalf of a debtor nonetheless satisfies section 109.  *See* Obj. at ¶ 14.  But in *Global Ocean* the debtors paid the retainers.  *See Global*

---

[4]  The Debtors did not seek to offer into evidence any retention agreements, nor did they timely file an employment application.  Thus, to the extent that the Debtors attempt to argue that the terms of their retention agreement demonstrates a property interest, they violate the best evidence rule.  *See Entegra Power Grp. LLC v. Dewey & Leboeuf LLP (In re Dewey & Leboeuf LLP)*, 493 B.R. 421, 429 (Bankr. S.D.N.Y. 2013).  The Debtors expressly cited Judge Glenn's decision in *Entegra* and make the conclusory statement that their agreement with Togut created a security interest; yet they failed to submit the Togut engagement letter, the precise documentary evidence that this Court needs to determine whether the Debtors' possess a security interest in the Togut Retainer.  Neither the creditors nor this Court should be expected to ferret through the Debtors "coy" and "incomplete disclosures." *See In re Indep. Eng'g Co., Inc.*, 232 B.R. 529, 532 (B.A.P. 1st Cir.), *aff'd,* 197 F.3d 13 (1st Cir. 1999).

[5]  *See In re Indep. Eng'g Co., Inc.*, 232 B.R. at 533 ("It is undisputed that the $ 10,000 was a 'security' type retainer"); *In re Octaviar Administration Pty Ltd.*, 511 B.R. 361, 372 (Bankr. S.D.N.Y. 2014) (no dispute "that the funds in the Client Trust Account constitute property in the United States"); *In re Culligan Ltd.,* Case No. 20-12192, 2021 WL 2787926, * 9 (Bankr. S.D.N.Y. July 2, 2021) (same); *In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 166 (Bankr. S.D.N.Y. 2019) (security retainer);  *In re B.C.I. Finances Pty Ltd. (In Liquidation), et al.*, 583 B.R. 288, 293–296 (Bankr. S.D.N.Y. 2018) (finding that the debtors interest in a retainer satisfies section 109 without any discussion of whether the retainer constitutes a security retainer); *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 8 (Bankr. S.D.N.Y. 2003) (same); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31 (Bankr. D. Del. 2000) (holding that the debtors satisfied section 109 by owning U.S. bank accounts).

*Ocean*, 251 B.R. at 39 ("The Debtors also point to the existence of retainers **paid by the Debtors** to their bankruptcy counsel as evidence of the requisite property in the United States.") (emphasis added). Here, it is undisputed that Debtors **did not** pay the retainers.

The Debtors' also rely on *Independent Engineering*, *see* Obj. at ¶ 14, which concerned whether debtor's counsel improperly drew from a retainer without disclosing it to the court. The lawyer argued that because the funds had been advanced by a non-debtor, the funds were not property of the estate. *Indep. Eng'g*, 232 B.R. at 533. The court held that the debtor's estate had a property interest because under the terms of the engagement letter "the Debtor retained an interest in the unapplied retainer **upon the filing of the petition**, and the retainer became property of the Debtor's estate." *Id.* (emphasis added). Thus, the debtor gained a property interest *after* the case had been commenced, not before. In contrast, the question under section 109 is whether the debtor has property in the United States immediately before and when the petition is filed.

### 3.    The Interests In The Mortgages Are Not Located In New York.

The Debtors' reliance on the Mortgages is misplaced because their interests in the Mortgages are not located in New York—they are located in Japan. The location of intangible property rights is to be determined under applicable nonbankruptcy law. Under New York law, courts apply the *Severenoe* test to determine the situs of intangible property rights. *See, e.g.*, *In re Berau Capital Res. PTE Ltd.*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015). Depending on the circumstances of the case *sub judice*, the situs of intangible property interests may be "the domicile of the creditor; . . . the domicile of place of business of the debtor . . . [or] any place where the debtor can be found." *Berau*, 540 B.R. at 83 (quoting *Severenoe*, 255 N.Y. at 120).

