# EXHIBIT "A"

**Procedures for the Sale of Relevant Assigned Property relating to two Airbus A350 Aircraft**

Set forth herein are the procedures for the security enforcement sale of certain rights and claims under operating lease agreements relating to: (a) the Airbus A350-900 aircraft bearing manufacturer's serial number 067 ("**MSN 067**") and (b) the Airbus A350-941 aircraft bearing manufacturer's serial number 173 ("**MSN 173**", and together with MSN 067, the "**Aircraft**").

In respect of:

(i)   MSN 067, JPA No. 111 Co., Ltd. ("**MSN 067 Owner**") entered into an aircraft lease agreement dated 19 November 2018 (the "**MSN 067 Lease**") with JLPS Leasing Draco Limited (formerly known as DAE Leasing (Ireland) 12 Limited), as lessee (the "**MSN 067 Lessee**"); and

(ii)  MSN 173, JPA No. 49 Co., Ltd. ("**MSN 173 Owner**") entered into an aircraft lease agreement dated 29 December 2017 (the "**MSN 173 Lease**") with JLPS Leasing Uranus Limited (formerly known as PAAL Uranus Company Limited), as lessee (the "**MSN 173 Lessee**").

The "**Owners**" means each of the MSN 067 Owner and MSN 173 Owner. The "**Leases**" means each of the MSN 067 Lease and the MSN 173 Lease. The "**Lessees**" means each of the MSN 067 Lessee and the MSN 173 Lessee.

In addition, each Owner has entered into a separate deed of security agreement (each a "**Borrower Security Agreement**") in favour of FitzWalter Capital Partners (Financial Trading) Limited (as successor security agent under the corresponding Facility Agreements (as defined below) and corresponding Proceeds Agreement (as described in the Facility Agreements)) (each, a "**Security Agent**"), assigning to the Security Agent, *inter alia*, first-ranking security over:

(a)   the relevant Lease and all rights, title and interest of such Owner thereunder; and

(b)   the relevant Intermediate Lessor Security Agreement (as defined below) and all rights of such Owner thereunder,

but excluding in each case any Excepted Payments (described below). Each Borrower Security Agreement was entered into to secure, *inter alia*:

(a)   in respect of MSN 067, the MSN 067 Owner's obligations under a senior facility agreement entered into in respect of the financing of the MSN 067 Aircraft, dated 6 November 2018; and

(b)   in respect of MSN 173, the MSN 173 the Owner's obligations under a senior facility agreement entered into in respect of the financing of the MSN 173 Aircraft, dated 22 December 2017.

In respect of MSN 067, the senior facility agreement in respect of the Senior Loan (as defined the MSN 067 Proceeds Agreement) was entered into between, among others, the MSN 067 Owner as borrower, the financial institutions party thereto as lenders, Crédit Agricole Corporate and Investment Bank as senior agent (the "**MSN 067 Senior Agent**") and the Security Agent (as amended and modified from time to time, the "**MSN 067 Senior Facility Agreement**") and a facility agreement in respect of the Junior Loan (as defined in the MSN 067 Proceeds Agreement) was entered into between, among others, the MSN 067 Owner as borrower, the financial institutions party thereto as lenders, Crédit Agricole Corporate and Investment Bank as junior agent (the "**MSN 067 Junior Agent**") and the Security Agent (as amended and modified from time to time, the "**MSN 067 Junior Facility Agreement**"**,** and together with the MSN 067 Senior Facility Agreement, the "**MSN 067 Facility Agreements**"). The MSN 067 Owner, certain financial institutions listed therein as lenders, the MSN 067 Senior Agent, the MSN 067 Junior Agent and the Security Agent, among others, entered into a proceeds agreement dated 6 November 2018 (the "**MSN 067 Proceeds Agreement**").

