# EXHIBIT "B"

## FORM OF NON-DISCLOSURE AGREEMENT

To:     FitzWalter Capital Partners (Financial Trading) Limited, as security agent (the "**Security Agent**")
Airborne Capital Limited (the "**Agent**" and together with the Security Agent, the "**Transaction Parties**")

From:   [*Potential bidder*] (the "**Potential Bidder**")

Re:     **The Facility**     Loan facility granted under each of the following:
(a) in respect of the Senior Loan, a senior facility agreement dated 6 November 2018 among, *inter alios*, JPA No. 111 Co., Ltd. and the Senior Agent; and
(b) in respect of the Junior Loan, a junior facility agreement dated 6 November 2018 among, *inter alios*, JPA No. 111 Co., Ltd. and the Junior Agent,
in each case in respect of one (1) Airbus A350-900 aircraft bearing manufacturer's serial number 067 (the "**MSN 067 Aircraft**") (the "**MSN 067 Facility Agreements**")

Loan facility granted under each of the following:
(a) in respect of the Senior Loan, a facility agreement dated 22 December 2017 among, *inter alios*, JPA No. 49 Co., Ltd. and the Senior Agent; and
(b) in respect of the Junior Loan, a junior facility agreement dated 22 December 2017 among, *inter alios*, JPA No. 49 Co., Ltd. and the Junior Agent,
in each case in respect of one (1) Airbus A350-941 aircraft bearing manufacturer's serial number 173 (the "**MSN 173 Aircraft**" and together with the MSN 067 Aircraft, the "**Aircraft**")) (the "**MSN 173 Facility Agreements**" and together with the MSN 067 Facility Agreements, the "**Facility Agreements**")

**Borrowers**:     JPA No. 111 Co., Ltd. for the MSN 067 Facility Agreements; JPA No. 49 Co., Ltd. for the MSN 173 Facility Agreements
**Lessees:**     For the MSN 067 Aircraft, JLPS Leasing Draco Limited (formerly known as DAE Leasing (Ireland) 12 Limited)

For the MSN 173 Aircraft, JLPS Leasing Uranus Limited (formerly known as PAAL Uranus Company Limited)

**Sub-Lessee:**     Vietnam Airlines JSC for both Aircraft
**Senior Agent**:     Crédit Agricole Corporate and Investment Bank
**Junior Agent:**     Crédit Agricole Corporate and Investment Bank

Dear Sirs

We are considering bidding for certain assets which constitute part of the transaction security for the Facility (the "**Transaction Security**"). In consideration of you agreeing to make available to us certain information, by our signature of a copy of this letter we agree as follows:

UK-#390707995-v4

1. **Confidentiality Undertaking**: we undertake:

   (a)   to keep the Confidential Information confidential and not to disclose it to anyone except as provided for by paragraph 2 below and to ensure that the Confidential Information is protected with security measures and a degree of care that ensures there is no disclosure of the Confidential Information except as provided by such paragraph 2;

   (b)   to keep confidential and not disclose to anyone the existence of this letter or the fact that the Confidential Information has been made available or that discussions or negotiations are taking place or have taken place between the Potential Bidder and the Transaction Parties in connection with the Transaction Security or the enforcement thereof;

   (c)   to use the Confidential Information only for the Permitted Purpose;

   (d)   to ensure that any person to whom we pass any Confidential Information (unless disclosed under paragraph 2(b) below) acknowledges and complies with the provisions of this letter as if that person were also a party to it; and

   (e)   not to make enquiries of any member of the Group or any of their officers, directors, employees or professional advisers relating directly or indirectly to the Facility or the Transaction Security.

2. **Permitted Disclosure**: We acknowledge that we may only disclose Confidential Information:

   (a)   to our professional advisers and to a limited group of employees of the Participant Group who are directly engaged in the Permitted Purpose (together, the "**Permitted Persons**"), in each case to the extent necessary for the Permitted Purpose; provided that prior to our disclosure of any Confidential Information to any of our professional advisers (other than our legal counsel that are bound by a professional duty of confidentiality), we shall procure that such professional advisers execute a confidential undertaking in favor of the Transaction Parties substantially in the form of this letter;

   (b)   where required by law to disclose such Confidential Information to any court of competent jurisdiction or any competent judicial, governmental, supervisory or regulatory body, *provided that* we shall use all reasonable efforts to obtain assurance that such information will be treated confidentially; or

   (c)   with the prior written consent of the Security Agent or the Agent.

