**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| JPA NO. 111 CO., LTD. and<br>JPA NO. 49 CO., LTD., | Case No.:  21-12075 (DSJ) |
| Debtors. [1] | (Jointly Administered) |

**ORDER (A) APPROVING BIDDING PROCEDURES RELATING TO THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B)
ESTABLISHING STALKING HORSE BIDDERS AND APPROVING BID
PROTECTIONS; (C) APPROVING PROCEDURES OF THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; (D) AUTHORIZING ENFORCEMENT ACTIONS; (E)
SCHEDULING AN AUCTION AND A SALE HEARING; AND (F) APPROVING
THE FORM AND MANNER OF NOTICE THEREOF**

Upon the motion (the "<u>Motion</u>")[2] of JPA No. 111 Co., Ltd. and JPA No. 49 Co.,

Ltd, as debtors and debtors in possession (the "<u>Debtors</u>") in the above-captioned cases (the

"<u>Chapter 11 Cases</u>"), for entry of an order (this "<u>Bidding Procedures Order</u>"), (a) approving the

bidding procedures attached hereto as **Exhibit 1** (the "<u>Bidding Procedures</u>") in connection with

the Sale of the Debtors' interest in the Purchased Assets;  (b) establishing the Potential

Purchasers as the initial bidder (the "<u>Stalking Horse Bidder</u>") and authorizing the Debtors to pay

the Break-Up Fee and Expense Reimbursement (the "<u>Bid Protections</u>") set forth and pursuant to

the terms of the asset purchase agreement based upon the terms of the Stalking Horse Term

Sheet, attached to the Motion as **Exhibit B** (such asset purchase agreement, the "<u>Stalking Horse

---

[1]    The Debtors in these Chapter 11 Cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors'
corporate address is: Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100-
0013.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion
or the Bidding Procedures (as defined below), as applicable.

Purchase Agreement"); (c) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (the "Assumption and Assignment Procedures"); (d) authorizing Enforcement Actions; (e) scheduling an auction for the Purchased Assets (the "Auction") and the hearing with respect to the Sale (the "Sale Hearing"); and (f) approving the form and manner of notice of the Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having considered the evidence presented and statements of counsel at a hearing on January 26, 2022 and the statements of counsel at the continued hearing on February 4, 2022 ("the "Hearing"); and this Court having determined **for reasons stated on the record (including but not limited to the Court's crediting counsel's representations during the February 4 hearing that (i) if the Breakup Fee and Expense Reimbursement are triggered in the absence of a sale or other financing sufficient to cover all allowed secured claims, all such allowed secured claims will be satisfied in full before any amounts may be paid to towards the Breakup Fee and/or Expense Reimbursement, and (ii) the economic risk of any insufficiency of distributable funds resulting from the estates' incurring any break-up fee that is not covered by sale proceeds will be borne entirely by Debtors' parent entity, JP Lease, which is both the estate's sole or virtually sole holder of a liquidated general unsecured claim, and the 100% owner of Debtors, and which supports the Motion)** that the relief requested in the Motion with respect to the entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors and

other parties in interest;  and it appearing that proper and adequate notice of the Motion has been

given and that, except as otherwise ordered herein, no other or further notice is necessary;  and

after due deliberation thereon; and good and sufficient cause appearing therefor:  **[DSJ 2/4/2022]**

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    This Court has jurisdiction to hear and determine the Motion and to grant the

relief requested herein with respect to the Bidding Procedures and Auction pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The Debtors' proposed notice of the Auction, the Sale and the other matters to be

considered at the Sale Hearing pursuant to the Sale Notice is appropriate and reasonably

calculated to provide all interested parties with timely and proper notice of the Bidding

Procedures, Auction, Sale Hearing, and Sale.  No other and further notice beyond that described

in the foregoing sentence shall be required.

C.    The Bidding Procedures are fair, reasonable, appropriate and are designed to

maximize the value of the Purchased Assets and recoveries to the Debtors' estates and creditors.

D.    The Debtors have demonstrated compelling and sound business justifications for

(i) entering into the Stalking Horse Purchase Agreement and incurring the obligations arising

thereunder or in connection therewith, including the provisions related to the payment of the

Break-Up Fee and Expense Reimbursement under the circumstances, timing, and procedures set

forth therein, and (ii) the Assumption and Assignment Procedures.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To
the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To
the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.      The Sale Notice is appropriate and reasonably calculated to provide all interested

parties with timely and proper notice of the Bidding Procedures, the Auction, the Sale Hearing,

and the Sale free and clear of any liens, claims, encumbrances, or interests pursuant to section

363(f) of the Bankruptcy Code) (with such liens, claims, encumbrances, or interests attaching to

the proceeds of any such sale, which shall be first applied to satisfy the Secured Obligations in

cash in full), and any and all objection deadlines related thereto, and no other or further notice

shall be required for the Motion.

F.      The Assumption and Assignment Procedures are reasonable and appropriate.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** are hereby approved

in all respects.

3.      The Bid Protections as set forth in the Stalking Horse Purchase

Agreement, and the provisions of the Stalking Horse Purchase Agreement relating thereto, are

hereby approved.  The Debtors shall pay the Break-Up Fee and the Expense Reimbursement

(each of which is accorded administrative expense status under sections 503(b)(1)(A) and 507 of

the Bankruptcy Code) to the Stalking Horse Bidders to the extent due and payable under the

Stalking Horse Purchase Agreement in accordance with the terms thereof.

4.      All of the Debtors' obligations arising under or in connection with the

Stalking Horse Purchase Agreement with respect to the Break-Up Fee and the Expense

Reimbursement shall (a) survive termination of the Stalking Horse Purchase Agreement and

dismissal or conversion of either or both of these Chapter 11 Cases and shall be binding on any

chapter 7 trustee; and (b) be payable under the terms and conditions of the Stalking Horse

Purchase Agreement and this Bidding Procedures Order without any further order of this Court.

5.      The Sale Notice is approved.  As soon as reasonably practicable, but in no

event later than the third (3rd) Business Day after entry of this Bidding Procedures Order, the

Debtors (or their agent) shall serve the Sale Notice by first-class mail postage prepaid and e-mail

(where available) upon:  (a) the Office of the United States Trustee for the Southern District of

New York, Region 2 (the "U.S. Trustee"), (b) counsel to any statutory committee appointed in

these Chapter 11 Cases, (c) the Debtors' creditors as of the Petition Date,  (d) all entities

reasonably known to have expressed an interest in the acquisition, directly or indirectly, of the

Purchased Assets, (e) the Internal Revenue Service, United States Securities and Exchange

Commission, and any other governmental authorities that (i) as a result of the Sale, may have

claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased

Assets, or (ii) may have a claim against the Debtors or other reasonably known interest in the

relief requested by the Motion relating to the Sale, (f) counsel to the Security Agent and each of

the Senior Lenders and Junior Lenders , (g) counsel to JP Lease Products & Services Co. Ltd. ,

(h) counsel to the Intermediate Lessors;  (i) counsel to Vietnam Airlines;  (j)  each party to the

Stalking Horse Purchase Agreement;  (k) all persons and entities known by the Debtors to have

asserted any lien, claim, interest or encumbrance in the Purchased Assets;  and (l) all other

parties who have requested notice pursuant to Bankruptcy Rule 2002 as of the date hereof.

