Sidney P. Levinson
Isabella M. Cusano
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone:     (212) 909-6000
Facsimile:     (212) 909-6836

*Counsel for JLPS Leasing Uranus Limited and*
*JLPS Leasing Draco Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| JPA NO. 111 CO., LTD., and JPA NO. 49 CO., LTD., | Case No. 21-12075 (DSJ) |
|  | (Jointly Administered) |
| Debtors.[1] |  |

**OBJECTION AND RESERVATION OF RIGHTS OF JLPS LEASING URANUS LIMITED AND JLPS LEASING DRACO LIMITED TO PROPOSED SALE OF <u>PURCHASED ASSETS</u>**

---

[1]     The Debtors in these Chapter 11 Cases are: JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is: Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100-0013.

# TABLE OF CONTENTS

Page

SUMMARY OF OBJECTION ..........................................**Error! Bookmark not defined.**

FACTUAL BACKGROUND ........................................................................ 4

    A.    Relationship to the Debtors........................................................ 4

    B.    The VNA Leases ....................................................................... 5

    C.    The Head Leases ....................................................................... 7

    D.    The JLPS Security Arrangements .............................................. 9

    E.    The Notices of Enforcement Sale ............................................ 11

    F.    Change in governance and ownership of JLPS Uranus and JLPS
        Draco....................................................................................... 14

    G.    The Warranty Agreements ...................................................... 16

    H.    The English Legal Proceedings ............................................... 17

ARGUMENT ...................................................................................... 19

    A.    The Debtors Cannot Sell the Lessor Assets Which Are Owned by
        the Lessors and Not Property of the Estate. ............................... 19

    B.    Even if the Notices of Enforcement Sale Were Not Invalid,
        Sections 363(e) and 363(f) of the Bankruptcy Code Do Not
        Authorize the Sale of the Lessor Assets Free and Clear of the
        Lessors' Interests, Especially Where Adequate Protection Has Not
        Been Provided. ........................................................................ 20

CONCLUSION ....................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In Matter of Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016) .................................21

*In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009).................................................................21

*In re Grumman Olson Indus., Inc.*, 467 B.R. 694 (S.D.N.Y. 2012) ...................................21

*In re Interiors of Yesterday, LLC*, No. 02-30563LMW, 2007 WL 419646
(Bankr. D. Conn. Feb. 2, 2007)....................................................................................19

*In re Old Carco LLC*, 538 B.R. 674 (Bankr. S.D.N.Y. 2015) ...........................................21

*In re Popp*, 323 B.R. 260 (9th Cir.BAP 2005) ...................................................................19

*In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir.2003)...........................................21

*Massachusetts Dep't of Unemployment Assistance v. OPK Biotech, LLC*
*(In re PBBPC, Inc.)*, 484 B.R. 860 (B.A.P. 1st Cir. 2013) .........................................21

*Reverend C.T. Walker Hous. Dev. Fund Corp. v. City of New York*, 586
B.R. 534 (E.D.N.Y. 2018) ...........................................................................................19

*Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White*
*Motor Credit Corp.)*, 75 B.R. 944 (Bankr. N.D. Ohio 1987) .....................................21

*WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistance Servs. (In*
*re WBQ P'ship)*, 189 B.R. 97 (Bankr.E.D.Va.1995) ..................................................21

**Statutes**

11 U.S.C. § 361(3) ...............................................................................................................23

11 U.S.C. § 363(b)(1) ...........................................................................................................19

11 U.S.C. § 363(e) ................................................................................................................23

11 U.S.C. § 363(f) ......................................................................................................20, 21, 22

JLPS Leasing Uranus Limited, formerly known as PAAL Uranus Company Limited ("JLPS Uranus"), and JLPS Leasing Draco Limited, formerly known as DAE Leasing (Ireland) 12 Limited ("JLPS Draco" and, together with JLPS Uranus, the "Lessors"), hereby file this objection and reservation of rights (the "Objection") with respect to the terms of the Stalking Horse Purchase Agreement, as described in the *Corrected Order (A) Approving Bidding Procedures Relating to the Sale of Substantially all of the Debtors' Assets; (B) Establishing Stalking Horse Bidders and Approving Bid Protections; (C) Approving Procedures of the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (D) Authorizing Enforcement Actions; (E) Scheduling an Auction and a Sale Hearing; and (F) Approving the Form and Manner of Notice Thereof* [ECF No. 102] (including the exhibits thereto, the "Bidding Procedures Order").[2]   In support of this Objection, the Lessors submit the *Declaration of Sidney P. Levinson in Support of Objection and Reservation of Rights of JLPS Leasing Uranus Limited and JLPS Leasing Draco Limited to  Proposed Sale Of Purchased Assets* (the "Levinson Declaration"), which is filed concurrently herewith and incorporated by reference herein.

In support of this Objection, the Lessors respectfully state as follows:

## <u>SUMMARY OF OBJECTION</u>[3]

1.    The Lessors object to the Debtors' proposed sale of assets that are owned by the Lessors and that do not belong to the Debtors.  As explained below, no authority exists for the

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and the exhibits thereto.

[3]    Capitalized terms used but not defined in this section shall have the meanings ascribed to such terms below.

Debtors to sell the Lessors' assets, let alone free and clear of the Lessors' interests and without granting any adequate protection to the Lessors on account of such interests.

2.      The Lessors are not subsidiaries of the Debtors.  Rather, as of the Petition Date, the Lessors and the Debtors were sister affiliates that were under the common control of the Parent.  The Lessors leased two aircraft from the Debtors under so-called "Head Leases" and, in turn, the Lessors entered into separate lease agreements with Vietnam Airlines JSC to sublease those same two aircraft.

3.      The Lessors own at least three categories of assets that do not belong to the Debtors, but that the Debtors are nevertheless proposing to sell or assign under the Bidding Procedures Order.  Those asset categories include: (1) the Lessors' rights, title, claims and interests in the VNA Leases; (2) the Lessors' rights as indemnitee against Vietnam Airlines; and (3) the Lessors' rights under various warranty agreements, many of which do not even include the Debtors as parties.

