UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| JPA NO. 111 CO., LTD., and | : | Case No. 21-12075 (DSJ) |
| JPA NO. 49 CO., LTD., | : |  |
|  | : | (Jointly Administered) |
| Debtors.[1] | : |  |
|  | : |  |

**DECLARATION OF ANDREW GRAY IN SUPPORT OF FITZWALTER CAPITAL PARTNERS (FINANCIAL TRADING) LIMITED'S PRELIMINARY OBJECTION TO DEBTORS' 506/502 MOTION AND RESPONSE TO DEBTORS' REPLY IN SUPPORT OF SALE MOTION AND JPL'S STATEMENT IN SUPPORT OF SALE MOTION**

I, Andrew Gray, being duly sworn, hereby declare as follows:

1. I am a Partner at FitzWalter Capital and a Director of FitzWalter Capital Partners (Financial Trading) Limited ("**FWCP**"), an interested party in the above–entitled action. I am authorized to submit this declaration ("**Declaration**") on behalf of FWCP and if called and sworn as a witness, I could and would testify competently to the information submitted herein.

2. I submit this Declaration in support of FWCP's Objection (the "**Objection and Response**") to the *Motion of the Debtors for Entry of an Order (I) Determining Secured Claims of Prepetition Credit Facilities or (II) In the Alternative, Estimating Amount of Claims Asserted by FitzWalter Capital Partners (Financial Trading) Limited and its Affiliates* (Dkt. No. 136) ("**506/502 Mot.**") and Response to *Debtors' Omnibus Reply to the Objections of FitzWalter Capital Partners (Financial Trading) Limited and the Intermediate Lessors Regarding the Proposed Sale* (Dkt. No. 130) ("**Reply**") and JPL's *Statement in Support of Sale Motion* (Dkt. No. 132) ("**Statement**").

3. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge of the underlying events, my review of relevant documents, information

---

[1] The Debtors in these Chapter 11 cases are: JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd. The Debtors' corporate address is: Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda–Ku, Tokyo 100-0013.

1

provided to me, and/or my opinion based upon my experience, knowledge, and information concerning this matter. Unless otherwise indicated, the financial information contained in this Declaration is unaudited and subject to change.

### A.    *FWCP's Retention of Airborne*

4. On December 10, 2021, FWCP appointed Airborne Capital Limited ("**Airborne**") to conduct a sale of the lease-related rights transferred to it under the transaction documents.

5. As part of the retention process, FWCP negotiated a flat-fee with Airborne of $400,000 ($200,000 for each of the sales processes) that would cover both the sale of the lease-related rights and a subsequent sale of the two aircraft. Based upon my experience and in my judgment exercised at the time, this fee was far below what the fee might have been under a standard percentage-based fee structure that normally compensates the broker with 1-3% of the sale price. Based on the purchase price provided in the Stalking Horse Term Sheet of $207,741,763.53, these standard percentages would result in a sales fee between $2,077,417.63 and $6,232,252.89.

6. Beginning on December 10, 2021, Airborne advertised the pending sale via advertisements in the WSJ, Aersyn, and Airborne's own website. Airborne specifically arranged for the WSJ advertisement to run nationally, and not exclusively in the "Eastern portion of the United States," as alleged by the Debtors in paragraph 45 of their 506/502 Motion. News of the pending sale was also picked up by Cirium, a prominent member of the aviation industry, who then published their own article on December 13, 2022 explaining the terms of the sale.

### B.    *FWCP's Insurance Policy*

7. When FWCP stepped into its role as Security Agent, the aircraft head leases through which the Debtors leased the aircraft to their affiliate entities, JLPS Draco and JLPS Uranus, had been terminated, as had the subleases from JLPS Draco and JLPS Uranus to Vietnam Airlines.

8. Accordingly, Vietnam Airlines was no longer entitled to possession of the aircraft but had not and still has not yet returned them to JLPS Draco and JLPS Uranus.

9. Under these circumstances, it was not clear to me that existing insurance policies would remain valid and continue to provide coverage.

10. Faced with the foregoing, FWCP believed it was necessary and prudent to obtain insurance for the aircraft, to protect its collateral for the benefit of the holders of Secured Obligations.

11. Thus, FWCP purchased, through Aon UK Limited, who acted as insurance broker, a hull and liability policy for aircraft, with coverage through August 25, 2022 (the "**Policy**").  The Policy premium totaled $75,021 for both aircraft, which I believe is at or near the prevailing market rate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 9th day of March 2022, at London, United Kingdom.

*Andrew Gray*
Andrew Gray
Director, FitzWalter Capital Partners (Financial Trading) Limited