<u>**Exhibit A**</u>

**Supplemental Tregear Opinion**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>JPA NO. 111 CO., LTD. and<br>JPA NO. 49 CO., LTD.,<br><br>　　　　　　Debtors.[1] | Chapter 11<br><br>Case No.:  21-12075 (DSJ)<br><br>(Jointly Administered) |

**DECLARATION OF FRANCIS TREGEAR QC
IN SUPPORT OF DEBTORS' REPLY TO FITZWALTER CAPITAL PARTNERS
(FINANCIAL TRADING) LIMITED'S PRELIMINARY OBJECTION TO DEBTORS'
506/502 MOTION AND RESPONSE TO DEBTORS' REPLY IN SUPPORT OF
SALE MOTION AND JPL'S STATEMENT IN SUPPORT OF SALE MOTION**

I, Francis Tregear, being duly sworn, hereby depose and state:

1.　　　I am a Queens Counsel ("QC") located at Lincoln's Inn, London,

WC2A 3UP, UK.  I am in all respects competent to make this declaration

(the "Declaration") in support of the *Debtors' Reply To Fitzwalter Capital Partners*

*(Financial Trading) Limited's Preliminary Objection to Debtors' 506/502 Motion and Response*

*to Debtors' Reply In Support of Sale Motion and JPL's Statement In Support of Sale Motion*.


[*Concludes on the Following Page.*]

---

1　　The Debtors in these Chapter 11 cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The
　　Debtors' corporate address is Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki,
　　Chiyoda-Ku, Tokyo 100-0013.

2.      Attached hereto is a true and correct copy of my March 11, 2022 rebuttal report in these cases, which, together with my February 23, 2022 expert report, represents the substance of my Declaration in connection with the Proposed Sale.

I swear under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:    Spexhall in Suffolk, England
          March 11, 2022


                              By:  /s/ *Francis Tregear*
                              Name:  FRANCIS TREGEAR

**IN THE MATTER OF JPA NO. 49 CO. LTD AND JPA NO. 111 CO. LTD (the "Debtors")**


**AND IN THE MATTER OF CHAPTER 11 PETITIONS**


**FURTHER OPINION ON ENGLISH LAW**

**IN RESPONSE TO OPINION OF MR. SHAH QC**

**DATED 9 MARCH 2022**


1. I refer to:
    1.1. My Opinion on English Law (2) dated 23 February 2022 ("Opinion 2"); and
    1.2. Mr. Shah's Reply Opinion dated 9 March 2022 (the "Shah Reply").

2. This opinion has to be filed with the Court on 11 March 2022. In view of the shortness of time for filing this responsive opinion, I will not deal with every point that has been made in the Shah Reply. I will use the definitions which have been used in Opinion 2.


**Mortgagor's interest prior to redemption**

3. It seems to me that there is no material issue between myself and Mr. Shah in relation to the nature of the mortgagor's interest prior to redemption.


**Effect of the discharge of the Secured Obligations on the Intermediate Lessors' rights**

4. The comments on this subject in Opinion 2 were premised on the proposal for redemption in this case. This is a process of redemption through the sale of the various rights which are the subject of the Security Agreements (the "Secured Rights"). In those circumstances, there is no prospect of the Secured Rights returning to either the Debtors or to the Intermediate Lessors because they will have been sold to the purchaser.

5. If the charges/mortgages were to be redeemed by a payment of the Secured Obligations to the mortgagee independent of any sale to a third party, then it is correct that each of the

Secured Rights would be restored to its respective legal owner on the discharge of the security affecting it.

6.  On the basis of that understanding of the proposed sale of the Secured Rights, I do not agree that the position on discharge of the Secured Obligations would be as set out in paragraph 9 of the Shah Reply. The Debtors and the Intermediate Lessors would have ceased to be the legal owners of the Secured Rights.

