SQUIRE PATTON BOGGS (US) LLP

Christopher J. Giaimo
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
Email: christopher.giaimo@squirepb.com

Nava Hazan
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: 212-872-9800
Facsimile:  212-872-9815
Email: nava.hazan@squirepb.com

*Counsel for Mizuho Leasing Co., Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JPA NO. 111 CO., LTD. and JPA NO. 49 CO., LTD., | Case No. 21-12075 (DSJ) |
| Debtors.[1] | |

**STATEMENT OF MIZUHO LEASING CO., LTD. IN SUPPORT OF (A) DEBTORS' SALE MOTION, (B) MOTION FOR ENTRY OF AN ORDER (I) DETERMINING SECURED CLAIMS OF PREPETITION CREDIT FACILITIES OR (II) IN THE ALTERNATIVE, ESTIMATING AMOUNT OF CLAIMS ASSERTED BY FITZWALTER CAPITAL PARTNERS (FINANCIAL TRADING) LIMITED AND ITS AFFILIATES, AND (C) DEBTORS' REPLY TO FITZWALTER CAPITAL PARTNERS (FINANCIAL TRADING) LIMITED'S PRELIMINARY OBJECTION TO DEBTORS 506/502 MOTION AND RESPONSE TO DEBTORS' REPLY IN SUPPORT OF SALE MOTION AND JPL'S STATEMENT IN SUPPORT OF SALE MOTION**

---

[1] The Debtors in these cases are JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100- 0013.

Mizuho Leasing Co., Ltd. ("Mizuho"), by and through its undersigned counsel, hereby files this statement in support of (a) *the Application for Entry of Orders: (I)(A) Approving Bidding Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Establishing Stalking Horse Bidders and Bid Protections; (C) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases;(D) Authorizing Enforcement Actions; (E) Scheduling an Auction and a Sale Hearing; and (F) Approving the Form and Manner of Notice Thereof; and (II) (A) Approving the Sale of the Purchased Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (B) Granting Related Relief* [Docket No. 21] (the "Sale Motion"), (b) *the Motion of the Debtors for Entry of an Order (I) Determining Secured Claims of Prepetition Credit Facilities or (II) In the Alternative, Estimating Amount of Claims Asserted by FitzWalter Capital Partners (Financial Trading) Limited and its Affiliates* [Docket No. 136] (the "Determination Motion"), and (c) the *Debtors' Omnibus Reply to FitzWalter Capital Partners (Financial Trading) Limited's Preliminary Objection to Debtors' 505/502 Motion and JPL's Statement in Support of Sale Motion* [Dkt. No. 154] (the "Debtors' Reply," together with the Sale Motion and the Determination Motion, the "Motions"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.    What should be obvious to this Court and all interested parties is that FitzWalter,[2] - now with their newly installed allies, the Intermediate Lessors - have, even prior to the initiation of these proceedings, engaged in an excessively aggressive scheme to acquire the Aircraft and the Leased Assets for themselves at the lowest possible price to the detriment of all parties-in-interest, including the other Finance Parties, such as Mizuho. Their scorched earth tactic is clear, as evidenced by their uncompromising and overzealous opposition to the Sale Motion, a motion

---

[2] Unless otherwise defined herein, all capitalized terms not used herein shall have the meanings ascribed to them in the Determination Motion and the Debtors' Reply, as applicable.

which seeks approval of a sale that would pay them in full, a recovery that FitzWalter appears to deem insufficient, regardless of what it is legally entitled to receive. It is also clear that part of their scheme to acquire the assets for themselves is to attempt to prevent the Sale by seeking grossly excessive fees and costs that no typical lender under the circumstances would either incur or legitimately pursue in such a proceeding.

2. Indeed, having lost on their Motion to Dismiss, FitzWalter has been undaunted in their pursuit of their non-lender goals, including by continuing to pursue the identical arguments that this Court rejected in its Memorandum Decision. Not content with the progress before this Court, FitzWalter initiated non-bankruptcy proceedings, including the English Lawsuit to attempt to coerce related non-debtor affiliates into submission. FitzWalter pursued (and presumably intends to continue to pursue) all these unnecessary and overly aggressive actions, while planning to inappropriately shift the cost of doing so unto other parties, including the junior lender, Mizuho. They do so under the guise of the Proceeds Agreement, which FitzWalter is using as a sword to enrich itself, rather than as a shield to protect its secured position. This pattern of behavior is not only destructive to the Debtors' estates, but to all parties-in-interest, and needs to end. Mizuho respectfully requests this Court's assistance in doing so by rejecting FitzWalter's opposition to the Sale Motion and limiting their fees and costs to what would be reasonable for a senior secured lender in FitzWalter's position, as prescribed by the Proceeds Agreement and applicable law.

