

Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
vedderprice.com

March 15, 2022

Michael J. Edelman
Shareholder
+1 212 407 6970
mjedelman@vedderprice.com

**VIA FEDERAL EXPRESS; FILED ON ECF**

The Honorable David S. Jones
United States Bankruptcy Judge
United States Bankruptcy Court for the
   Southern District of New York
Alexander Hamilton Courthouse
One Bowling Green, Courtroom 501
New York, New York 10004-1408

   Re:   *In re JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.*, Case No. 21-12075 (DSJ) –
         **Provisions of Cape Town Treaty and Official Commentary on Cape Town Treaty Referenced at March 14th Sale Hearing**

Dear Judge Jones:

We are counsel for of JP Lease Products & Services Co., Ltd. At the hearing, references were made to:

   (a)   that certain *Convention on International Interests in Mobile Equipment* (the "**Cape Town Convention**"), which was adopted on November 16, 2001 at a diplomatic conference in Cape Town, South Africa;

   (b)   that certain *Protocol to the Convention on International Interests on Matters Specific to Aircraft Equipment* (the "**Aircraft Protocol**"), which was concurrently adopted with the Cape Town Convention (collectively, the Cape Town Convention and the Aircraft Protocol are referred to as the "**Cape Town Treaty**"); and

   (c)   the *Official Commentary on the Convention on International Interests in Mobile Equipment and Protocol thereto on Matters Specific to Aircraft Equipment* (4th Ed. INTERNATIONAL INSTITUTE FOR THE UNIFICATION OF PRIVATE LAW (UNIDROIT) 2019), prepared by Roy Goode (the "*Official Commentary*"), which is the Official Commentary prepared pursuant to Resolution No. 5 adopted at the Cape Town diplomatic Conference in Cape Town, South Africa.

The Court requested that the undersigned submit a letter setting forth the provisions of the Cape Town Treaty and the Official Commentary that were referenced at the hearing held before this Court on March 14, 2022 (the "*Sale Hearing*"), which provisions are set forth in the following attached schedules:

   (i)   Schedule 1:   Provisions of Cape Town Convention referenced at the Sale Hearing;
   (ii)   Schedule 2:   Provisions of Aircraft Protocol referenced at the Sale Hearing; and
   (iii)   Schedule 3:   Provisions of Official Commentary referenced at the Sale Hearing.

1633 Broadway, 31st Floor  |  New York, New York 10019  |  T +1 212 407 7700  |  F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, and Vedder Price Pte. Ltd., which operates in Singapore.

The Honorable David S. Jones
United States Bankruptcy Judge
March 15, 2022
Page 2

Additionally, where needed to understand the context of the attached provisions, I have added definitional provisions.

The full text of the Cape Town Treaty also can be accessed online through the following websites operated by UNIDROIT (the International Institute for the Unification Of Private Law): (i) for the Cape Town Convention: *https://www.unidroit.org/instruments/security-interests/cape-town-convention/* and (ii) for the Aircraft Protocol: *https://www.unidroit.org/instruments/security-interests/aircraft-protocol/*. As also referenced at the Sale Hearing, the status of ratification and implementation of the Cape Town Convention and Aircraft Protocol by various countries, including the United Kingdom, the United States, Ireland and Vietnam, are also available online at: (1) for the Cape Town Convention: *https://www.unidroit.org/instruments/security-interests/cape-town-convention/states-parties/* and (2) for the Aircraft Protocol: *https://www.unidroit.org/instruments/security-interests/aircraft-protocol/states-parties/*.

Thank you for your time, courtesies and consideration regarding these matters.

Respectfully submitted,

Michael J. Edelman

Attachments

*Schedules Setting forth Provisions of Cape Town*
*Treaty and Official Commentary on Cape Town Treaty*

# SCHEDULE 1[1]
# PROVISIONS OF CAPE TOWN CONVENTION
# REFERENCED AT THE SALE HEARING

## CHAPTER I

### SPHERE OF APPLICATION AND GENERAL PROVISIONS

### Article 1 — Definitions

In this Convention, except where the context otherwise requires, the following terms are employed with the meanings set out below:

\* \* \* \* \* \* \* \* \* \* \* \*

(a) *"assignment"* means a contract which, whether by way of security or otherwise, confers on the assignee associated rights with or without a transfer of the related international interest;

\* \* \* \* \* \* \* \* \* \* \* \*

(c) *"associated rights"* means all rights to payment or other performance by a debtor under an agreement which are secured by or associated with the object;

