UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JPA NO. 111 CO., LTD. and JPA NO. 49 CO., LTD., | Case No.:  21-12075 (DSJ) |
| Debtors.[1] | (Jointly Administered) |

## ORDER (A) APPROVING STALKING HORSE PURCHASE AGREEMENTS; (B) THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (D) GRANTING RELATED RELIEF

Upon the motion [Docket No. 21] (the "Motion")[2] of JPA No. 111 Co., Ltd. (the "MSN 067 Seller") and JPA No. 49 Co., Ltd. (the "MSN 173 Seller"), as debtors and debtors in possession (together, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for entry of an order (this "Sale Order"): (a) approving the Stalking Horse Purchase Agreements (as defined below); (b) authorizing the sale (the "Sale") of substantially all of the Debtors' assets (together, and as more particularly described in the Stalking Horse Purchase Agreements as the Transferred Assets, the "Purchased Assets") free and clear of all liens, claims, interests, and encumbrances; (c) authorizing the assumption and assignment of certain of the Debtors' material executory contracts and unexpired leases (the "Assigned Contracts") in connection therewith (including Purchased Assets and Assigned Contracts, as applicable, that have become property of the Debtors' estates as a result of Enforcement Actions on security interests pledged to them or

---

[1]  The Debtors in these Chapter 11 Cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is: Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100-0013.

[2]  Capitalized terms not otherwise defined herein shall have the meanings given to them in Motion.

otherwise); and (d) granting related relief; all as set forth more fully in the Motion; and pursuant to the terms of the (a) asset purchase agreement (the "MSN 067 Stalking Horse Purchase Agreement"), between the MSN 067 Seller, as seller, and Flicker Ltd. (or its designee), as buyer ("Flicker"), and (b) asset purchase agreement (the "MSN 173 Stalking Horse Purchase Agreement" and, together with the MSN 067 Stalking Horse Purchase Agreement, the "Stalking Horse Purchase Agreements"), between the MSN 173 Seller, as seller, and Coot Ltd. (or its designee), as buyer ("Coot," and together with Flicker, the "Purchasers," and together with the Debtors, the "Parties"), copies of which were attached in substantially final form to the *Notice of Filing of (I) Further Revised Stalking Horse Purchase Agreements and (II) Further Revised Proposed Sale Order in Connection with the Debtors' Proposed Sale* [Docket No. 178] (the "Revised Sale Documents Notice") and are attached hereto as **Exhibit A** and **Exhibit B**, respectively; and a hearing to approve the Sale pursuant to the Stalking Horse Purchase Agreements having been held before the Court on March 14, 2022 (the "Sale Hearing"); and this Court having reviewed and considered (a) the Motion, (b) the *Motion of the Debtors for Entry of an Order (I) Determining Secured Claims of Prepetition Credit Facilities or (II) In the Alternative, Estimating Amount of Claims Asserted by FitzWalter Capital Partners (Financial Trading) Limited and its Affiliates* [Docket No. 136] (the "Claims Motion"); (c) the objections to the Motion, Claims Motion, or the Sale, (d) all responses or replies to objections to the Motion, Claims Motion, or the Sale and any statements in support thereof; (e) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing and any other hearing related to the Motion and the Claims Motion; (f) the Declaration of Heinrich Loechteken in Support of the Motion [Docket No. 44]; and (g) the Declaration of Heinrich Loechteken in Support of the Sale [Docket No. 160]; and the Court having determined that the legal and factual bases set forth therein establish just

cause for the relief granted herein; and the Court having issued an oral ruling on the Motion and

the Claims Motion at a hearing held before this Court on March 18, 2022 (the "Sale Ruling"),

which Sale Ruling is incorporated herein by reference; and upon the full record of these Chapter

11 Cases; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion and

the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing

Order.   Approval of the Stalking Horse Purchase Agreements and the transactions contemplated

thereby is a core proceeding under 28 U.S.C. §§ 157(b).   Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Bases for Relief**.  The statutory and other legal bases for the relief provided herein

are sections 105(a), 363, 365, 502, and 506 of the Bankruptcy Code and Bankruptcy Rules 2002,

3012, 4001, 6004, 6006, 9007, 9014, and 9019 and the other bases set forth in the Sale Ruling.

The consummation of the transactions contemplated by the Stalking Horse Purchase Agreements

and this Sale Order is legal, valid and properly authorized under all applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Sale Guidelines, and

other applicable law, and the Parties have complied with all of the applicable requirements of

such sections, rules, and applicable law in respect of such transactions.

C.    **Notices**.   Proper, timely, adequate and sufficient notice of the Motion, the

assumption and assignment of the Assigned Contracts, the Enforcement Actions, and  the Sale

Hearing has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the

Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 6006.  The foregoing notice was

good, sufficient, and appropriate under the circumstances, and no other or further notice of the

Motion, the Sale Hearing, the assumption and assignment of the Assigned Contracts, the Enforcement Actions, or the Stalking Horse Purchase Agreements and transactions contemplated thereby is required.  The disclosures made by the Debtors concerning the assumption and assignment of the Assigned Contracts, the Enforcement Actions, the Stalking Horse Purchase Agreements and the transactions contemplated thereby, and the Sale Hearing were sufficient, complete, and adequate.

