TOGUT, SEGAL & SEGAL LLP                                     HEARING DATE: 6/16/2022 AT 10:00 AM
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Jared Borriello

*Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JPA NO. 111 CO., LTD. and<br>JPA NO. 49 CO., LTD., | Case No.:  21-12075 (DSJ) |
| Debtors.[1] | (Jointly Administered) |

**SUPPLEMENTAL STATEMENT IN FURTHER SUPPORT OF FIRST
APPLICATION OF TOGUT, SEGAL & SEGAL LLP, AS COUNSEL TO THE
DEBTORS FOR INTERIM ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES INCURRED FROM
DECEMBER 17, 2021 THROUGH MARCH 31, 2022**

TO THE HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE:

Togut, Segal & Segal LLP (the "Togut Firm" or "Applicant"), as counsel to

JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd., as debtors and debtors in possession

(collectively, the "Debtors"), hereby provides supplemental information

(the "Supplement") in further support of the expenses sought in the *First Application of*

*Togut, Segal & Segal LLP as counsel for the Debtors for Interim Allowance of Compensation*

*for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses*

---

[1]    The Debtors in these Chapter 11 Cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The
Debtors' corporate address is Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki,
Chiyoda-Ku, Tokyo, Japan 100-0013.

*Incurred from December 17, 2021 through March 31, 2022* [Docket No. 199] dated May 16,

2022 (the "Application"):[2]

     1.   On May 16, 2022, the Togut Firm filed its Application for an

award of interim compensation for professional services rendered and

reimbursement for actual and necessary expenses (collectively, the "Expenses")

incurred in connection with such services for the period December 17, 2021 (the

"Petition Date") through March 31, 2022 (the "First Fee Period").  The Expenses for

the First Fee Period totaled $287,855.73, of which $243,189.97 (the "Expert Expenses

Amount") were for services provided by Mr. Francis Tregear, QC. ("Tregear") and Sir

Roy Goode ("Goode", and together with Tregear, the "Experts").

     2.   The Togut Firm is filing this Supplement consistent with the

*Order Authorizing the Employment of the Togut Firm as Debtors' Counsel, Effective as of the*

*Petition Date,* dated February 11, 2022 [Docket No. 111] (the "Togut Retention Order";

and in accordance with Bankruptcy Rule 2014.

     3.   Prior to the Experts' employment, the Togut Firm provided the

Experts with the Debtors' interested parties list.  In compliance with the terms of the

Togut Retention Order and Bankruptcy Rule 2014,  annexed hereto as Exhibit "A;"

and Exhibit "B," respectively, are the Experts' Declarations in support of their

disinterestedness.  In addition, the engagement letters are annexed hereto as Exhibit

"C" and Exhibit "D," for both Experts, which provided for that they have no conflicts

and would immediately inform the Togut Firm and the Debtors if they became aware

of any conflicts.

---

[2] Capitalized terms used herein but not defined shall have the same meaning as in the Togut Firm's Application.

DATED:  New York, New York
       June 6, 2022

JPA NO. 111 CO., LTD. and
JPA NO. 49 CO., LTD.
*Debtors and Debtors in Possession*
By their Counsel
TOGUT, SEGAL & SEGAL LLP
By:

*/s/Kyle J. Ortiz*
KYLE J. ORTIZ
BRYAN M. KOTLIAR
JARED BORRIELLO
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JPA NO. 111 CO., LTD. and JPA NO. 49 CO., LTD., | Case No.: 21-12075 (DSJ) |
| | Jointly Administered |
| Debtors. [1] | |

## <u>DECLARATION OF FRANCIS TREGEAR, QC</u>

I, Francis Tregear, being duly sworn, states the following under penalty of perjury:

1.      I am a Queens Counsel ("QC") with chambers at 24 Old Buildings, Lincoln's Inn, London, WC2A 3UP, UK.

2.      I was engaged as an expert in English law by the Togut Firm, counsel for the Debtors in the above-referenced chapter 11 cases (the "<u>Chapter 11 Cases</u>").

3.      I am in all respects competent to make this declaration (this "<u>Declaration</u>") in support of the *First Application of Togut, Segal & Segal LLP as counsel for the Debtors for Interim Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from December 17, 2021 through March 31, 2022* [Docket No. 199] dated May 16, 2022 (the "<u>Application</u>").[2]   Unless

---

[1]      The Debtors in these Chapter 11 Cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100-0013.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

## QUALIFICATIONS AND DISINTERESTEDNESS

4.      Particularly relevant to my engagement in this case is my deep knowledge of English Law and my competence to provide legal opinions based on principles of English law on the facts of this case and their effect to foreign courts.  I have provided expert opinions in United States courts in the past in relation to company law and contract law points.  I studied law at St. John's College Cambridge and am qualified as a barrister at the bar of England & Wales.

5.      I was called to bar by the Honorable Society of the Middle Temple in 1980 and I joined Lincoln's Inn in 1990.  I am a Bencher of Lincoln's Inn. I practiced in common law chambers dealing with a wide range of cases but concentrating on property law. I joined XXIV – 24 Old Buildings, Lincoln's Inn in London in 1990 to concentrate my practice on primarily business-related litigation and advisory work. I have been called to the East Caribbean Bar and as well as practicing in England, I have appeared for clients in the courts of British Virgin Islands, the Cayman Islands, the Bahamas and Bermuda.  I have the right to appear in all courts in England and have appeared in the High Court, the Court of Appeal and the Judicial Committee of the Privy Council. I was appointed as Queen's Counsel in 2003.  I have considerable experience in property-related matters as well as commercial and insolvency law.

6.      The Togut Firm has provided me with the list of the names of individuals and entities that may be significant parties in interest in these Chapter 11 Cases (the "Potential Parties in Interest").

7.      To the best of my knowledge, information, and belief, with respect to the Debtors' Chapter 11 Cases, I have reviewed the Potential Parties in Interest list and do not have any connection with the following:

- the directors and officers of the Debtors;
- the Debtors' lenders and lienholders;  or
- the Debtor's 20 largest unsecured creditors (on a consolidated basis).