A faithful application of the *Severenoe* test to the New York Mortgages reveals that Debtors' location determines the situs of their interests in the Mortgages under the facts of this case. *See ABKCO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675 (1976). Here, that

would be Japan.  The aircraft, which are the subject of the Mortgages, are not located in the United States and never have been.  The Debtors have no entitlements under the Mortgages; they are not owed any future performance and there is no performance that is past due.  All that remains is for the Debtors to perform *their* obligations under the Mortgages.  Accordingly, because the Debtors are not owed any performance, their location defines the situs of their interests in the mortgages, which is Japan.  *See id.* at 675.  This is demonstrated by the following facts:

 *First*, the Debtors are not owed any performance and thus cannot avail themselves of the forum selection clause in the Mortgages, as they have no breach of which to complain.  *Second*, nothing in the Mortgages suggests that New York is a convenient forum for the parties to engage in **bankruptcy** proceedings; at most, it suggests that New York is one forum where the Mortgagee may seek to enforce the Mortgages.  *Compare* Gray Decl. Exs. 11, 18 (Mortgages) § 6.1 (allowing enforcement actions in *any* country where the Mortgaged Property is located) *with* § 12(a) ("Any legal action … *may* be brought" in New York) (emphases added).  In *Berau,* a bankruptcy could proceed in New York because the parties expressly agreed that performance was to occur in New York.  540 B.R. at 83.  But the Mortgage does not require that any performance occur in New York.  *Third*, allowing the Debtors to claim a property interest in New York would promote injustice by compounding their contractual breaches.  By assenting to the Mortgages, the Debtors expressly agreed that "the execution . . . of the performance of its obligations under . . . this Agreement will not . . . (ii) conflict with, or result in any breach of any of the terms of, any agreement . . . to which it is a party. . . ." Gray Decl. Exs. 11, 18 (Mortgages) § 4.1(e).  This representation incorporates JPL's promise to ensure that its affiliates, *i.e.*, the Debtors, would not "file or join in any . . . other actions which my reasonably be expected to lead

to the bankruptcy or insolvency of the" the Debtors." *See* Gray Decl. Exs. 7, 14 (Proceeds Agreements) § 3.1. Allowing the Debtors to claim their interest is located in New York would not promote justice or convenience; it would enable the Debtors to breach their obligations under the Mortgages and Proceeds Agreements, and thereby deny the contracting parties the rights, duties, and reasonable expectations that they bargained for in good-faith more than two years before these Chapter 11 Cases. For these reasons, the Court should find that the Debtors' interest in the Mortgages exists in Japan.

The Debtors' talismanic invocation of *Berau* does not require a different conclusion. As Judge Glenn explained, *Severenoe* is a case-specific test and thus the holding in *Berau* does not answer the question of where the Debtors' interests are located. *See* 540 B.R. at 83 ("[D]etermination of situs for one purpose has no necessary bearing on its determination for another purpose. . . .") (quoting *Bankers Trust Co. v. Equitable Life Assur. Soc.*, 19 N.Y.2d 552, 227 (N.Y. 1967)). Moreover, the Mortgages are readily distinguishable from the indenture at issue in *Berau,* where Judge Glenn found that "numerous actions must be performed in New York City," such as appointing an agent of service in the state, under the terms of the indenture. *Id.* at 82; *see also id.* at n.2 (listing all acts "that can **only** be done at the Bank of New York Mellon in New York City) (emphasis added). In contrast, the Mortgages do not require that **any** particular performance occur in New York. Thus, the considerations of "convenience and justice," *Severenoe,* 255 N.Y. at 124, that animated the *Berau* holding support a finding that the Debtors' interests are located in Japan—not New York.