In respect of MSN 173, the facility agreement in respect of the Senior Loan (as defined the MSN 173 Proceeds Agreement) was entered into between, among others, the MSN 173 Owner as borrower, the financial institutions party thereto as lenders, Crédit Agricole Corporate and Investment Bank as senior

agent (the "*MSN 173 Senior Agent*") and the Security Agent (as amended and modified from time to time, the "*MSN 173 Senior Facility Agreement*") and a facility agreement in respect of the Junior Loan (as defined in the MSN 173 Proceeds Agreement) was entered into between, among others, the MSN 173 Owner as borrower, the financial institutions party thereto as lenders, Crédit Agricole Corporate and Investment Bank as junior agent (the "*MSN 173 Junior Agent*") and the Security Agent (as amended and modified from time to time, the "*MSN 173 Junior Facility Agreement*"**,** and together with the MSN 173 Senior Facility Agreement, the "*MSN 173 Facility Agreements*") (the MSN 173 Facility Agreements together with the MSN 067 Facility Agreements, the "*Facility Agreements*" and each a "*Facility Agreement*"). The MSN 173 Owner, certain financial institutions listed therein as lenders, the MSN 173 Senior Agent, the MSN 173 Junior Agent and the Security Agent, among others, entered into a proceeds agreement dated 22 December 2017 (the "*MSN 173 Proceeds Agreement*" and together with the MSN 067 Proceeds Agreement, the "*Proceeds Agreements*" and each a "*Proceeds Agreement*").

Each Owner has entered into a separate aircraft mortgage and security agreement (each, a "*New York Law Mortgage*") in favour of the Security Agent, and dated 21 November 2018 (in the case of MSN 067) and 29 December 2017 (in the case of MSN 173), pursuant to which such Owner granted a security interest in the Aircraft to the Security Agent.

Each Lessee has also entered into a separate deed of security agreement (each, an "*Intermediate Lessor Security Agreement*") in favour of the relevant Owner assigning, *inter alia*, the rights of the Lessee under the (now terminated) sub-lease with Vietnam Airlines JSC ("**VNA**") as described more particularly therein (the "*Sub-Leases*" and each a "*Sub-Lease*") and in and to certain insurances.

The financing transaction contemplated by:

(a)    the MSN 067 Facility Agreements, the MSN 067 Proceeds Agreement, the corresponding Borrower Security Agreement; the corresponding Intermediate Lessor Security Agreement and related security documents is hereby referred to as the "*MSN 067 Financing Transaction*"; and

(b)    the MSN 173 Facility Agreements, the MSN 173 Proceeds Agreement, the corresponding Borrower Security Agreement; the corresponding Intermediate Lessor Security Agreement and related security documents is hereby referred to as the "*MSN 173 Financing Transaction*" and together with the MSN 067 Financing Transaction, the "*Financing Transactions*".

The leasing of the Aircraft under each Lease and Sub-Lease has been terminated by notices issued to the corresponding Lessee and VNA on 1 December 2021 (the "*Termination Date*"), as a result of payment events of default which have occurred and are continuing under the relevant Lease and Sub-Lease.

The Security Agent (in respect of each Financing Transaction) has appointed Airborne Capital Limited (the "*Agent*") as sole sales agent pursuant to the terms of a Remarketing Agreement dated 10 December 2021 on behalf of the Security Agent.

Further details of the content and scope of the Relevant Assigned Property are included in the table below:

| Property being sold (the "**Relevant Assigned Property**") | Subject to Exclusions 1 and 2 below, the following (the "**Relevant Assigned Property**") constitutes the collateral to be sold, in respect of each Aircraft, pursuant to the sale contemplated by these procedures: <br><br> (i) all of the rights, title and interest of the Security Agent in, to and under: |
|---|---|