3. **Notification of Required or Unauthorised Disclosure**: We agree (to the extent permitted by law) to inform you of the full circumstances of any disclosure under paragraph 2(b) (in advance of the relevant disclosure, to the extent permitted by law) or upon becoming aware that Confidential Information has been disclosed in breach of this letter.

4. **Return of Copies**: If either Transaction Party so requests in writing, we shall return all Confidential Information supplied to us by a Transaction Party and destroy or permanently erase all copies of Confidential Information made by us and ensure that anyone to whom we have supplied any Confidential Information destroys or

UK-#390707995-v4

permanently erases such Confidential Information and any copies made by them, in each case save to the extent that we or the recipients are required to retain any such Confidential Information by any applicable law, rule or regulation or by any competent judicial, governmental, supervisory or regulatory body or in accordance with internal policy, or where the Confidential Information has been disclosed under paragraph 2(b) above.

5.    **Continuing Obligations**: The obligations in this letter are continuing and, in particular, shall survive the termination of any discussions or negotiations between the Transaction Parties and us. Notwithstanding the previous sentence, the obligations in this letter shall cease (a) if we become a party to or otherwise acquire (by assignment) an interest, direct or indirect in the Transaction Security or (b) two (2) years after we have returned or, as the case may be, confirmed destruction of, all Confidential Information made by us (other than any such Confidential Information or copies which have been disclosed under paragraph 2(b) above) or which, pursuant to paragraph 4 above, are not required to be returned or destroyed).

6.    **No Representation; Consequences of Breach**, etc: We acknowledge and agree that:

    (a)    neither the Security Agent, the Agent, the Lessees, the Sub-Lessee, the Borrowers nor any of our or their respective affiliates, officers, directors, employees, agents or advisers or any other members of the Group (each a **"Relevant Person"**) (i) make any representation or warranty, express or implied, as to, or assume any responsibility for, the accuracy, reliability or completeness of any of the Confidential Information or any other information supplied by the Transaction Parties or any member of the Group or the assumptions on which it is based or (ii) shall be under any obligation to update or correct any inaccuracy in the Confidential Information or any other information supplied by the Transaction Parties or any member of the Group or be otherwise liable to us or any other person in respect to the Confidential Information or any such information; and

    (b)    the Security Agent, the Agent, the Lessees, the Sub-Lessee, the Borrowers or members of the Group may be irreparably harmed by the breach of the terms of this letter and damages may not be an adequate remedy or easily measurable, therefore:

        (i)    each Relevant Person or member of the Group may be granted an injunction or specific performance for any threatened or actual breach of the provisions of this letter by Potential Bidder;

        (ii)    [each of] the Potential Bidder [and the Potential Bidder Parent] agree to indemnify the Transaction Parties from and against, and to pay on demand an amount equal to, any liabilities, claims, damages, losses or expenses of any kind or character whatsoever (including legal expenses) incurred or suffered by the Transaction Parties in connection with, directly or indirectly, any breach of this letter by the Potential Bidder or any of the Potential Bidder's Permitted Persons; and

        (iii)    [each of] the Potential Bidder [and the Potential Bidder Parent] agree that in the event the Potential Bidder or any of the Potential Bidder's Permitted Persons breach the terms of this letter, at our election, in lieu of the indemnity described in subclause (ii) above, [each of] the

UK-#390707995-v4

Potential Bidder [or the Potential Bidder Parent] will pay us, by way of liquidated damages for loss of bargain as a genuine pre-estimate of loss and not as a penalty, an amount equal to $500,000.

7.  **No Waiver; Amendments**, **etc**: This letter sets out the full extent of our obligations of confidentiality owed to the Transaction Parties in relation to the information the subject of this letter. No failure or delay in exercising any right, power or privilege under this letter will operate as a waiver thereof nor will any single or partial exercise of any right, power or privilege preclude any further exercise thereof or the exercise of any other right, power or privileges under this letter. The terms of this letter and our obligations under this letter may only be amended or modified by written agreement between us.

8.  **Inside Information**: We acknowledge that some or all of the Confidential Information is or may be price sensitive information and that the use of such information may be regulated or prohibited by applicable legislation relating to insider dealing and we undertake not to use any Confidential Information for any unlawful purpose.