6.      The Assumption and Assignment Procedures are approved.

7.      The Debtors are authorized to take the necessary steps under applicable

law to effectuate the Enforcement Actions.

8.      The Enforcement Notices are approved and shall be served on the

Enforcement Notice Parties consistent with applicable law.

9.      By no later than February 9, 2022 at 11:59 p.m. (prevailing Eastern Time),

the Debtors shall file with this Court and serve on each party to an Assigned Contract a Cure

Notice substantially in the form attached as **Exhibit D** to the Motion that shall (a) state the cure

amounts that the Debtors believe are necessary to assume such Assigned Contracts pursuant to

section 365 of the Bankruptcy Code (the "Cure Amount"); (b) notify the non-debtor party that

such party's contract or lease may be assumed and assigned to the purchaser of the Purchased

Assets upon the entry of the Sale Order;  (c) state the date of the Sale Hearing and that objections

to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a

later hearing, as determined by the Debtors; and (d) state a deadline by which the non-Debtor

party shall file an objection to the Cure Amount or to the assumption and assignment of the

Assigned Contracts;  *provided, however,* that the inclusion of a contract, lease or agreement on

the Cure Notice shall not constitute an admission that such contract, lease or agreement is an

executory contract or lease. The Debtors reserve all of their rights, claims and causes of action

with respect to the contracts, leases, and agreements listed on the Cure Notice.

10.     Any objection to the Cure Amount or to assumption and assignment must

be filed with the Court by **2:00 p.m. (ET) on March 2, 2022** (the "Cure Objection Deadline"),

and served on:  (i) the U.S. Trustee, (ii) counsel for the Debtors, Kyle J. Ortiz, Esq.

(kortiz@teamtogut.com) and Eitan E. Blander, Esq. (eblander@teamtogut.com), and (iii) counsel

to the Stalking Horse Bidders, Scott Greissman, Esq. (sgreissman@whitecase.com), Richard A.

Graham, Esq. (rgraham@whitecase.com), and Andrea Amulic, Esq.

(andrea.amulic@whitecase.com) so as to be actually received on or before the Cure Objection

Deadline.  Any such objection must (i) be in writing; (ii) state the basis for such objection;  and

(iii) state with specificity what cure amount the party to the Assigned Contract believes is

required (in all cases with appropriate documentation in support thereof).

11.    Unless a non-debtor party to any executory contract or unexpired lease,

including an unexpired real property lease, files an objection to the Cure Amount or the

assumption and assignment of such executory contract or unexpired lease by the Cure Objection

Deadline, such counterparty shall be (a) forever barred and estopped from objecting to the Cure

Amount, (b) forever barred and estopped from asserting or claiming any Cure Amount, other

than the Cure Amount listed on the Cure Notice against the Debtors, any Successful Bidder or

any other assignee of the relevant contract, and (c) deemed to have consented to the assumption

and assignment of such Assigned Contract.

12.    At the Sale Hearing, the Debtors shall (i) present evidence necessary to

demonstrate adequate assurance of future performance by the Successful Bidder or the Stalking

Horse Bidder, as applicable; and (ii) request entry of an order granting approval of the

assumption and assignment of any Assigned Contracts to the Successful Bidder or the Stalking

Horse Bidders, as applicable.

13.    The Debtors shall file a notice with the Court listing the Assigned

Contracts, if any, that the Debtors have determined not to assume, prior to the Sale Hearing.

14.    The Auction is scheduled for **10:00 a.m. (ET) on March 8, 2022** to be

conducted virtually through a Zoom link that will be made available to Qualified Bidders or at

another place and time designated by the Debtors in a prior written notice emailed to all

Qualified Bidders.

15.     The deadline for objecting, for any reason, to approval of the Sale shall be

**noon (ET) on March 10, 2022** (the "Sale Objection Deadline").  All objections to the Sale must

be:  (a) in writing; (b) state with specificity the basis of the objection, (c) signed by counsel or

attested to by the objecting party; (d) in conformity with the Bankruptcy Rules, the Local

Bankruptcy Rules and the case management procedures entered by the Court in these Chapter 11

Cases; (e) filed with the Court; and (f) served on (i) the U.S. Trustee, (ii) counsel for the Debtors,

Kyle J. Ortiz, Esq. (kortiz@teamtogut.com) and Eitan E. Blander, Esq.

(eblander@teamtogut.com), and (iii) counsel to the Stalking Horse Bidders, Scott Greissman,

Esq.  (sgreissman@whitecase.com), Richard A. Graham, Esq. (rgraham@whitecase.com), and

Andrea Amulic, Esq. (andrea.amulic@whitecase.com) so as to be actually received on or before

the Sale Objection Deadline.

16.     Failure to object to the relief requested in the Motion with respect to the

Sale by the Sale Objection Deadline shall be deemed a waiver of the right to object to the Sale.

The Sale Hearing shall be held ~~in this Court~~ **via Zoom for Government** at **11:00 a.m. (ET) on**

**March 14, 2022**.  **Those wishing to appear before the Court at the Sale Hearing must**

**register their appearance utilizing the Electronic Appearance portal located at the Court's**

**website: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Appearances must be**

**entered no later than 4:00 p.m. (ET) on March 11, 2022. [DSJ 2/4/2022]**

17.     The Sale Hearing may be adjourned or rescheduled without further notice

by an announcement at the Sale Hearing or by the filing of a notice or agenda on the docket of

the procedurally consolidated Chapter 11 Cases.

18.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h),

6006(d), 7062, or 9014 or any applicable provisions of the Bankruptcy Rules or the Local Rules

8

or otherwise stating the contrary, the terms of and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Bidding Procedures Order is hereby waived.

19.    Prior to mailing the Sale Notice, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Bidding Procedures Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

20.    The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Bidding Procedures Order.

21.    For the avoidance of doubts, notwithstanding any language included in this order, no substantive rights of any parties are deemed to have been determined by this Order, including but not limited to, whether the Debtors have the ability to sell the Lease Assets or the amount or categories of obligations that will be included **in** the Secured Obligations.  **[DSJ 2/4/2022]**

22.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Bidding Procedures Order.


Dated:  New York, New York
        February 4, 2022                    _s/ David S. Jones_
                                            HONORABLE DAVID S. JONES
                                            UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1 TO BIDDING PROCEDURES ORDER

## BIDDING PROCEDURES[1]

I.   OVERVIEW

On December 17, 2021, JPA No. 111 Co., Ltd. (the "*MSN 067 Seller*") and JPA No. 49 Co., Ltd. (the "*MSN 173 Seller*"), as debtors and debtors in possession (collectively, the "*Debtors*" and each a "*Debtor*"), filed voluntary petitions for relief under title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*"). The chapter 11 cases have been consolidated for procedural purposes under the lead case, *JPA No. 111 Co., Ltd., et al.*, Case No 21-12075 (DSJ) (the "*Chapter 11 Cases*").