4.      Since commencing these bankruptcy cases, the Debtors and the Parent have jointly undertaken deliberate actions that are prejudicial to, and wholly disregard, the best interests of the non-debtor Lessors.  Most egregiously, on January 13, 2022, as revised on January 21, 2022, each of the Debtors and Lessors executed a *(A) Notice of Enforcement Sale and (B) General Conveyance and Bill Of Sale*, under which the Debtors purported to "facilitate" a "consensual enforcement" against the Lessors, the intended effect of which was to transfer all of the Lessors' assets to the Debtors and leave each Lessor as a "shell company." *See* ECF 58, Ex. B; ECF 77, Ex. B; Levinson Decl. Exs. 1-2 (McCann Letters) § 5.1, 6.3.  In exchange for agreeing to this "consensual enforcement sale," the Lessors received <u>nothing</u>, other than a

worthless release by the Debtors of non-recourse obligations owed to them by the Lessors under the Head Leases.

5.        In attempting to reduce each Lessor to a "shell company," the Debtors and Parent failed to make any provision for claims that might be asserted against the Lessors by its potential creditors, including Vietnam Airlines (which itself is listed as a creditor in the Debtors' own schedules of assets and liabilities), counterparties to warranty agreements, the Lessors' professionals, or other potential creditors.  Even worse, by purporting to effect the transfer of all of the Lessors' assets, the Notices of Enforcement Sale gave rise to allegations now being made by FitzWalter that various non-recourse obligations of the Lessors under the governing "Proceeds Agreements" were converted into fully recourse obligations, thereby exposing the Lessors to potential liabilities that previously and otherwise did not exist.

5.        Needless to say, the Debtors and the Parent, along with the Lessors' prior directors and professionals, have proven themselves to be poor stewards of the Lessors and their interests in the Lessor Assets.  Subsequent to the Debtors' public disclosure of the Notices of Enforcement Sale, FitzWalter exercised its rights under two "Share Charges" to cause the resignation of the Lessors' three prior directors (one of which served in a dual capacity as a director of the Debtors) and to appoint a new independent director in Ireland, Derek O'Reilly, who himself has no prior relationship or affiliation with either FitzWalter or the Parent.  As such, the Lessors now have a fiduciary who is focused solely on pursuing the best interests of the Lessors.

6.        As explained below, the Notices of Enforcement Sale are invalid.  In large part, this is because the Debtors and Lessors proceeded with their "consensual enforcement" under the false premise that the security interests assigned by the Lessors to the Debtors pursuant to two

3

"Deeds of Security Assignment" secured the Lessors' non-recourse obligations to <u>the Debtors</u> under the Head Leases.  Levinson Decl. Exs. 1-2 (McCann Letters) § 1.5.  In fact, the Security Assignments only served as collateral for the "Secured Obligations," defined to mean the obligations owed to the "Finance Parties," *i.e.*, FitzWalter and other Lenders—but not to the Debtors.  In any event, the Debtors simultaneously transferred any rights granted under the Security Assignments to FitzWalter's predecessor, further confirming the invalidity of the Notices of Enforcement Sale.  As such, the Lessors retain ownership of the Lessor Assets and the Debtors have no right to sell them under the Bidding Procedures Order.

7.      Even if the Notices of Enforcement Sale were not invalid, the Debtors could not sell the Lessor Assets free and clear of the interests of the Lessors and their creditors in those assets, which would include not only claims (for fraudulent transfer, rescission, breach of fiduciary duty, etc.) arising from the transfer, but also rights of redemption that exist.  This is particularly true where, as here, the Debtors have failed to offer or provide any adequate protection to the Lessors on account of their ongoing interests in the Lessor Assets.

8.      Accordingly, the Lessors object to the Debtors' proposed sale of the Lessor Assets under the Bidding Procedures Order.  If the Debtors want to obtain the agreement of the Lessors to bundle the Lessor Assets with any sale of the Debtors' assets, they will need not only to provide reasonable value to the Lessors, but also provide proper assurance to the Lessors that any potential claims that may be asserted against the Lessors (including those that may be asserted by FitzWalter, Vietnam Airlines, the counterparties under the Warranty Agreements, or otherwise) will be fully and indefeasibly satisfied and discharged.

## **FACTUAL BACKGROUND**

### A.      **Relationship to the Debtors**

4

9.      As of the Petition Date, the Lessors were sister affiliates of JPA No. 111 Co., Ltd. ("JPA 111") and JPA No. 49 Co., Ltd. ("JPA 49" and, together with JPA 111, the "Debtors"), the debtors in the above-captioned cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). More specifically, the Debtors and the Lessors were, as of the Petition Date, each directly or indirectly wholly owned subsidiaries JP Lease Products & Services Co. Ltd. (the "Parent"). The Lessors are not debtors in these Chapter 11 Cases.

10.      As detailed below, the Lessors and the Debtors are both parties to various agreements, including: (1) two largely *pro forma* "Head Leases," under which the Debtors granted the Lessors leasehold interests over certain airplanes and engines originally purchased by the Debtors, which the Lessors in turn lease to Vietnam Airlines JSC ("Vietnam Airlines" or "VNA") and (2) two "Deeds of Security Assignment," under which the Lessors assigned security interests to the Debtors (and which, as described below, the Debtors simultaneously assigned to FitzWalter's predecessor, Crédit Agricole Corporate and Investment Bank, in its capacity as security agent (the "Security Agent")) to secure obligations owed to the Finance Parties.[4]

**B.      The VNA Leases**

11.      JLPS Uranus derives substantial value from its rights under an Aircraft Lease Agreement, dated as of August 1, 2017 (the "VNA-Uranus Lease"), between JLPS Uranus and VNA. *See* ECF No. 57 Ex. 4 (VNA-Uranus Lease). JLPS Draco is party to a substantially

---

[4]      The leases and certain other agreements referenced herein were previously submitted to the Court as exhibits to (1) the *Declaration of Benjamin I. Finestone in Support of Preliminary Objection of Fitzwalter Capital Partners (Financial Trading) Limited to Debtors' Application for Entry of Orders* [ECF No. 57] (the "Finestone Declaration") and (2) the *Declaration of Andrew Gray in Support of Creditor FitzWalter Capital Partners (Financial Trading) Limited's Motion to Dismiss or Abstain From Hearing These Chapter 11 Cases* [ECF No. 23] (the "Gray Declaration") and shall be incorporated by reference thereto to avoid duplicative filings.