**Sale of mortgaged property in a redemption action**

7.  There is no issue between myself and Mr. Shah in respect of the terms of section 91 of the Law of Property Act 1925.  This section expressly empowers the court to direct a sale of mortgaged property against the wishes of a mortgagee. In the *Palk* case (where the mortgagor wished to sell and the mortgagee wished to delay the sale) the court ordered a sale against the wishes of the mortgagee where the sale price was insufficient to discharge all of the secured indebtedness*.*

8.  Mr. Shah states that it is *"exceptional for a court to exercise this power"*.  Whether the court exercises this power is inevitably fact-sensitive, but it must be noted that the statutory power exists and has been exercised in favour of a mortgagor as in *Palk*. The authorities cited in footnote 2 of the Shah Reply do not expressly support this statement; rather they indicate in *obiter* remarks that there are limits to the exercise of this power. Those limits do not apply to the facts of this case as I understand them.

9.  In *Cheltenham & Gloucester v Krausz*,[1] the mortgagee, which had already obtained a possession order and four earlier warrants for possession (executing that order) in respect of the mortgaged property, had not regained possession of the mortgaged property. The issue before the court in that case was an application by the mortgagee to suspend the operation of a fifth warrant for possession that had been obtained.

10.  The judgment which is cited in paragraph 11 (footnote 2) of the Shah Reply was principally concerned with the extent of the court's power to suspend a warrant of possession pursuant to section 36 of the Administration of Justice Act 1970. This section empowers the court to suspend the operation of a warrant for possession in cases where either the suspension would enable the mortgagor to pay off instalment arrears from sources other than the sale of

---

[1] [1997] 1 WLR 1558.

2

the mortgaged property or, if a sale was proposed, where the sale proceeds would pay off the secured debt. Neither condition was satisfied on the facts of that case.

11. The court held that Section 36 did not empower the court to suspend possession where the proceeds of sale were not sufficient to discharge the mortgage debt – see page 1566. That case does not limit the power of the court under section 91 of the Law of Property Act 1925 to direct a sale of mortgaged property against the wishes of a mortgagee. The court considered the *Palk* case as one where the issue between the mortgagor and the mortgagee was that the mortgagor wanted to sell the security asset for a price (which was insufficient to pay off the secured loan) and the mortgagee did not.  By contrast, in the circumstances of *this* case, the Debtors maintain that the proposed sale will be sufficient to discharge the secured debt.

12. The court in *Cheltenham* made comments on *Palk* to the effect that it did not support the making of an order for sale of the security property for less than the loan secured on it and where the mortgagee was taking *"active steps to obtain possession and enforce its security by sale"*. As I understand the terms of the sale proposed by the Debtors here, the comments in *Cheltenham* are not relevant to this case.

**Scope of the Secured Obligations**

13. I agree and am happy to clarify that it is not my view that if a term is "unreasonable", it is necessarily "unfair and unconscionable" – see Shah Reply at paragraphs 16 and 17[2]. At paragraph 21 of my opinion, I set out the three bases on which the terms of a mortgage or security document may be held to be invalid, namely, where they are either (1) unfair and unconscionable, or (2) in the nature of a penalty clogging the equity of redemption, or (3) inconsistent with or repugnant to the contractual or equitable right to redeem. As I understand it, there is no issue between Mr. Shah and me on the statement of those equitable rules.

14. At paragraph 29, I set out my view that it was arguable that the terms of clause 3.1 of the Security Agreements were such as to provide a collateral advantage and an obstacle (and so repugnant) to redemption. I did not and do not rely on the terms of the Security Agreements being unfair and unconscionable.

---

[2] On the facts of the case the Lord Browne-Wilkinson stated that *"in that case it was unnecessary for* [the Judge] *to distinguish between the two concepts"*.

15. I do not disagree with the principles which are set out in paragraphs 18 to 23 of the Shah Reply.

16. In relation to paragraph 24 of the Shah Reply, it is important to analyse what is meant by the secured obligation *"not being capable at present of immediate pecuniary valuation"* (as stated in *Snell's Equity*) or *"not capable of immediate pecuniary valuation"* (as stated in *Cousins on Mortgages*) so far as the cases cited in support are concerned.