## RELEVANT BACKGROUND

3. With the voluminous pleadings filed in these otherwise simple proceedings, the Court is undoubtedly aware of the factual background relevant to these cases. Accordingly, for purposes of brevity, Mizuho incorporates herein by reference the factual assertions contained in

the Debtors' Reply and the *Declaration of Teiji Ishikawa Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 3].

4. Mizuho is the only Junior Lender under both Junior Facilities, and, as of January 4, 2022, is owed a total of approximately $15,761,935 by the Debtors, exclusive of post-petition interest, fees and costs.

5. As this Court is aware, a mere two weeks into these cases, the Debtors filed their Sale Motion, having worked diligently to secure a bid by the Stalking Horse Purchasers. As the Debtors have repeatedly represented, the Sale to be pursued thereunder purports to satisfy the Secured Obligations in full and provide a recovery to equity. This is a remarkable accomplishment given the Debtors' situation prior to the Petition Date, when FitzWalter attempted to orchestrate a truncated and value-deflating sale process without reasonable notice,[3] so as to all but insure that FitzWalter's affiliate would be the only party able to acquire the relevant assets.

6. Having been deprived of the opportunity to acquire the Aircraft at an artificial and self-imposed depressed price for itself prior to the Petition Date, FitzWalter continued to pursue its acquisition goals by undertaking an aggressive strategy to prevent the Debtors' efforts to maximize recovery for all creditors and parties-in-interest, by opposing the Sale and seeking dismissal of these bankruptcy cases. These efforts continued unabated even after this Court's Memorandum Decision and the clear findings therein. However, it bears noting that these efforts come at significance expense to the estates and are detrimental to every party-in-interest in these cases, other than FitzWalter.

---

[3] As stated in Mizuho's *Joinder to the Debtors' Objection to the Motion of FitzWalter Capital Partners (Financial Trading) Limited to Dismiss or Abstain From Hearing These Chapter 11 Cases* [Dkt. No. 54], Mizuho was not provided notice of FitzWalter's foreclosure proceedings, despite being a Finance Party under the Transaction Documents.

### A.  Joinder in Support of the Sale

7. As previously expressed to the Court, Mizuho supports the Sale, which will undoubtedly maximize recovery and protect all the secured creditors' interests. FitzWalter's undisclosed objective to obtain title to the Aircraft – cloaked in terms of its stated efforts to enforce the Transaction Documents – will certainly not have the same result as the Sale. Indeed, at no point in these proceedings, either by submission to the Court or testimony, has FitzWalter ever suggested that any alternative to the Sale, such as their acquisition of the Aircraft and Lease Assets after dismissal, would leave anything to junior creditors. Certainly, it will not and the excessive FitzWalter Alleged Fees, Costs & Charges currently being asserted by FitzWalter as "Secured Obligations" is yet another backdoor effort to deprive other parties-in-interest in these cases of value.

8. Accordingly, by this Response, Mizuho hereby supports the Debtors' Sale Motion and adopts and incorporates the arguments in the Determination Motion and the Debtors' Reply, to the extent applicable, as well as those set forth herein, and respectfully requests that this Court approve the Sale and limit the FitzWalter Alleged Fees, Costs & Charges as provided in the Determination Motion.

### B.  Limited Response to FitzWalter's 506/502 Objection

9. In addition to the arguments contained in the Debtors' Determination Motion, which, for purposes of brevity, will not be restated herein, Mizuho objects to FitzWalter's suggestion in footnote 17 of its 506 Objection that, notwithstanding a potential ruling by this Court that the FitzWalter Alleged Fees, Costs & Charges cannot be characterized as Secured Obligations, FitzWalter can summarily ignore such ruling and retain such amounts from the proceeds of the Sale under the Proceeds Agreement prior to other Finance Parties' receipt thereof, or more

egregiously, can pursue claims against Mizuho and other Finance Parties to recover the FitzWalter Alleged Fees, Costs & Charges. Such a statement is patently offensive to the authority of this Court and, *inter alia*, fails to take into consideration the tenants of *res judicata*. Indeed, FitzWalter appears to be boldly stating that it has every intention to blatantly ignore the potential findings of fact and conclusions of law contained in such a ruling, but also to determine, unilaterally, what effect such findings and conclusions would have on the enforcement of the relevant provisions of the Proceeds Agreement that FitzWalter so ardently proclaims entitles it to relief.