\* \* \* \* \* \* \* \* \* \* \* \*

(i) *"creditor"* means a chargee under a security agreement, a conditional seller under a title reservation agreement or a lessor under a leasing agreement;

\* \* \* \* \* \* \* \* \* \* \* \*

(j) *"debtor"* means a chargor under a security agreement, a conditional buyer under a title reservation agreement, a lessee under a leasing agreement or a person whose interest in an object is burdened by a registrable non-consensual right or interest;

\* \* \* \* \* \* \* \* \* \* \* \*

(m) *"interested persons"* means:
(i) the debtor;
(ii) any person who, for the purpose of assuring performance of any of the obligations in favour of the creditor, gives or issues a suretyship or demand guarantee or a standby letter of credit or any other form of credit insurance;
(iii) any other person having rights in or over the object;

\* \* \* \* \* \* \* \* \* \* \* \*

(o) *"international interest"* means an interest held by a creditor to which Article 2 applies;

---

[1] These Schedules only set forth the particular Articles and related definitional provisions that were cited at the Sale Hearing.

Schedules - Page i

*Schedules Setting forth Provisions of Cape Town*
*Treaty and Official Commentary on Cape Town Treaty*

\* \* \* \* \* \* \* \* \* \* \* \*

(q) *"leasing agreement"* means an agreement by which one person (the lessor) grants a right to possession or control of an object (with or without an option to purchase) to another person (the lessee) in return for a rental or other payment;

\* \* \* \* \* \* \* \* \* \* \* \*

(u) *"object"* means an object of a category to which Article 2 applies;

\* \* \* \* \* \* \* \* \* \* \* \*

(ii) *"security agreement"* means an agreement by which a chargor grants or agrees to grant to a chargee an interest (including an ownership interest) in or over an object to secure the performance of any existing or future obligation of the chargor or a third person;

\* \* \* \* \* \* \* \* \* \* \* \*

**Article 2 — The international interest**

1. This Convention provides for the constitution and effects of an international interest in certain categories of mobile equipment and associated rights.

2. For the purposes of this Convention, an international interest in mobile equipment is an interest, constituted under Article 7, in a uniquely identifiable object of a category of such objects listed in paragraph 3 and designated in the Protocol:

    (a) granted by the chargor under a security agreement;

    (b) vested in a person who is the conditional seller under a title reservation agreement; or

    (c) vested in a person who is the lessor under a leasing agreement.

    An interest falling within sub-paragraph (a) does not also fall within sub-paragraph (b) or (c).

3. The categories referred to in the preceding paragraphs are:

    (a) airframes, aircraft engines and helicopters;

    (b) railway rolling stock; and

    (c) space assets.

4. The applicable law determines whether an interest to which paragraph 2 applies falls within subparagraph (a), (b) or (c) of that paragraph.

5. An international interest in an object extends to proceeds of that object.

\* \* \* \* \* \* \* \* \* \* \* \*

### Article 6 — Relationship between the Convention and the Protocol

1. This Convention and the Protocol shall be read and interpreted together as a single instrument.

2. To the extent of any inconsistency between this Convention and the Protocol, the Protocol shall prevail.

\* \* \* \* \* \* \* \* \* \* \* \*

## CHAPTER III

### DEFAULT REMEDIES

### Article 8 — Remedies of chargee

1. In the event of default as provided in Article 11, the chargee may, to the extent that the chargor has at any time so agreed and subject to any declaration that may be made by a Contracting State under Article 54, exercise any one or more of the following remedies:

    (a) take possession or control of any object charged to it;

    (b) sell or grant a lease of any such object;

    (c) collect or receive any income or profits arising from the management or use of any such object.

2. The chargee may alternatively apply for a court order authorising or directing any of the acts referred to in the preceding paragraph.

3. Any remedy set out in sub-paragraph (a), (b) or (c) of paragraph 1 or by Article 13 shall be exercised in a commercially reasonable manner. A remedy shall be deemed to be exercised in a commercially reasonable manner where it is exercised in conformity with a provision of the security agreement except where such a provision is manifestly unreasonable.

4. A chargee proposing to sell or grant a lease of an object under paragraph 1 shall give reasonable prior notice in writing of the proposed sale or lease to:

    (a) interested persons specified in Article 1(m)(i) and (ii); and

    (b) interested persons specified in Article 1(m)(iii) who have given notice of their rights to the chargee within a reasonable time prior to the sale or lease.

5. Any sum collected or received by the chargee as a result of exercise of any of the remedies set out in paragraph 1 or 2 shall be applied towards discharge of the amount of the secured obligations.