D.    Actual written notice of the Motion, the Sale Hearing, the Enforcement Actions, the Stalking Horse Purchase Agreements and the transactions contemplated thereby, and the Assumption and Assignment Procedures (including the objection deadline with respect to any Cure Amount) and the assumption and assignment of the Assigned Contracts and the Cure Amounts, and a fair and reasonable opportunity to object or otherwise be heard with respect thereto, has been afforded to all known interested individuals and entities, including the following parties, in compliance with sections 102(l), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, the Local Bankruptcy Rules, other applicable law, the Sale Guidelines, and the Bidding Procedures Order (as defined below):

a) the Office of the United States Trustee for the Southern District of New York, Region 2;

b) counsel to any statutory committee appointed in these Chapter 11 Cases,

c) the Debtors' top 30 unsecured creditors as of the Petition Date (as may be further amended or supplemented);

d) all entities reasonably known to have expressed an interest in the acquisition, directly or indirectly, of any of the Purchased Assets;

e) the Internal Revenue Service, United States Securities and Exchange

Commission, and any other governmental authorities that as a result of the Sale, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or may have a claim against the Debtors or other reasonably known interest in the relief requested by the Motion relating to the Sale;.

f)   counsel to the Security Agent and each of the Senior Lenders and Junior Lenders;

g)   counsel to JPL (as defined below);

h)   counsel to the Intermediate Lessors (as defined below);

i)   counsel to Vietnam Airlines;

j)   each party to the Stalking Horse Purchase Agreements;

k)   all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the Purchased Assets;  and

l)   all other parties who have requested notice pursuant to Bankruptcy Rule 2002 as of the date hereof.  **[DSJ 3/25/2022]**

Such notice was good and sufficient, and appropriate under the particular circumstances, and no other or further notice of the Motion, the Bidding Procedures (as defined below), the Auction, the Sale Hearing, the Sale, the Assumption and Assignment Procedures (including the objection deadline with respect to any Cure Amount) or the assumption and assignment of the Assigned Contracts, the Cure Amounts, or the Enforcement Actions is or shall be required.

E.        Pursuant to the Bidding Procedures Order, notice of the Debtors' assumption, assignment, transfer, and/or sale to the Purchasers of the Assigned Contracts has been provided to each non-Debtor party thereto, together with a statement therein from the Debtors with respect to the Cure Amount.  Each of the non-Debtor parties to the Assigned Contracts has had an

opportunity to object to the Cure Amounts and assumption and assignment of its Assigned Contract.

F.    **Corporate Authority; Legal/Valid Transfer**.    Each Debtor (i) has full corporate power and authority to execute the Stalking Horse Purchase Agreement applicable to it and all other documents contemplated thereby (collectively, along with the Stalking Horse Purchase Agreements and this Sale Order, the "Sale Transaction Documents"), and the Sale has been duly and validly authorized by all necessary corporate action of each of the applicable Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Sale Transaction Documents, (iii) has taken all corporate action and formalities necessary to authorize and approve the Sale Transaction Documents and the consummation by the Debtors of the transactions contemplated thereby, including as required by their respective organizational documents, and (iv) no government, regulatory or other consents or approvals, other than those expressly provided for in the Sale Transaction Documents, are required for the Debtors to enter into the Sale Transaction Documents and consummate the Sale.  The transfer of the Purchased Assets to the Purchasers will be a legal, valid, and effective transfer of the Purchased Assets, and will vest in each respective Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all interests (other than for the liens and Encumbrances (as defined below) permitted under the Stalking Horse Purchase Agreements).  As of the closing of the Sale, the Purchased Assets (including, for the avoidance of doubt, (i) the Aircraft, (ii) the Aircraft Head Lease, the Aircraft Lease, and Related Aircraft Documents (as defined in the Stalking Horse Purchase Agreements) and other Contracts set forth on Schedule 2.01(a)(iii) of the Stalking Horse Purchase Agreements, and (iii) all rights as an owner of the Aircraft and as an indemnitee against (x) the

Aircraft Lessee (as defined in the Stalking Horse Purchase Agreements) and (y) only to the extent reasonably required for the Purchasers to obtain all the rights, titles or interests in any other Purchased Asset to be, or purported to be, conveyed under the applicable Stalking Horse Purchase Agreement, including any Purchased Asset that the Debtors have, or would have, as a result of enforcing any rights and/or remedies it may have under any Transferred Security Document or any other Transferred Contract (as defined in the Stalking Horse Purchase Agreements), the Aircraft Head Lessee, in each case under or in connection with the Transferred Contracts) constitute property of the Debtors' estates, the Debtors are the full legal and beneficial owners of the Purchased Assets (including, for the avoidance of doubt, (i) the Aircraft, (ii) the Aircraft Head Lease, the Aircraft Lease, and Related Aircraft Documents and other Contracts set forth on Schedule 2.01(a)(iii) of the Stalking Horse Purchase Agreements, and (iii) all rights as an owner of the Aircraft and as an indemnitee against (x) the Aircraft Lessee and (y) only to the extent reasonably required for the Purchasers to obtain all the rights, titles or interests in any other Purchased Asset to be, or purported to be, conveyed under the applicable Stalking Horse Purchase Agreement, including any Purchased Asset that the Debtors have, or would have, as a result of enforcing any rights and/or remedies it may have under any Transferred Security Document or any other Transferred Contract, the Aircraft Head Lessee, in each case under or in connection with the Transferred Contracts), and good title is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  Upon closing of the Sale, the Purchasers shall be the rightful legal and beneficial owners of the Purchased Assets (including, for the avoidance of doubt, (i) the Aircraft, (ii) the Aircraft Head Lease, the Aircraft Lease, and Related Aircraft Documents and other Contracts set forth on Schedule 2.01(a)(iii) of the Stalking Horse Purchase Agreements, and (iii) all rights as an owner of the Aircraft and as an indemnitee against

(x) the Aircraft Lessee and (y) only to the extent reasonably required for the Purchasers to obtain

all the rights, titles or interests in any other Purchased Asset to be, or purported to be, conveyed

under the applicable Stalking Horse Purchase Agreement, including any Purchased Asset that

the Debtors have, or would have, as a result of enforcing any rights and/or remedies it may have

under any Transferred Security Document or any other Transferred Contract, the Aircraft Head

Lessee, in each case under or in connection with the Transferred Contracts), and no other person

shall have any ownership right, title, or interests therein.