8.      I have never been a member, officer or employee of the Debtors or had an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

9.      I am a "disinterested person", as that term is defined in section 101(14) of the Bankruptcy Code, except as disclosed herein:

(a)      am not a creditor, equity holder or insider of the Debtors;

(b)      am not and was not, within two years before the Petition Date, a director, officer or employee of the Debtors;  and

(c)      do not have an interest materially adverse to the interest of the Debtors' estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

10.      To the best of my knowledge, I am not related to any United States Bankruptcy Judge in the Southern District of New York or to the United States Trustee or any employee thereof.

*[Concludes on the Following Page.]*

3

I swear under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: Spexhall in Suffolk, England
            2 June 2022

*/s/Francis Tregear*
FRANCIS TREGEAR, QC

# EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| JPA NO. 111 CO., LTD. and JPA NO. 49 CO., LTD., | Case No.: 21-12075 (DSJ) |
| | Jointly Administered |
| Debtors. [1] | |

---

## DECLARATION OF SIR ROY GOODE QC

I, Roy Goode, hereby declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America as follows:

1.      I am Emeritus Professor of Law at the University of Oxford and Emeritus Fellow of St. John's College, Oxford.

2.      I was retained as an expert in the Cape Town Treaty (as defined below) by the Togut Firm, counsel for the Debtors in the above-referenced chapter 11 cases (the "Chapter 11 Cases").

3.      I am in all respects competent to make this declaration (this "Declaration") in support of the *First Application of Togut, Segal & Segal LLP as counsel for the Debtors for Interim Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from December 17, 2021 through March 31, 2022* [Docket No. 199] dated May 16, 2022 (the "Application")[2] .  Unless

---

[1]    The Debtors in these Chapter 11 Cases are:  JPA No. 111 Co., Ltd. and JPA No. 49 Co., Ltd.  The Debtors' corporate address is: Kasumigaseki Common Gate West Tower, 3-2-1 Kasumigaseki, Chiyoda-Ku, Tokyo 100-0013.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

otherwise stated in this Declaration, I have personal knowledge of the facts set forth

herein.

## QUALIFICATIONS AND DISINTERESTEDNESS

4.      Particularly relevant to my engagement in this case is my deep

knowledge of the Cape Town Convention and Aircraft Protocol (collectively, the "Cape

Town Treaty"), promulgated by the International Institute for the Unification of Private

Law (UNIDROIT) based in Rome and the International Civil Aviation Organization

based in Montreal.

5.      The Togut Firm has provided me with the list of the names of

individuals and entities that may be significant parties in interest in these Chapter 11

Cases (the "Potential Parties in Interest").

6.      To the best of my knowledge, information and belief, with respect

to the Chapter 11 Cases, I have reviewed the Potential Parties in Interest list and do not

have any connection with the following:

- the directors and officers of the Debtors;
- the Debtors' lenders and lienholders;  or
- the Debtor's 20 largest unsecured creditors (on a consolidated basis).

7.      Other than as set forth herein, I have never been a member, officer

or employee of the Debtors or had an interest materially adverse to the interests of the

Debtors' estates or any class of creditors or equity security holders by reason of any

direct or indirect relationship to, connection with, or interest in, the Debtors.

8.      I am a "disinterested person", as that term is defined in section

101(14) of the Bankruptcy Code, except as disclosed herein:

        (a)      am not a creditor, equity holder or insider of the Debtors;

2

      (b)     am not and was not, within two years before the Petition Date, a director, officer or employee of the Debtors; and

      (c)     do not have an interest materially adverse to the interest of the Debtors' estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

9.     To the best of my knowledge, I am not related to any United States Bankruptcy Judge in the Southern District of New York or to the United States Trustee or any employee thereof.

I swear under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED:  Oxford, England
        2 June 2022

*/s/Roy Goode*
SIR ROY GOODE, QC

3

# EXHIBIT "C"

**From:**  **Paul Horsfield** pau .horsfie d@xx v.co.uk  ▮
**Subject:** Contractua  Terms - (62822) IN THE MATTER OF JPA
**Date:**  January 7, 2022 at 1:49 PM
**To:**  Pau  Horsfie d  pau .horsfie d@xx v.co.uk



Dear Mr Oswald

Thank you again for your instructions which have been placed before Mr Francis Tregear QC.  Set out below are: (a) the Agreement for the supply of legal services (which follows the terms agreed between Combar and the City of London Law Society with payment option A as our standard term); and (b) the Complaints Procedure (which is not part of the Agreement).

Upon reading the information provided, counsel can and would be delighted to assist. Having considered the same there is an exhibit missing from the documentation. Can you please provide this to me ASAP so that I can forward?

In relation to fees, I would estimate it to be at GBP 18,000 plus VAT (if applicable) and in terms of timing, whilst aiming for COB Monday UKT would it be okay to extend that to Tuesday lunchtime, so it is with you opening business hours in NYC?

## Agreement for the Supply of Legal Services by a Barrister

The Barrister and the Solicitor agree that the Barrister will supply the Services for the benefit of the Lay Client on the terms set out below and subject to the modified General Terms and Conditions of Business for the Supply of Legal Services by Barristers to Solicitors in Commercial Matters attached hereto (the "**General Terms**").  In the event of any conflict between the terms below and the General Terms attached, the terms below will prevail.

1.  **The Barrister** Mr Francis Tregear QC
2.  **The Solicitor**: Togut, Segal & Segal LLP
3.  **The Lay Client**:
4.  **The Case:** IN THE MATTER OF JPA
5.  **Payment Basis** (clause 9 of the General Terms): Basis A
6.  **The Barrister's agreed hourly rate** : £750.00 plus VAT (if applicable)

7.  **Optional clauses**:

(a)   Minimum insurance cover (clause 20.2 of the General Terms): £
(b) Limitation of liability arising solely under contract (clause 12.4. of the General Terms): £100,000
(c)  Limitation of general liability (clause 20.3 of the General Terms): £2,500,000
(d)   Monies on account to be obtained by the Solicitor (clause 20.4 of the General Terms):£

8.    **Amendments to the General Terms**:

Clause 10.1 is varied so that the Barrister is authorised to refer to the Case (including the names of the parties, the name of the Solicitor, and a summary of the general nature of the dispute) for marketing purposes and for the purpose of professional directory submissions unless the Solicitor or the Lay Client notifies the Barrister in writing that the Barrister is not so authorised in which case the provisions of clause 10 of the General

Terms shall apply from the date upon which such written notice is received by the Barrister.  This amended clause shall not apply if the Case is an arbitration in which case the unamended clause 10 of the General Terms shall apply.