## B. The Debtors Filed These Chapter 11 Cases In Bad Faith.

The Debtors bear the burden of demonstrating that the Chapter 11 Cases were filed in good faith. *In re Syndicom Corp.*, 268 B.R. 26, 57 (Bankr. S.D.N.Y. 2001). Here, the Debtors

cannot meet that burden as there is no likelihood of a restructuring and all relevant *C-TC*[6] factors

indicate that the Debtors filed with subjective bad faith.

*First*, the Debtors do not attempt to address numerous *C-TC* factors, because they know

that they cannot:

- The Debtors do not dispute they are single-asset debtors (*see* Mot. at 16);
- The Debtors do not dispute they have no substantial unsecured creditors except their insider-parent JPL (*see id.* at 17);
- The Debtors do not dispute they have no going-forward cash flows (*see id.* at 20–21);
- The Debtors do not dispute they have no employees (*see id.* at 24); and
- The Debtors do not dispute they filed these Chapter 11 Cases to frustrate FWCP's legitimate efforts to exercise its rights with respect to the Lease Assets and other Collateral (*see id.* at 19–20; Obj. ¶¶ 22–23).

These facts support dismissal. The parties agree that the factors enunciated in *C-TC*

inform whether a filing should be dismissed for cause. The Debtors attempt to distinguish *C-TC*

by arguing that "the 'critical issue' is whether there exists a realistic chance of reorganization, as

opposed to where the petition can 'solely' be seen as a mere dilatory tactic." Obj. ¶ 28. Not so.

The Second Circuit has never stated that the possibility of successful reorganization outweighs

the other factors; to the contrary, no one factor is dispositive. *See Syndicom*, 268 B.R. at 51

n.109.

*Second*, this is a two party dispute. All the creditors—including the ones supporting the

proposed bankruptcy sale—are bound by the terms of the Proceeds Agreement which sets forth

"how losses will be distributed among the noteholders." *Taberna Preferred Funding IV, Ltd. v.*

*Opportunities II Ltd. (In re Taberna Preferred Funding IV, Ltd.)*, 594 B.R. 576, 605 (Bankr.

S.D.N.Y. 2018). This obviates the need to resort to the Bankruptcy Code. *See id.* At bottom,

---

[6]  *See In re C-TC 9th Ave. Partnership*, 113 F.3d 1304 (2d Cir. 1997) (reciting factors relevant to a finding of bad faith under 11 U.S.C. § 1112).

this is a dispute between parties that want to use Chapter 11 to circumvent the Proceeds Agreement and those that do not.

It is for this reason that the Debtors' attempt to distinguish *Taberna* misses the point. In finding that there was no need for the debtor to have instituted bankruptcy proceedings, the *Taberna* court reasoned that all the relevant parties had voluntarily negotiated for the terms that governed their rights upon a liquidation. *See id.* The court stated: "[h]ere, the alleged debtor faces no involuntary creditors and the rules for liquidating this single purpose, single use entity were set forth by contract. ***Everyone . . . agreed to those rules***." *Id.* (emphasis added). So too here. *Taberna* is particularly instructive because that case also concerned a special purpose entity debtor that had issued both senior and junior debt, and the party seeking to have the debtor be the subject of a chapter 11 advanced the Debtors' precise argument: that a bankruptcy sale will provide more value than the contractually provided for liquidation scheme to which the debtor and creditors had voluntarily assented. *Id.* at \*581–83. The *Taberna* court expressly addressed whether the case should be dismissed under section 1112 and answered yes—there is no reason that section 1112 should require a different logic in the context of a voluntary petition.

*Third*, the entire premise of the Debtors' scheme is to include the Lease Assets in their sale process,[7] even though the Debtors do not own those assets. The Debtors' claim they have "'clear, quick path out of chapter 11 that will allow the Debtor[s] to cure [their] monetary defaults,' and which appears to benefit all creditors." Obj. ¶ 27. This is patently untrue.