AMERICAS 109586772

|  |  |  |
|---|---|---|
|  |  | a. the Assigned Property (as defined in the Borrower Security Agreement) assigned to the Security Agent under the Borrower Security Agreement (including, without limitation, any rights, title and interest of the Owner in and to the applicable Intermediate Lessor Security Agreement and any "Assigned Property" (as defined in the Intermediate Lessor Security Agreement) assigned to such Owner thereunder); and |
|  |  | b. the other Security Documents (as defined in the Leases) (other than the Mortgages (as defined in the Leases), the Airframe Warranties Agreement (as defined in the Proceeds Agreement), the Replacement Controlling Party Notice (as defined in the Proceeds Agreement) and the Engine Warranties Agreement (as defined in the Proceeds Agreement)) (the Mortgages, the Airframe Warranties Agreement, the Replacement Controlling Party Notice and the Engine Warranties Agreement, together, the "**Excluded Security Documents**") including any proceeds thereof |
|  | (ii) | any assets the subject of the security interest created by the other Security Documents (other than the Excluded Security Documents), including certain charged assets. |
|  | \multicolumn{2}{l|}{**Exclusion 1**: The Relevant Assigned Property excludes the following "**Aircraft Excluded Property**": } |
|  | \multicolumn{2}{l|}{(a) the Aircraft, including the Airframe, the Engines and Parts and any Aircraft Documents and Technical Records in respect of the foregoing, in each case as defined in the New York Law Mortgage (together, the "*Aircraft Assets*"); } |
|  | \multicolumn{2}{l|}{(b) any bill of sale relating to the Aircraft Assets; } |
|  | \multicolumn{2}{l|}{(c) the Warranties (as defined in the Airframe Warranties Agreement) and all rights in respect thereof under the Airframe Warranties Agreement; and } |
|  | \multicolumn{2}{l|}{(d) the Warranties (as defined in the Engine Warranties Agreement) and all rights in respect thereof under the Engine Warranties Agreement. } |
|  | \multicolumn{2}{l|}{**Exclusion 2**: The Relevant Assigned Property excludes any "*Excepted Payments*" (as such term is defined in the Proceeds Agreement) which were excluded from the property assigned under the Borrower Security Agreement and Intermediate Lessor Security Agreement.  Further information regarding such Excepted Payments is contained in the Proceeds Agreement, a version of which is available in the Data Room (as defined below) upon execution of a confidentiality agreement. } |

| Confidentiality | Each Lease, each Borrower Security Agreement and the related operative documents are subject to confidentiality restrictions. Potential Bidders will be able to obtain copies of each Lease, each Borrower Security Agreement and certain related documents after execution of a confidentiality agreement in a form that may be obtained from the Agent. |
|---|---|
| Enforcement | Each Potential Bidder (as defined below) for the Relevant Assigned Property should evaluate for itself what steps may need to be taken to realize upon the claims included therein.<br><br>Potential Bidders may have difficulty quantifying and making claims, and enforcing rights; see the "*Significant Disclosures*" section below. |

*Description of procedures:*

| Notice / Marketing | The Agent will be marketing the Relevant Assigned Property from 10 December, 2021 until a sale has been concluded. All decisions with respect to notice and marketing will be made by the Security Agent in its discretion. |
|---|---|
| Key Dates for the Sale Process | 10 December, 2021: Commencement of process; Data Room (as defined below) open to Potential Bidders (as defined below) who have executed confidentiality agreements.<br><br>15 December, 2021 at 5:00 p.m. (Eastern time): Deadline for Potential Bidders to (a) contact the Agent and receive copies of these procedures and (b) execute confidentiality agreements and obtain access to the Data Room and the form of the bid letter (the "**Form Bid Letter**").<br><br>17 December, 2021 at 4:00 p.m. (Eastern time): Bid deadline – due date for bids, Deposits (as defined below) and executed Claims Assignment Agreement (as defined below).<br><br>17 December, 2021 at 5:00 p.m. (Eastern time): The Agent to inform Qualified Bidders (as defined below) of the Successful Bid (as defined below) for the Relevant Assigned Property in respect of each Aircraft, or that the Bid Deadline will be extended and a subsequent round of bidding requested, or that the sale process is cancelled.<br><br>17 December,2021 at 12:00 midnight (Eastern time): Deadline for Successful Bidder for the Relevant Assigned Property in respect of each Aircraft to fund the Purchase Price (less any Deposit previously paid and taking into account any credit bid or netting in the case of the Majority Senior Secured Party), which may be satisfied by providing evidence satisfactory to the Security Agent of funds transfer being initiated.<br><br>20 December, 2021 at 12:00 noon (Eastern time): closing date. |
| Potential Bidders | To participate in the bidding process for the Relevant Assigned Property, each interested entity must deliver or have previously |