9.  **Nature of Undertakings**: The undertakings given by us under this letter are given to the Transaction Parties and their respective affiliates.

10. **Third party rights**

    (a) The terms of this letter may be enforced and relied upon only by the Potential Bidder and the Transaction Parties, and otherwise the operation of the Contracts (Rights of Third Parties) Act 1999 is excluded.

    (b) Notwithstanding any provisions of this letter, the parties to this letter do not require the consent of any Relevant Person or any member of the Group to rescind or vary this letter at any time.

11. **Governing Law and Jurisdiction**: This letter and all non-contractual obligations arising from or in connection with it are governed by and shall be construed in accordance with the laws of England and the parties submit to the non exclusive jurisdiction of the English courts.

12. **Non-Circumvention**: For a period of three (3) months from the date hereof, we hereby agree that we will not, and shall cause our Participant Group, representatives, affiliates (and our and the Potential Bidder's Participants Group's officers, directors, employees and agents) to not, directly or indirectly, through any person or entity, seek, solicit, propose, support, assist, engage in discussions or negotiations in connection with or participate in the formulation, preparation, execution, performance or enforcement of any agreement, transaction or arrangement with any party for the acquisition of the Relevant Assigned Property (as defined in the Sales Procedures), unless we are the Successful Bidder in the sale contemplated by the Sales Procedures, without the Agent's or the Security Agent's prior written approval.

13. **Definitions**: In this letter (including the acknowledgement set out below):

    **"Confidential Information"** means any information relating to the Borrowers, the Lessees, the Sub-Lessee, the Transaction Security, the Facility and the Facility Agreements including, without limitation, the information provided to us by the Transaction Parties and includes (i) the terms of any operative documents or finance

documents disclosed by the Transaction Parties to us which relate to the Facility (including without limitation the "*Borrower Security Assignment*", the "*Intermediate Lessor Security Assignment*", the "*Head Lease Agreement*" and the "*Lease Agreement*" or any other document uploaded to the virtual data room made available in connection with the Sales Procedures), (ii) the terms of any claims assignment agreement provided to us or to be entered into between us and the Security Agent, and (iii) any information given orally and any document, electronic file or any other way of representing or recording information which contains or is derived or copies from such information but excludes information that (a) is or becomes public knowledge other than as a direct or indirect result of any breach of this letter or (b) is known by us (or an affiliate of us who is permitted to disclose the relevant information to us (without prejudice to any confidentiality restrictions by which such affiliate (or which we, as the recipient of such information from our affiliate, may be bound)) before the date the information is disclosed to us by the Transaction Parties or any of their respective affiliates or advisers or is lawfully obtained by us after that date, other than from a source which is connected with the Group and which, in either case, as far as we are aware, has not been obtained in violation of, and is not otherwise subject to, any obligation of confidentiality;

"**Group**" means (i) in the case of the Borrowers: the Borrower and each of its holding companies and subsidiaries (ii) in the case of the Lessees: such Lessee and each of its subsidiaries, and (iii) in the case of the Sub-Lessee, the Sub-Lessee and each of its respective subsidiaries, and in each case, any of their respective affiliates, related parties, shareholders, consultants, advisers, bankers, insurers and agents;

"**Participant Group**" means Potential Bidder, each of Potential Bidder's holding companies and subsidiaries and each subsidiary of each of Potential Bidder's holding companies (as each such term is defined in the Companies Act 1985);

"**Permitted Persons**" has the meaning provided in clause 2(a) of this letter;

"**Permitted Purpose**" means considering and evaluating whether to enter into the transaction contemplated under the Sales Procedures;

["**Potential Bidder Parent**" means [___];][1] and

"**Sales Procedures**" means the Procedures for the Sale of Relevant Assigned Property relating to two Airbus A350 Aircraft.

[*signature page to follow*]

---

[1] Parent guarantee of indemnity and damages to be included if Potential Bidder does not have a net worth equal to at least $10,000,000.
UK-#390707995-v4

Yours faithfully

_____

For and on behalf of
[Potential bidder]

_____

For and on behalf of
[Potential bidder Parent][2]

---

[2] Parent guarantee of indemnity and damages to be included if Potential Bidder does not have a net worth equal to at least $10,000,000.

UK-#390707995-v4