By motion (the "*Motion*"), **dated December 31, 2021**, the Debtors are seeking the approval of the process and procedures for the sale of assets and rights, title, claims, and proceeds with regard to two Airbus A350-941 aircraft bearing MSNs 067 and 173 and related property, including (without limitation) leasehold assets. A purchase agreement (including all exhibits, schedules and ancillary agreements related thereto, the "*Stalking Horse Purchase Agreement*"), a copy of which will be filed in advance of the Objection Deadline, subject to the Bidding Procedures described below (the "*Bidding Procedures*"), among the Debtors and the following buyers (collectively, the "*Stalking Horse Bidders*"): (a) Capitol Reef LLC (the "*MSN 067 Buyer*"), who is buying the Purchased Assets to the extent being sold by MSN 067 Seller), and (b) Isle Royale LLC (the "*MSN 173 Buyer*"), who is buying the Purchased Assets to the extent being sold by the MSN 173 Seller. The Stalking Horse Purchase Agreement contemplates a transaction for the sale of the Purchased Assets to the Stalking Horse Bidders (the "*Sale Transactions*") for the Base Purchase Price. The Sale Transactions are subject to (a) higher and better offers at an auction, sale and marketing processes held under Section 363 of the Bankruptcy Code described in these Bidding Procedures (the "*Auction*") and (b) approval of the Bankruptcy Court at the Sale Hearing (as defined below).

---

[1]   Capitalized terms not otherwise defined herein have the meanings given to them in the Stalking Horse Purchase Agreement, the Bidding Procedures Order or the Motion, as applicable. This reference is for convenience, and not an approval of the Stalking Horse Purchase Agreement or a determination that the transaction proposed by the Stalking Horse Purchase Agreement is approved **or** that the Purchased Assets can be sold by the Debtors or that the Base Purchase Price is sufficient to satisfy the Secured Obligations under the Proceeds Agreements. **[DSJ 2/4/2022]**

The Bankruptcy Court has entered an order approving these Bidding Procedures (the "*Bidding Procedures Order*").  Among other things, the Bidding Procedures Order authorized the Debtors to pursue the Sale Transactions (unless different Successful Bid is identified through the Auction held in accordance with these Bidding Procedures) and scheduled a hearing to consider approval of the Sale Transactions (the "*Sale Hearing*"). The Stalking Horse Bidders are the purchasers for substantially all of each Debtors' assets (other than "Excluded Assets" (as defined in the Stalking Horse Purchase Agreement)) and executed the binding Stalking Horse Purchase Agreement for the Sale Transactions.  The Stalking Horse Purchase Agreement contemplates, pursuant to the terms and subject to the conditions contained therein, the sale of substantially all of the Debtors' assets (as described in more detail below) to the Stalking Horse Bidders in consideration of the Base Purchase Price (as defined in the Stalking Horse Purchase Agreement).  **The Sale Hearing is scheduled for March 14, 2022 at 11:00 a.m. (ET).**

These Bidding Procedures are calculated to obtain the highest and otherwise best offer for the Purchased Assets.  These Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for the Purchased Assets; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for evaluating bids (including credit bids) received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for secured parties to be able to potentially submit credit bids in accordance with Section 363(k) of the Bankruptcy Code and related matters; (vi), the procedure for the ultimate selection of a Successful Bidder at the Auction; and (vii) the process for approval of the sale transactions at the Sale Hearing.  Any person or entity who wishes to make a bid to purchase the Purchased Assets must be a Qualified Bidder.  Neither the Debtors nor any of their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any person or entity who is not a Potential Bidder and who does not comply with the requirements set forth herein.  The Stalking Horse Bidders' bid is subject to higher or better offers submitted at an Auction held in accordance with the terms and conditions of these Bidding Procedures.

II.    SUMMARY OF IMPORTANT DATES

| Key Event | Deadline |
|---|---|
| Deadline for Bidders Who Are Secured Creditors to Complete Request to Utilize Credit Bids at the Auction | February 10, 2022 at 4:00 p.m. (ET) |

| | |
|---|---|
| Deadline for Any Objections to Credit Bidding under Bankruptcy Code Section 363(k) (the "*Credit Bidding Objection Deadline*") | February 17, 2022 at 4 p.m. (ET) |
| Deadline to Submit any Objections to Sale Based upon the Terms of the Stalking Horse Purchase Agreement (as modified by Debtors' *Statement Responding to this Court's Inquiries Regarding the Debtors' Motion to Approve Bidding Procedures*, dated January 28, 2022 [Docket No. 90] (the "Debtors' Statement")) and the General Sale Terms | February 17, 2022 at 4 p.m. (ET) |
| Deadline for any Responses in Support of Credit Bidding (the "*Credit Bidding Response Deadline*") | February 23, 2022 at 4 p.m. (ET) |
| Deadline to Submit any Replies to the Objections to Sale Based upon the Terms of the Stalking Horse Purchase Agreement (as modified by Debtors' Statement) and the General Sale Terms | February 23, 2022 at 4 p.m. (ET) |
| Deadline for any Replies in Further Support of Objections to Credit Bidding (the "*Credit Bidding Reply Deadline*") | March 1, 2022 at 4 p.m. (ET) |
| Court Hearing Date for Any Credit Bidding Disputes | [**Subject to Court Availability**][March 4, 2022 at __:__ __.m.] |
| Deadline to Submit Bids (the Bid Deadline) | March 7, 2022 at 12 noon (ET) (assumes entry of Bidding Procedures Order by February 5th) |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders (the Qualified Bid Deadline) | March 7, 2022 at 6 p.m. (ET) |
| If No Auction Is to Be Held, Deadline for Debtors to Notice that Stalking Horse Bid (as defined herein) Is Successful Bid | March 7, 2022 at 6 p.m. (ET) |

| Auction to be held if the Debtors receive Qualified Bids, to be conducted via Zoom Telephone Conference | March 8, 2022 at 10 a.m. (ET) |
|---|---|
| Deadline to File Notice of (i) Identities of Successful Bid and Back-Up Bid and (ii) for seeking authority to sell the Purchased Assets to such Successful Bidder | March 8, 2022 at 10:00 p.m. (ET) |
| Deadline to Object to Successful Bid (Objections Limited to Identity of Successful Bidder and to any Deviations from the Terms of the Stalking Horse Purchase Agreement (as modified by Debtors' *Statement Responding to this Court's Inquiries Regarding the Debtors' Motion to Approve Bidding Procedures*, dated January 28, 2022 [Docket No. 90] (the "Debtors' Statement")) | March 10 2022 at noon (ET) |
| Deadline for Replies in Support of Sale | March 11 2022 at 11:59 p.m. (ET) |
| Sale Hearing | [**Subject to Court Availability**][March 14, 2022 at [__:_0 _.m. (ET) |
| Assumed date by which Sale Order is entered | March 14, 2022 |
| Deadline for Closing of Successful Bid | March 15, 2022 at 5:00 p.m. (ET) (or Such Later Date as Reasonably Agreed by the Debtors and the Successful Bidder) |

All information (and bids) that must be provided under these Bidding Procedures must be provided to the following parties (collectively, the "*Notice Parties*") (i) counsel to the Debtors, Togut, Segal & Segal LLP, Kyle J. Ortiz, Esq. (kortiz@teamtogut.com) and Eitan E. Blander, Esq. (eblander@teamtogut.com); (ii) counsel for the Stalking Horse Bidders, White & Case LLP, Scott Greissman, Esq. (sgreissman@whitecase.com) and Richard A. Graham, Esq. (rgraham@whitecase.com); (iii) counsel for JP Lease Products & Services Co. Ltd., as the parent of the Debtors ("*JP Lease*"), Michael J. Edelman, Esq. (MJEdelman@VedderPrcie.co) and Cameron Gee, Esq. (CGee@VedderPrice.com ; and, as applicable, (iv) counsel for any statutory committee appointed in these Chapter 11 Cases

(each, a "*Committee*"); and (iv) the Office of the United States Trustee for the Southern District of New York, Region 2 (the "*U.S. Trustee*").