5

similar Aircraft Lease Agreement, dated as of December 4, 2016 (the "VNA-Draco Lease" and, together with the VNA-Uranus Lease, the "VNA Leases", and the Lessors' rights under the VNA Leases, the "the VNA Lease Rights").  *See* ECF No. 57 Ex. 5 (VNA-Draco Lease).

12.     Pursuant to the VNA-Uranus Lease, JLPS Uranus leased to VNA an Airbus A350-941 airplane (serial number MSN 0173) as well as Rolls Royce TRENT XWV-84 engines (collectively, the "Uranus Aircraft").  *See* ECF No. 57 Ex. 4 (VNA-Uranus Lease).  Likewise, pursuant to the VNA-Draco Lease, JLPS Draco leased to VNA an Airbus A350-900 XWB airplane (serial number MSN 0067) as well as Rolls Royce Trent XWB84 engines (collectively, the "Draco Aircraft" and, together with the Uranus Aircrafts, the "Aircraft").  *See* ECF No. 57 Ex. 5 (VNA-Draco Lease).

13.     The VNA Leases, which are arms-length, detailed contracts, provide VNA with possessory rights to the Aircraft for the duration of a specified term, or "Lease Period."[5]  *See* ECF No. 57 Exs. 4-5 (VNA Leases) § 5.  However, the Lease Period under both of the VNA Leases can be shortened or extended if certain contingent events arise, including, *inter alia*, upon notice of an event of default.  *See id.* § 1.1 ("Expiry Date").  In fact, on December 1, 2021, the Security Agent issued termination notices to JLPS Uranus, JLPS Draco and VNA terminating the VNA Leases.  *See* ECF No. 23 Exs. 31-32.

14.     Under the VNA Leases, each of the Lessors (JLPS Uranus and JLPS Draco) are entitled to (i) rent payments from VNA, payable on a monthly basis for the duration of the Lease Period (the "VNA Rent Payments") and (ii) several other payments from VNA, including return compensation, losses and outgoings arising in relation to insurance and the day-to-day operation

---

[5]     More specifically, "Lease Period" is initially defined as terms of 143 months and 12 years following delivery of the applicable Aircraft under the VNA-Uranus Lease and the VNA-Draco Lease, respectively.  *See* ECF No. 57 Exs. 4-5 (VNA Leases) § 1.1.

of the applicable Aircrafts, late payment charges in the event that VNA fails to make payments on time, and any payments that become due under any of several indemnities (such payments, the "VNA Supplemental Payments", and the Lessors' rights as indemnitees against VNA, the "Indemnitee Claims"). *See id.* § 9-10. Many of VNA's obligations to make VNA Supplemental Payments survived termination of the Lease Period or the leasing of the Aircraft under the VNA Leases. *See id.* § 10.8.

### C.    The Head Leases

15.    JLPS Uranus's rights to the Uranus Aircraft are derived from an Aircraft Head Lease Deed, dated as of December 29, 2017 (the "JPA-Uranus Head Lease"), among JLPS Uranus and JPA 49. *See* ECF No. 57 Ex. 2 (JPA-Uranus Head Lease). JLPS Draco's ownership rights to the Draco Aircraft are derived from a substantially similar Aircraft Head Lease Deed, dated as of November 19, 2018 (the "JPA-Draco Head Lease" and, together with the JPA-Uranus Head Lease, the "Head Leases"), among JLPS Draco and JPA 111. *See* ECF No. 57 Ex. 3 (JPA-Draco Head Lease).

16.    The lease term under the JPA-Uranus Head Lease is identical to the "Lease Period" under the VNA-Uranus Lease, and the lease term under the JPA-Draco Head Lease is identical to the "Lease Period" under the VNA-Draco Lease, including, in both cases, if the "Lease Period" under the applicable VNA Lease is terminated or extended pursuant to the terms therein. *See* ECF No. 57 Exs. 2-3 (Head Leases).

17.    However, the rights and liabilities as between lessor and lessee that exist under the Head Leases do not mirror those under the VNA Leases. Specifically, the Head Leases and VNA Leases differ substantially in regards to (i) the rights and obligations of JLPS Uranus and

JLPS Draco to receive payments as lessors and (ii) the impact of limitations of liability granted to JLPS Uranus and JLPS Draco.

*Payment Obligations*

18.     Under the Head Leases, JLPS Uranus and JLPS Draco are obligated to pay to JPA 49 and JPA 111 rent for each "Rent Period" in the "Lease Period." *See id*. § 3.1.  The definitions of "Rent Period" and "Lease Period" are identical as between the VNA Lease Agreements. *Compare* ECF No. 57 Exs. 2-3 (Head Leases) § 1.2, *and* ECF No. 57 Exs. 4-5 (VNA Leases) § 1.1.  Therefore, whenever an obligation by VNA to make a rent payment to the Lessors JLPS Uranus or JLPS Draco, as applicable, crystallizes, an equivalent obligation to make a rent payment to JPA 49 or JPA 111, as applicable, also crystallizes. The terms under which rent payments are due are likewise equivalent. *See id.*

19.     This direct equivalence applies only with respect of rent payments; other obligations, including those with respect to other types of payments, are asymmetrical as between the VNA Leases and the Head Leases. As outlined above, JLPS Uranus and JLPS Draco have rights under the VNA Leases to receive the VNA Supplemental Payments from VNA. Although JLPS Uranus and JLPS Draco are also obligated to pay to JPA 49 and JPA 111, respectively, "any amounts (other than Rent)" that they receive under the VNA Leases (including VNA Supplemental Payments), this pass-through payment obligation to JPA 49 and JPA 111 only applies to payments received from VNA during the "Term" of the Head Leases (which, as noted above, are linked to the "Lease Period" of the VNA Leases).  The Lessors are entitled to retain any VNA Supplemental Payments that VNA makes to them after the terms of the Head Leases expire.  ECF No. 57 Exs. 2-3 (Head Leases) § 3.3.  Furthermore, JLPS Uranus and JLPS Draco are only required to pass through payments "received" from VNA during the term of the

8

applicable Head Lease. *Id.* Therefore, if a situation arises where a payment from VNA becomes due during the term of the VNA Leases, but VNA does not make the payment until after such term has expired, the Lessors are entitled to retain such payment.