17. In *Fleming v Self[3],* the redemption involved a complex calculation of known present and known future liabilities and entitlements which had to be carried out. In a redemption action the court decreed that there should be a redemption and ordered that calculation be carried out so as to enable redemption to occur. The critical issue was whether the calculation should give the mortgagor credit for receipts, and that was determined in the mortgagor's favour. The case is not authority for any general proposition that a contractual term that makes it impossible to calculate the redemption amount is not a clog on the equity of redemption or a restriction which is repugnant to or is inconsistent with the right to redeem.

18. In *Secretary for India v British Empire &C Life Assurance[4]*, there was an agreed mechanism for redemption, and the issue did not arise for decision. In each of these cases, the amount payable was capable of calculation by the parties although not necessarily *"immediate pecuniary valuation"* in the sense that in each case the calculation may have varying degrees of complexity.

19. On the facts of those cases, the nature of the secured obligation did not make the calculation of what was necessary to redeem impossible to calculate.

20. The present position of FWCP is not that the Secured Obligations are incapable of immediate pecuniary valuation in the sense that it would be necessary to carry out a complicated calculation as in the cases cited in the texts relied upon in the Shah Reply. The present position is that the Secured Obligations are not capable of calculation at all as a result of the unilateral acts of the mortgagee in making claims in the litigation commenced in London.

21. The effect is that the collateral guarantee advantage which has been obtained pursuant to clause 3.1 of the Security Agreements, namely, the guarantee liability in respect of third

---

[3] (1854) 3 De G, M & G 997.
[4] 67 LT 434.

4

parties, is itself the term of those agreements which impedes and restricts the Debtors' equitable right to redeem.

22. Paragraph 27 of the Shah Reply criticises as not *"well-founded"* my application of the relevant principles to the facts as paraphrased in his paragraph 26.

23. As to 27(1) - A collateral advantage which comes to an end on redemption is not itself objectionable. In this case the collateral advantage, in the form of a guarantee by the Debtors of an open-ended liability brought into existence by FWCP, is what FWCP relies on to prevent redemption and to argue that the payment of the outstanding debt and interest and costs is insufficient to enable the charges/mortgages to be redeemed. It is a somewhat circular answer to that criticism to say that the collateral advantage falls away on redemption.

24. As to 27(2) - The purported commercial reality of the agreements referred to in this paragraph takes no account of the fact that the increase to the amount of the Secured Obligations which FWCP maintains makes it impossible for the Debtors to redeem are no more than asserted claims against third parties for unliquidated damages which have no connection to the original loan transaction and security for it.  Nor does Mr. Shah take account of the fact that the litigation brought by FWCP in London was commenced on 20 January 2022, *after* the sale at issue was proposed by the Debtors.

25. As to 27(3) – *"the obligation secured is not capable at present of immediate pecuniary valuation"* – no attempt is made to address the reality which is that the obligation is incapable of calculation by the parties because of claims that did not even exist at the time the Security Agreements were executed.

**Anti-Bankruptcy Provisions**

26. Paragraphs 29 to 32 of the Shah Reply do not reply to anything in Opinion 2.

27. There would appear to be a somewhat theoretical aspect to the complaint if the effect of the proposed sale is that FWCP is repaid the secured debt together with interest and costs.

**Unreasonable Administration Costs**

28. As I understand it, the Shah Reply accepts that only legal costs which are reasonable in amount and are properly incurred can be demanded. The court in England retains control through the assessment process of whether costs have been properly incurred and are

5

reasonable in amount. It follows that costs which are unreasonable in amount and not properly incurred cannot be recovered. That is not controversial.

29. No attempt is made to support a case that the FWCP "administration expenses" beyond reasonable legal fees are either properly incurred or reasonable. No attempt is made to support a case that they would be recoverable in English law.  No issue is taken with my conclusion at paragraph 43 of Opinion 2.

**FRANCIS TREGEAR QC**
XXIV – 24 Old Buildings,
Lincoln's Inn
London
11 March 2022