10. As a threshold matter, any ruling by this Court with respect to the allowance of the FitzWalter Alleged Fees, Costs & Charges would necessarily entail an analysis of the relevant provisions of the Proceeds Agreement, as well as FitzWalter's entitlement to and compliance with the same under Section 502(b)(1) of the Bankruptcy Code. Only then would the Court undertake a determination of reasonableness under Section 506(b) of the Bankruptcy Code. This two-step analysis will determine, among other things, whether the FitzWalter Alleged Fees, Costs & Charges are appropriate under the Proceeds Agreement and, thus, will have a direct bearing on whether such fees and costs are enforceable against FitzWalter's fellow Finance Parties thereunder. While FitzWalter has shown its ability to completely ignore this Court's rulings, any attempt to do so in this context will be strongly opposed by Mizuho, as well as other parties-in-interest, and should not be tolerated by this Court.

11. Moreover, as soundly set forth in the Determination Motion and the Debtors' Reply, the FitzWalter Alleged Fees, Costs & Charges are simply not allowable in their entirety as a matter of law, especially when viewed in the context of these cases and FitzWalter's admitted goal of acquiring the Aircraft, rather than protecting its secured investment, which it only acquired weeks before the Petition Date. "Within section 506(b)'s construct, bankruptcy courts have broad

discretion to determine the allowance of attorney's fees . . . including . . . the power to review the reasonableness of such fees *in the context of the case and the claimant's position in it*." *In re Canal Asphalt, Inc.*, 2017 Bankr. LEXIS 1289, 2017 WL 1956849, at *8 (Bankr. S.D.N.Y. May 10, 2017) (citing *In re Mills*, 77 B.R. 413, 419 (Bankr. S.D.N.Y. 1987) (emphasis added)).

12. The Debtors correctly cite to *Canal Asphalt* as instructive to the Court's consideration of the FitzWalter Alleged Fees, Costs & Charges and, thus, Mizuho need not provide further analysis with respect to this issue. However, Mizuho is compelled to reiterate that courts routinely hold that the reasonableness standard under Section 506(b) in a chapter 11 case, such as these cases, is to be interpreted as the reasonable services and expenses that would be incurred to enforce the rights and remedies of a similarly situated secured creditor, given all of the facts and circumstances of the chapter 11 case. This is exemplified by the holding in *In re Reorganized Lake Diamond Assocs., LLC*, 367 B.R. 858 (Bankr. M.D. Fla. 2007), a case very similar to *Canal Asphalt* (and cited therein) and applicable to the instant proceedings.

13. *In Reorganized Lake Diamond*, a distressed investor fund, much like FitzWalter, acquired the debtors' senior secured debt solely for the purpose of acquiring the debtor's primary asset. *Id*. at 860-861. The investor then initiated overly aggressive and costly litigation for the sole purpose of upsetting the debtor's stalking horse sale to a third party that would have, and ultimately did, pay all creditors in full. *Id*. 862. After failing to achieve its acquisition objectives, the investor sought reimbursement of all the fees and expenses it incurred in attempting to acquire the assets under the guise of Section 506. *Id*. As this Court should do here, the court in *Reorganized Lake Diamond* saw through the investor's scheme and denied all fees and costs other than those strictly limited to the protection of its secured interest. *Id*. at 868 ("Given the legal

issues involved, the fees incurred by Silver are not cost justified by the economics of the situation, and must be disallowed under § 502(b)(1)").