6. Where the sums collected or received by the chargee as a result of the exercise of any remedy set out in paragraph 1 or 2 exceed the amount secured by the security interest and any reasonable costs incurred in the exercise of any such remedy, then unless otherwise ordered by the court the chargee shall distribute the surplus among holders of subsequently

ranking interests which have been registered or of which the chargee has been given notice, in order of priority, and pay any remaining balance to the chargor.

### Article 9 — Vesting of object in satisfaction; redemption

1. At any time after default as provided in Article 11, the chargee and all the interested persons may agree that ownership of (or any other interest of the chargor in) any object covered by the security interest shall vest in the chargee in or towards satisfaction of the secured obligations.

2. The court may on the application of the chargee order that ownership of (or any other interest of the chargor in) any object covered by the security interest shall vest in the chargee in or towards satisfaction of the secured obligations.

3. The court shall grant an application under the preceding paragraph only if the amount of the secured obligations to be satisfied by such vesting is commensurate with the value of the object after taking account of any payment to be made by the chargee to any of the interested persons.

4. At any time after default as provided in Article 11 and before sale of the charged object or the making of an order under paragraph 2, the chargor or any interested person may discharge the security interest by paying in full the amount secured, subject to any lease granted by the chargee under Article 8(1)(b) or ordered under Article 8(2). Where, after such default, the payment of the amount secured is made in full by an interested person other than the debtor, that person is subrogated to the rights of the chargee.

5. Ownership or any other interest of the chargor passing on a sale under Article 8(1)(b) or passing under paragraph 1 or 2 of this Article is free from any other interest over which the chargee's security interest has priority under the provisions of Article 29.

\* \* \* \* \* \* \* \* \* \* \* \* \*

### Article 11 — Meaning of default

1. The debtor and the creditor may at any time agree in writing as to the events that constitute a default or otherwise give rise to the rights and remedies specified in Articles 8 to 10 and 13.

2. Where the debtor and the creditor have not so agreed, "default" for the purposes of Articles 8 to 10 and 13 means a default which substantially deprives the creditor of what it is entitled to expect under the agreement.

\* \* \* \* \* \* \* \* \* \* \* \* \*

*Schedules Setting forth Provisions of Cape Town*
*Treaty and Official Commentary on Cape Town Treaty*

### Article 15 — Derogation

In their relations with each other, any two or more of the parties referred to in this Chapter may at any time, by agreement in writing, derogate from or vary the effect of any of the preceding provisions of this Chapter except Articles 8(3) to (6), 9(3) and (4), 13(2) and 14.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## CHAPTER IX

ASSIGNMENTS OF ASSOCIATED RIGHTS AND INTERNATIONAL INTERESTS; RIGHTS OF SUBROGATION

### Article 34 — Default remedies in respect of assignment by way of security

In the event of default by the assignor under the assignment of associated rights and the related international interest made by way of security, Articles 8, 9 and 11 to 14 apply in the relations between the assignor and the assignee (and, in relation to associated rights, apply in so far as those provisions are capable of application to intangible property) as if references:

    (a)    to the secured obligation and the security interest were references to the obligation secured by the assignment of the associated rights and the related international interest and the security interest created by that assignment;

    (b)    to the chargee or creditor and chargor or debtor were references to the assignee and assignor;

    (c)    to the holder of the international interest were references to the assignee; and

    (d)    to the object were references to the assigned associated rights and the related international interest.

# SCHEDULE 2
# PROVISIONS OF AIRCRAFT PROTOCOL
# REFERENCED AT THE SALE HEARING

**CHAPTER I**

SPHERE OF APPLICATION AND GENERAL PROVISIONS

**Article IV — Sphere of application [only cited portion included below]**

    \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

3. The parties may, by agreement in writing, exclude the application of Article XI and, in their relations with each other, derogate from or vary the effect of any of the provisions of this Protocol except Article IX (2)-(4).

    \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CHAPTER II**

DEFAULT REMEDIES, PRIORITIES AND ASSIGNMENTS

**Article IX — Modification of default remedies provisions**

1. In addition to the remedies specified in Chapter III of the Convention, the creditor may, to the extent that the debtor has at any time so agreed and in the circumstances specified in that Chapter:

    (a) procure the de-registration of the aircraft; and

    (b) procure the export and physical transfer of the aircraft object from the territory in which it is situated.

2. The creditor shall not exercise the remedies specified in the preceding paragraph without the prior consent in writing of the holder of any registered interest ranking in priority to that of the creditor.