G.      **Court Approval Required**.  Entry of an order approving and authorizing the

Parties' entry into the Stalking Horse Purchase Agreements, and the Parties' performance of all

the provisions thereof, is a necessary condition precedent to the Parties' obligations under the

Stalking Horse Purchase Agreements with respect to Closing (as defined in the Stalking Horse

Purchase Agreements).

H.      **Bidding Procedures Order**.  On February 7, 2022, this Court entered an order

[Docket No. 102] (the "Bidding Procedures Order"), among other things, (i) approving the

bidding and auction procedures, a copy of which was attached to the Bidding Procedures Order

as Exhibit 1 (the "Bidding Procedures"), relating to the sale of the Purchased Assets; (ii)

establishing the Stalking Horse Bidders and approving the Bid Protections; (iii) approving

procedures for the assumption and assignment of the Assigned Contracts; (iv) authorizing the

Enforcement Actions; (v) scheduling the Auction and the Sale Hearing; and (vi) approving the

form and manner of notice thereof.

I.      **Compliance with Bidding Procedures Order**.  As demonstrated by (i) the

testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the

representations of counsel made on the record at the Sale Hearing, the Debtors have marketed

the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures

Order.  The Debtors and their professionals conducted the sale process in compliance with the

Bidding Procedures Order and have afforded potential purchasers a full and fair opportunity to

make higher and better offers.  The Purchasers have acted in good faith and in compliance with

the terms of the Bidding Procedures.  In accordance with the Bidding Procedures, the Debtors

determined that the bid submitted by the Purchasers and memorialized by the Stalking Horse

Purchase Agreements is the Successful Bid (as defined in the Bidding Procedures).  The Stalking

Horse Purchase Agreements constitutes the highest and best offer for the Purchased Assets and

will provide a greater recovery for the Debtors' estates than would be provided by any other

available alternative.  The Debtors' determination that the Stalking Horse Purchase Agreements

constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound

exercise of the Debtors' business judgment.

> J.    **Modifications to the Stalking Horse Purchase Agreements.**  In conjunction

with designating the Purchasers as the Successful Bidder, the Purchasers and the Debtors agreed

to several modifications from the original purchase agreements filed with this Court on January

13, 2022, which modifications are reflected in the Stalking Horse Purchase Agreements attached

to the Revised Sale Documents Notice.  Among the revised terms reflected in the revised

Stalking Horse Purchase Agreements are Purchasers' and Debtors' agreement that the VNA

Claims (as defined in the Stalking Horse Purchase Agreements) that constitute a portion of the

Transferred Sublease Collateral Assets (as defined in the Enforcement Notice and Bill of Sale

(as defined in the Stalking Horse Purchase Agreements)). are to be allocated among the

Purchasers and the Debtors as set forth in Section 2.01(e) of the Stalking Horse Purchase

Agreements, which provision of the Stalking Horse Purchase Agreements is binding and

controlling over any other provisions regarding the beneficial rights to such VNA Claims as set forth herein or in any other Sale Transaction Document. Additionally, each of the Stalking Horse Purchase Agreements has been revised to include the New Aircraft Leases and the Side Letter Agreements (each as defined in the Stalking Horse Purchase Agreements), all of which shall constitute additional Purchased Assets and Transferred Assets (within the meaning of the Stalking Horse Purchase Agreements). Specifically, the Purchasers and the Debtors have agreed to the inclusion of the terms set forth in Sections 2.01(e) and 2.01(f) of the Stalking Horse Purchase Agreements, along with the other revisions reflected in the modifications to the Stalking Horse Purchase Agreements attached to the Revised Sale Documents Notice.

K.    **Business Judgment**. The Debtors have demonstrated good, sufficient and sound business purposes and justifications for entry of this Sale Order and the approval of the Sale, the Stalking Horse Purchase Agreements and the transactions contemplated thereby and the Debtors' incurrence of the obligations arising thereunder or in connection therewith, including the provisions related to the payment of the Break-Up Fee and Expense Reimbursement under the circumstances, timing, and procedures set forth therein. The Stalking Horse Purchase Agreements and the transactions contemplated thereby, and the Parties' entry into and performance under the Stalking Horse Purchase Agreement: (i) constitute a sound and reasonable exercise of business judgment; (ii) provide fair value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their estates, creditors and other parties in interest; and (iii) are fair, reasonable, equitable and otherwise appropriate under the circumstances. But for the protections afforded to the Purchasers under the Bankruptcy Code and this Sale Order, the Purchasers would not have offered the consideration contemplated by the Stalking Horse Purchase Agreements.

L.      **Sale Free and Clear**.  Pursuant to the Stalking Horse Purchase Agreements, and all ancillary documents filed therewith or described therein, upon Closing, the sale of the Purchased Assets to the Purchasers, including all Purchased Assets that were subject to the Enforcement Actions, shall be free and clear (other than those items expressly permitted to remain under the terms of the Stalking Horse Purchase Agreements) of liens, claims (including any competing claims to legal or beneficial title or adverse ownership claims), defenses and interests (collectively, the "Encumbrances"),  including, without limitation, security interests of whatever kind or nature, mortgages,  conditional sales arrangements, title transfer arrangements, title retention agreements, rights of redemption, pledges, deeds of trust, hypothecations, liens (including mechanic's liens),  encumbrances, assignments, preferences, debts,  easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic  governmental entity, taxes (including foreign, state and local taxes), licenses, covenants,  restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement,  contribution, indemnity or exoneration, successor, product, environmental, tax, labor, alter ego and other liabilities, causes of action, contract rights, to the  fullest extent of the law, in each case, of any kind or nature (including all  "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable, whether arising or existing under any law or authority.

M.      Except for the liens and security interests granted in favor of the Lenders under the respective Junior Facility Agreement, Senior Facility Agreement, Aircraft Head Lease and/or

Aircraft Lease (each as defined in the Stalking Horse Purchase Agreements), the Debtors are unaware of any asserted liens on or security interests in the Purchased Assets.