**9.        Acceptance and Scope**: **By instructing the Barrister to provide any Services in relation to the Case the Solicitor accepts and agrees to the terms of this Agreement which shall constitute a binding contractual agreement between the Barrister and the Solicitor.  Unless otherwise agreed in writing, this Agreement shall apply to any work done or Services provided by the Barrister in relation to the Case before the date of this email.**

## Billing arrangements

We will work with you to ensure billing efficiency.  Set out below is our standard billing timeframe.  We hope from a client and case management point of view our proposal suits your needs.

Our standard billing cycles will mean we render fee notes on the 25th of each month.  However if you would prefer to have them on a different date each month, please use the table to specify below.

In addition, please do make us aware of any specific billing contacts we should send the fee note to and of any specific billing and/or payment arrangements you have agreed with the lay client.

In order to avoid delay we shall adopt our standard billing arrangements as set out below until we hear from you to the contrary.

| Standard XXIV bill date | Frequency of fee notes | Billing contact | [Law Firm] preferred bill date | Frequency of fee notes | Billing contact |
|---|---|---|---|---|---|
| 25th of each month | 1 per month | Partner on the case | | | |

## Complaints Procedure

We are required by the Bar's code of conduct to ensure that all lay clients are informed:

(a)    of their right to make a complaint, how and to whom this can be made, including their right to complain to the Legal Ombudsman at the conclusion of the complaints process, the timeframe for doing so and the full details of how to contact the Legal Ombudsman; and

(b)    that the lay client may complain directly to chambers without going through solicitors

To enable us to comply with this obligation, we would be grateful if you could either confirm your agreement to provide a copy of the complaints procedure which is also attached to this email.

Please do not hesitate to contact me if you require further information or have any questions

questions.

Kind regards

Paul Horsfield

for and on behalf of
Mr Francis Tregear QC.





# General Terms and Conditions for the Supply of Legal Services by Barristers to Solicitors in Commercial Matters

## 1. Definitions and Interpretation

1.1 These are the General Terms and Conditions for the Supply of Legal Services by Barristers to Solicitors in Commercial Matters (the "General Terms").

1.2 In these General Terms, the following words have the following meanings, except where the context requires otherwise:

the "Agreement" means the agreement between the Barrister and the Solicitor (and, if payment is to be made on Basis C set out in clause 9, the Lay Client) for the supply of the Services incorporating these General Terms;

the "Barrister" means the barrister, practising as a member of the Bar of England and Wales, who is supplying the Services in accordance with the Agreement;

a "Business Day" means a day that is neither a weekend nor a public holiday in England;

the "Case" means the particular legal dispute or matter, whether contentious or non-contentious, in respect of which the Barrister is instructed to supply the Services;

the "BSB Handbook" means Part 2 of the Bar Standards Board Handbook, as amended from time to time;

the "Instructions" means the briefs, instructions and requests for work to be done (and all accompanying materials), whether written or oral, given by the Solicitor to the Barrister for the purposes of the supply of the Services by the Barrister;

the "Lay Client" means the Solicitor's client for whose benefit or on behalf of whom the Barrister is instructed by the Solicitor to supply the Services;

the "Services" means the legal services supplied or to be supplied by the Barrister in connection with the Case pursuant to the Instructions provided by the Solicitor and otherwise in accordance with the Agreement; and

the "Solicitor" means the sole practitioner, partnership, limited liability partnership or company who instructs the Barrister to supply the Services, together with all successors.

1.3   In these General Terms:

(a) an "invoice" includes a fee note not amounting to a VAT invoice;

(b) reference to a clause is to the relevant clause of these General Terms;

(c) references to the singular include the plural and vice versa in each case;

(d) reference to a document includes anything in which information is recorded, whether on paper, electronically or otherwise;

(e) references to an Act of Parliament, statutory provision or statutory instrument include a reference to that Act of Parliament, statutory provision or statutory instrument as amended, extended or reenacted from time to time and to any regulations made under it; and

(f) references to a person or body include references to its successors and assigns.

## 2. Application of these General Terms

2.1 These General Terms apply, subject to any amendments set out in the Agreement, to all Services supplied by the Barrister on the Instructions of the Solicitor in relation to the Case.

2.2 If payment is to be made on Basis C set out in clause 9, this Agreement will not come into effect until it is signed or confirmed in writing by the Lay Client.

2.3 Where practicable, the Solicitor will send the Barrister Instructions in writing, or will confirm in writing oral Instructions, retaining the Barrister to provide the Services.

2.4 The Agreement will normally indicate the person or persons who is/are to be the Barrister's Lay Client(s) in the Case, and shall do so if payment is to be made on Basis C or Basis D set out in clause 9. If payments are to be made on Basis C or Basis D, the Solicitor will also, to the extent required, provide contact details for the Lay Client.

2.5 In the event of any inconsistency between the Agreement and these General Terms, the Agreement shall prevail.

## 3. Providing the Services

3.1 The Services the Barrister is to supply in relation to the Case will be described in the Instructions and as may subsequently be agreed between the Barrister and the Solicitor.

3.2 The Barrister will exercise reasonable skill and care in supplying the Services.

3.3 The Barrister supplies the Services on the basis set out in these General Terms and subject to the Barrister's professional obligations under the BSB Handbook.

3.4 The Barrister will supply the Services by or on such date or dates as may be agreed with the Solicitor or, where no specific date has been agreed, will do so within a reasonable time having regard to the urgency and nature of the Instructions. Instructions that are urgent shall be clearly marked as such if the Instructions are in writing or otherwise expressly stated to be urgent by the Solicitor, and time shall be of the essence for the supply of those Services.

## 4. Benefit of the Services

4.1 Unless otherwise agreed in writing, the Barrister's Services are provided to the Solicitor as the Barrister's client, acting for the benefit of the Lay Client. Subject to the duties of the Barrister and the Solicitor to the court, the Barrister and the Solicitor acknowledge and agree that each owes a primary duty to the Lay Client.