FWCP was conducting an efficient, orderly sale of its Lease Assets (with the intent of expeditiously disposing of the aircraft thereafter). The Debtors' filings did nothing but delay and

---

[7]   The sale contemplated by the Bid Procedures Motion does not purport to sell only the Debtors' equitable interest in the Lease Assets, it presumes to sell the Lease Assets in their entirety, and before all Loans have been paid in full. *See* Stalking Horse Purchase Agreement (Dkt. No. 58-5) (the "**APA**") § 2.01.

derail that process.  Two cases demonstrate when a case was commenced in good faith and when

was not.  The Objection cites *In re Crown Village Farm, LLC*, 415 B.R. 86 (Bankr. D. Del.

2009), but that case actually supports dismissal.  There, a debtor not only had secured debt in

default, but its parent had guaranteed the debt and, most importantly, two third parties claimed

interests in the real property the debtor owned.  *Id.* at 90.  The debtor spent months negotiating

with its secured lenders to facilitate a chapter 11 case with a stalking horse bid by the parent

company when the two other creditors filed lawsuits.  *Id.* at 90–91.  The court found that the

debtor *did not* commence its case as a litigation tactic to stall the litigation, the case was not a

two-party dispute, and eight of thirteen factors favored denial of the motion to dismiss, and based

on evidence the debtor presented, the debtor "had two choices, either abandon its sole asset or

seek to maximize the value of its asset through the bankruptcy process. In choosing the latter,

*Debtor* acted in good faith."  *Id.* at 93.

   *Crown Village* distinguished itself from *In re 15375 Memorial Corp.*  In the latter, the

district court reversed the denial of a motion to dismiss.  There, the debtors filed their cases as a

litigation tactic to stall a bad outcome.  The debtor also failed to prove that bankruptcy would

independently preserve or increase value: "the record does not support the conclusion that

Debtors' petitions have captured value for the estates that otherwise would have been lost.  There

is no indication that [specific assets] would not be just as valuable—and just as accessible—

outside of bankruptcy."  400 B.R. at 427.  The court expressly rejected the debtors' argument

that bankruptcy protections alone satisfy good faith.  "The court also notes that Debtors' desire to

avail themselves of bankruptcy protections cannot establish good faith."  *Id.* at 428.  Likewise,

the court rejected the argument that bankruptcy creates a more efficient means to monetize assets

because good precedes and is independent from what occurs in bankruptcy. "Debtors' seeking to efficiently distribute their assets cannot establish good faith." *Id.* at 429.

The facts here demonstrate this case is *15375 Memorial* and not *Crown Village*. This is a two-party dispute. The Debtors candidly admit they filed to stop the exercise of remedies. Obj. ¶¶ 22–23. And there is no evidence whatsoever that the Debtors' assets (and even the Lease Assets) cannot be sold outside of bankruptcy in a value-maximizing way.

Further, critically, the Debtors' "path out of chapter 11"—the sale envisioned in the Bid Procedures Motion—is fatally flawed because it requires the Debtors sell assets that they do not own. As set forth more fully in the Shah Opinion,[8] under controlling English law, the Debtors absolutely assigned all rights, title, and interest in the Lease Assets to the Security Agent pursuant to section 3.1 of the Security Assignment Agreements. Shah Op. §§ D–F.

The Debtors argue that the Security Assignment Agreements granted the Security Agent nothing more than a security interest in the Lease Assets. Obj. ¶ 43. But this argument is inconsistent with the plain language of the Security Assignment Agreements: the Debtors assigned the Lease Assets "**absolutely** by way of security." Gray Decl. Exs. 10, 17 (Security Assignment Agreements) § 3.1 (emphasis added).[9]

The Debtors next argue that they continue to have the "equity of redemption" in the Lease Assets, and that this equitable reversionary interest, which triggers upon full payment of the Loans, brings the entirety of the Lease Assets within the purview of section 541(a) and allows the Debtors to sell the Lease Assets. *See* Obj. ¶¶ 44–53. But the Debtors' right to redeem

---

[8]   The Shah Opinion is Exhibit 1 to the Declaration of Benjamin I Finestone submitted in support of FWCP's Objection to the Debtors' Bid Procedures Motion (Dkt. No. 57) (the "**Finestone Declaration**").