4

UK-#390678839-v6

AMERICAS 109586772

| | |
|---|---|
| | delivered to the Security Agent and the Agent (each entity that does so, a "**Potential Bidder**"): |
| | (i) a confidentiality agreement in form and substance acceptable to the Security Agent and the Agent executed by the Potential Bidder and, in the event the Potential Bidder does not have a net worth of at least $10,000,000, a parent company of such Potential Bidder having such net worth; and |
| | (ii) any evidence the Security Agent or the Agent may reasonably request to evaluate the Potential Bidder's fitness to participate in the bidding process and/or ability to timely acquire the Relevant Assigned Property. |
| Data Room Access | The Agent will provide all Potential Bidders who have executed a confidentiality agreement with access to a confidential electronic data room containing copies of each Lease, each Borrower Security Agreement, each Intermediate Lessor Security Agreement and certain other security documents and related documents, having due regard to confidentiality limitations (the "**Data Room**"). |
| Netting of Purchase Price | FitzWalter Capital Partners (Financial Trading) Limited (in its capacity as Lender and/or Hedge Counterparty and Majority Senior Secured Party under each of the MSN 067 Facility Agreements and/or the MSN 173 Facility Agreements and the corresponding Proceeds Agreement, the "**Majority Senior Secured Party**") or any of its affiliates will be allowed to submit a bid for the Relevant Assigned Property in respect of any Aircraft so long as it otherwise satisfies the requirements of a Qualified Bidder.  If the Majority Senior Secured Party or any of its affiliates is the Successful Bidder for the Relevant Assigned Property in respect of an Aircraft, (a) it may credit bid all or any portion of the secured obligations owed to the Majority Senior Secured Party under the corresponding Facility Agreement and/or (b) its bid may (at its discretion) be subject to netting on account of any and all secured obligations owed to the Majority Senior Secured Party under the corresponding Facility Agreement. |
| Bid Requirements | A Potential Bidder that submits a bid in writing (substantially in the form of the Form Bid Letter) and satisfies each of the following requirements, as determined by the Security Agent (with the assistance of the Agent), shall constitute a "*Qualified Bidder*," and its bid a "*Qualified Bid*." |
| | (i) <u>Relevant Assigned Property</u>.  Each bid may be for the Relevant Assigned Property in respect of one or both Aircraft, and must specify which Aircraft such bid relates to. |
| | (ii) <u>Purchase Price</u>.  Each bid must clearly set forth the total cash purchase price to be paid by the Potential Bidder for the Relevant Assigned Property at closing (the "*Purchase Price*") and must indicate the portion of the Purchase Price that is attributable to each Financing Transaction individually. |
| | (iii) <u>Deposit</u>.  Each bid must be accompanied by a cash deposit in an amount equal to $500,000 (the "*Deposit*").  The |

5

UK-#390678839-v6

AMERICAS 109586772

|  |  | Deposit will be held by the Security Agent in the Deposit Account (as defined below). Any interest that accrues on the Deposit shall be for the account of the Security Agent. The Deposit for each bid must be received by the Security Agent no later than the Bid Deadline (as defined below). |
|---|---|---|
|  | (iv) | Committed Financing. Each bid must be accompanied by evidence of the Qualified Bidder's capacity to consummate the purchase set forth in its bid with cash on hand (taking into account any netting of the Purchase Price in the case of the Majority Senior Secured Party) or include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Security Agent and the Agent, that demonstrates that the Qualified Bidder has received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price. Such funding commitments or other financing must be binding and unconditional and must not be subject to any internal approvals, syndication requirements, diligence, credit committee approvals or other similar conditions, and shall have covenants and terms reasonably acceptable to the Security Agent. |
|  | (v) | Contingencies; No Diligence Outs. A bid shall not be conditioned on internal approval or the outcome or review of due diligence or any other condition (including any condition precedent or condition subsequent) and for avoidance of doubt shall not require any physical inspections of the Aircraft or the related records or any review of each Lease, the Facility Agreements, each Borrower Security Agreement, each Intermediate Lessor Security Agreement or the related security documents and other documents. |
|  | (vi) | Time Frame for Closing. Each bid must be capable of being consummated, if selected as the Successful Bid (as defined below), by no later than 12:00pm noon (Eastern Time) on 20 December, 2021. |
|  | (vii) | Binding and Irrevocable. Each bid shall be binding, unconditional and irrevocable unless and until the Security Agent or the Agent (acting on the instructions of the Security Agent) notifies such Qualified Bidder in writing that its bid has not been selected as the Successful Bid. |
|  | (viii) | Expenses; Disclaimer of Fees. Each bid must expressly disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder will be permitted to request at any time a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its bid is agreeing to |