All dates and times set forth in these Bidding Procedures may be adjusted by the Debtors with the consent of the Stalking Horse Bidders and after consultation with counsel for any Committee.

## III.   ASSETS TO BE SOLD

All of the Purchased Assets shall be sold as a single lot (free and clear of all liens, claims and encumbrances) and consist of, in summary, the following (in each case, including the proceeds of such assets):

(a)   The MSN 067 Purchased Assets, consisting (in summary) of following assets being sold by the MSN 067 Seller:

   (i)   *The MSN 067 Aircraft and All Proceeds Thereof:* one Airbus A350-941 airframe with manufacturer's serial number 067, along with (w) its associated engines, (x) its auxiliary power units, (y) all appliances, parts, instruments, appurtenances, accessories, furnishings, and other equipment related to, incorporated in, installed in, attached to or appurtenant to any of the foregoing (so long as title is vested in a Seller), and (z) all records associated with or connected with the foregoing (collectively, the "*MSN 067 Aircraft*");

   (ii)   *The MSN 067 Head Lease and Related Assets:* all of the Debtors' rights, title, claims and interests present and future, actual or contingent, liquidated or unliquidated, in, to and under that certain aircraft lease agreement, dated November 19, 2018 (as amended from time to time), between the MSN 067 Seller, as lessor, and JLPS Leasing Draco Limited (formerly known as DAE Leasing (Ireland) 12 Limited) (the "*MSN 067 Lessee*"), as lessee, and in, to and under all associated operative documents related thereto;

   (iii)   *The MSN 067 Sublease Collateral:* all of the Debtors' rights, title, claims and interests present and future, actual or contingent, liquidated or unliquidated, in, to and under that certain Aircraft Lease Agreement, dated December 4, 2016 (as amended from time to time, the "*MSN 067 Sublease*"), between MSN 067 Lessee, as sub-lessor, and Vietnam Airlines JSC ("*Vietnam Airlines*"), as sublessee, along with all other "Assigned Property" as defined under the Deed of Security Assignment in respect of the MSN 067 Aircraft, dated

November 21, 2018 (the "*MSN 067 Sublease Security Assignment*"), between MSN 067 Lessee, as assignor, and MSN 067 Seller, as assignee (collectively, the MSN 067 Sublease and such Assigned Property, the "*MSN 067 Sublease Collateral*"), all of which MSN 067 Sublease Collateral was collaterally assigned to and for the benefit of the MSN 067 Seller;

(b)    The MSN 173 Purchased Assets, consisting (in summary) of the following:

(i)    *The MSN 173 Aircraft and All Proceeds Thereof:* one Airbus A350-941 airframe with manufacturer's serial number 173, along (w) its associated engines, (x) its auxiliary power units, (y) all appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment related to, incorporated in, installed in, attached to or appurtenant to any of the foregoing (so long as title is vested in a Seller) and (z) and all records associated with or connected the foregoing (collectively, the "*MSN 173 Aircraft*", and along with the MSN 067 Aircraft, the "*Aircraft*");

(ii)    *The MSN 173 Head Lease and Related Assets:* all of the Debtors' rights, title, claims and interests present and future, actual or contingent, liquidated or unliquidated, in, to and under that certain aircraft lease agreement, dated December 29, 2017 (as amended from time to time), between the MSN 173 Seller, as lessor, and JLPS Leasing Uranus Limited (formerly known as PAAL Uranus Company Limited) (the "*MSN 173 Lessee*", and along with the MSN 067 Lessee, the "*Lessees*"), as lessee, and in, to and under all associated operative documents related thereto;

(iii)    *The MSN 173 Sublease Collateral:* all of the Debtors' rights, title, claims and interests present and future, actual or contingent, liquidated or unliquidated, in, to and under that certain Aircraft Lease Agreement, dated August 1, 2017 (as amended from time to time, the "*MSN 173 Sublease*"), between MSN 173 Lessee, as sub-lessor, and Vietnam Airlines, as sublessee, along with all other "Assigned Property" as defined under the Deed of Security Assignment in respect of the MSN 173 Aircraft, dated December 29, 2017 (the "*MSN 173 Sublease Security Assignment*"), between MSN 173 Lessee, as assignor, and MSN 173 Seller, as assignee (collectively, the MSN 173 Sublease and such Assigned Property, the "*MSN 173 Sublease Collateral*", and along with the MSN 067 Sublease Collateral, the

6

"*Sublease Collateral*"), all of which MSN 173 Sublease Collateral was collaterally assigned to and for the benefit of the MSN 067 Seller;

(c)     all of the Debtors' rights as indemnitee against Vietnam Airlines; and

(d)     all of the other Collateral granted by any of the Debtors under the Security Documents (as defined under the Proceeds Agreements).

The Purchased Assets shall not include any of the Excluded Assets. "*Excluded Assets*" are defined as the following:  (x) all claims and causes of action of the Debtors arising under Bankruptcy Code §§ 544 through 553 (for the avoidance of doubt, contractual claims under non-bankruptcy law are Purchased Assets rather than Excluded Assets); (y) all claims of the Debtors against any current or former lender, facility agent or security agent under the secured loan facilities of either of the Debtors, except to the extent any such claims create or result in any direct or indirect liability against the Stalking Horse Bidders or their affiliates; and (z) any other assets of the Debtors designated by the Stalking Horse Bidders.

IV.    STALKING HORSE BID

The Stalking Horse Bidders have submitted a Base Purchase Price for the Purchased Assets in an amount equal to the Senior Secured Obligations and the Junior Secured Obligations (each as defined in the Proceeds Agreements)[5] and an Additional Cash Payment of $5,000,000.00.  The Debtors estimate that the total Base Purchase Price equaled $207,741,763.53 as of the Petition Date.  The Debtors have requested an accounting from the Secured Creditors and will consult with the Secured Creditors in good faith concerning the outstanding Senior Secured Obligations and Junior Secured Obligations that are expected to be payable on the Closing Date.  Any disputes in connection with the Base Purchase Price that the parties are unable to resolve may be resolved by the Court prior to the Sale Hearing.  The Debtors will provide Potential Bidders a breakdown of

---

[5]     The "*Proceeds Agreements*" are defined as, collectively:  (i) with respect to matters relating to the MSN 067 Aircraft, the Proceeds Agreement, dated November 6, 2018 (along with exhibits, schedules and as appendices thereto and as modified and in effect from time to time), originally between, among others, the MSN 067 Seller, as borrower, and Crédit Agricole Corporate and Investment Bank, as security agent (the "**MSN 067 Proceeds Agreement**"), and (ii) with respect to matters relating to the MSN 173 Aircraft, the Proceeds Agreement, dated December, 22 2017 (along with exhibits, schedules and as appendices thereto and as modified and in effect from time to time), originally between, among others, the MSN 173 Seller, as borrower, and Crédit Agricole Corporate and Investment Bank, as security agent (the "**MSN 173 Proceeds Agreement**").

the amounts for each element of the Base Purchase Price at least one week prior to the Bid Deadline (as defined herein).[6]

The Stalking Horse Bidders' Base Purchase Price is subject to being beaten by higher and/or better bids being offered under the terms of these Bidding Procedures.