20.    As noted above, the Head Leases were terminated on December 1, 2021 by the Security Agent. *See* ECF No. 23 Exs. 31-32 (Head Lease Termination Notices). Accordingly, the Debtors have lost any right under the Head Leases to receive VNA Supplemental Payments paid on or after December 1, 2021.

*Liability Limitations*

21.    The Head Leases limit the Lessors' liability under the Head Leases to an amount equal to any payments that they receive (and are entitled to retain) under their respective VNA Leases. *See* ECF No. 57 Exs. 2-3 (Head Leases) § 3.3. This protects the Lessors from liability to the Debtors in the event that VNA fails to pay monies owed under the VNA Leases, such that the Lessors are left with insufficient funds to make payments owed under the Head Leases. On the other hand, the Lessors receive the benefit of the upside risk that the applicable lease term under the VNA Leases expires, as they are entitled in that instance to retain a portion of the VNA Supplemental Payments. In other words, the Lessors are not mere conduits through which monies that VNA has paid for the Aircraft flow through to the Debtors. On the contrary, the rights of the Lessors under the VNA Leases provide value that is enjoyed solely by the Lessors.

**D.    The JLPS Security Arrangements**

22.    Pursuant to the *Deed of Security Agreement in Respect of One (1) Airbus A350-941 Aircraft Bearing Manufacturer's Serial Number 173*, dated as of December 29, 2017, JLPS Uranus provided an assignment and/or charge to JPA 49 of its rights, title and interest under the VNA-Uranus Lease (and various other contractual arrangements) "as security for the payment

and discharge of the *Secured Obligations*" (the "<u>Uranus Security Deed</u>"). ECF No. 23 Ex. 9

(Uranus Security Deed) § 3.1. Similarly, in the *Deed of Security Agreement In Respect of One*

*(1) Airbus A350-900 Aircraft Bearing Manufacturer's Serial Number 67*, dated as of November

21, 2018, JLPS Draco provided an assignment and/or charge to JPA 111 of all of "its rights, title

and interest under the VNA-Draco Lease as security for the payment and discharge of the

***Secured Obligations***" (the "<u>Draco Security Deed</u>," and together with the Uranus Security Deed,

the "<u>Security Deeds</u>") (emphasis added). ECF No. 23 Ex. 16 (Draco Security Deed) § 3.1.

These same security rights were concurrently assigned by the Debtors to the Security Agent, also

as security for the payment of the Secured Obligations. *See* ECF No. 23 Ex. 10, 17.

23. Both the Uranus Security Deed and the Draco Security Deed use the same

definition of "Secured Obligations," specifically: "any and all moneys, liabilities and obligations

… from time to time owing to any of the *Finance Parties* by any Obligor pursuant to any

Transaction Document."[6] Neither of the Debtors, JPA 49 or JPA 111, are "Finance Parties." *See*

*id*. Rather, JPA 49 and JPA 111 are themselves Obligors, along with JLPS Uranus, JLPS Draco,

the Parent, and JLPS Ireland Limited (the parent company of JLPS Uranus and JLPS Draco).

*See id.* Accordingly, any security provided under the Uranus Security Deed and the Draco

Security Deed was not provided to secure obligations that JLPS Uranus and JLPS Draco owe to

the Debtors (JPA 49 and JPA 111) under the Head Leases. Rather, the security provided under

the Uranus Security Deed and the Draco Security Deed was to secure obligations owed to the

Finance Parties by JPA 49, JPA 111, and other Obligors.

---

[6]    More specifically, the term "Secured Obligations" and certain other defined terms  in the Uranus Security Deed
and the Draco Security Deed, respectively, are defined by reference to the Master Definitions Schedule
appended as Schedule 4 to the *Proceeds Agreement in Respect of the Financing of One (1) Airbus A350-941
Aircraft Manufacturer's Serial Number* (the "<u>Uranus Proceeds Agreement</u>") and the *Proceeds Agreement in
Respect of the Financing of One (1) Airbus A350-900 Aircraft with Manufacturer's Serial Number 67* (the
"<u>Draco Proceeds Agreement</u>" and, collectively with the Uranus Proceeds Agreement, the "<u>Proceeds
Agreements</u>"). *See* ECF No. 23 Exs. 7, 14 (Proceeds Agreements).

24.    This is an important point and appears to be one that Mr. McNamara and Mr. Dowling, the former directors of JLPS Uranus and JLPS Draco who signed the Notices of Enforcement Sale on their behalf, either failed to recognize or chose to ignore. Neither, seemingly, did Mr. Ishikawa, a director of JLPS Uranus and JLPS Draco at the time who nonetheless considered it appropriate to sign the Notices of Enforcement Sale on behalf of the parties who received the benefits under these one-sided arrangements: *i.e.*, the Debtors. Nor did their counsel fully grasp the point. In a letter that McCann Fitzgerald (an Irish law firm purporting to act on behalf of JLPS Uranus and JLPS Draco) sent to Simmons & Simmons (an Irish law firm acting for FitzWalter) on February 3, 2022, it described the effect of the Uranus Security Deed as being that JLPS Uranus assigned "by way of security, amongst other things, its rights under the [the VNA-Uranus Lease] as security for its obligations to JPA [49] ***under the Head Lease*** [i.e., the JPA-Uranus Head Lease]." Levinson Decl. Ex. 1 (Uranus McCann Letter) § 5.1 (emphasis added). McCann Fitzgerald set out an identical description of the Draco Security Deed in a letter it sent to Simmons & Simmons on the same date. *See* Levinson Decl. Ex. 2 (Draco McCann Letter) § 5.1. McCann Fitzgerald's description is obviously incorrect — JLPS Uranus and JLPS Draco did not provide security for their obligations to the Debtors under the JPA-Uranus Head Lease or the JPA-Draco Head Lease.