14.     The court in *Reorganized Lake Diamond* recognized that, after a threshold holding of allowance under Section 502 of the Bankruptcy Code to determine whether the fees and costs are allowed under non-bankruptcy law, the court must undertake a reasonableness analysis under Section 506. *Id*. at 864-865. The court further recognized that under Section 506's reasonableness requirement, "a creditor is only entitled to include services reasonably required to protect its interest in the loan. Overzealousness will not be compensated, even if the creditor approves of such action by its counsel." *Id*. at 866 (citations omitted). The court further noted that "[i]n permitting recovery of expenses covered by contract, a rule of reason must be observed in order to avoid such clauses becoming a tool for wasteful diversion of an estate at the hands of secured creditors, who, knowing that the estate must foot the bills, fail to exercise restraint in enforcement expenses." *Id*. 868 (quoting *In re Salisbury*, 58 B.R. 635, 640 (Bankr. D. Conn. 1985)). With these tenants in mind, the court flatly rejected the vast majority of the investor's fees, including, but not limited to, the fees incurred opposing the proposed bidding procedures, including the break-up fee, finding that such fees are "not something a typical first-position, admittedly oversecured creditor would undertake. Rather, it is more in line with that of a competing purchaser or an unsecured creditor." *Id*. at 870. In short, the court, as is the case here, recognized that the Lake Diamond investor "acquired the secured debt to best position itself to purchase the assets and did so with no downside….. [I]t could pursue the purchase of the Property by credit bidding and, if it were unsuccessful, have its claim satisfied from the proceeds of the Debtor's previously requested sale." *Id*. at 870-871.

15. Just like the investor in *Reorganized Lake Diamond*, FitzWalter has acted, and continues to act, as a loan-to-own acquirer, not a lender, as a traditional lender would arguably have supported the Sale process and not have undertaken the excessively egregious and costly actions that FitzWalter has during these proceedings – all at the expense of other parties-in-interest. Indeed, FitzWalter's goal was to acquire the Aircraft and the Lease Assets for no more than the likely discounted amount they paid for the senior debt they now seek to grossly inflate. As provided above, any analysis this Court undertakes with respect to the allowance of the FitzWalter Alleged Fees, Costs & Charges should be in context of this reality, as well as the framework described in and the intent behind the applicable provisions of the Proceeds Agreement.

16. The purpose of Section 506(b) is to ensure that oversecured creditors do not lose their reasonable claims for certain fees and costs simply because their collateral is worth more than their underlying claim. It has never been a blank check for oversecured lenders to obtain benefits beyond the scope of the protection of their interests. Certainly, FitzWalter has taken actions well beyond the protection of its secured interest in the context of these proceedings, which again are cases where the Debtors, from the beginning, have represented that the secured creditors will be paid in full through the Sale. FitzWalter is clearly attempting the use the Proceeds Agreement as a blank check, not only to block the Sale for its own benefit, but to significantly enrich itself and its agents in the event such efforts ultimately fail (as they should). Accordingly, this Court should carefully scrutinize FitzWalter's fees and expenses and limit them under Sections 502 and 506 to only what was strictly necessary under the terms of the Proceeds Agreement to protect its senior secured interest.

17. Mizuho reserves its rights to make any additional arguments in support of the relief requested herein at the Sale Hearing.

WHEREFORE, for the reasons stated herein, Mizuho respectfully requests that this Court approve the Sale Motion and grant any other relief that this Court deems just and proper.

Dated:  March 12, 2022

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Christopher J. Giaimo*
Christopher J. Giaimo
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
Email: christopher.giaimo@squirepb.com

Nava Hazan
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: 212-872-9800
Facsimile:  212-872-9815
Email: nava.hazan@squirepb.com

*Counsel for Mizuho Leasing Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of March, 2022, I caused a true and correct copy of the foregoing **STATEMENT OF MIZUHO LEASING CO., LTD. IN SUPPORT OF (A) DEBTORS' SALE MOTION, (B) MOTION FOR ENTRY OF AN ORDER (I) DETERMINING SECURED CLAIMS OF PREPETITION CREDIT FACILITIES OR (II) IN THE ALTERNATIVE, ESTIMATING AMOUNT OF CLAIMS ASSERTED BY FITZWALTER CAPITAL PARTNERS (FINANCIAL TRADING) LIMITED AND ITS AFFILIATES, AND (C) DEBTORS' REPLY TO FITZWALTER CAPITAL PARTNERS (FINANCIAL TRADING) LIMITED'S PRELIMINARY OBJECTION TO DEBTORS 506/502 MOTION AND RESPONSE TO DEBTORS' REPLY IN SUPPORT OF SALE MOTION AND JPL'S STATEMENT IN SUPPORT OF SALE MOTION** to be filed and served through ECF notification upon all parties who receive notice in this matter pursuant to the Court's CM/ECF filing system.

*/s/ Christopher J. Giaimo*
Christopher J. Giaimo