3. Article 8(3) of the Convention shall not apply to aircraft objects. Any remedy given by the Convention in relation to an aircraft object shall be exercised in a commercially reasonable manner. A remedy shall be deemed to be exercised in a commercially reasonable manner where it is exercised in conformity with a provision of the agreement except where such a provision is manifestly unreasonable.

4. A chargee giving ten or more working days' prior written notice of a proposed sale or lease to interested persons shall be deemed to satisfy the requirement of providing "reasonable prior notice" specified in Article 8(4) of the Convention. The foregoing shall not prevent a chargee and a chargor or a guarantor from agreeing to a longer period of prior notice.

5. The registry authority in a Contracting State shall, subject to any applicable safety laws and regulations, honour a request for de-registration and export if:

    (a) the request is properly submitted by the authorised party under a recorded irrevocable deregistration and export request authorisation; and

    (b) the authorised party certifies to the registry authority, if required by that authority, that all registered interests ranking in priority to that of the creditor in whose favour the authorisation has been issued have been discharged or that the holders of such interests have consented to the de-registration and export.

6. A chargee proposing to procure the de-registration and export of an aircraft under paragraph 1 otherwise than pursuant to a court order shall give reasonable prior notice in writing of the proposed deregistration and export to:

    (a) interested persons specified in Article 1(m)(i) and (ii) of the Convention; and

    (b) interested persons specified in Article 1(m)(iii) of the Convention who have given notice of their rights to the chargee within a reasonable time prior to the deregistration and export.

*Schedules Setting forth Provisions of Cape Town*
*Treaty and Official Commentary on Cape Town Treaty*

# SCHEDULE 3
# PROVISIONS OF OFFICIAL COMMENTARY| REFERENCED AT SALE HEARING

**PART 2**

**A REVIEW OF THE CONVENTION** [Portions Cited at Hearing Set forth below]

**Relationship of Convention to national law**

**Comment 2.10**    The Convention applies to the exclusion of otherwise applicable law where the two conflict. However, it is not a comprehensive code and therefore coexists with other sources of law where no such conflict is present. . . .

   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PART 3**

**A REVIEW OF THE AIRCRAFT PROTOCOL** [Portions Cited at Hearing Set forth below]

**Modification of Convention provisions on remedies**

**Comment 3.47**    The Aircraft Protocol modifies the Convention in various respects to give greater certainty for the parties.

  (1)  *Exclusion of Article 8(3)*

    Article IX(3) replaces Article 8(3) of the Convention with a more general duty of commercial reasonableness. This cannot be excluded by agreement (Article IV(3)). The duty imposed on a chargee to exercise remedies in a commercially reasonable manner is extended to cover all remedies in relation to aircraft objects and thus to embrace not only remedies of the creditor under the security agreement but those conferred on the assignee of associated rights qua transferee of the international interest under Article 34 but not remedies in relation to the associated rights themselves. But a remedy given in relation to an aircraft object is deemed to be exercised in a commercially reasonable manner where it is exercised in conformity with a provision of the agreement except where such a provision is manifestly unreasonable (Article IX(3)). In consequence Article 8(3), which is limited to security agreements, is disapplied.

   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PART 4

### ANNOTATION OF THE CONVENTION ON INTERNATIONAL INTERESTS IN MOBILE EQUIPMENT [Portions Cited at Hearing Set forth below]

**Comment 4.128**     [Comment on Cape Town Convention Article 15 Derogation]

This Article embodies the general principle of party autonomy. The parties are free to exclude or vary any of the provisions of this Chapter except for those listed in the present Article as mandatory, namely those relating to:

- (a) exercise of chargee's remedies in a commercially reasonable manner (Article 8(3));
- (b) required notice of intended sale by chargee (Article 8(4));
- (c) application of proceeds of sale by chargee (Article 8(5));
- (d) application of surplus (Article 8(6));
- (e) restrictions on vesting of charged object in chargee (Article 9(3));
- (f) debtor's right to redeem the object by payment prior to sale (Article 9(4));
- (g) exercise of any additional remedies agreed by the parties under Article 12 to the extent that they are related to any of the remedies listed above;
- (h) imposition by court of terms for speedy judicial relief (Article 13(2));
- (i) exercise of remedies in accordance with procedural law of place of exercise (Article 14).

The power of derogation is limited to the relations between the parties, who cannot, of course, make an agreement which affects the rights of third parties. So the debtor's consent to vesting of ownership of the object in the chargee under Article 9(1) does not dispense with the need for the consent of other interested persons or alternatively an order of the court. Similarly, while competing creditors can vary the priority rules as between themselves (a point reinforced by Article 29(5)), they cannot by their agreement affect the priority of other parties.