N.       To the extent any Encumbrance exists, each entity with an Encumbrance, (i) has consented to the sale of the Purchased Assets or is deemed to have consented to such sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.    Those holders of Encumbrances who did not object, or who withdrew their objections (including, without limitation, FitzWalter Capital Partners (Financial Trading) Limited ("FitzWalter") and JLPS Leasing Draco Limited f/k/a DAE Leasing (Ireland) 12 Limited ("JLPS Draco") and JLPS Leasing Uranus Limited f/k/a PAAL Uranus Company Limited ("JLPS Uranus" and, together with JLPS Draco, the "Intermediate Lessors"), to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.    All holders of Encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Encumbrances, if any, attach to the proceeds of the sale, in the same order of priority and with the same validity, force and effect that such Encumbrances had before such transfer and assignment, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein. Therefore, approval of the sale of the Purchased Assets free and clear of the Encumbrances to the extent provided for herein and in the Stalking Horse Purchase Agreement is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

O.       Additionally, as each of the Purchasers are repaying or otherwise satisfying the

Secured Obligations (as defined in the Proceeds Agreements) in full, each Purchaser is entitled

to obtain title to the Purchased Assets free and clear of all Encumbrances in accordance with the

Cape Town Treaty,[3] including under Article 9(4) of the Cape Town Convention.  In addition, as

the Transferred Sublease Collateral Assets were conveyed free and clear of all Encumbrances

under Articles 9(5) of the Cape Town Convention as the Enforcement Notice and Bill of Sale

constitute a court approved sale of such Transferred Sublease Collateral Assets under Decretal

Paragraphs 7 and 8 of the Bidding Procedures Order, which sale was held in accordance with

the terms and requirements of the Cape Town Treaty, which is the controlling law governing

such types of enforcement sale.  Finally, the Purchasers are subrogated to all rights held by the

Security Agent and the Debtors in the Purchased Assets in accordance with Articles 9(4) of the

Cape Town Convention.

P.     The Purchasers would not have entered into the Stalking Horse Purchase

Agreements, and would not consummate the transactions thereunder, if (i) such sale was not free

and clear of all Encumbrances, (ii) if the Purchasers or any of their Affiliates (as defined in the

Stalking Horse Purchase Agreements), past, present and future members or shareholders,

lenders, subsidiaries, parents, divisions, funds, agents, representatives, insurers, attorneys,

successors and assigns, or any of their respective directors, managers, officers, employees,

agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners,

insurance companies, or partners (collectively, the "Purchaser Parties") would, or in the future

could, be liable for any such Encumbrance, or (iii) if the Debtors did not have good title to the

---

[3]    The "Cape Town Treaty" is comprised of, collectively, (a) that certain Convention on International Interests in
Mobile Equipment (the "Cape Town Convention"), and (b) that certain Protocol to the Convention on
International Interests on Matters Specific to Aircraft Equipment (the "Cape Town Protocol"), each as adopted
on November 16, 2001 at a diplomatic conference in Cape Town, South Africa.  Collectively, the Cape Town
Convention and the Cape Town Protocol are referred to as the "Cape Town Treaty".

Purchased Assets.  The Purchasers will not consummate the transactions contemplated by the
Stalking Horse Purchase Agreements, including the Sale and the assumption and assignment of
the Assigned Contracts, unless this Court expressly orders that none of the Purchasers, the other
Purchaser Parties, or the Purchased Assets will have any liability whatsoever with respect to, or
be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or
otherwise, directly or indirectly, any Encumbrance.  A transaction, other than one free and clear
of all liens and Encumbrances, would yield substantially less value for the Debtors' estates, with
less certainty than the transactions contemplated by the Stalking Horse Purchase Agreements.

        Q.      **Assumption of Executory Contracts and Unexpired Leases**. Except as set
forth in the Stalking Horse Purchase Agreements, the (i) transfer of the Purchased Assets to the
Purchasers and (ii) assignment to the Purchasers of the Assigned Contracts, will not subject the
Purchasers or the Purchaser Parties to any liability whatsoever prior to the Closing Date or by
reason of such transfer under the laws of the United States, any state, territory, or possession
thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any
theory of law or equity, including any theory of equitable law, including any theory of antitrust,
successor or transferee liability.  The Debtors have demonstrated that it is an exercise of their
sound business judgment to assume and assign the Assigned Contracts to the Purchasers in
connection with the consummation of the Sale, and the assumption and assignment of the
Assigned Contracts is in the best interests of the Debtors and their estates.  The Assigned
Contracts being assigned to the Purchasers are an integral part of the Purchased Assets being
purchased by the Purchasers and, accordingly, such assumption and assignment of Assigned
Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair
discrimination.

R.    **Cure/Adequate Assurance**.  The Debtors have (i) cured, or provided adequate

assurance of cure, of any default existing prior to the date hereof under any of the Assigned

Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) provided

compensation or adequate assurance of compensation to any party for any actual pecuniary loss

to such party resulting from a default prior to the date hereof under any of the Assigned Contracts

within the meaning of 11 U.S.C. § 365(b)(1)(B).  Each respective Purchaser has provided or will

provide adequate assurance of future performance of and under the Assigned Contracts assigned

to it within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).