4.2 The Barrister acknowledges the existence of a duty of care owed to the Lay Client at common law, subject to his professional obligations to the Court and under the BSB Handbook.

 

4.3 Subject to clause 4.4, no one other than the Solicitor and the Barrister has any rights under the Contracts (Rights of Third Parties) Act 1999 or otherwise to enforce any provision of the Agreement.

4.4 The Lay Client may enforce the Agreement subject to and in accordance with clause 21 and the provisions of the Contracts (Rights of Third Parties) Act 1999.

4.5 The Solicitor and the Barrister must obtain the consent of the Lay Client before they rescind by agreement the Agreement so as to extinguish the Lay Client's rights to enforce the Agreement or alter the Lay Client's entitlement under that right. This requirement applies instead of the circumstances set out in section 2(1)(a) to (c) of the Contracts (Rights of Third Parties) Act 1999.

4.6 Clauses 4.4 and 4.5 do not apply if, pursuant to clause 9, payment is to be made on Basis C.

**5. The Solicitor's responsibilities**

5.1 In order to enable the Barrister to supply the Services in a prompt, effective and professional manner, the Solicitor shall co-operate with and assist the Barrister throughout the duration of the Agreement, including through the provision of Instructions that are adequate and in sufficient time to enable the Barrister to supply the Services within the time required by clause 3.4 above.

**6. Responsibility for the Barrister's work**

6.1 The Barrister will be solely responsible for providing the Services under the Agreement. The Barrister may only involve another barrister or other third party in the performance of the Services under the Agreement if the Barrister obtains the Solicitor's prior consent, that consent not to be unreasonably withheld.

**7. Charges and expenses**

7.1 The Barrister's fees will be calculated as agreed between the Barrister and the Solicitor, whether prospectively or retrospectively.

7.2 Unless otherwise agreed, the Barrister's fees will be calculated by reference to the amount of time reasonably required to supply the Services and a reasonable hourly rate, taking into account all the circumstances of the Case.

7.3 The Barrister shall notify the Solicitor at the outset of the Case of the Barrister's current standard hourly rates. For the purposes of determining the reasonable hourly rate, the circumstances of the Case include: the complexity of the issues; the speed at which the Services must be supplied; the expertise or specialist knowledge that the Services require; and the value of the property or subject matter involved.

7.4 Unless otherwise agreed, the Barrister's reasonable hourly rate may be reviewed from time to time, and the Barrister will notify the Solicitor of any proposed increase in that rate. The Solicitor shall not unreasonably refuse to agree an increase in the Barrister's rate. Any increase in the Barrister's rate will take effect from the date when the Solicitor agrees to an increase or should reasonably have agreed to an increase.

7.5 The Barrister may agree to supply the Services for a fixed fee. If the Barrister is unable to supply Services for the fixed fee agreed, any additional fees over and above the fixed fee not expressly agreed by the Solicitor in writing are incurred at the Barrister's own risk.

7.6 Unless the contrary is agreed, a fee agreed for the Barrister's Services shall be exclusive of any applicable Value Added Tax (or any tax of a similar nature), which shall be added to the Barrister's fee at the appropriate rate.

**8. Estimate of costs/time**

8.1 If requested to do so, the Barrister shall provide the Solicitor with an estimate of the Barrister's likely fees and disbursements in relation to any Services or the Case. Any estimate of likely fees and disbursements does not, unless otherwise agreed, amount to a promise or agreement that the Barrister will perform those Services within a fixed time or for a fixed fee, but represents the Barrister's best estimate based on the information available to the Barrister at the time.

8.2 The Barrister shall notify the Solicitor promptly if any estimate of time and/or fees and disbursements that the Barrister has provided to the Solicitor needs to be revised for any reason.

8.3 If for any reason any Instructions or the Case do not proceed to completion, the Barrister shall only charge fees for work actually done and disbursements actually incurred, unless otherwise agreed (as, for example but without limitation, where stage payments have been agreed and have fallen due prior to termination of the Agreement).

**9. Payment and billing arrangements**

9.1 The Barrister and the Solicitor shall agree the basis upon which payment is to be made to the Barrister for the Services, which, unless otherwise agreed, shall be one of Basis A (Solicitor Liability), Basis B (Solicitor Endeavours to Collect), Basis C (Lay Client Liability) or Basis D (Lay Client Sole Responsibility) as further described below.

9.2 In the event of late payment of sums properly due to the Barrister, the Barrister is entitled to interest in accordance with the Late Payment of Commercial Debts (Interest) Act 1998 from the date upon which payment was due to the date of payment.

9.3 Any invoice setting out the Barrister's fees sent by the Barrister shall state (i) the period it covers, (ii) (where the fees are payable on an hourly rate) an itemised description of the time spent in supplying the Services, (iii) the fees charged, (iv) any disbursements incurred and the cost of those disbursements, and (v) Value Added Tax (or any tax of a similar nature).

*Basis A (Solicitor Liability)*

9.4 The Barrister shall send to the Solicitor an invoice setting out the Barrister's fees in respect of the Services or part of the Services in accordance with any payment schedule agreed with the Solicitor, promptly on request by the Solicitor or otherwise as may be appropriate given the nature and circumstances of the Case.

9.5 The Solicitor shall pay to the Barrister any sums properly due on the Barrister's invoice in accordance with any payment schedule agreed by the Solicitor and the Barrister or otherwise within 30 days of receipt by the Solicitor of the invoice.





*Basis B (Solicitor Endeavours to Collect)*

9.6 The Barrister shall send to the Solicitor an invoice setting out the Barrister's fees in respect of the Services or part of the Services in accordance with any payment schedule agreed with the Solicitor, promptly on request by the Solicitor or otherwise as may be appropriate given the nature and circumstances of the Case.

9.7 The Solicitor will send the Barrister's invoice to the Lay Client in accordance with the payment schedule agreed between the Barrister and the Solicitor, or otherwise with the next invoice that the Solicitor sends to the Lay Client for the Solicitor's own fees.

9.8 The Solicitor shall pay to the Barrister any sums properly due on the Barrister's invoice within five Business Days of receipt by the Solicitor from the Lay Client of payment in respect of the Barrister's fees.