[9]   The Debtors vaguely cite to a provision from the case *Cukurova Finance International Limited v Alfa Telecom Turkey Limited* [2013] UKPC 20 ¶ 81 (Privy Council Appeal), which sets forth the unremarkable proposition that equitable redemption applies to security interests in real property and personal property.

does not mean that the entirety of the Lease Assets are property of the estate today, or were property of the Debtors when they commenced these cases. *See In re Soho 25 Retail, LLC*, 2011 WL 1333084, *8 (Bankr. S.D.N.Y., Mar. 31, 2011) (cited at Obj. ¶ 48) (holding that "***until the Mortgage and Note here are satisfied, the rents are not property of the Debtor's estate and cannot be used by the Debtor to fund a plan of reorganization***.") (emphasis added); *In re Brown*, 734 F.2d 119, 123 (2d Cir. 1984).

Any equitable interests the Debtors may retain in the Lease Assets do not permit Debtors to sell the Lease Assets before the Loans are paid in full, and Debtors' cases do not provide otherwise.[10]   The Debtors cannot sell what they do not own.   11 U.S.C. §§ 363(b)(1), 541(a); *Reverend C.T. Walker Hous. Dev. Fund Corp. v. City of New York*, 586 B.R. 534, 537 (E.D.N.Y. 2018 ("For the bankruptcy court to order a sale under 11 U.S.C. § 363, the Property must qualify as property of the estate under § 541.").

In contrast, nothing prevents FWCP from marketing, auctioning, and selling all of the assets listed in the APA outside of bankruptcy, including the Lease Assets, and without the overhang of $8.3 million in liquidated damages disguised as a break-up fee. *See* APA § 8.01 & Ex. A (definition of Trigger Event).   Nothing prevents JPL, any other creditor, or the Stalking

---

[10]    *See Cheah v Equiticorp* [1992] 1 AC 472, 476 (Privy Council) (holding that when a property is subject to two mortgages held by the same creditor, the mortgagor may not insist upon the order in which the mortgages are satisfied); *Kreglinger v New Patagonia Meat and Cold Storage Ltd* [1914] AC 25, 49 (House of Lords) (noting that there is no "equitable right to redeem without giving effect as far as possible to the terms of the bargain"); *In re Mocco*, 176 B.R. 335 (Bankr. D.N.J. 1995) (debtor "must fully satisfy the mortgagee's debt" to exercise its equitable interests in the rents); *Travelers Indemnity Company v. Grant Associates*, 1991 WL 21228 (S.D.N.Y. Feb. 5, 1991) (stating that "although absolutely assigned under Georgia law the rents nonetheless ***might*** be considered cash collateral"); *In re Amaravathi Ltd. P'ship*, 416 B.R. 618, 634 (Bankr. S.D. Tex. 2009) (holding that under Texas law governing the absolute assignments of rents, the debtors retained equitable title to post-petition rents paid); *In re Constable Plaza Assocs In., L.P.*, 125 B.R. 98, 1003 (Bankr. S.D.N.Y. 1991) (only debtor's "residual interest in the rents" constitutes property of the estate); *In re Princeton Overlook Joint Venture*, 143 B.R. 625, 633 n.14 (Bankr. D.N.J. 1992) (debtor had interest in post-petition rents because debtor was entitled to use the rents for maintenance, utilities, and expenses).

Horse Bidders, from participating in an auction process that the Proceeds Agreement already contemplates. And there is no evidence demonstrating that any value would be lost via a sale that took place outside of bankruptcy. In short, continued oversight of this Court is unnecessary, as there is "an alternative means of achieving an equitable distribution of assets." *In re Selectron Mgmt. Corp.*, 2010 WL 3811863, at *5 (Bankr. E.D.N.Y. Sept. 27, 2010).