6

UK-#390678839-v6

AMERICAS 109586772

|   |   |   |
|---|---|---|
|   |   | refrain from and waive any assertion or request for reimbursement on any basis. |
|   | (ix) | Waiver of Claims. Each bid must be accompanied by a waiver from the Qualified Bidder, to the fullest extent permitted by applicable law, of any and all rights, remedies and claims it would, could or may have against the Security Agent, the Agent or the Majority Senior Secured Party or any of their respective officers, directors, members, shareholders, stockholders, investors, general partners, limited partners, agents, employees, representatives or advisors (the "***Covered Parties***") arising out of, relating to or in any manner connected with the bid and/or sale process for the Relevant Assigned Property or the acquisition by any party of the Relevant Assigned Property, or any related transactions, including without limitation by reason of the information made available in the Data Room or otherwise (including, without limitation, any material misstatement in, or material omission from, such information) or any material misstatement in, or material omission from, any relevant publicly available information. |
|   | (x) | Authorization. Each bid must contain a representation that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid. The Security Agent or the Agent may request any evidence they deem necessary to evaluate the same. |
|   | (xi) | As-Is, Where-Is. Each bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence as it deems necessary prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any information made available to it in the Data Room or otherwise; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Relevant Assigned Property or the accuracy or completeness of any information provided in connection therewith or herein or in relation to the sale process or the transactions contemplated herein. |
|   | (xii) | Adherence to Sales Procedures. By submitting a bid, each Qualified Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these procedures and after the sale of the Relevant Assigned Property agrees not to submit a further bid or seek to reopen or interfere with the sale process. |
|   | (xiii) | Government Approvals. Each bid must not be subject to any governmental, licensing, regulatory, or other |

7

| | | |
|---|---|---|
| | | approvals or consents, including any third party approvals. Any such approvals or consents which are required must have been obtained prior to submission of such bid. If any such approvals or consents cease at any time to be in full force and effect in accordance with its terms and the relevant Qualified Bidder is selected as Successful Bidder, the Successful Bidder must consummate the transaction in accordance with the Form Bid Letter and the Claims Assignment Agreement. |
| | (xiv) | Bid Deadline. Each bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **4:00 p.m. (Eastern Time) on 17 December, 2021.** |
| | (xv) | Form of Bid Letter; Claims Assignment Agreement. Each bid must be submitted substantially in the form of the Form Bid Letter (with a clean copy and a marked copy against the form) and must set forth the Purchase Price and all other details to be included therein. Each bid will be submitted together with a signed copy of the claims assignment agreement relating to that Financing Transaction (together with a marked copy against the form for that Financing transaction) in the form uploaded to the Data Room (the "*Claims Assignment Agreement*") |
| Deposit Account | | The Deposit and the Purchase Price are to be paid into the following uninvested deposit account of the Security Agent (the "*Deposit Account*"):<br><br>Titled: FWC Fin Trad Security Trustee ac A350s<br>Account Number: 0079601284<br>IBAN: IE12CHAS93090379601284<br>Currency: USD<br>Swift BIC: CHASEIE4L |
| Extended Bid Deadline; Selection of Successful Bidder | | After the Bid Deadline, the Security Agent may, in its sole discretion, request that any or all Qualified Bidders that previously submitted a bid for the Relevant Assigned Property in respect of either Aircraft submit a new bid ("*Subsequent Bid*") by a new deadline selected by the Security Agent (with the assistance of the Agent) and notified by the Agent to such Qualified Bidders (an "*Extended Bid Deadline*" and such new round of bidding, a "*Subsequent Round*"). Any Qualified Bidder wishing to submit a Subsequent Bid must do so by the Extended Bid Deadline for such Subsequent Round. The Security Agent or the Agent may initiate as many Subsequent Rounds of bidding as they deem desirable.<br><br>After the Bid Deadline or any Extended Bid Deadline, the Security Agent may, in its sole discretion, (a) identify the Qualified Bidder or Qualified Bidders that the Security Agent (with the assistance of the Agent) deems to have submitted the best offer for the Relevant Assigned Property in respect of each Aircraft (each such Qualified Bidder, the "*Successful Bidder*" and each such offer, the "*Successful Bid*", and the price of each such bid, the "*Successful Bid Price*") or |