## V.   STALKING HORSE BIDDERS' PROTECTIONS

In the event the Debtors do not consummate the sale of the Purchased Assets to the Stalking Horse Bidders (or as otherwise set forth in the Stalking Horse Purchase Agreement), the Debtors shall pay the Stalking Horse Bidders the Break-Up Fee (as defined in the Stalking Horse Purchase Agreement), i.e. an amount equal to 3.5% of the Base Purchase Price, by wire transfer to an account designated by the Stalking Horse Bidders from the proceeds (including any deposit or Deposit) of sale of the Purchased Assets or any part thereof (regardless of when it may occur, whether or not as part of these Bidding Procedures or these Chapter 11 Cases), or any debtor in possession or other financing.   The Debtors shall also pay the Stalking Horse Bidders the Expense Reimbursement (as defined in the Stalking Horse Purchase Agreement) by wire transfer to an account designated by the Stalking Horse Bidders from the proceeds of sale (including any deposit or Deposit) of the Purchased Assets or any part thereof (regardless of when it may occur, whether or not as part of these Bidding Procedures or these Chapter 11 Cases), or any debtor in possession financing or other financing, which generally consists of reimbursement of all reasonable and documented attorneys' fees and other costs and expenses of the Stalking Horse Bidders actually incurred in connection with or related to the Stalking Horse Bidder's efforts to negotiate and consummate the transactions contemplated by the Stalking Horse Purchase Agreement (including, without limitation, the fees and expenses of counsel), provided, however, that such reimbursement shall be capped at $1,500,000.

The Break-Up Fee and Expense Reimbursement shall be due and payable upon (i) the consummation of the sale to an alternative bidder that the Bankruptcy Court determined submitted the highest and/or best offer for the Purchased Assets (or any part thereof), or of a similar non-bankruptcy transaction, (ii) the consummation of a debtor-in-possession or other financing sufficient to (y) cover the Base Purchase Price and (z) pay the Expense Reimbursement and the Break-Up Fee to the Buyer, or (iii) the Debtors breaching their obligations under the Stalking Horse Purchase Agreement, including, without limitation, (A) by withdrawing from the Transaction (as defined in the Stalking

---

[6]   The Base Purchase Price includes the outstanding balances on the Senior Loans and Junior Loans as of December and October 2021, respectively, but the final number will include additional interest incurred through the Closing Date and certain reasonable fees that may be required under the Security Documents to ensure that the Senior Loans and Junior Loans are fully satisfied.

Horse Purchase Agreement) (other than being under the circumstances set forth in clause (ii) (sufficient refinancing obtained)), (B) by failing to meet their time of the essence obligations under the Stalking Horse Purchase Agreement, it being understood that the timing provisions of these Bidding Procedures shall constitute an agreement by the Debtors and the Stalking Horse Bidders of the dates provided for herein; or (C) changes having been made to the Bidding Procedures or other terms agreed by the Parties as part of the Bidding Procedures Order, except for changes agreed upon in writing by the Buyer (which consent shall not be unreasonably withheld).

## VI.   <u>DUE DILIGENCE</u>

The Debtors have posted copies of all material documents related to the Purchased Assets to a confidential electronic data room (the "*Data Room*").  To access the Data Room, an interested party other than the Stalking Horse Bidders and JP Lease (each of whom shall have access to the Data Room) must submit to the Debtors or their advisors the following:

(A)     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)     sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party has the financial wherewithal to consummate a sale transaction based upon a minimum Qualified Bid (as defined herein).

An interested party that meets the above requirements to the satisfaction of the Debtors shall be a "**Potential Bidder**."  As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; <u>provided</u>, that such access may be terminated by the Debtors in their reasonable discretion at any time, including if a Potential Bidder does not become a Qualified Bidder or these Bidding Procedures are terminated.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a sale transaction.

Until the Bid Deadline, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Debtors' advisors, Togut, Segal

9

& Segal LLP, Kyle J. Ortiz, Esq. (kortiz@teamtogut.com) and Eitan E. Blander, Esq. (eblander@teamtogut.com), and any additional information provided shall be made immediately available to all Potential Bidders, the Stalking Horse Bidders and JP Lease in the Data Room.  Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder or (b) these Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets (a) to any person or entity who (i) is not a Potential Bidder; (ii) does not comply with the participation requirements set forth above; (iii) in the case of competitively sensitive information, is a competitor of the Debtors; or (iv) as otherwise ordered by the Bankruptcy Court; and (b) to the extent not permitted by law.

VII.    <u>AUCTION QUALIFICATION PROCEDURES</u>

A.    <u>Bid Deadline</u>

A Potential Bidder that desires to make a bid (a "*Bid*") on all of the Purchased Assets shall deliver electronic copies of the Bid (in <u>both</u> Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) format) so as to be received no later than **March 7, 2022 at noon (ET)** (the "*Bid Deadline*"); *provided* that the Debtors may extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders, the Stalking Horse Bidders and JP Lease; *provided further* that the Debtors comply with the terms of the Stalking Horse Purchase Agreement; and the other requirements of these Bidding Procedures.  **The submission of a Bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Purchased Assets.**  Any party that does not submit a Bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in the Auction.  Bids must be submitted by email to the following:

<u>Counsel for the Debtors</u>
kortiz@teamtogut.com; and
eblander@teamtogut.com;

<u>Counsel for the Stalking Horse Bidders</u>
sgreissman@whitecase.com;
and rgraham@whitecase.com;  and

<u>Counsel for JP Lease</u>

MJEdelman@VedderPrice.com; and
CGee@VedderPrice.com

### B.     Form and Content of Bids

A Bid must contain a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the Bid or the sale transaction, and includes, at a minimum, the following:

(i)     <u>Finalized Sale Documents</u>.  Each Bid must include an express agreement that the purchase of the Purchased Assets shall be solely subject to the same conditions as set forth in Section 4 of the Staling Horse Term Sheet and an executed and marked-up version of the Stalking Horse Purchase Agreement, together with a Word version thereof.

(ii)     <u>Purchase Price; Minimum Bid</u>.  Each Bid submitted must purchase all of the Purchased Assets and must specify the purchase price, which purchase price must include a cash component that equals or is in excess of the sum of the following amounts (collectively, the "*Minimum Bid*"):  (a) the Base Purchase Price <u>plus</u> (b) the Minimum Overbid Amount <u>plus</u> (c) the Break-Up Fee <u>plus</u> (d) the Expense Reimbursement.  The Bid must also either (y) allocate the Purchase Price (other than the component consisting of Base Purchase Price (excluding the Additional Cash Payment), which shall be allocated and distributed to fully satisfy the Secured Obligations as a condition to closing), contained in such Bid between the MSN 067 Purchased Assets and the MSN 173 Purchased Assets or (z) grant the Debtors the discretion to allocate such Purchase Price between the MSN 067 Purchased Assets and the MSN 173 Purchased Assets in any manner as determined by the Debtors in their discretion.