### E.    The Notices of Enforcement Sale

25.    On January 13, 2022, the Debtors filed two identical documents entitled *(A) Notice of Enforcement Sale and (B) General Conveyance and Bill Of Sale*: one purportedly signed by JLPS Uranus and the other purportedly signed by JLPS Draco (the "Initial Notices of Enforcement Sale"). *See Notice of Filing of Exhibits to the Debtors' Application for Entry of Orders* [ECF No. 58] Ex. B. The Initial Notices of Enforcement Sale were both signed on behalf

of JLPS Uranus and JLPS Draco by Thomas Francis Dowling.  Mr. Dowling is a former director

of the Lessors.  The Initial Notices of Enforcement Sale were counter-signed on behalf of the

Debtors by Teiji Ishikawa, who was serving as director of both Debtors and both Lessors at the

time of execution of their execution.

26.    On January 21, 2022, the Debtors filed revised versions of the Notices of

Enforcement Sale (the "Revised Notices of Enforcement Sale", and Initial Notices of

Enforcement Sale, as revised by the Revised Notices of Enforcement Sale, the "Notices of

Enforcement Sale").  *See Notice of Filing of Revised Exhibits to the Debtors' Application for

Entry Of Orders* [ECF No. 77] Ex. A.  The Revised Notices of Enforcement Sale were both

signed on behalf of JLPS Uranus and JLPS Draco by Niall McNamara, another former director

of the Lessors, and counter-signed on behalf of the Debtors by Teiji Ishikawa.

27.    The Notices of Enforcement Sale purport that each of the Lessors "grants,

bargains, transfers, assigns, sets over, conveys and delivers" to its respective Debtor the

"Assigned Property" as defined under the Security Deeds.  *Id.*  Such property includes "all of

[such Lessor's] rights, title, claims and interest present and future, actual or contingent,

liquidated or unliquidated, in, to and under [the applicable VNA Lease]."  *Id.*  As explained by

the Lessors' purported Irish counsel at McCann FitzGerald, the effect of the Notices of

Enforcement Sale was to cause each of the Lessors to become a "shell company."  Levinson

Decl. Exs. 1-2 (McCann Letters) § 6.3.  In return for leaving each of the Lessors as a "shell

company," the only consideration supposedly provided by the Debtors was their agreement to

release JLPS Uranus and JLPS Draco, respectively, from their obligations, and from any claims

that the Debtors may have, under the Head Leases.[7]  *See* ECF No. 7 Ex. A (Notices of

---

[7]    The Notices of Enforcement Sale also purport to provide for a release of obligations under "related transaction documents," but the Lessors are unaware of any obligations owed by them to the Debtors under any other

Enforcement Sale). That release provides zero value to the Lessors, however, because, as described above, any obligations of the Lessors under the Head Leases were already non-recourse in nature and, having been stripped of all their assets, obtaining a release from non-recourse obligations was pointless.

28. The effectiveness of the Notices of Enforcement Sale are expressly conditioned upon, *inter alia*, approval by the Court of the Sale Transactions and consummation of the Sale Transactions, and therefore are not presently effective. *See id.* If the Notices of Enforcement Sale become effective, the Lessors will be subject to the following consequences:

29. <u>First</u>, the Lessors will be deprived of all rights to receive payments from VNA under the VNA Leases, including payments that the Debtors do not have any pre-existing rights to recoup.

30. <u>Second</u>, the Lessors will remain exposed to any liabilities owed to VNA under the VNA Leases. Notably, VNA is listed as an unsecured creditor in the Debtors' own Schedules of Assets and Liabilities filed with this Court. ECF No. 19, Schedule E-F. Presumably, those same claims exist against the Lessors who, unlike the Debtors, are parties to the VNA Leases with VNA. The Notices of Enforcement Sale do not purport to transfer the obligations of the Lessors under the VNA Leases, nor can they as VNA has not signed the Notices of Enforcement Sale. The Lessors may also be exposed to liabilities under the various Warranty Agreements described below, to which they are parties.

31. <u>Third</u>, and most importantly, if the Notices of Enforcement Sale become effective, then JLPS Uranus will arguably be in breach of its obligations under the Uranus Proceeds Agreement and JLPS Draco will arguably be in breach of its obligations under the Draco

---

documents, and the Debtors obviously lack authority to grant a release of any obligations owed by the Lessors to non-Debtor third parties.

Proceeds Agreement. Specifically, under their respective Proceeds Agreements, the Lessors have provided negative pledges not to "sell, transfer, assign [their] rights in respect of or otherwise dispose of any of the Collateral other than pursuant to the Security Documents" without the prior written consent of the Security Agent (the "Negative Pledges").  *See* ECF No. 23 Exs. 7, 14 (Proceeds Agreements) § 11.3.4(b).

32.    The consequences of breaching the Negative Pledges are draconian. Presently, the Lessors are protected by "limitation of recourse" provisions in the Proceeds Agreements which limit their liability under any "Transaction Document" to amounts equivalent to monies received under the VNA Leases, as a consequence of the exercise by the Security Agent of any of its rights under the Security Documents, as a consequence of the exercise by a Lessor of its rights under a Transaction Document, or from a government entity that has forcibly acquired the Uranus Aircraft or Draco Aircraft.  *See id.* § 22.  However, it is far from clear that these provisions protect the Lessors from any loss suffered by the "Finance Parties" under the Proceeds Agreements as a consequence of a breach of the Negative Pledges.  In other words, if the Notices of Enforcement Sale become effective, JLPS Uranus and JLPS Draco will be exposed to potential unlimited liability to the Finance Parties.  As outlined in further detail below, the risk of such liability crystallizing is not merely a theoretical risk; the Lessors have already had legal proceedings brought against them by FitzWalter in the High Court of England & Wales.