S.    **Escrow; Replacement of Escrow due to Settlement.**  In the Sale Ruling, this

Court determined that that an escrow should be established from a portion of the proceeds of the

Sale in the amount of $7,223,471.72 with respect to certain out of pocket fees, costs, expenses

and other charges asserted by FitzWalter in its capacities as Security Agent and Majority Lender

under the Transaction Documents (as defined in the Proceeds Agreements) which were disputed

by the Debtors and certain other parties in interest (the "Disputed Secured Obligations"), subject

to resolution by the Court or the parties pursuant to a further hearing.  Subsequent to the Court's

issuance of the Sale Ruling, (a) the Debtors, JP Lease Products & Services Co. Ltd. ("JPL"),

JLPS Ireland Limited ("JLPS"), Heinrich Loechteken, and each of their respective agents,

officers, directors, and affiliates; (b) FitzWalter, FitzWalter Aviation (Holdings) 2 Limited, and

each of their respective agents, officers, directors, and affiliates; (c) the Intermediate Lessors

and each of their respective agents, officers, directors, and affiliates; and (d) the Purchasers

(collectively, the foregoing (a) through (d), the "Settlement Parties"), reached an agreement in

principle regarding a settlement of the Disputed Secured Obligations and a global resolution of

all matters, claims and suits pending or threatened among the Settlement Parties, which is set forth on **Exhibit D** attached hereto (the "Settlement Addendum").

       T.     **Arm's Length Agreement**.  The consideration to be given by each Purchaser under its Stalking Horse Purchase Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration.  The terms and conditions set forth in the Stalking Horse Purchase Agreements, and all ancillary documents filed therewith or described therein are fair and reasonable under these circumstances and were not entered into with the intent to nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors.  None of the Parties is entering the Stalking Horse Purchase Agreements, including (without limitation) all ancillary documents filed therewith or described therein, or proposing to consummate the transactions contemplated thereby, fraudulently.

       U.     **Good Faith**.  Each of the Parties to the Stalking Horse Purchase Agreements acted in good faith in negotiating the Stalking Horse Purchase Agreements and related agreements.  Each Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded by 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  Each Purchaser has at all times proceeded in good faith in all respects in connection with these Chapter 11 Cases in that, among other things, all payments to be made by or to such Purchaser in connection with the Stalking Horse Purchase Agreements and the transactions contemplated thereby have been disclosed.  Each Purchaser will continue to act in good faith within the meaning of section 363(m) of the Bankruptcy Code in the closing of the transactions as contemplated by the Stalking Horse Purchase Agreements. The consideration provided by each Purchaser for the Purchased Assets pursuant to its Stalking

Horse Purchase Agreements (i) is fair and reasonable, (ii) is the highest and best offer for the

Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be

provided by any other practical available alternative, and (iv) constitutes reasonably equivalent

value, fair consideration and fair value under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession or the District of Columbia (including the Uniform

Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the Uniform Voidable

Transactions Act), and any other applicable law.

V.      **Insider Status**.  The Purchasers are not insiders of the Debtors.  The Purchasers

do not exercise control over the Debtors, nor does either own, or have the power to vote, the

equity interests of the Debtors.

W.      **No Successor Liability**.  No sale, transfer or other disposition contemplated

pursuant to the Stalking Horse Purchase Agreements, including the sale of the Purchased Assets,

will subject any of the Purchasers or Purchaser Parties to any liability for any Encumbrances

(including claims, obligations, and liens) asserted against the Debtors or the Debtors' interests

in property by reason of such transfer under any laws, including any bulk-transfer laws or any

theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger

or substantial continuity or similar theories.  By virtue of the consummation of the transactions

contemplated by the Stalking Horse Purchase Agreements, (i) the Purchasers are not an alter ego

or mere or substantial continuation of the Debtors and their estates, there is no continuity or

continuity of enterprise between the Purchasers and the Debtors (or either of them), and there is

no common identity between the Debtors and the Purchasers (or any of them); (ii) the

Purchasers, individually or collectively, are not holding themselves out to the public as a

continuation of the Debtors or their estates (or any of them); and (iii) the transactions

contemplated by the Stalking Horse Purchase Agreements do not amount to a consolidation, merger or *de facto* merger of either Purchaser and the Debtors and/or the Debtors' estates (or any of them). Accordingly, the Purchasers are not and shall not be deemed, individually or together, a successor to the Debtors or their estates (or any of them) as a result of the consummation of the transactions contemplated by the Stalking Horse Purchase Agreements or otherwise. The purchase of the Purchased Assets by the Purchasers is free and clear of any "successor liability" claims of any nature whatsoever. The Purchasers would not enter into the Stalking Horse Purchase Agreements or consummate the transactions contemplated thereby, but for the protections against any claims based upon "successor liability" theories.

X.    **No Third Party Beneficiaries**. Other than expressly set forth in the Stalking Horse Purchase Agreements, there are no third party beneficiary rights.

Y.    **Credit Bid Offset**. To the extent either Purchaser holds claims against the Debtors secured by the Purchased Assets, no cause existed under section 363(k) of the Bankruptcy Code to disallow credit-bidding.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    All objections and reservations of rights that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby DENIED and OVERRULED on the merits with prejudice. All withdrawn objections are deemed withdrawn with prejudice.

3.    **Findings of Fact;  Conclusions of Law**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any

findings of fact are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

4. **Notice**. Notice of the Motion, the Sale, the assumption and assignment of the Assigned Contracts, the Enforcement Actions, and the Sale Hearing was fair and equitable under the circumstances and complied in all respects with sections 102(1), 105(a), 363, 365, and 502 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 6006, the Local Bankruptcy Rules, the Sale Guidelines, and other applicable law.

5. **The Stalking Horse Purchase Agreements are Approved and Authorized**. The Stalking Horse Purchase Agreements, and all ancillary documents filed therewith or described therein are approved pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 3001(e), 4001, 6004, 6006, and 9019. The Debtors and their non-debtor affiliates are hereby authorized and directed to perform their obligations under the Stalking Horse Purchase Agreements and all ancillary documents, including, without limitation, the sale of the Purchased Assets to the Purchasers. The failure to include specifically any particular provision of the Stalking Horse Purchase Agreements in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent that the Stalking Horse Purchase Agreements and all of its provisions, releases, settlements, payments and transactions provided for therein shall be authorized and approved in its entirety. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent. In the event there is a direct conflict between the terms of this Sale Order and the terms of the Stalking Horse Purchase Agreements, the terms of this Sale Order shall control.