9.9 The Solicitor will endeavour to collect from the Lay Client the Barrister's fees properly due in the same manner as the Solicitor endeavours to collect the Solicitor's own fees. The Solicitor is authorised by the Barrister to receive payment of the Barrister's fees from the Lay Client.

9.10 The Solicitor will advise the Barrister promptly if the Solicitor has reason to believe that the Lay Client will be unable or unwilling to pay the Barrister's fees, including (without limitation) if (a) the Lay Client refuses
to pay the Solicitor's or Barrister's fees, (b) the Lay Client notifies the Solicitor of a possible claim against the Solicitor or Barrister or (c) the Solicitor becomes aware that the Lay Client is subject to any insolvency process.

9.11 If the Barrister requests, the Solicitor shall promptly assign any cause of action against the Lay Client in respect of the Barrister's fees to the Barrister without any further consideration and shall give the Solicitor such additional assistance as the Barrister reasonably requests to assist the Barrister to take action to recover the Barrister's fees from the Lay Client (including, without limitation, the production of documents reasonably requested by the Barrister and the delivery by the Solicitor of a bill of costs in accordance with the requirements of section 69 of the Solicitors Act 1974).

9.12 If the Barrister's claim against the Lay Client to be paid the Barrister's fee fails in whole or in part, or would have failed in whole or in part if pursued by the Barrister, on account of a defence or cross-claim of the Lay Client, the Solicitor shall promptly pay any balance of the
Barrister's fees outstanding to the extent that the defence or cross-claim arises from the negligence or other breach by the Solicitor of the Solicitor's obligations to the Lay Client and was not caused by any breach of duty by the Barrister.

*Basis C (Lay Client Liability)*

9.13 The Solicitor, on behalf of the Lay Client, shall agree with the Barrister the fees to be paid for the Services but shall not be liable for payment of the Barrister's fees, which shall be the sole responsibility of the Lay Client.

9.14 The Barrister shall send to the Lay Client, with a copy to the Solicitor, an invoice addressed to the Lay Client setting out the Barrister's fees in respect of the Services or part of the Services in accordance with any payment schedule agreed with the Solicitor, promptly on request by the Solicitor or otherwise as may be appropriate given the nature and circumstances of the Case.

9.15 The Lay Client shall pay to the Barrister any sums properly due on the Barrister's invoice in accordance with any payment schedule agreed with the Barrister or otherwise within 30 days of receipt by the Lay Client of the invoice.

9.16 If Basis C applies, the Lay Client shall be a party to the agreement incorporating these General Terms between the Solicitor and the Barrister, and the Barrister, the Lay Client and the Solicitor shall accordingly each be entitled to enforce the agreement incorporating these General Terms.

*Basis D (Lay Client Sole Responsibility)*

9.17 The Lay Client shall agree with the Barrister the fees to be paid to the Barrister for the Services. The Solicitor shall not be liable to pay those fees or otherwise concerned with those fees, which shall be a matter solely between the Barrister and the Lay Client.

**10. Confidential information**

10.1 Subject to clause 10.2, the Barrister shall keep confidential all information provided to the Barrister in connection with the Case ("Information").

10.2 The Barrister may only disclose Information if and to the extent that:

(a) disclosure is required by law;

(b) disclosure is authorised by the Solicitor or Lay Client;

(c) disclosure is required by the professional rules applicable to Barristers practising in England and Wales;

(d) the Information is already in the public domain other than as a result of breach by the Barrister of the Barrister's obligations; or

(e) disclosure is made to a pupil or mini-pupil of the Barrister.

10.3 If a pupil or mini-pupil of the Barrister to whom the Barrister has disclosed Information under clause 10.2(e) fails to keep that Information confidential in accordance with this clause 10, that failure shall constitute breach by the Barrister of this clause 10.

10.4 If the Barrister receives a request for the disclosure of Information and the Barrister considers that the Barrister is obliged, whether under clause 10.2(a), clause 10.2(c) or otherwise, to comply with that request, the Barrister will inform the Solicitor of the request as soon as the Barrister is lawfully able to do so.

**11. Conflicts of interest**

11.1 The Barrister's entering into the Agreement shall constitute the Barrister's confirmation that, to the best of the Barrister's knowledge based on the information available to the Barrister at the time of entering into the Agreement, the Barrister has at the time of entering into the Agreement no conflict of interest or other professional impediment that would render it professionally inappropriate for the Barrister to act for the Solicitor or the Lay Client on the Case.





11.2 If, in the course of the Agreement, information emerges that leads the Barrister to consider that it is or may be professionally inappropriate for the Barrister to continue to act for the Solicitor or the Lay Client, the Barrister shall inform the Solicitor immediately.

11.3 Neither the Solicitor nor the Lay Client shall have any claim in damages against the Barrister for breach of this clause 11 unless:

(a) the Barrister has admitted in writing that the Barrister has acted in breach of this clause 11; or

(b) the Lay Client or the Solicitor has made a complaint to the Bar Standards Board or the Legal Ombudsman that the Barrister has acted in breach of rule rC21 of the BSB Handbook, that complaint has been upheld, no appeal or review has been or is being made of that decision and any time limit for appeal or review has expired.

11.4 Clause 11.3 does not prevent the Solicitor or Lay Client from seeking relief other than damages (including, without limitation, an interim or final injunction) in respect of any breach by the Barrister of clause 11.

## 12. Liability

12.1 The Barrister is not liable for any loss or damage suffered by any persons, firms or partnerships other than the Lay Client and the Solicitor.

12.2 The Barrister shall arrange and maintain professional indemnity insurance as required by the BSB Handbook or, if higher, to the level, if any, set out in the Agreement as provided in clause 20.2.

12.3 Subject to clause 20.3, nothing in these General Terms excludes or limits any liability (whether at common law (including in negligence), in equity or otherwise):

(a) that the Barrister would have had to the Solicitor,

(b) that the Barrister would have had to the Lay Client or

(c) that the Solicitor would have had to the Barrister

had there been no contract (whether or not incorporating these General Terms) with regard to the Case between the Barrister and the Solicitor or between the Barrister, the Solicitor and the Lay Client.