The Debtors proposed sale is doomed to fail, thus the Debtors' utilization of the Bankruptcy Code amounts to nothing more than a bald attempt to prevent FWCP from exercising its rights and to delay the disposition of the Collateral in accordance with the Proceeds Agreement governing the enforcement of Collateral and distribution of proceeds by the Security Agent. This is a clear abuse of the Bankruptcy Code and the judicial purpose of the bankruptcy courts. *See In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991).

### C. The Debtors Do Nothing To Rebut FWCP's Section 305 Arguments.

The Debtors argue that "dismissal or abstention of these cases would be in only one creditor's interest, FitzWalter." Obj. ¶ 65. Quite the contrary. Continuing these Chapter 11 Cases while the Debtors pursue a sale process that cannot be confirmed and the Aircraft lose value benefits nobody. ***Every stakeholder*** already agreed in advance to a sale process, as confirmed by the terms of the Proceeds Agreement. Further, JPL expressly covenanted ***never*** to cause the Debtors to file for bankruptcy, meaning that abstention will actually validate contractual obligations, whereas continuing these cases will only reward contractual breaches. Moreover, there is another mechanism in place that will "allow for the efficient and equitable distribution of [the Debtors'] assets." *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981).

Finally, abstention makes sense because nothing suggests that the United States Bankruptcy Code would serve these entities. Each Debtor has no employees, no operations, and

has no intention of conducting further business. They have no presence in the United States, but exist solely as a well-established means of financing the acquisition and subsequent leasing of commercial aircraft. Abstention is an appropriate result even if this Court has jurisdiction and otherwise holds that these cases were commenced in good faith.

      **D.**      **The Debtors' 'Ends Justify The Means' Arguments Fail Legally And Factually.**

Debtors' repeatedly assert the false claim that the Stalking Horse Bid will "result in the satisfaction of all claims in full (with interest) and return to equity." Obj. ¶ 1. This argument is legally and factually improper. The lack of jurisdiction is a threshold issue that cannot be ignored. The fact that the Debtors do not own the Lease Assets they seek to sell negates, as a matter of law, the argument that this Court should ignore the legal defects within their cases and permit the proposed sale. Moreover, even if the Court were convinced of these arguments, the Debtors' representation that the approximately $207 million in Stalking Horse Bid is sufficient to "satisfy all claims" is factually incorrect. As addressed more fully in FWCP's Omnibus Reply, the amount of the Secured Obligations that must be paid includes amounts owed to address the numerous contractual breaches and tortious conduct. Given the fact that the final amounts owed under the unambiguous definition of Secured Obligations are subject to ongoing disputes, it is impossible for the Debtors to represent that the currently referenced amounts are sufficient to satisfy all claims. This Court should reject Debtors' invitation and dismiss these matters.

## CONCLUSION

For the foregoing reasons, FWCP requests that the Court grant the Motion and dismiss these Chapter 11 Cases or abstain from hearing them.

Dated: January 18, 2021

Respectfully submitted,

/s/ *Benjamin I. Finestone*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Benjamin I. Finestone
Zachary R. Russell
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849–7000
Facsimile: (212) 849–7100
benjaminfinestone@quinnemanuel.com
zacharyrussell@quinnemanuel.com

Justin C. Griffin (*pro hac vice* admitted)
Eric Winston (*pro hac vice* admitted)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443–3000
Facsimile: (213) 443–3100
justingriffin@quinnemanuel.com
ericwinston@quinnemanuel.com

Asher B. Griffin (*pro hac vice* admitted)
300 West 6th Street, Suite 2010
Austin, TX 78710
Telephone: (737) 667–6100
Facsimile: (737) 667–6110
ashergriffin@quinnemanuel.com

*Counsel to FitzWalter Capital Partners (Financial
Trading) Limited*