8

|  | (b) cancel the sale process for the Relevant Assigned Property in respect of an Aircraft. |
|---|---|
| Closing of Sale of Relevant Assigned Property | Each Successful Bidder shall cause to be funded the Successful Bid Price for the applicable Relevant Assigned Property (less any Deposit previously paid and taking into account any credit bid or netting if such Successful Bidder is the Majority Senior Secured Party or any of its affiliates) into the Deposit Account on the business day it is declared the Successful Bidder and must close the purchase of the Relevant Assigned Property on such date in accordance with the relevant Claims Assignment Agreement.<br><br>The Security Agent reserves the right to extend such closing deadline upon request of the Successful Bidder.<br><br>The Successful Bidder may (subject to any customary "know-your-customer" procedures required by the Security Agent) nominate one or more affiliates to take title to all or part of the Relevant Assigned Property on the closing date (in each case, on the terms of the relevant Claims Assignment Agreement). |
| Return of Deposits | The Deposit of any Qualified Bidder that is not a Successful Bidder shall be returned to such Qualified Bidder within the later of five (5) business days after the Security Agent has selected a Successful Bidder or cancelled the sale process for the applicable Relevant Assigned Property and one (1) business day after such Qualified Bidder provides its account details to the Security Agent. If the Successful Bidder timely closes on its transaction, its Deposit will be credited towards the Purchase Price for the applicable Relevant Assigned Property.<br><br>If a Successful Bidder fails to close on its transaction due to its own breach or failure to perform or any other reason caused by such Successful Bidder or any of its affiliates, bankers, agents or representatives, the Security Agent shall have no obligation to return the Deposit of such Successful Bidder, and such Deposit shall constitute liquidated damages and shall be retained by the Security Agent. |
| As Is, Where Is | The sale of the Relevant Assigned Property pursuant to these procedures shall be on an "*as is, where is*" basis and without representations or warranties of any kind, nature, or description by the Security Agent, the Agent, the Owners or any other person. |
| Taxes | Each Successful Bidder shall bear all sales taxes, VAT, transfer tax, stamp duty or other similar taxes in connection with the acquisition of the applicable Relevant Assigned Property. |
| Significant Disclosures | To the knowledge of the Security Agent:<br><br>(i) The Relevant Assigned Property and a Successful Bidder's ability to deal with and/or recover from the Relevant Assigned Property may be affected by the financial position of VNA. In particular: |

9

UK-#390678839-v6

|  |  |  |
|---|---|---|
|  |  | a. VNA has defaulted on material financial obligations, including each Sub-Lease (which have not been paid in full since January 2021); |
|  |  | b. VNA's 3Q2021 results included a reported net loss of over VND3.5 trillion (US$154 million); |
|  |  | c. In VNA's interim 2021 accounts its auditors noted that "*[VNA]'s ability to continue as a going concern will depend upon the financial support of the Government of the Socialist Republic of Vietnam, the extensions of its borrowings at commercial banks and financial institutions, payables to suppliers and lessors, as well as the development of the pandemic*"; |
|  |  | d. VNA's financial forecasts present a significant financial funding shortfalls into the future, and it may not be able to continue as a going concern; |
|  |  | e. Any recovery (if any) may be significantly impaired by other creditor claims (including other fleet creditors); and |
|  |  | f. VNA has publicly invited proposals for financial advisors to advise it on a restructuring of its aircraft lease agreements. |
|  | (ii) | The existence of any claims forming part of the Relevant Assigned Property may be disputed by relevant counterparties. In particular: |
|  |  | a. VNA has acknowledged the termination of the Sub-Leases but has continued to operate the Aircraft in breach of their obligations under the Sub-Lease; |
|  |  | b. VNA has not acknowledged the existence of any claims resulting from the termination of the leasing of the Aircraft; |
|  |  | c. VNA has not acknowledged the Security Agent's entitlement to pursue, enforce and/or assign these claims; and |
|  |  | d. no formal demand has been made by the Security Agent in respect of these claims against VNA (or the Lessee). |
|  | (iii) | The quantum of any claims may be difficult to ascertain and/or disputed by relevant counterparties. In particular: |
|  |  | a. certain claims are general claims in damages, which will require assessment of damages and losses suffered, which may need to be substantiated by evidence, and which have not yet been quantified; |
|  |  | b. certain claims are personal to the relevant Owner and/or Lessee and the quantum of these claims may |