(iii)     <u>Unconditional Offer</u>.  A commitment that the Bid is formal, binding, and unconditional (except for those conditions expressly set forth in Clause (i) above), is not subject to any due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid.

(iv)     <u>Form of Consideration</u>.  Except with respect to (a) the Stalking Horse Bid (as defined herein) and (b) any permitted credit bidding, a confirmation that the Bid is exclusively for cash in U.S. Dollars at least equal to the Minimum Bid.

11

(v)     <u>Proof of Financial Ability to Perform</u>.  Each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the sale transaction, including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365 of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments (if needed) to close the sale transaction, contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors necessary to demonstrate that such Potential Bidder has the ability to close the sale transaction either by all cash funding without any contingency (or by financing commitment evidenced as set forth below).

(vi)    <u>Required Approvals</u>.  A statement or evidence (a) that the Potential Bidder has made or will make in a timely manner all necessary filings under any applicable law as may be needed to give effect to the sale transactions contemplated by the Bid and pay the fees associated with such filings and (b) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals.  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Stalking Horse Purchase Agreement.

(vii)   <u>No Entitlement to Break-Up Fee, Expense Reimbursement, or Other Amounts</u>.  A statement that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

(viii)  <u>Agreement to Terms of the Bidding Procedures</u>.  A statement that the Potential Bidder agrees to be bound by these Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

(i)      <u>Deposit</u>.  A Deposit (as defined herein);

(ii)     <u>Contact Information</u>.   The contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder;

(iii)    <u>Evidence of Financial Wherewithal</u>.   Written evidence of available cash without contingency, executed commitment papers for financing (not subject to any conditions), and such other evidence of ability to consummate the transaction contemplated by the Bid and compliance with the Bidding Procedures Order, the Bidding Procedures and the Sale Order, in each case, as determined by the Debtors in their business judgment;

(iv)    <u>Identity of Bidders; Purchase Participants</u>.   The identity of each entity that will be participating in connection with such Bid and taking ownership of the assets (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the sale transaction) and a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Bid;

(v)     <u>Covenant to Cooperate</u>.   A covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;  and

(vi)    <u>Agreement to Terms of the Bidding Procedures</u>.   A statement that the Potential Bidder who submits a Bid agrees to be bound by these Bidding Procedures.

C.      <u>Review Of Bids; Designation of Qualified Bids</u>

The Debtors will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid and determination as to whether such Bid provides greater consideration than the Sales Transactions.  The Debtors will provide a copy of each Bid received within one (1) day of receipt thereof to the Stalking Horse Bidders, JP Lease and,

as applicable, the Committee.  The Stalking Horse Bidders are Qualified Bidders and the Sale Transactions represent a Qualified Bid (in such context, the "*Stalking Horse Bid*").

The Debtors shall determine, in their reasonable judgment, which of the Bids received by the Bid Deadline meets the requirements set forth above and thus qualifies as a "*Qualified Bid*" (each Potential Bidder that submits such a Qualified Bid being a "*Qualified Bidder*") and shall notify each Qualified Bidder of its status as a Qualified Bidder by no later than March 7, 2022 at 6:00 p.m. (ET) (the "**Qualified Bid Deadline**").  The Debtors shall provide copies of such notice and any Qualified Bid to the Stalking Horse Bidders, JP Lease, as applicable, the Committee by no later than March 7, 2022 at 6:00 p.m. (ET). If the Debtors in their reasonable business judgment determine that a person or entity has acted in bad faith in connection with any of the Sellers, the Debtors may bar such person or entity from being considered as a Qualified Bidder.

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; <u>provided</u>, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures. The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid and to clarify or otherwise improve such Bid.

## D.    <u>Failure to Receive Qualified Bids</u>

If no Qualified Bid other than the Stalking Horse Bid is received by the Bid Deadline, the Debtors will not conduct the Auction and shall file a notice with the Bankruptcy Court by **March 7, 2022 at 6:00 p.m. (ET)** indicating that the Auction has been cancelled.  If no Qualified Bid is received, the Stalking Horse Bidders shall be deemed the Successful Bidder and the Stalking Horse Bid shall be deemed the Successful Bid.

The Debtors shall promptly notify the Stalking Horse Bidders and JP Lease if no Qualified Bid other than the Stalking Horse Bid is received by the Bid Deadline.

## E.    <u>Deposit</u>

Except to the extent modified with respect to a Bid that contains a credit bid permitted under these Bidding Procedures, a Bid must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the purchase price (a "*Deposit*").  A Deposit must be deposited prior to the Bid Deadline with an escrow agent selected by the Debtors (the "*Escrow Agent*") pursuant to an escrow agreement to be provided by the Debtors.  To the extent a Qualified Bid is modified before, during, or after the Auction, the

Debtors reserve the right to require that such Qualified Bidder adjust its Deposit so that it equals ten percent (10%) of the cash purchase price.  The requirements set forth in this "Deposit" section do not apply with respect to the Stalking Horse Bidders.  Other than the Debtors and Stalking Horse Bidders (to the extent of their Bid Protections), no person or entity shall have any rights or interests in any Deposit.

## VIII.  CREDIT BIDDING

To the extent that any Potential Bidders reasonably believes that it is entitled to submit a credit bid under Section 363(k) of the Bankruptcy Code for any portion of the of the purchase price that is included in its Bid, such Potential Bidder must also comply with these terms and procedures.

### A.  PROCEDURES AND DEADLINES FOR POTENTIAL BIDDERS SEEKING TO ASSERT A CREDIT BID AS A PORTION OF ITS BID

In addition to the requirements set forth in the *Form and Content of Bids* provision above, any Potential Bidder that seeks to asset a credit bid as a portion of its offered purchase price must comply with these additional requirements in a submission filed with the Bankruptcy Court in the Chapter 11 Cases on or before February 10, 2021 at 4:00 p.m. (ET):

(i)    Statement of Basis for Assertion of Credit Bidding Rights.  A statement detailing the contracts and security interests giving rise to any alleged credit bidding rights that are recognized under Section 363(k) of the Bankruptcy Code (such asserted rights, the "*Credit Bidding Rights*"), including, without limitation, (a) the contracts, agreements and security agreements and instruments giving rise to such rights, (b) a description of the collateral subject to such Credit Bidding Rights and the extent to which the Purchased Assets constitute such collateral, and (c) the specific contractual provisions under which such Potential Bidder asserts Credit Bidding Rights, including, without limitation, any contractual provisions permitting an agent, trustee or representative to assert such Credit Bidding Rights on behalf of other parties.

(ii)    Statement about Amount of Credit Bid.  The amount the Potential Bidder asserts as its credit bid, including the total amount of such credit bid, and the amount of the credit bid against each of (a) the MSN 067 Purchased Assets and (b) the MSN 173 Purchased Assets.

(iii)    Additional Disclosures If Credit Bidding Being Asserted by Security Agent, Security Trustee or Other Agent on Behalf of Lenders.  If the asserted right

to credit bid is being asserted by a security trustee, a security agent or any other entity that is asserting such right in a representative capacity on behalf of entities holding the actual and/or beneficial ownership interests in the loans or other obligations owed by either of the Debtors (such lenders or other creditors holding the actual and/or beneficial ownership interests in the loans or other obligations owed by either or both of the Debtors the "*Actual Lenders*"), by providing a written statement setting forth the contractual or other basis for the Security Agent, other Agent or representative being able to assert such credit bid rights on behalf of the Actual Lenders.