**F.    Change in governance and ownership of JLPS Uranus and JLPS Draco**

33.    On December 29, 2017, JLPS Holding Ireland Limited ("JLPS Ireland") (the immediate parent company of the Lessors) executed a "Share Charge" with the Security Agent (the "Uranus Share Charge").  *See* Levinson Decl. Ex. 3.  On November 21, 2018, JLPS Ireland

14

executed a second "Share Charge" with the Security Agent (the "Draco Share Charge", and together with the Uranus Share Charge the "Share Charges"). *See* Levinson Decl. Ex. 4.

34.    Under the Share Charges, JLPS Ireland provided the Security Agent with "a first fixed charge in favor of the Security Agent as a continuing security" of the "Charged Assets," which included the shares that JLPS Ireland owned in JLPS Uranus and JLPS Draco. *See* Levinson Decl. Exs. 3-4. The Share Charges further provided that upon the occurrence of an "Enforcement Event" (as defined in the Proceeds Agreements) the Security Agent would have the right to (among other things): (i) transfer the shares in JLPS Uranus and JLPS Draco to either the Security Agent or a nominee of the Security Agent; and (ii) exercise all voting and other rights and powers attached to the shares in JLPS Uranus and JLPS Draco. *Id.*  In order to facilitate the exercise of these rights by the Security Agent, JLPS Ireland agreed to provide to the Security Agent: "an undated stock transfer form (executed in blank by or on behalf of [JLPS Ireland]" and "executed but undated letters of resignation and dated letters of authorities from each of the directors [of JLPS Uranus and JLPS Draco]." *Id.*

35.    On January 24, 2022, director letters of resignation (signed by Niall McNamara and Teiji Ishikawa) were issued which terminated the tenure of Niall McNamara and Teiji Ishikawa as directors of JLPS Uranus and JLPS Draco. *See* Levinson Decl. Exs. 5-8.  On January 29, 2022 the Security Agent appointed Derek O'Reilly as a director of JLPS Uranus and JLPS Draco. *See* Levinson Decl. Exs. 9-10.  On January 30, 2022, director letters of resignation (signed by Thomas Dowling) were issued which terminated the tenure of Thomas Dowling as a director of JLPS Uranus and JLPS Draco. *See* Levinson Decl. Exs. 11-12.  On February 9, 2022 the Security Agent issued further resolutions confirming Derek O'Reilly's appointment as a director of JLPS Uranus and JLPS Draco. *See* Levinson Decl. Exs. 13-14.

36.     Accordingly, as matters stand presently, the sole director of JLPS Uranus and JLPS Draco is Derek O'Reilly.[8]  Mr. O'Reilly is a Managing Director at Centralis Group — an outsourced corporate services provider. Although Mr. O'Reilly was appointed by the Security Agent, he does not have any pre-existing relationships with the Security Agent, FitzWalter, or any of their respective representatives.  Nor does he have any pre-existing relationship with the Parent.

37.     On February 9, 2022, two separate stock transfer forms (both of which had been signed by Thomas Dowling and Niall McNamara in their capacity as directors of JLPS Ireland) were executed.  *See* Levinson Decl. Exs. 15-16.  These stock transfer forms transferred ownership of the shares in JLPS Uranus and JLPS Draco to the Security Agent.  As a result, the Security Agent now appears to be the sole putative shareholder of JLPS Uranus and JLPS Draco.

### G.     The Warranty Agreements

38.     The Airframe Warranties Agreement in Respect of One A350-941 Aircraft Bearing Manufacturer's Serial Number 0173 dated December 29, 2017 (the "Airframe Warranties Agreement") was issued by Airbus S.A.S. in favor of JLPS Uranus and VNA. Neither of the Debtors is a party to or otherwise named in this contract.  *See* Levinson Decl. Ex. 17.  Nor are the Debtors named in the Initial Notice executed between JLPS Uranus, VNA and Airbus S.A.S.  *See* Levinson Decl. Ex. 18.

39.     The parties to the Engine Warranty Agreement relating to the Uranus Aircraft, dated  as of December 29, 2017 (the "Engine Warranty Agreement" and, together with the Airframe Warranties Agreement, the "Warranty Agreements", and the Warranty Agreements,

---

[8]     McCann Fitzgerald, the Irish law firm purporting to act on behalf of the Lessors, has sent letters to Simmons & Simmons suggesting (without any explanation or reasoning) that the resignations of Niall McNamara, Teiji Ishikawa and Thomas Dowling (although signed personally) are not valid.

together with the VNA Lease Rights and the Indemnitee Claims, the "Lessor Assets") are Rolls-Royce Plc and JLPS Uranus.  *See* Levinson Decl. Ex. 19.  Neither of the Debtors is a party to this agreement or is otherwise stated to have any rights under this agreement.  *See* Levinson Decl. Ex. 19.

40.     Nonetheless, on February 9, 2022 the Debtors filed the *Notice of Proposed Assumption and Assignment of Certain Executory Contracts in Connection With Proposed Sale* [ECF No. 104] (the "Notice of Proposed Assumption and Assignment").  In that notice, the Debtors have sought to assume and assign a variety of contracts listed in Exhibit 1 of the notice in exchange for "Cure Payments" of an aggregate amount of $0.[9]

**H.     The English Legal Proceedings**

41.     On January 20, 2022 the Security Agent commenced legal proceedings in Her Majesty's High Court of Justice in England against JLPS Uranus, JLPS Draco, the Parent, JLPS Ireland, and Heinrich Loechteken (the chief executive officer of JLPS Ireland) (the "English Proceedings").  *See* Levinson Decl. Ex. 20.  The full details of the Security Agent's claims in the English Proceedings are set out in the Particulars of Claim (the "POC") and the Security Agent has brought seven causes of action against the Lessors.  *See* Levinson Decl. Ex. 21.