6. **The Secured Obligations**. The Sale shall provide for the payment in full of the Secured Obligations. The Secured Obligations shall include only outstanding principal and

accrued and unpaid interest (including default interest), and reasonable and allowed fees and out of pocket expenses in accordance with the Sale Transaction Documents as set forth on **Exhibit C**[4] hereto.

7.        **Payoff of Secured Obligations**.   Not less than three (3) business days prior to the Closing, the Security Agent and each Lender shall deliver to the Debtors and the Purchasers payoff letters or other customary form of payoff or redemption documentation (each, a "Payoff Letter"), in each case, in forms satisfactory to the Purchasers and the Debtors, which shall (a) set forth the aggregate amount of Secured Obligations calculated consistent with this Sale Order payable as of the Closing Date (as defined in the Stalking Horse Purchase Agreements) to the Security Agent or the applicable Lender (including, for the avoidance of doubt, any accrued and unpaid interest (including default interest) and reasonable fees and expenses to the extent consistent with this Sale Order); and (b) acknowledge and agree that, upon payment of such aggregate amounts on the Closing Date, the Debtors shall have paid in full all amounts arising under or owing or payable under the Transaction Documents and in connection therewith.  In accordance with Section 3.03(c) of the Stalking Horse Purchase Agreements, the Purchasers are authorized to pay directly each Senior Finance Party and Junior Finance Party, as applicable, as set forth in the respective Payoff Letter.  The Security Agent is hereby directed to reasonably cooperate with the terms of the Payoff Letter that are consistent with the terms of this Sale Order and shall release (and shall be deemed to have released) all Obligors of Secured Obligations under the Transaction Documents.  The Debtors are authorized, but not directed, to provide in the Payoff Letters general releases of claims and causes of action arising prior to or after the Petition Date to the benefit of the applicable Senior

---

[4]    For the Secured Obligations identified on **Exhibit C** with an asterisk (*) the amounts stated were calculated through February 28, 2022 but have continued to accrue interest. The final payment will include additional interest through the Closing.

Finance Party or Junior Finance Party providing such Payoff Letter as is usual and customary in such debt payoff transactions. Notwithstanding anything to the contrary herein, but subject to the allowed setoff of amounts as provided above, on the Closing Date, each Purchaser is authorized and directed to pay each item set forth in the applicable Payoff Letter in full to the applicable Senior Finance Party or Junior Finance Party, as the case may be by wire transfer of immediately available funds in accordance with wire transfer instructions provided by the applicable Senior Finance Party or Junior Finance Party in the Payoff Letters. This Court shall retain jurisdiction to resolve any issues and disputes regarding the form of the Payoff Letter. The Security Agent (and any other current or former Secured Parties, the Debtors, the Intermediate Lessors and in each case any affiliates thereof as may be required) shall deliver a global deed of release together with any other discharge, release, re-assignment or transfer documentation that may be required in any jurisdiction by the Purchaser or the Debtors to give effect to the release and discharge of all Encumbrances in any jurisdiction and the other transactions contemplated by the Stalking Horse Purchase Agreements, and to take all such steps (including without limitation steps to (i) deregister any Encumbrances in any international or local registry in any jurisdiction, and (ii) notify all relevant parties of the re-assignment of the Purchased Assets) that may be required to give effect to this Sale Order and the transactions contemplated by the Stalking Horse Purchase Agreements.

8.    **Enforcement Actions Approved**.  Upon the payment of the Secured Obligations on the Closing as set forth herein, and the satisfaction of the other conditions precedent set forth the seventh recital of the respective Enforcement Notice, the Sublease Collateral Effective Date (as defined in the Enforcement Notice) shall have occurred on the Closing Date. To the extent not approved by prior order(s) of the Court, and in all circumstances subject to the terms of provisions of this Sale Order, the transfer of the Transferred Sublease Collateral Assets (including, for the

avoidance of doubt any documents, records and/or agreements relating to the Aircraft and/or the maintenance thereof, if any), as set forth in the respective Enforcement Notice and the related Enforcement Actions are hereby approved and constitute valid and enforceable transfers under applicable law for good, fair and reasonably equivalent value.   The Intermediate Lessors are authorized and directed to cooperate with the Debtors, the Security Agent, and any third parties regarding the effectuation of the foregoing, including, without limitation, executing such documentation and notices as may be required to give effect to the transfer of the Transferred Sublease Collateral Assets.

9.      **Sale and Transfer Free and Clear of Encumbrances**.  Upon Closing, all of each Debtor's legal, equitable and beneficial right, title and interest in and to, and possession of the Purchased Assets shall be immediately vested in the respective Purchaser pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code and applicable non-bankruptcy law (including, without limitation, Articles 8 and 9 of the Cape Town Convention) free and clear of all Encumbrances (including liens) (other than those items permitted under the Stalking Horse Purchase Agreements), with any and all claims in favor of holders of Encumbrances (if any) that represent interests in the Purchased Assets to attach to the net proceeds of the Sale held by the Debtors, in the same amount and order of their priority, with the same extent, validity, force and effect which they have against the Purchased Assets, and subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately prior to the Closing.

10.     The consideration provided by each of the Purchasers for the Purchased Assets under the Stalking Horse Purchase Agreements is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory, possession, or the District

of Columbia including without limitation the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law. The Sale may not be avoided or rejected by any person, or costs or damages imposed or awarded against the Purchasers or the Purchaser Parties, under section 363(n), any other provision of the Bankruptcy Code, or otherwise.

11.     Additionally, the Purchasers are subrogated to all rights held by the Security Agent and the Debtors in the Purchased Assets in accordance with Article 9(4) of the Cape Town Convention.