12.4 However, if:

(a) the Barrister is liable to the Solicitor,

(b) the Barrister is liable to the Lay Client or

(c) the Solicitor is liable to the Barrister (save in relation to fees)

solely as a result of breach of these General Terms or of any other contractual provision of the Agreement and would not otherwise have been liable (whether at common law (including in negligence), in equity or otherwise), that liability shall be limited to the sum stated in the Agreement. If no such sum is stated, the limit of that liability will be £100,000, being the highest limit of cover for such liabilities provided to Barristers by the Bar Mutual

Indemnity Fund.

## 13. Copyright

13.1 All copyright and other intellectual property rights of whatever nature in or attaching to the Barrister's work product, including all documents, reports, written advice or other materials provided by the Barrister to the Solicitor or the Lay Client belong to and remain with the Barrister. The Solicitor and the Lay Client have the right and licence to use the Barrister's work product for the particular Case and the particular purpose for which it is prepared. If the Solicitor or the Lay Client wishes to use copies of the Barrister's work product for purposes other than those for which it is prepared, this will require the express written permission of the Barrister. The moral rights of the Barrister in respect of his work product are asserted.

13.2 All copyright and other intellectual property rights attaching to the material provided by the Solicitor to the Barrister in or with any Instructions ("Material") belong to the Solicitor, the Lay Client or a third party, as the case may be. The Barrister is permitted to make use of the Material in order to provide the Services. If the Barrister wishes to use the Material for any other purpose, the Barrister must obtain the prior written consent of the Solicitor and/or the Lay Client.

## 14. Retention and storage of documents

14.1 Subject to any agreement to the contrary, during the course of the Case the Barrister shall retain those documents as in the Barrister's reasonable professional judgment it is proper to retain, and for this purpose the Barrister may make or keep copies of documents.

14.2 Subject to any agreement to the contrary, at the completion of the Case the Barrister:

(a) may, and shall at the Solicitor's request, return to the Solicitor all documents in the Barrister's possession in connection with the Case, save that the Barrister may retain personal notes, a copy of the instructions and the Barrister's work products;

(b) may otherwise retain such documents relating to the Case as in the Barrister's reasonable professional judgment it is proper to retain, and for this purpose the Barrister may make or keep copies of such documents and, after obtaining the Solicitor's consent, destroy the documents originally supplied; and

(c) may, and shall at the Solicitor's request, return to the Solicitor any property (such as exhibits and models) to which the Solicitor, the Lay Client or any third party is entitled, and otherwise retain such property as in the Barrister's reasonable professional judgment it is proper to retain.

## 15. Electronic communications

15.1 Subject to any agreement to the contrary, the Barrister may communicate with the Solicitor by e-mail. Documents sent to the Solicitor by e-mail need not be encrypted. If the Solicitor requires a greater level of security in electronic communications, the Solicitor shall notify the Barrister of this, and the Solicitor and the Barrister shall use their best endeavours to agree and implement an e-mail protocol, incorporating encryption standards, on the basis of best commercial practice at the time.





15.2 The Solicitor and the Barrister shall use industry standard firewall and anti-virus protection.

**16. Termination**

16.1 The Solicitor or, if a party to the agreement incorporating these General Terms, the Lay Client may at any time terminate the Agreement with immediate effect by giving notice to the Barrister.

16.2 The Agreement will terminate automatically as soon as the Barrister is professionally obliged pursuant to rule rC25 of the BSB Handbook to cease to act and has complied with any requirements in the BSB Handbook for doing so. The Barrister shall inform the Solicitor immediately the Barrister becomes aware of such an obligation.

16.3 The Barrister may terminate the Agreement when the Barrister is entitled to cease to act pursuant to rule rC26 of the BSB Handbook and has complied with any requirements in the BSB Handbook for doing so.

16.4 The Barrister may terminate the Agreement if:

(a) fees properly due to the Barrister have not been paid by their due date;

(b) the Barrister has given at least ten Business Days' notice in writing to the Solicitor or, if Basis D applies, to the Lay Client copied to the Solicitor, of the Barrister's intention to terminate the Agreement because of the non-payment; and

(c) the fees have not been paid by the expiry of the time given by that notice.

16.5 Termination of the Agreement, whether under this clause or otherwise, does not prejudice any accrued liabilities, rights and/or remedies of the Barrister, the Lay Client or the Solicitor under the Agreement.

**17. Publicity**

17.1 The Barrister may not disclose to third parties that the Lay Client is or has been a client of the Barrister, or that the Barrister is acting on a Case, unless the contrary is agreed or these matters are in the public domain other than as a result of breach by the Barrister of the Barrister's obligations.

**18. Authority to give and receive Instructions**

18.1 If the Barrister and the Solicitor agree that payment is to be made to the Barrister on Basis B, the Solicitor warrants to the Barrister that the Solicitor has authority from the Lay Client to give Instructions to the Barrister to supply the Services in accordance with these General Terms and that the Lay Client is obliged to pay the Solicitor in respect of those Services in accordance with the terms (including the payment schedule) agreed between the Barrister and the Solicitor.

18.2 If the Barrister and Solicitor agree that payment is to be made to the Barrister on Basis C, the Solicitor warrants to the Barrister that the Solicitor has authority from the Lay Client to agree that the Lay Client is obliged to pay the Barrister in accordance with these General Terms and that the Lay Client shall be a party to the agreement incorporating these General Terms as set out in clause 9.16.

18.3 Unless the Solicitor is informed otherwise by the Barrister, the Barrister's clerk or clerks have full authority to bind the Barrister on all matters in relation to fees and the acceptance and

return of instructions in relation to a Case.

**19. Miscellaneous**

19.1 Subject to clause 9.11, none of the Solicitor, the Barrister or the Lay Client may assign or transfer the benefit or burden of the Agreement or any rights arising from or in connection with the Agreement (including, without limitation, rights under the Contracts (Rights of Third Parties) Act 1999) without the prior written consent of all other parties.

19.2 Except where expressly stated, nothing done or not done by the Barrister, the Lay Client or the Solicitor constitutes a waiver of that party's rights under or arising from the Agreement.