10

|  |  | not reflect the actual expenditure of the Successful Bidder; and |
|---|---|---|
|  | c. | certain claims are subject to contractual calculations that will depend on the physical condition and maintenance status of the Aircraft. The Aircraft Excluded Property does not form part of the Relevant Assigned Property and it may be difficult to assess the physical condition and maintenance status of the Aircraft. |
|  | (iv) | The Relevant Assigned Property is limited to the items listed above in the definition of "Relevant Assigned Property". The Relevant Assigned Property does not include any right to the Aircraft itself or title to any Aircraft Excluded Property, or any right to access to, or information from, any party other than VNA for the purposes of pursuing or determining the value of any claims. However, VNA no longer has the right to possession of the Aircraft and may not have the Aircraft or any documents or information needed for the purposes of pursuing or determining the value of any claims (including information regarding its condition on return under the Sub-Lease), or otherwise. |
|  | (v) | Notwithstanding that certain property and/or rights are expressed to form part of the "Relevant Assigned Property", such property and/or rights may not be assignable by the Claims Assignment Agreement under English law, if they are governed by a foreign law (and such foreign law does not permit assignment by the Claims Assignment Agreement) or if an assignment would require the consent of a third party (and such party does not give consent). |
|  | (vi) | A Successful Bidder's ability to deal with and/or recover from the Relevant Assigned Property may be subject to compromise, determination, interpretation and/or recognition by various courts. In particular: |
|  | a. | the claims are exposed to recent changes to the restructuring regime and recent court decisions which provide expansive power to restrict or substantially reduce the recovery of unsecured creditors; |
|  | b. | any final determination relating to the existence and/or quantum of any claim, and any related disputes will be subject to the jurisdiction of the Courts of England and Wales and the determination of the English judiciary (on the basis of relevant case law); and |
|  | c. | the pursuit of any determined claim will be subject to the laws and courts of the jurisdiction where such |

11

UK-#390678839-v6

AMERICAS 109586772

|  | action is being pursued, which may not recognize that determination or the basis for that claim. **IMPORTANT NOTICE** **By submitting a bid, each Potential Bidder shall acknowledge (i) these Significant Disclosures, (ii) that these Significant Disclosures may not be complete and/or accurate in any material respect (by omission or otherwise), (iii) that there may be other events, facts and circumstances either known or unknown to the Security Agent and/or the Majority Senior Secured Party and/or any of their respective officers, directors, employees, advisors and agents (including, without limitation, the Agent) (together, the "Representatives") that could be material to a Potential Bidder or the Successful Bidder that have not been included in these Significant Disclosures and (iv) none of the Security Agent and/or the Majority Senior Secured Party or any of their respective Representatives have any obligation to post supplements or updates to these Significant Disclosures, including if at any time any Significant Disclosure is or becomes inaccurate.** |
|---|---|
| Inconsistency with Claims Assignment Agreement | To the extent there is any inconsistency between these procedures and the relevant Claims Assignment Agreement, such Claims Assignment Agreement shall control. |
| Actual Knowledge of Security Agent | This sales process has been prepared and is being conducted by the Security Agent in its capacity as security agent (as applicable) under the corresponding Facility Agreements, the corresponding Proceeds Agreement, each Borrower Security Agreement, each Intermediate Lessor Security Agreement and any other Security Document (excluding the Mortgages) which is the subject of these procedures. Any statement contained in or implied from any document relating to this sales process (including these procedures) is qualified by the actual knowledge of the Security Agent's directors as at the date of the commencement of this process. |
| Governing Law | These sales procedures and the interpretation thereof shall be governed by and construed in accordance with the laws of England, and any disputes in respect thereof shall be settled by the English courts. |

Please direct any questions on the sales process to the Agent by emailing remarketing@airbornecapital.aero with "JLPS Claims" in the subject line.