(iv)     Minimum Amount of Cash Portion of Bid.  Any Bid asserted by a Potential Bidder who asserts Credit Biding Rights must contain a cash component as part of its Bid at least equal to the sum of the following (such sum, the "*Minimum Cash Component*"):  (i) Minimum Overbid Amount plus (ii) the Break-Up Fee plus (iii) the Expense Reimbursement, plus (iv) the amount of the Additional Cash Payment; plus (v) the amount of any Secured Obligations that were not part of the credit bid component of the Bid.

(v)     Modified Deposit Requirements for Potential Bidders Asserting Credit Bidding Rights.  Subject to further order of the Bankruptcy Court (*i.e.,* in the event the Bankruptcy Court restricts or limits such Potential Bidder's credit bidding rights), the Deposit for an entity asserting credit bid rights shall be equal to the greater of (a) ten percent (10%) of the cash portion of the Bid and (b) the Minimum Cash Component.

### B.     Deadline for Objections and Replies Regarding Such Credit Bidding Rights

The Debtors, the Stalking Horse Bidders and any other parties in interest in the Chapter 11 Cases may file an objection on or before the Credit Bidding Objection Deadline to a Potential Bidder seeking to utilize Credit Bidding Rights on the basis that "cause" exists within the meaning of Section 363(k) of the Bankruptcy Code to prohibit, limit or restrict such Credit Bidding Rights.  If any such objections are filed, the Potential Bidder asserting such Credit Bidding Rights may file a response in support of such Credit Bidding Rights on or before the Credit Bidding Response Deadline.  The party objecting to the assertion of Credit Bidding Rights may file a reply in support of its objections on or before the Credit Bidding Reply Deadline.

## IX.     Auction Procedures for Qualified Bids

### A.     AUCTION TO BE HELD WHERE THERE ARE TWO OR MORE QUALIFIED BIDDERS AS OF THE BID DEADLINE

If more than one Qualified Bid is received by the Bid Deadline, the Debtors will conduct the Auction.  The Auction will take place at **10:00 a.m. (ET) on March 8, 2022** (such date, or such other date allowed under these Bidding Procedures as the Debtors may notify any Qualified Bidders who have submitted Qualified Bids, counsel for JP Lease and, as applicable, counsel for any Committee, the "Auction Date") and be held virtually pursuant to a Zoom link to be provided to Qualified Bidders, counsel for JP Lease and, as applicable, counsel for any Committee prior to the start of the Auction.  Only a Qualified Bidder that has submitted a Qualified Bid (including the Stalking Horse Bidders) will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith.   A reasonable number of representatives of the professional advisors and members of any Committee will be permitted to attend and observe the Auction.  Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.  The Debtors may, in the exercise of their business judgment, adjourn the Auction.

B.    "AS IS, WHERE IS" SALE

Any Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agent or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in the final purchase agreement approved by the Bankruptcy Court.  Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets that are the subject of the Auction prior to making its bid and that it has relied solely upon its own independent review and investigation in making its bid.   Except as otherwise provided in the final purchase agreement approved by the Bankruptcy Court, all of the Debtors' rights, title and interests in the Purchased Assets will be sold free and clear of liens, claims, interests and encumbrances (other than those liens, claims and encumbrances permitted to survive under the terms of the Stalking Horse Purchase Agreement) as proposed in the Sale Order (collectively, "Liens"), with any Liens to attach to the proceeds of the sale transaction, which shall be first applied to satisfy the Secured Obligations in cash in full, all as provided in the Sale Order.

C.    CONDUCT OF AUCTION; MINIMUM OVERBID

If the Debtors receive two or more Qualified Bids (including the Stalking Horse Bid), bidding for the Purchased Assets will start with the highest purchase price, or, to the extent highest purchase prices are equal, the best terms from among the Qualified Bids with the highest purchase prices timely received by the Debtors (as selected in the Debtors' reasonable discretion) and will proceed thereafter in minimum cash bid

increments of not less than $500,000 (a "**Minimum Overbid Amount**"), except that the Stalking Horse Bidders may utilize the Break-Up Fee and the Expense Reimbursement as part of any subsequent bid made by them, which Break-Up Fee and Expense Reimbursement will be treated as equal to the cash dollar amount of the Break-Up Fee for purposes of evaluating their subsequent bid and may be applied as if it were cash if such subsequent bid by the Stalking Horse Bidders is the Successful Bid.  (A subsequent bid by the Stalking Horse Bidders will not constitute a waiver of the Break-Up Fee or Expense Reimbursement.)  The minimum Qualified Bid (and all bids received thereafter) also must meet the minimum bid requirements, including being equal to or in excess of the Minimum Bid, and the other terms specified above.  With the consent of the Stalking Horse Bidders, the Debtors may increase or decrease the Minimum Overbid Amount at any time during the Auction.  For the avoidance of doubt, any Minimum Bid must provide for at least $500,000 of incremental cash consideration to the Debtors after taking into account the payment of the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidders, satisfaction in full in cash of the Secured Obligations (as defined in the Stalking Horse Purchase Agreement), in each case from the sale proceeds and as closing conditions, and the Additional Cash Payment (as defined in the Stalking Horse Purchase Agreement).

        The Debtors, with the consent of the Stalking Horse Bidders, may adopt rules for the Auction consistent with these Bidding Procedures and the Bidding Procedures Order that the Debtors reasonably determine to be appropriate to promote a competitive auction; underlined provided that, with respect to the Stalking Horse Bidders and the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement (as may be consensually modified at any Auction) and not the terms of this paragraph shall control.  Any such rules developed by the Debtors will provide that all bids in the Auction will be made and received on an open basis, and all other bidders participating in the Auction will be entitled to be present (via the Zoom auction procedures) for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders, the Stalking Horse Bidders, the Debtors, JP Lease and, as applicable, any Committee.  Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction.  The Auction shall be conducted openly and transcribed or recorded, and the Qualified Bidders observing the Auction will be informed of the material terms of the previous bid.

        Prior to the conclusion of the Auction, the Debtors shall (i) review each Qualified Bid on the basis of the amount of cash, contractual terms, the speed and certainty of consummating a sale transaction, and any other relevant factor, (ii) whether any Qualified

18

Bid complies with the timing requirements and other terms provided for under the Stalking Horse Purchase Agreement, (iv) any other factors the Debtors may deem relevant, and (v) identify the highest or otherwise best Qualified Bid for the Purchased Assets (the "*Successful Bid*" and the bidder making such bid, the "*Successful Bidder*").  The Debtors shall also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid (the "*Back-Up Bid*" and the bidder making such bid, a "*Back-Up Bidder*").  A Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) the applicable outside date for consummation of the sale transaction (which, for these purposes in the case of the Stalking Horse Bid shall be deemed to be February 28, 2022), (ii) consummation of the sale transaction with a Successful Bidder, and (iii) the release of such bid by the Debtors in writing (such date, the "*Back-Up Bid Expiration Date*").  The Debtors shall file the results of the Auction with the Bankruptcy Court in the Chapter 11 Cases, including (i) the identity of the Successful Bidder, (ii) the amount and other material terms of the Successful Bid, and (iii) the identity of the Back-Up Bidder.  Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Bankruptcy Court, the Debtors will not consider bids made after the Auction has been closed.  In the event the Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline, no Auction will be conducted, and Stalking Horse Bidders will be the Successful Bidder.  At the Sale Hearing, the Debtors will present the Successful Bid to the Bankruptcy Court for approval.