42.     First, the Security Agent has sued JLPS Uranus and JLPS Draco for breaching clause 3.2.3 of the Uranus Proceeds Agreement and the Draco Proceeds Agreement, which impose obligations on the Debtors to procure that none of their "Affiliates" (which includes anyone who controls, is controlled by, or is under common control with, the Debtors) would participate in any proceedings likely to lead to the bankruptcy of JPA 49 and/or JPA 111.  *See id.*

---

[9]     For the avoidance of doubt, the Lessors object to the Notice of Proposed Assumption and Assignment, and specifically to the assumption of any of the contracts listed in Exhibit 1 thereto, including the Warranty Agreements, that the Lessors have rights under, for the reasons stated herein, and reserve the right to file further arguments in support of this objection prior to the objection deadline stated therein.

¶ 8, 18-21. The Security Agent has alleged that this contractual obligation has been breached as a result of the Debtors filing for Chapter 11 bankruptcy on December 17, 2021.

43.     Second, the Security Agent has alleged that by assenting to the Notices of Enforcement Sale, JLPS Uranus breached clause 11.3.4(b) of the Uranus Proceeds Agreement which provides that JLPS Uranus "*shall not without the prior written consent of the Security Agent … (i) sell, transfer, assign its rights in respect of or otherwise dispose of any of the collateral other than pursuant to the Security Documents. See id.* ¶ 23-24. The Security Agent has not, however, brought any breach of contract claim against JLPS Draco.

44.     Third, the Security Agent has alleged that JLPS Uranus and JLPS Draco were parties (along with the Parent, JLPs Ireland, and Heinrich Loechteken) to a conspiracy to injure the Security Agent by unlawful means (which is a tort under English law). The conspiracy is alleged to be a conspiracy to frustrate the sale by the Security Agent of its rights to the Uranus Aircraft and the Draco Aircraft. *See id.* ¶ 32.

45.     Finally, the Security Agent has sued JLPS Uranus and JLPS Draco for breach of the "Anti-Social Conduct" provision in clause 11.3.23 of the Proceeds Agreements, as well as the torts of conspiracy to injure, defamation, and malicious falsehood, in relation to an incident where Heinrich Loechteken allegedly made disparaging statements about, and threats to, the Security Agent. *See id.* ¶ 27-34.

46.     The compensation that the Security Agent has sought from the Lessors includes: legal and management costs incurred during the Chapter 11 proceedings, wasted costs in regards to the Security Agent's failed sales process of the Uranus Aircraft and Draco Aircraft, damage to reputation, loss of profits due to interference with the Security Agent's business, and legal fees incurred during the English Proceedings. *See id.* ¶ 35-37. The Security Agent has not explained

the quantum of these costs, but they could potentially be significant, and there is a risk that the
Lessors will not be protected by the non-recourse protections in the Proceeds Agreements in
relation to some (potentially all) of the causes of action brought in the English Proceedings.

## ARGUMENT

**A.    The Debtors Cannot Sell the Lessor Assets Which Are Owned by the Lessors
and Not Property of the Estate.**

47.    Section 363(b) of the Bankruptcy Code authorizes a debtor to sell "property of the
estate." 11 U.S.C. § 363(b).  The plain terms of the Bankruptcy Code make clear that a section
363 sale may only be invoked to approve a sale of estate assets,[10] and cases have repeatedly held
as much.  *See, e.g., Reverend C.T. Walker Hous. Dev. Fund Corp. v. City of New York*, 586 B.R.
534 (E.D.N.Y. 2018); *In re Interiors of Yesterday, LLC*, No. 02-30563LMW, 2007 WL 419646
(Bankr. D. Conn. Feb. 2, 2007); *In re Popp*, 323 B.R. 260 (9th Cir.BAP 2005).  There is no
question that, as of the Petition Date, the Lessor Assets were <u>not</u> property of the estate, but rather
belonged to the non-debtor Lessors.  As such, the Debtors had no authority to sell the Lessor
Assets.

48.    Faced with the inability to include the Lessor Assets in the proposed sale, the
Debtors concocted the idea for them to effect a post-petition "consensual foreclosure sale" on the
Lessor Assets, in an attempt to transfer them wholesale from the Lessors to the Debtors, with the
objective of including the Lessor Assets in the bankruptcy sale of the Aircraft.  Unfortunately for
the Debtors, and as explained above, the Notices of Enforcement Sale were invalid because,
among other reasons:  1) any "consensual foreclosure sale" was based upon the false premise
that the security interests assigned by the Lessors to the Debtors functioned to secure the

---

[10]    *See, e.g.,* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than
in the ordinary course of business, *property of the estate*…")(emphasis added).

Lessors' obligations to the Debtors under the Head Leases, which is not the case; and 2) having simultaneously assigned those same security interests to FitzWalter's predecessor upon receiving them from the Lessors, the Debtors had no authority or standing to enforce those security interests against the Lessors.[11]

49.     Accordingly, the Lessor Assets remain the property of the Lessors and cannot be included in any sale of the Debtors' assets under section 363(b) of the Bankruptcy Code.

**B.      Even if the Notices of Enforcement Sale Were Not Invalid, Sections 363(e) and 363(f) of the Bankruptcy Code Do Not Authorize the Sale of the Lessor Assets Free and Clear of the Lessors' Interests, Especially Where Adequate Protection Has Not Been Provided.**

50.     To the extent that the Debtors can claim any ownership interest in the Lessor Assets by virtue of the Notices of Enforcement Sale, Section 363(f) provides that the Debtors may only sell assets "free and clear of any interest in such property" if one of the following conditions is met: "(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest, (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).  None of these conditions are satisfied.