12.     **Assumption and Assignment of Contracts**. Pursuant to 11 U.S.C. §§ 105(a), 363, and 365, and subject to and conditioned upon the Closing, each Debtor's assumption and assignment to its respective Purchaser, and such Purchaser's assumption on the terms set forth in its Stalking Horse Purchase Agreements, of its Assigned Contracts is hereby approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are hereby deemed satisfied.  The Debtors are hereby authorized and directed in accordance with 11 U.S.C. §§ 105(a), 363 and 365 to (a) assume and assign to their respective Purchaser, effective upon the Closing of the Sale, the Assigned Contracts free and clear of all interests of any kind or nature whatsoever and (b) execute and deliver to such Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

13.     The Assigned Contracts of each Debtor shall be transferred to, and remain in full force and effect for the benefit of, the applicable Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Debtors and the

Intermediate Lessors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Purchasers, except as provided in the respective Stalking Horse Purchase Agreements.

14.     All counterparties to the Assigned Contracts shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and any other applicable law, and the respective Purchaser shall enjoy all of the assigning Debtor's rights, benefits, and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

15.     Upon the Debtors' assignment of the Assigned Contracts under the provisions of this Sale Order, no Debtor default shall exist under any Assigned Contract and no counterparty to any such Assigned Contract shall be permitted to declare or enforce a default by the applicable Debtor, the applicable Intermediate Lessor or the applicable Purchaser thereunder or otherwise take action against the Purchasers relating to any of the Debtors' financial condition, change in control, bankruptcy or failure to perform any of its obligations under the relevant Assigned Contract.  Any provision in an Assigned Contract that prohibits or conditions the assignment or sublease of such Assigned Contract (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition on renewal or extension, or modify any term or condition upon such assignment, sublease, or change of control, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Assigned Contract to the applicable Purchaser.  The failure of the Debtors, the Intermediate Lessors, or the Purchasers to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver

of such terms or conditions, or of the applicable Debtor's or the applicable Purchaser's rights to enforce every term and condition of the Assigned Contract. Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code or, subject to the terms of the Stalking Horse Purchase Agreements, must be assumed and assigned pursuant to the Stalking Horse Purchase Agreements or in order to consummate the Sale.

16.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchaser (as provided in the Stalking Horse Purchase Agreements) on or prior to the Closing or as soon thereafter as reasonably practicable, and the Purchaser shall have no liability or obligation arising or accruing prior to the Closing, except as otherwise expressly provided in the Stalking Horse Purchase Agreements.

17.     As applicable, the Sale and assumption and assignment of the Assigned Contracts approved herein includes conveyance of all beneficial rights, easements, permits, licenses, servitudes, rights-of-way, surface leases and other surface rights, and all contracts, agreements, and instruments by which they are bound, appurtenant to, and used or held for use in connection with the Assigned Contracts.

18.     Each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors, the Intermediate Lessors, the applicable Purchaser, the Purchaser Parties, or the property of such parties, any assignment fee, default, breach or claim of pecuniary loss, penalty, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date of the Sale Hearing, or arising by reason

of the consummation of transactions contemplated by the Stalking Horse Purchase Agreements, including the Sale and the assumption and assignment of the Assigned Contracts.  Any party that may have had the right to consent to the assignment of an Assigned Contract or a change of control with respect to the Debtors or the Intermediate Lessors is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code or change of control if such party failed to timely object to the assumption and assignment of such Assigned Contract.

19.     The Purchasers shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any of the Assigned Contracts to the extent not previously provided by the Debtors.

20.     To the extent a counterparty to an Assigned Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely cure any Debtor breach of any Assigned Contract to which it relates.  Nothing in this Sale Order shall relieve the Debtors' obligations, to the extent applicable and as set forth in the applicable Stalking Horse Purchase Agreements, to pay any such Cure Amount.

21.     **Settlement Addendum**.  As part of the resolution and settlement of the objections of FitzWalter and its affiliates to the Sale, the Settlement Parties have entered into the Settlement Addendum, dated March 25, 2022, a copy of which is attached hereto as **Exhibit D**.  The Settlement Addendum is hereby approved pursuant to Bankruptcy Rule 9019 and shall be binding and enforceable on the partiers thereto and in these Chapter 11 Cases in accordance with the terms thereof.  All persons or entities provided with notice of the Settlement Addendum pursuant to the

filing and/or service of the Revised Sale Documents Notice shall be bound by the terms of this Sale Order, including the Settlement Addendum.

22.      **Order Binding**.  This Sale Order shall be binding in all respects upon all (i) entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments (including departments of foreign governments), secretaries of state, federal, foreign and local officials; and (ii) other persons who may be required by operation of law, the duties of their office or contract, to accept file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing is hereby directed to accept for filing any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Purchase Agreements.

23.      Without in any way limiting the automatically binding effect of this Sale Order, the Purchasers and the Debtors are hereby authorized, but not required, as each in its sole discretion may determine for any reason, to take any and all appropriate action and to execute, register, file and record any and all documents and instruments that may be necessary or desirable to consummate the transactions contemplated by the Stalking Horse Purchase Agreements, including (without limitation) with respect to any termination statements, endorsements or other instruments of transfer or release (and to execute, register, file and record any and all such documents and instruments in the name of any lienor, secured party or other holder of any Encumbrance, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such lienor, secured party or other holder of any Encumbrance, with full power of substitution, including, without limitation and for the avoidance of doubt, in respect of any international interest filed on the International Registry under the Cape Town Convention and Aircraft Protocol).

24.     This Sale Order and the Stalking Horse Purchase Agreements shall be binding in all respects, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown) and the Purchasers, and to the extent applicable, the Intermediate Lessors, including their respective affiliates, successors, and assigns, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law.  The Purchasers and the Intermediate Lessors shall have standing to enforce the terms of this Sale Order.  The provisions of this Sale Order and the terms and provisions of the Stalking Horse Purchase Agreements shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors or converting these Chapter 11 Cases to cases under chapter 7, and the terms and provisions of the Stalking Horse Purchase Agreements as well as the rights and interests granted pursuant to this Sale Order and the Stalking Horse Purchase Agreements shall continue in these or any superseding or subsequent cases.