19.3 These General Terms may be varied if, but only if, agreed in writing.

19.4 If any term of these General Terms is or becomes illegal, invalid or unenforceable, whether in whole or in part, the remainder of the General Terms will remain valid and enforceable.

19.5 In this clause, "Data Protection Law" means the Data Protection Act 2018, including as amended, extended or reenacted from time to time (the "Act"), Regulation (EU) 2016/679 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data so far as this Regulation is applicable in England and Wales and including as amended, extended or re-enacted from time to time in England and Wales (the "GDPR"), and all rules, regulations and orders made under the Act or the GDPR. The Barrister is a data controller for the purposes of Data Protection Law, and is bound, amongst other things, to implement appropriate technical and organisational measures against unauthorized processing of personal data and against accidental loss or destruction of, or damage to, personal data. The Barrister is entitled to process in accordance with Data Protection Law personal data of the Lay Client, the Solicitor and others to enable the Barrister to provide the Services, to liaise with the Solicitor in respect of the Case or on the Lay Client's behalf, to maintain and update client records, to produce management data, to prevent crime, to comply with regulatory requirements and as permitted or required by law. The Lay Client and the Solicitor each have a right of access and a right of correction in respect of their personal data which the Barrister holds about them, in accordance with Data Protection Law. If and to the extent that the Barrister and the Solicitor are joint controllers (whether or not with anyone else) for the purposes of Data Protection Law, each shall, unless otherwise agreed, be individually responsible for ensuring that the processing each undertakes is in accordance with Data Protection Law, for ensuring so far as each is able the implementation of appropriate technical and organisational measures in accordance with Data Protection Law, and as regards the exercising of the rights of the data subject, but the Solicitor shall be responsible for the provision of information referred to in articles 13 and 14 of the GDPR if and to the extent that this provision of information is required by Data Protection Law. In the event that the Barrister is required in accordance with article 33 of the GDPR to notify to a supervisory authority a personal data breach affecting Version 3.0 27 April 2018 personal data of the Lay Client, the Solicitor or others referred to in data supplied with the Instructions, the Barrister shall notify the Solicitor as soon as practicable after notifying the supervisory authority.

19.6 The Standard Contractual Terms for the Supply of Legal Services by Barristers to Authorised Persons 2012 published on the Bar Standards Board's website are excluded in their entirety.

## 20. Optional clauses

Barrister and the Solicitor specifically agree in paragraph 7 of the Agreement that one or more of them should do so.

20.2 The Barrister shall arrange and maintain professional indemnity insurance in the minimum sum provided in paragraph 7 of the Agreement.

20.3 Without prejudice to clause 12.4, the Barrister's liability (whether at common law (including in negligence), in equity or otherwise) in respect of

(a) any breach of the Barrister's obligations in providing the Services, and/or

(b) all breaches of the Barrister's obligations in providing the Services arising from or which are attributable to (i) the same act or omission, (ii) a series or group of related acts or omissions, (iii) a series or group of similar acts or omissions or (iv) the same originating cause shall be limited to the lower of the sum stated in paragraph 7(c) of the Agreement or, if the Barrister is solely liable as a result of breach of these General Terms as set out in clause 12.4, the sum stated in clause 12.4.

20.4 If the Solicitor and the Barrister agree that the Solicitor will obtain from the Lay Client and hold in the Solicitor's client account monies on account of the Barrister's fees but the Solicitor does not receive in full those monies by the date agreed between the Solicitor and the Barrister for their receipt:

(a) the Solicitor shall promptly advise the Barrister that the Solicitor has not received in full those monies on account; and

(b) the Barrister shall have no further obligation to perform the Services; but

(c) if the Solicitor fails to advise the Barrister that the Solicitor has not received in full those monies on account, the Solicitor shall be personally liable to pay the Barrister's fees up to a sum equal to the monies on account that the Solicitor should have received but did not receive, whether or not the Solicitor is paid by the Lay Client.

20.5 If the Solicitor has agreed with the Barrister that the

20.1 None of clauses 20.2 to 20.6 below have effect unless the

Solicitor will procure that the Lay Client provides monies on account of the Barrister's fees and that those monies on account will be held by Bar Services Company Limited ("BARCO") on escrow, the Solicitor shall procure that the Lay Client executes such documents and agreements as may reasonably be required by BARCO for that purpose.

20.6 Where the Barrister has agreed that the Solicitor may store the Barrister's work product in the Solicitor's internal know-how system or equivalent ("KH System"):

(a) that work product must be stored and managed in accordance with "Use of Counsel's opinions – copyright and confidentiality" published by The Law Society;

(b) the Barrister accepts no duty of care, whether to the Solicitor or anyone else, in relation to the use of the

Barrister's work product as a result of its storage on the Solicitor's KH System;

(c) the Solicitor agrees that the Barrister shall have no liability of any kind (whether to the Solicitor or anyone else) arising out of or connected with the use of the Barrister's work product as a result of its storage on the Solicitor's KH System;

(d) the Solicitor agrees to indemnify the Barrister against any loss which the Barrister may suffer arising out of or connected with the use of the Barrister's work product as a result of its storage on the Solicitor's KH System.

## 21. Law and jurisdiction

21.1 These General Terms and the Agreement shall be governed by the law of England and Wales. The law applicable to any non-contractual obligations owed by the Barrister or the Solicitor arising out of or in connection
with the Agreement or the Barrister's Services shall also be the law of England and Wales.

21.2 Any dispute arising out of or in connection with the Agreement or the Services shall be subject to the exclusive jurisdiction of the courts of England and Wales, to which the parties irrevocably submit.

# EXHIBIT "D"

# TOGUT, SEGAL & SEGAL LLP

**ONE PENN PLAZA**
**NEW YORK, NEW YORK 10119**

**WWW.TOGUTLAWFIRM.COM**

(212) 594-5000
Kyle J. Ortiz
(212) 201-6582
Kortiz@teamtogut.com

March 3, 2022

**VIA EMAIL**

Sir Roy Goode QC
42 St John Street,
Oxford OX1 2LH
England
E-Mail: oy.goode@law.ox.ac.uk

> **Re:** *In re JPA No. 111 Co., Ltd., et al.*, **Case No. 21-12075 (DSJ)**
> **(Bankr. S.D.N.Y.) – Engagement for Expert Services**

Dear Sir Goode:

This letter confirms our agreement that Togut, Segal & Segal LLP (the "Togut Firm") has retained Roy Goode to serve as an expert in connection with our representation of JPA No. 111 Co., Ltd and JPA No. 49 Co., Ltd. (the "Debtors") in connection with their above referenced chapter 11 cases (the "Chapter 11 Cases"). The purpose of this retainer agreement ("Agreement") is to outline the nature of the engagement and our respective responsibilities and expectations under this Agreement.