The Closing with any Successful Bidder shall occur within the time requirements provided under the Stalking Horse Purchase Agreement.  A Successful Bid may not be assigned to any other person or entity without the consent of the Debtors.  If a sale transaction with a Successful Bidder is terminated (and does not close) prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid.

At any time before entry of an order approving the applicable sale transaction envisioned by a Qualified Bid, the Debtors reserve the right to and may reject such Qualified Bid if such Qualified Bid, in the Debtors' judgment, is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable sale transaction; or (iii) contrary to the best interests of the Debtors and their estates.  No attempt by the Debtors to reject a Qualified Bid under this paragraph will modify any rights of the Debtors or the Stalking Horse Bidders under the Stalking Horse Purchase Agreement (as may be consensually modified in writing by the Debtors and Stalking Horse Bidders at the Auction).

In the event that the Sale Order has not been stayed, vacated, amended, reversed or modified, the Closing of the sale transactions shall occur as soon as practicable after

the entry of the Sale Order and in any event by March 15, 2022 (or such later date as agreed by the Parties, which agreement shall not be unreasonably withheld).

D.    Supplementation of Bidding Procedures

With the consent of the Stalking Horse Bidders, the Debtors may supplement these Bidding Procedures with any terms or procedures in a manner that enhances the auction processes and/or clarifies any matters not currently delineated herein.

E.    Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders (except the Stalking Horse Bidder) will be held in escrow by the Escrow Agent and while held in escrow will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Escrow Agent will retain the Good Faith Deposits of the Successful Bidder until the closing of the sale transactions in respect of such Successful Bid unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits of the Qualified Bidders other than the Successful Bidder will be returned within two Business Days of the Sale Closing Date.  At the closing of the sale transactions contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.  Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that has accrued thereon.

F.    Consultation Matters

If a Committee is appointed, in the event that any member of the Committee or an affiliate thereof submits a Qualified Bid, the Committee's professional advisor must exclude such member from any discussions or deliberations between the Committee's professional advisors and the Committee regarding the sale of the Purchased Assets and must not provide any information regarding the sale transactions to such member, and any obligation of the Debtors hereunder or otherwise to consult with the affected party will be without further action waived, discharged and released.

G.    Auction Constitutes a Foreclosure Sale and Enforcement Action Under Applicable Law

Subject to the terms of these Bidding Procedures, including, without limitation, (i) the higher and better auction terms provided for herein, and (ii) the terms set forth in Section V (Stalking Horse Bidders' Protections) hereof, the Auction and the Sale Transactions constitute Enforcement Actions of the Debtors' direct and/or beneficial Interests in the Purchased Assets in accordance with, and subject to the rights and benefits

conferred under applicable law, including, without limitation, under the Bankruptcy Code, Article 9 of the UCC and the Cape Town Convention (each as defined in the Proceeds Agreements).

# EXHIBIT 2

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Amanda C. Glaubach
Eitan E. Blander

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JPA NO. 111 CO., LTD. and JPA NO. 49 CO., LTD., | Case No.:  21-12075 (DSJ) |
| Debtors. [1] | (Jointly Administered) |

## NOTICE OF PROPOSED SALE OF PURCHASED ASSETS

      JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd, as debtors and debtors in possession (the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), are seeking to sell their 100% ownership interests in the purchased assets (the "Purchased Assets") pursuant to a motion, dated December 31, 2021 [Docket No. 21] (the "Bidding Procedures and Sale Motion").[2]

      By order, dated [____], [_] 2022 [Docket No. [_]] (the "Bidding Procedures Order"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved certain bidding and sale procedures for the Debtors' proposed marketing and sale of the Purchased Assets.

      The Debtors have already negotiated a sale for the Purchased Assets, as

---

[1]   The Debtors in these Chapter 11 Cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is: Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100-0013.

[2]   Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Bidding Procedures and Sale Motion.

set forth in the stalking horse term sheet, a copy of which is attached as **Exhibit B** to the Bidding Procedures and Sale Motion (the "Stalking Horse Term Sheet"), though the proposed sale set forth therein is subject to higher and better offers pursuant to the auction process under the Bidding Procedures Order.

By the Bidding Procedures and Sale Motion, the Debtors have also requested the Bankruptcy Court enter an order, a copy of which is attached as **Exhibit C** to the Sale and Bidding Procedures Motion (the "Proposed Sale Order"), which provides, among other things, for the sale of the Purchased Assets free and clear of liens, claims, interests, and encumbrances, to the extent permissible by law, to the successful bidder.

INTERESTED BIDDERS SHOULD CONTACT THE DEBTORS AT:

JLPS Remarketing
remarketing@jlps.co.jp

PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:

- The deadline to submit a bid for the Purchased Assets is **March 7, 2022 at 12:00 p.m. noon (Eastern Time)** (the "Bid Deadline").  The failure to abide by the procedures and deadlines set forth in the Bidding Procedures Order may result in the denial of your bid.

- An auction, if necessary, for the Purchased Assets has been scheduled for **March 8, 2022 at 10:00 a.m. (Eastern Time)** (the "Auction").  The Auction may be canceled without notice if the Stalking Horse Purchase Agreement is the only Qualified Bid (as defined in the Bidding Procedures Order) received by the Debtor.

- The deadline to file an objection with the Bankruptcy Court to the proposed sale of the Purchased Assets is **March 10, 2022 at 12:00 p.m. noon (Eastern Time)** (the "Sale Objection Deadline").  Objections must be filed and served in accordance with the Bidding Procedures Order.

- The Bankruptcy Court will conduct a hearing to consider the proposed sale on **March 14, 2022 at 11:00 a.m. (Eastern Time)** (the "Sale Hearing"), via Zoom.  The Sale Hearing may be adjourned or rescheduled without further notice by announcement at the Sale Hearing or by the filing of a notice or agenda on the docket of the Chapter 11 Case.

THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE BIDDING PROCEDURES AND SALE MOTION, THE PROPOSED SALE ORDER, THE SALE, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE STALKING HORSE PURCHASE AGREEMENT (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE PURCHASED ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).

Copies of the Sale and Bidding Procedures Motion, the Bidding Procedures Order, the Stalking Horse Purchase Agreement, the Proposed Sale Order, and all other documents and pleadings referenced in this notice or pertaining to these Chapter 11 Cases can be viewed and/or obtained by accessing the Bankruptcy Court's website for a fee, or (ii) by contacting the Office of the Clerk of the Bankruptcy Court. Please note that a PACER password is required to access documents on the Bankruptcy Court's website.

Dated:  New York, New York
      February 4, 2022

JPA NO. 111 CO., LTD. and
JPA NO. 49 CO., LTD.
*Debtors and Debtors in Possession*
By their Proposed Counsel
TOGUT, SEGAL & SEGAL LLP
By:


*/s/ Kyle J. Ortiz*
Kyle J. Ortiz
Amanda C. Glaubach
Eitan E. Blander
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000