51.     In asserting that the only parties holding an interest in the Aircraft are the Lenders under the Junior and Senior Facilities, *See* Bid Proc. Mot. ¶ 67, the Debtors overlook the many

---

[11]    Alternatively, the Lessors are entitled to seek rescission of the Notices of Enforcement Sale, based upon, among other grounds:  1) the lack of consideration received by the Lessors in exchange for agreeing to transfer all of the Lessor Assets, and 2) the exercise of undue influence by the Parent, which owns both the Debtors and the Lessors.

interests that the Lessors currently hold in the Lessor Assets, notwithstanding the effectiveness of

Notices of Enforcement Sale. The phrase "interest in such property" as used in Section 363(f) is

broadly defined,[12] and includes claims that "arise from the property being sold." *In re Chrysler*

*LLC*, 576 F.3d 108, 126 (2d Cir. 2009) (quoting *In re Trans World Airlines, Inc.*, 322 F.3d 283,

290 (3d Cir.2003)), *cert. granted, judgment vacated sub nom. Indiana State Police Pension Tr. v.*

*Chrysler LLC*, 558 U.S. 1087 (2009), and *vacated sub nom. In re Chrysler, LLC*, 592 F.3d 370

(2d Cir. 2010). *See also In re Old Carco LLC*, 538 B.R. 674, 684 (Bankr. S.D.N.Y. 2015); *In re*

*Grumman Olson Indus., Inc.*, 467 B.R. 694, 697 (S.D.N.Y. 2012).

52.    Even if the Notices of Enforcement Sales were not invalid, any transfers of the

Lessor Assets by the Lessors would not become effective until, *inter alia*, the Sale Transactions

have been consummated. Therefore, the Lessors presently hold all of their respective interests in

the Lessor Assets, and unless and until the Sale Transactions have been approved and

consummated, are entitled to recognition of those interests. The Lessors also hold, among

others, potential claims for rescission, equity of redemption and fraudulent transfer that are tied

to the Lessor Assets and, in the absence of a sale under section 363(f) of the Code, would survive

the effectiveness of the Notices of Enforcement Sale. All of these claims fall within the broad

definition of "interests" for purposes of section 363(f) of the Bankruptcy Code.

53.    Sections 363(f)(1), (3) and (5) of the Bankruptcy Code are plainly inapplicable to

the Lessors' interests, as (1) non-bankruptcy law would not permit a unilateral transfer of the

---

[12]    *See, e.g., In Matter of Motors Liquidation Co*., 829 F.3d 135 (2d Cir. 2016) ("interests" under § 363(f)
includes a leasehold interest); *Massachusetts Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re*
*PBBPC, Inc.)*, 484 B.R. 860 (B.A.P. 1st Cir. 2013) ("interests" under § 363(f) includes a state-assessed tax
unemployment rate); *WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship)*, 189
B.R. 97 (Bankr.E.D.Va.1995) "interests" under § 363(f) includes a statutory right to recover depreciation); *Volvo*
*White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944 (Bankr. N.D.
Ohio 1987) ("interests" under § 363(f) includes tort claims against asset purchaser).

Aircraft free and clear of the Lessors' claims, (3) the Lessors' interests are not liens, and (5) the cash proceeds of the sale cannot compensate the Lessors to which they are entitled under the VNA Leases and the Warranty Agreements (including any claims related thereto that would otherwise survive a transfer of these interests), nor the risk of liability that the Lessors would face from FitzWalter, VNA and other potential creditors.

54.     Section 363(f)(2) of the Bankruptcy Code also cannot be satisfied, because the Lessors do not consent to the Debtors' proposed sale of the Lessor Assets.  The Debtors contend that they have provided all potential interest holders with "ample notice and an opportunity to object," and that "failure to do so should be deemed consent for purposes of section 363(f)(2) of the Bankruptcy Code."  Conversely, the Lessors explicitly state by this Objection that they do not consent to the sale of the Lessor Assets, and thus, consent is lacking.

55.     Finally, the Sale Transactions cannot be authorized pursuant to section 363(f)(4) of the Bankruptcy Code, as no bona fide dispute exists regarding the Lessors' ongoing interests in the Lessor Assets.  Even if the Notices of Enforcement Sale were not invalid, the preamble contained therein acknowledges that any rights, title, claims and interests to be transferred thereunder are presently held by the Lessors, and will only be transferred to the Debtors upon consummation of the Sale Transactions.  *See* Notices of Enforcement Sale at 2.  In addition, the Lessors' rights to assert claims for rescission, equity of redemption, fraudulent transfer and other rights relating to the Lessor Assets have not been challenged by any party to these Chapter 11 Cases.

56.     The Debtors' proposed sale of the Lessor Assets also fails to comply with Section 363(e) of the Bankruptcy Code, which provides that upon request of an entity with an interest in property proposed to be used, sold or leased, a bankruptcy court "shall prohibit or condition such

22

use, sale as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

Section 361 of the Bankruptcy Code provides that adequate protection may constitute relief "as

will result in the realization by such entity of the indubitable equivalent of such entity's interest

in such property." 11 U.S.C. § 361(3). Nothing in the Bidding Procedures Order suggests that

any form of adequate protection is to be provided to the Lessors, let alone relief that will result in

the Lessors' realization of the indubitable equivalent of their interests in the Lessor Assets. Such

adequate protection would need to account for, among other interests of the Lessors, the value of

the Lessor Assets as well as the amount of potential liabilities that have been or will be triggered

or increased by virtue of the Notices of Enforcement Sale becoming effective.

## **CONCLUSION**

Based on the foregoing, the Lessors respectfully request that the Lessor Assets not be

included in any sale of the Debtors' assets, and such other relief as is proper. The Lessors further

reserve all rights.


Dated:  February 17, 2022                    DEBEVOISE & PLIMPTON LLP
        New York, New York

                                            */s/ Sidney P. Levinson*
                                            Sidney P. Levinson
                                            Isabella M. Cusano
                                            **DEBEVOISE & PLIMPTON LLP**
                                            919 Third Avenue
                                            New York, New York 10022
                                            Telephone:    (212) 909-6000
                                            Facsimile:    (212) 909-6836
                                            Email:        slevinson@debevoise.com
                                            Email:        imcusano@debevoise.com

                                            *Counsel for JLPS Leasing Uranus Limited*
                                            *and JLPS Leasing Draco Limited*