25.     Subject to the terms, conditions, and provisions of this Sale Order, all entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchasers in accordance with the terms of the Sale Transaction Documents and this Sale Order and (b) with the ability of the Purchasers to acquire, take possession of, hold, use, operate, enforce or dispose of the Purchased Assets in accordance with the terms of the Sale Transaction Documents and this Sale Order; provided, however, that the foregoing restriction shall not prevent any party in interest from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

26.     **<u>Good Faith</u>**. Neither the Debtors, the Purchasers, nor any of their equity owners, officers, directors, employees, professionals or other agents, or Purchaser Parties have engaged in

any action or inaction that would (a) cause the entry into the Stalking Horse Purchase Agreements, or consummation of the transactions contemplated thereby, to be avoided or (b) result in costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Entry into the Stalking Horse Purchase Agreements is undertaken by the Parties thereto, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code. The Purchasers shall be entitled to all of the benefits of and protections under section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to enter into the Stalking Horse Purchase Agreements and consummate the transactions contemplated thereby shall not affect the validity of such transactions (including the sale of the Purchased Assets free and clear of Encumbrances), unless such authorization is duly stayed pending such appeal. The transactions are not subject to avoidance pursuant to section 363(n) or chapter 5 of the Bankruptcy Code and the Purchasers are entitled to all the protections and immunities thereunder.

27.    **No Successor or Transferee Liability**. The Purchasers and any of their respective affiliates, members, officers, directors, shareholders, other Purchaser Parties, or any of their respective successors and assigns, shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreements, including the receipt of the Purchased Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors, (b) have, *de facto* or otherwise, merged with or into the Debtors or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability

under such law, rule or regulation.

28.    Other than to the extent represented by the Purchase Price (as defined in the
Stalking Horse Purchase Agreements) payable by the Purchasers, the Purchasers shall not have
any responsibility for any liability or other obligation of, or claim against, the Debtors (or, in each
case, any of their predecessors), including any claims, liabilities or other obligations related to the
Purchased Assets prior to the Closing.  Under no circumstances shall the Purchasers be deemed a
successor of or to the Debtors for any Interests against, in or to the Debtors or the Purchased Assets.
For the purposes of this section of this Sale Order, all references to the Purchasers shall also include
the Purchaser Parties.  All persons and entities are hereby forever prohibited and enjoined from
commencing or continuing in any matter any action or other proceeding, whether in law or equity,
in any judicial, administrative, arbitral or other proceeding against the Purchasers or their assets
(including, without limitation, the Purchased Assets) with respect to any (a) claim against the
Debtors, or (b) successor or transferee liability, in each case, including, without limitation:  (i)
commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing,
attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii)
creating, perfecting, or enforcing any lien, claim, interest or encumbrance; (iv) asserting any setoff,
right of subrogation or recoupment of any kind; and (v) commencing or continuing any action, in
any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale
Order or other orders of this Court, or the agreements or actions contemplated or taken in respect
hereof.

29.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan to be
confirmed in these Chapter 11 Cases or any order to be entered in these Chapter 11 Cases
(including any order entered after conversion of these Chapter 11 Cases to cases under chapter 7

of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Stalking

Horse Purchase Agreements or this Sale Order. The terms of any subsequent chapter 11 plan or

any order to be entered in these Chapter 11 Cases (including any order entered after conversion

of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) shall not conflict

with the terms or affect in any way the finality of this Sale Order.

30.    **Further Assurances**. The Debtors are authorized to take all actions necessary or

appropriate to effectuate the relief granted pursuant to this Sale Order. From time to time, as and

when requested, the current or former Security Agent and its affiliates (including, without

limitation, the Intermediate Lessors), Senior Lenders, Junior Lenders, Obligors of Secured

Obligations under the Transaction Documents, and the Purchasers shall execute and deliver, or

cause to be executed and delivered, all such documents and instruments, and shall take, or cause

to be taken, all such further or other actions as the requesting party may reasonably deem

necessary or desirable to consummate the transactions thereunder, including such actions as may

be necessary to vest, perfect or confirm or record or otherwise in the Purchasers their right, title

and interest in and to their respective Purchased Assets.

31.    **Further Stalking Horse Purchase Agreements Modifications**. The

modifications reflected in the filings of the revised Stalking Horse Purchase Agreements are

approved as being beneficial to the Debtors and the Debtors' estates and do not harm any party-

in-interest in these Chapter 11 Cases. Additionally, the Stalking Horse Purchase Agreements and

any related agreements, documents or other instruments may be further modified, amended or

supplemented by the Parties thereto and in accordance with the terms thereof, without further

order of this Court; provided that any such modification, amendment or supplement does not have

a material adverse effect on the Debtors or their estates.

32.     **Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow the Parties to deliver any notice under or in connection with the Stalking Horse Purchase Agreements, and allow the Parties to take any and all actions permitted or required under the Stalking Horse Purchase Agreements in accordance with the terms and conditions thereof.  The Parties shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of their remedies under the Stalking Horse Purchase Agreements.

33.     **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062 or any other Bankruptcy Rules or Local Bankruptcy Rules, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and obtaining a stay prior to the sale of the Purchased Assets or risk its appeal being foreclosed as moot.

34.     **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and/or enforcement of this Sale Order, the Stalking Horse Purchase Agreements and the transactions contemplated thereby and to hear any issues or disputes concerning this Sale Order and the Stalking Horse Purchase Agreements or the rights and duties of the parties hereunder or thereunder.

Dated: New York, New York
         March 25, 2022                                        *s/ David S. Jones*
                                                        Honorable David S. Jones
                                                        United States Bankruptcy Judge

-32-