1.  Scope of the Engagement:  You will provide expert witness services which may include consulting, the preparation of an expert report, and testimony at deposition and in court proceedings. The scope of the engagement may change as the Chapter 11 Cases proceed. Although the scope of the work to be performed by you will be determined in consultation with the Togut Firm, all conclusions and opinions reached will be yours.

2.  Confidentiality:  The following information is confidential, and you will not disclose such information to anyone without prior permission from the Togut Firm, except as may be required by law, regulation, or judicial or administrative process:  (i) all information obtained by you in the course of this engagement; (ii) all information prepared or developed by you in connection with this engagement; and (iii) all documents provided to you by the Togut Firm or the Debtors.

You will notify the Togut Firm immediately upon receiving a subpoena or any other official request seeking the production of documents, records, or other information related to the engagement.

TOGUT, SEGAL & SEGAL LLP

Sir Roy Goode QC
March 3, 2022
Page 2

All documents provided to you by the Togut Firm will be protected, maintained, and treated by you as confidential and will be safeguarded in accordance with any applicable protective or confidentiality order in the Chapter 11 Cases. Following the termination of the engagement, you shall return or destroy all documents pursuant to the Togut Firm's instructions.

If you are designated as a testifying expert in the Chapter 11 Cases, the Togut Firm will disclose all documents and information required by the applicable discovery rules.

3.  Attorney Work Product: You will report to the Togut Firm orally or, if requested, in written form. Any written documents created by you shall be addressed to the Togut Firm and marked "Privileged and Confidential - Attorney Work Product."

4.  Compensation: You will be compensated for time spent on this engagement at the rate of $1,300.00 per hour, including time spent testifying, should your testimony be required in deposition or at trial. You will be reimbursed for documented reasonable and necessary out-of-pocket expenses. The Togut Firm agrees that you will be entitled to look to the Firm exclusively for payment of your fees and reasonable expenses without the need for approval by the Trustee or other insolvency administrator and whether or not such approval is given; provided however, that the Togut Firm shall only pay fees and expenses in excess of the initial budget that are authorized in accordance to paragraph 6 of this Agreement.

5.  Billing: You will invoice the Togut Firm on a monthly basis. Payment of any sums properly due on your invoice will be due within thirty (30) days of the invoice date. If there are any questions about an invoice, the Togut Firm agrees to contact you within ten (10) days of the invoice date.

6.  Estimate of time/costs: We have agreed to an initial budget for this engagement of $100,000.00 in total fees and expenses. You shall notify the Togut Firm promptly if the initial budget needs to be revised for any reason. You may only exceed the initial budget after notifying the Togut Firm and receiving prior written authorization from the Togut Firm to incur fees and expenses in excess of the budget.

7.  Limitation of Liability: The Togut Firm agrees that in no event will you incur any liability for loss or damage, primary, incidental or consequential, in connection with Opinions and other services you provide under this Agreement.

8.  Conflicts of Interest: You represents that you have conducted a conflict-of-interest analysis and determined that no conflict exists that would impair your ability to serve as an expert in the Chapter 11 Cases. As part of your conflict analysis, you have determined and represents that, in connection with the Chapter 11 Cases, you (a) have not and are not affiliated with anyone who has received any confidential information from any other adverse party; and (b) are not performing and

TOGUT, SEGAL & SEGAL LLP

Sir Roy Goode QC
March 3, 2022
Page 3

have not and are not affiliated with any individual who has performed expert work for any other adverse party.

You agree to notify the Togut Firm immediately if any conflict of interest should arise.

9.    Termination:  The Togut Firm may terminate the Agreement for any reason upon ten days written notice to you. The Togut Firm will pay all outstanding balances within thirty (30) days of termination.

Following the termination of the engagement, you shall return or destroy all documents pursuant to the Togut Firm's instructions.

10.    Choice of Law:  This Agreement and all matters arising out of or relating to this Agreement are governed by, and construed in accordance with, the laws of the State of New York, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of New York.

11.    Choice of Forum:  The state or federal courts of the State of New York located in the County of New York shall be the exclusive forums for litigation concerning this Agreement or any aspect of our engagement. All parties to this Agreement consent to personal jurisdiction in such courts as well as service of process by notice sent by regular, first class, or certified mail to address provided above for each party or by any means authorized by New York State law.

12.    Entire Agreement:  This Agreement constitutes the sole and entire agreement between us with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter.

Please review this letter carefully and let me know if you have any questions or concerns.  If you agree to the terms of this letter, please sign and return it to my attention. You may retain the enclosed copy for your files.

[Signature Page Follows]

TOGUT, SEGAL & SEGAL LLP

Sir Roy Goode QC
March 3, 2022
Page 4

Very truly yours,

TOGUT, SEGAL & SEGAL LLP
By:

*Kyle J. Ortiz*

Kyle J. Ortiz
A Member of the Firm

I, Roy Goode, agree to the terms of engagement described in this Agreement.

Date: March 3, 2022          By: _____

Sir Roy Goode QC

**ACKNOWLEDGEMENT**

The above letter confirms JPA No. 111 Co. Ltd.'s understanding of the services Roy
Goode will perform relating to the Chapter 11 Cases and the fee arrangement.  Any
professional responsibility Roy Goode has to communicate information to JPA No. 111
Co. Ltd. as a client will be discharged by communicating such information to the Togut
Firm.

Date: _____          By: _____

The above letter confirms JPA No. 49 Co. Ltd.'s understanding of the services Roy
Goode will perform relating to the Chapter 11 Cases and the fee arrangement.  Any
professional responsibility Roy Goode has to communicate information to JPA No. 49
Co. Ltd. as a client will be discharged by communicating such information to the Togut
Firm.

Date: _____          By: _____